## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-9132 |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

Plaintiff City of Sunrise Firefighters' Pension Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Citigroup Inc. ("Citi" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Citi; and (d) other public information regarding the Company.

## <u>INTRODUCTION</u>

1.      Plaintiff brings this securities class action (the "Action") against Citi and certain of the Company's current and former senior executives (collectively, "Defendants") under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 on behalf of all investors who purchased or otherwise acquired Citi's common stock between February 25, 2017 and October 12, 2020, inclusive (the "Class Period").

2.     Defendant Citi is a multinational investment bank and financial services corporation.

3.     The Class Period begins on February 25, 2017, following the Company's submission of its 2016 Annual Report to the SEC.  In that filing, and throughout the Class Period, Citi assured investors that there were no significant deficiencies or material weaknesses in the Company's internal controls.  When faced with periodic regulatory penalties for noncompliance, the Company continued to assure investors that the specific deficiencies at issue were being remediated promptly and that internal controls and regulatory compliance were a top priority at Citi.   In particular, Citi assured investors that it satisfied all regulatory requirements and maintained adequate internal controls, data governance, compliance risk management, and enterprise risk management.

4.     In reality, during the Class Period and unbeknownst to investors, Citi's internal controls and risk management capabilities suffered from "serious" and "longstanding" inadequacies that exposed the Company to massive regulatory penalties and will cost significantly more than $1 billion to remediate.  Specific control failures about which Citi executives were warned remained unresolved for years and the Company's culture of non-compliance was so widespread that Citi's CEO, Defendant Michael Corbat, exhorted employees in an internal memo that regulatory compliance required more than "checking boxes."

5.     The truth began to emerge on September 14, 2020, when reports surfaced that regulators were preparing to reprimand Citi for failing to improve its risk-management systems.  That disclosure caused the price of Citi's stock to decline $2.85 per share, from $51.00 to $48.15, erasing $5.91 billion in shareholder value.

6.     After the market closed on September 14, 2020, an internal memo sent to Citi

employees revealed for the first time the Company's disregard for adequate internal controls and regulatory compliance.  As a result, the price of Citi's stock declined an additional $3.34 per share, from $48.15 to $44.81, erasing $6.93 billion in shareholder value.

7.      Then, on October 13, 2020, Citi reported earnings for the third quarter of 2020, and disclosed that the Company's expenses increased during the third quarter by 5%, to $11 billion, due to an increase in costs including a $400 million fine, investments in infrastructure, and other remediation costs related to control deficiencies.  These disclosures caused Citi's stock price to decline by $2.20 per share, from $45.88 to $43.68, erasing $4.57 billion in shareholder value.

8.      In total, as a result of Citi's deception relating to its internal controls and compliance systems, $17.43 billion of shareholder value has evaporated and class members were the ones who suffered from the Defendants' actions.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

10.      This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11.      Venue is proper in this District under 28 U.S.C. § 1391(b), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Citi maintains its headquarters in New York City, New York, which is situated in this District, and many of the acts giving rise to the violations complained of in this Action, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this District.

12.      In connection with the acts alleged herein, Defendants, directly or indirectly, used

the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

A. **Plaintiff**

13.     Plaintiff City of Sunrise Firefighters' Pension Fund is a public pension fund that provides retirement benefits to firefighters employed by the city of Sunrise, Florida.  As indicated in the certification submitted herewith, Plaintiff purchased Citi common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the securities laws alleged herein.

B. **Defendants**

14.     Defendant Citi is a multinational investment bank and financial services corporation.  Incorporated in Delaware, the Company maintains its corporate headquarters at 388 Greenwich Street, New York, New York.  Citi common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "C."  As of August 5, 2020, Citi had 2.08 billion shares outstanding.

15.     Defendant Michael L. Corbat ("Corbat") is, and was at all relevant times, Citi's Chief Executive Officer ("CEO").  Corbat joined Citi in 1983 and has been Citi's CEO since 2012, a role he will continue to occupy until February 2021.

16.     Defendant John C. Gerspach ("Gerspach") joined Citi in 1990 and served as Citi's Chief Financial Officer ("CFO") from July 2009 until March 1, 2019.

17.     Defendant Mark A. L. Mason ("Mason") joined Citi in 2001, and has been Citi's CFO since March 2019.

18.     Defendants Corbat, Gerspach, and Mason are collectively referred to herein as the

"Officer Defendants."   The Officer Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Citi's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.   The Officer Defendants were provided copies of the Company's reports and press releases alleged in this complaint to be misleading before, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their position and access to material non-public information available to them, the Officer Defendants knew that the adverse facts and omissions specified in this complaint had not been disclosed to, and were being concealed from, the public, and that positive representations and omissions which were being made were then materially false and misleading.

## **BACKGROUND**

19.     Prior to the Class Period, in 2012, Citi entered into a Consent Order (the "2012 Consent Order") with the U.S. Office of the Comptroller of the Currency (the "OCC").   The 2012 Consent Order cited weaknesses in Citi's internal controls – particularly, Anti-Money Laundering ("AML") violations, deficiencies in Citi's compliance program, and failures to file suspicious activity reports.   The 2012 Consent Order required Citi to remediate those issues, including by improving due diligence processes on foreign correspondent bank customers.

20.     Following the 2012 Consent Order, Citi stated "in recent years, we have taken significant steps and developed a comprehensive plan to address legacy AML issues and better manage AML risks comprehensively across products, businesses, and geographies.   Because of these actions, many of the issues highlighted in the OCC's Order have already been remediated or are in the process of being remediated.   Furthermore, we are developing a plan to address the remaining OCC requirements."

21.     Citi also assured investors that "We strive to continually operate at the highest standards of conduct in all of our businesses.  We are committed to being in compliance with all BSA/AML regulations and expectations. . . . Important progress has been made, and we will continue to work towards having an industry-leading BSA/AML compliance program."

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

22.     The Class Period begins on February 25, 2017, the first day of trading after Citi filed with the SEC its 2016 Annual Report on Form 10-K.  The 2016 10-K contained certifications by Defendants Corbat and Gerspach that attested to the integrity of the Company's internal controls and veracity of the Annual Report.  In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

23.     On March 15, 2017, Citi filed with the SEC its 2016 Proxy Statement on Schedule 14A, which incorporated by reference Citi's Code of Conduct, Citi's Risk Management Committee Charter (the "Charter"), and Citi's Environmental, Social, and Governance ("ESG") report.  In those documents, Citi touted, among other things, the strength of its internal controls, risk management oversight, and compliance.  Specifically, the Code of Conduct stated, "We maintain processes and controls to govern the use, transmission, sharing, storage, disclosure, transfer, security, accuracy, and access to client and employee information globally."  Similarly, the Charter states that Citi's Risk Management Committee purported to provide "oversight of Citigroup's risk management framework, including the significant policies and practices used in managing credit, market, operational, and certain other risks," among other oversight functions.  Additionally, the ESG report stated "Through an integrated compliance risk management framework, this group protects Citi by

setting standards; providing guidance, training and advice to our businesses regarding compliance risk; and driving ownership and accountability for managing compliance risk in accordance with Citi standards across the firm."

24.     On May 1, 2017, Citi filed with the SEC its Quarterly Report on Form 10-Q for the first quarter of 2017.  The 10-Q contained certifications by Defendants Corbat and Gerspach attesting to the integrity of the Company's internal controls and veracity of the Quarterly Report. In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

25.     On July 25, 2017, at its 2017 Investor Day, Citi gave an investor presentation, which was also published on its website, that highlighted the "Strong Risk Management" underlying its "Simplified, Integrated Business Model."

26.     On August 1, 2017, Citi filed with the SEC its Quarterly Report on Form 10-Q for the second quarter of 2017.  The 10-Q contained certifications by Defendants Corbat and Gerspach that attested to the integrity of the Company's internal controls and veracity of the Quarterly Report. In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

27.     On October 31, 2017, Citi filed with the SEC its Quarterly Report on Form 10-Q for the third quarter of 2017.  The 10-Q contained certifications by Defendants Corbat and Gerspach attesting to the integrity of the Company's internal controls and veracity of the Quarterly Report.

In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

28.     On February 23, 2018, Citi filed with the SEC its 2017 Annual Report on Form 10-K.  The 2017 10-K contained certifications by Defendants Corbat and Gerspach that attested to the integrity of the Company's internal controls and veracity of the Annual Report.  In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

29.     On March 15, 2018 Citi submitted with the SEC its 2017 Proxy Statement on Schedule 14A, which incorporated by reference Citi's Code of Conduct, Citi's Risk Management Committee Charter, and Citi's ESG report.  In those documents, Citi touted, among other things, the strength of its internal controls, risk management oversight, and compliance.  Specifically, the Code of Conduct stated, "We maintain processes and controls to govern the use, transmission, sharing, storage, disclosure, transfer, security, accuracy, and access to client and employee information globally." Similarly, the Charter stated that Citi's Risk Management Committee purported to provide "oversight of Citigroup's risk management framework, including the significant policies and practices used in managing credit, market, operational, and certain other risks," among other oversight functions.  Additionally, the ESG report stated "Through an integrated compliance risk management framework, this group protects Citi by setting standards; providing guidance, training and advice to our businesses regarding compliance risk; and driving

8

ownership and accountability for managing compliance risk in accordance with Citi standards across the firm."

30.     On May 1, 2018 Citi filed with the SEC its Quarterly Report on Form 10-Q for the first quarter of 2018.  The 10-Q contained certifications by Defendants Corbat and Gerspach that attested to the integrity of the Company's internal controls and veracity of the Quarterly Report.  In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

31.     On July 31, 2018, Citi filed with the SEC its Quarterly Report on Form 10-Q for the second quarter of 2018.  The 10-Q contained certifications by Defendants Corbat and Gerspach attesting to the integrity of the Company's internal controls and veracity of the Quarterly Report.  In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

32.     On October 30, 2018, Citi filed with the SEC its Quarterly Report on Form 10-Q for the third quarter of 2018.   The 10-Q contained certifications by Defendants Corbat and Gerspach that attested to the integrity of the Company's internal controls and veracity of the Quarterly Report.  In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

33.     On February 22, 2019 Citi filed with the SEC its 2018 Annual Report on Form 10-K.  The 2018 10-K contained certifications by Defendants Corbat and Gerspach that attested to the integrity of the Company's internal controls and veracity of the Annual Report.  In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

34.     On March 6, 2019 Citi filed with the SEC its 2018 Proxy Statement on Schedule 14A, which incorporated by reference Citi's Code of Conduct, Citi's Risk Management Charter, and Citi's ESG report.  In those documents, Citi touted, among other things, the strength of its internal controls, risk management oversight, and compliance.  Specifically, the Code of Conduct stated, "We maintain processes and controls to govern the use, transmission, sharing, storage, disclosure, transfer, security, accuracy, and access to client and employee information globally." Similarly, the Charter stated that Citi's Risk Management Committee purported to provide "oversight of Citigroup's risk management framework, including the significant policies and practices used in managing credit, market, operational, and certain other risks," among other oversight functions. Additionally, the ESG report stated "Through an integrated compliance risk management framework, this group protects Citi by setting standards; providing guidance, training and advice to our businesses regarding compliance risk; and driving ownership and accountability for managing compliance risk in accordance with Citi standards across the firm."

35.     On March 19, 2019, in response to reports of a $25 million fine imposed on the Company by the OCC for violations of the Fair Housing Act, Citi further assured investors that it had the conducted a "comprehensive" review and "[s]trengthened processes and controls to help

ensure correct implementation going forward." Citi further promised to "closely monitor implementation" and "act promptly to correct" any issues identified moving forward. Citi highlighted that it was "pleased to have the matter resolved."

36. On April 30, 2019, Citi filed with the SEC its Quarterly Report on Form 10-Q for the first quarter of 2019. The 10-Q contained certifications by Defendants Corbat and Mason that attested to the integrity of the Company's internal controls and veracity of the Quarterly Report. In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

37. On August 1, 2019, Citi filed with the SEC its Quarterly Report on Form 10-Q for the second quarter of 2019. The 10-Q contained certifications by Defendants Corbat and Mason attesting to the integrity of the Company's internal controls and veracity of the Quarterly Report. In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

38. On November 1, 2019, Citi filed with the SEC its Quarterly Report on Form 10-Q for the third quarter of 2019. The 10-Q contained certifications by Defendants Corbat and Mason that attested to the integrity of the Company's internal controls and veracity of the Quarterly Report. In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the

11

registrant's internal control over financial reporting."

39.     On November 26, 2019, following the announcement of a £44 million fine imposed on Citi by Bank of England regulators, the Company assured investors that it "has fully remediated the past regulatory reporting issues identified by the [Bank of England]."  The Company added: "Citi places a high priority on meeting its regulatory reporting requirements, and has devoted significant resources to UK financial reporting before, during and after the period to which the [Bank of England]'s notice relates."  Citi also highlighted its "substantial strategic enhancements to its regulatory reporting infrastructure in the UK [.]"

40.     On February 21, 2020, Citi filed with the SEC its 2019 Annual Report on Form 10-K.  The 2019 10-K contained certifications by Defendants Corbat and Mason that attested to the integrity of the Company's internal controls and veracity of the Annual Report.  In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial report."

41.     On March 3, 2020 Citi filed with the SEC its 2019 Proxy Statement on Schedule 14A, which incorporated by reference Citi's Code of Conduct, Citi's Risk Management Charter, and Citi's ESG report.  In those documents, Citi touted, among other things, the strength of its internal controls, risk management oversight, and compliance.  Specifically, the Code of Conduct stated, "We maintain processes and controls to govern the use, transmission, sharing, storage, disclosure, transfer, security, accuracy, and access to client and employee information globally."  Similarly, the Charter stated that Citi's Risk Management Committee purported to provide "oversight of Citigroup's risk management framework, including the significant policies and

practices used in managing credit, market, operational, and certain other risks," among other oversight functions.  Additionally, the ESG report stated "Through an integrated compliance risk management framework, this group protects Citi by setting standards; providing guidance, training and advice to our businesses regarding compliance risk; and driving ownership and accountability for managing compliance risk in accordance with Citi standards across the firm."  Specifically, that ESG report claimed "With data security among Citi's most material environmental, social, and governance issues, 2019 Spotlight communications focused on information security, addressing topics such as … the importance of proper data classification and handling[.]"

42.     On April 15, 2020, Citi held a conference call with analysts and investors to discuss its financial results for the first quarter of 2020. To facilitate the discussion, Citi used a slide presentation, which was referenced during the conference call and published on the Company's website.  Those slides, titled "First Quarter 2020 Earnings Review," stated that Citi's priorities were to "Continue to demonstrate … operational resiliency" and "Focus on risk management and building a stronger company for the future."

43.     On May 4, 2020, Citi filed with the SEC its Quarterly Report on Form 10-Q for the first quarter of 2020.   The 10-Q contained certifications from Defendants Corbat and Mason that attested to the integrity of the Company's internal controls and veracity of the Quarterly Report.  In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

44.     On July 14, 2020, Citi issued a press release announcing its financial results for the second quarter of 2020.  In the press release, which was also filed with the SEC on Form 8-K, CEO

Corbat is quoted reassuring investors by stating, "With a sharp emphasis on risk management, we are prepared for a variety of scenarios and will continue to operate our institution prudently given this unprecedented situation."

45.     That same day, Citi held a conference call with analysts and investors to discuss its financial results for the second quarter of 2020.  To facilitate the discussion, Citi used a slide presentation, which was referenced during the conference call and published on the Company's website.  Those slides, titled "Second Quarter 2020 Earnings Review," highlight Citi's priorities of "risk management" and "operational resiliency."

46.     On August 5, 2020, Citi filed with the SEC its Quarterly Report on Form 10-Q for the second quarter of 2020.  The 10-Q contained certifications from Defendants Corbat and Mason that attested to the integrity of the Company's internal controls and veracity of the Quarterly Report. In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

47.     The statements set forth above in paragraphs ¶¶22-46 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically, Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements regarding Citi's internal controls and risk management capabilities that failed to disclose the serious and longstanding inadequacy of Citi's internal controls, data governance, compliance risk management, and enterprise risk management.  As a result, Defendants' statements about Citi's internal controls and risk management were materially false and/or misleading and/or lacked a

reasonable basis.

48.     In addition, throughout the Class Period, Citi received multiple regulatory fines and punishments as a result of Defendants' egregious failure to institute and maintain adequate controls and compliance functions.   While these regulatory investigations and censures demonstrated that those at the highest level of the Company were aware of the serious internal controls and risk management issues facing the Company, Defendants never disclosed the magnitude of the problems.   At no time during the Class Period, particularly in conjunction with the disclosure of numerous regulatory censures, did Citi disclose the true extent and severity of the control deficiencies that were plaguing the Company and triggered these reprimands.   The fines and censures imposed on Citi during the Class Period include the following:

a.     On December 21, 2017, the OCC announced that Citi had failed to comply with the 2012 Consent Order.  As a result, Citi agreed to pay a $70 million fine to the OCC and entered into another Consent Order (the "2017 Consent Order").  In explaining Citi's failures to comply with the 2012 Consent Order, the OCC highlighted the Company's "internal control weaknesses," "inadequate customer due diligence," and "failure of independent audit to identify systemic deficiencies."  Despite this fine and new Consent Order, Citi failed to disclose the magnitude and extent of the problems facing the Company and the fact that properly addressing such problems would have a material impact on Citi's finances.

b.     On August 16, 2018, the SEC fined Citi $10.5 million to settle two different enforcement actions, both relating to the Company's inadequate supervisory procedures and internal accounting controls.  The SEC remarked that "[t]oday's charges reflect the Commission's view that Citigroup fell short of its obligations to

supervise its traders and maintain appropriate controls to guard against fraud." The SEC also explained that "Citigroup's lax supervision and weak internal accounting controls allowed a handful of rogue traders to mismark positions over several years and, separately, resulted in the unnecessary loss of hundreds of millions of dollars of its shareholders' assets to fraud." Once again, despite this punishment and the fact that senior management would have been well aware of the issues drawing scrutiny from regulators, Citi hid from investors the true extent of the issues facing the Company's supervisory procedures and internal accounting controls.

c.      As referenced in paragraph ¶35, on March 19, 2019, Citi paid a $25 million fine to the OCC for violations of the Fair Housing Act. The OCC's underlying investigation found that failures in Citi's risk management and internal controls resulted in inadequately trained mortgage loan officers denying loans to eligible borrowers "on the basis of their race, color, national origin, and/or sex." Once again, Citi did not disclose the true extent of the severity of internal control and compliance problems at the Company.

d.      As referenced in paragraph ¶39, on November 26, 2019, the Bank of England fined Citi £44 million for regulatory failures by Citi in the UK. The fine resulted from an investigation by the Bank of England's Prudential Regulation Authority (the "PRA") into Citi's London subsidiaries Citigroup Global Markets Limited, Citibank N.A. London branch, and Citibank Europe Plc UK branch (collectively, "Citi UK"). The PRA found that Citi UK's framework failed "in a number of respects" and was "not designed, implemented, or operating effectively." The PRA identified multiple errors of "a fundamental and/or persistent nature" that Citi

UK's validation controls failed to detect, noting that in a number of instances, controls were not operated in accordance with Citi UK's own internal requirements.  As a result, "Returns" submitted by Citi UK, required under PRA regulations, lacked complete and accurate data.[1]  Critically, the PRA determined that Citi UK's oversight and governance of regulatory reporting "fell significantly below the standards expected of a systemically important institution."  The investigation found that members of senior management and key governance committees had a "limited understanding and awareness" of the Company's own policies and procedures in regard to the UK regulatory reporting control framework.  In multiple instances, it is unclear which senior personnel had ownership of a specific procedure.

49.     Despite numerous fines and penalties from regulators, Citi repeatedly failed to disclose the true severity of its control deficiencies to investors and hid from investors the magnitude of the problems at the Company.  Defendants' failure to disclose the true extent of these problems caused Citi's stock price to trade at artificially inflated prices throughout the Class Period.

**THE TRUTH EMERGES**

50.     On August 10, 2020, Corbat sent an internal memorandum to the Company, which, at the time, was not disclosed publicly.  In the memo, Corbat wrote "[i]n recent years, we have been working on significant remediation projects to strengthen our controls, infrastructure and governance.  While we have made progress, we have work to do to meet the standards that we must hold ourselves to."  Corbat also noted "execution challenges" the Company had experienced

---

[1] Since 2015, PRA-regulated banks are required to submit biannual Returns to the PRA. These Returns give the PRA information and data on the bank's capital adequacy, leverage, and liquidity.  The PRA investigation found that Citi experienced errors in a majority of their filings and had to resubmit a "significant" number of Returns.  In several instances, multiple resubmissions were required to cure all errors.

and exhorted employees to "think about infrastructure and controls very differently."

51.     The very next day, on August 11, 2020, Citi claimed that it accidentally sent $893 million in principal payments to the creditors of Revlon, Inc., in connection with a loan for which Citi was the administrative agent.  According to Citi's own court filings, submitted when Citi later sought a return of those funds, the overpayment was cause by "issues with the loan processing system."  Citi further explained in those filings that "the individual who processed the payment mistakenly did not manually select the correct options and, unfortunately, the manual checks of that selection failed to detect the mistake."

52.     Less than a month later, on September 10, 2020, Citi announced in a press release that CEO Corbat would be retiring in February 2021, much earlier than the general expectation that his retirement would come some time in 2022.  In the September 10, 2020 press release, Corbat stated "I am extremely proud of what we have accomplished in the past eight years.  We completed our transformation from the financial crisis and emerged a simpler, safer and stronger institution."  Corbat went on to say, "We have launched significant investments in our infrastructure as part of our push to make strengthening our risk and control environment a strategic priority for the firm."

53.     On September 14, 2020, news broke that federal regulators were preparing to reprimand the Company for failing to improve its risk management systems.  In response to the news, Citi acknowledged that its "risk and control environment" was "not yet where we need to be and that has to change."  Citi also admitted that its erroneous $900 million payment was an example of the Company's weak "risk and control environment" and was "unacceptable."

54.     At an investor conference held that day, Citi highlighted that it would need to spend more than $1 billion in 2020 to fix its internal controls and operational infrastructures and gave guidance that it would continue to build credit reserves in the third quarter.  As a result of these

disclosures, Citi's stock declined by $2.85 per share, or 5%, erasing $5.91 billion in shareholder value.

55.     Additionally, after the close of the market on September 14, 2020, news organizations published the internal memo from Corbat to Company employees.  The August 10, 2020 memo, discussed above in paragraph ¶50, urged employees to "think about infrastructure and controls very differently" and exhorted that it was "not about getting remediation projects done or checking boxes."  These disclosures reflecting the lax attitude towards internal controls and regulatory compliance at the Company caused Citi shares to decline by $3.34 per share, erasing an additional $6.93 billion in shareholder value.

56.     On October 7, 2020, the anticipated punishment by federal regulators was made public when the OCC issued a $400 million penalty against Citi for failing, over the course of several years, to improve its risk-management systems.  The OCC highlighted Citi's "serious and longstanding deficiencies and unsafe or unsound practices."  Citi also entered into consent orders with both the OCC and the Federal Reserve requiring a systemic overhaul of the Company's internal controls, data governance, compliance risk management, and enterprise-wide management.

57.     In response, Citi stated it had "redoubled our efforts and have made transforming our risk and control environment a strategic priority … we have accelerated investments and made structural changes.  This year alone, we will invest over $1 billion in this area." Citi went on to state "The entire management team is committed to achieving operational excellence and best-in-class risk and control environment."

58.     On October 13, 2020, Citi reported earnings for the third quarter of 2020.  The Company said its expenses increased by 5%, to $11 billion, in the third quarter, reflecting, among

other things, the $400 million fine and investments in infrastructure.   As a result of these disclosures, the price of Citi stock declined by an additional $2.20 per share, from a close of $45.88 per share on October 12, 2020 to $43.68 on October 13, wiping out an additional $4.57 billion in shareholder value.

59.     While Citi has not yet been transparent as to future costs, a report published on October 13, 2020 by an analyst for Deutsche Bank indicated that "it's unclear how much expenses will rise, but the tone on today's earnings call seemed to imply that a lot of spend could be needed to address regulatory issues."   The report went on to say, "We now assume a $3b[illion] increase in related costs in 2022 vs. 2019, with about $1b[illion] already disclosed."

60.     Other analysts remarked on Citi's lack of transparency as to future costs. On October 13, 2020 an analyst for UBS wrote "we think higher costs related to remediating consent orders will continue to impact results in the coming years."   Additionally, on October 14, 2020 a Piper Sandler analyst warned of "increased uncertainty … given a lack of clarity about the level of investment spending required to improve consent order related to risk controls," and an analyst from Evercore remarked "while we didn't get much clarity on how to exactly size the impact, [management] was clear in that this is a multi-year transformation that *will* require incremental spend to improve Citi's risk management, data governance, controls and compliance." (emphasis in original).

61.     In total, because of Citi's deception relating to its internal controls and compliance systems, $17.43 billion of shareholder value has evaporated and class members were the ones who suffered from the Defendants' actions.

## LOSS CAUSATION

62.     During the Class Period, as detailed herein, Defendants made materially false and

misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Citi common stock and operated as a fraud or deceit on the Class (as defined below). Later, when the truth concealed by Defendants' prior misrepresentations and omissions was disclosed to the market, including on September 14-15, 2020 and October 13, 2020, the price of Citi common stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their acquisition of Citi common stock during the Class Period – and Defendants' material misstatements and omissions – Plaintiff and other member of the Class suffered economic loss, *i.e.,* damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased common stock of Citi during the Class Period. Excluded from the Class are Defendants and their families, directors and officers of Citi and their families and affiliates.

64.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims as a class action will provide substantial benefits to the parties and the Court. Citi has over 2 billion shares of stock outstanding, owned by hundreds or thousands of investors.

65.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading;

(d)    Whether the Officer Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)    Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)    Whether Defendants' conduct impacted the price of Citi's common stock;

(g)    Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)    The extent of damage sustained by Class members and the appropriate measure of damages.

66.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

67.    Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

68.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

**INAPPLICABILITY OF STATUTORY SAFE HARBOR**

69.    Citi's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

70.    Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Citi who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement

of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when they were made, nor were any of the projections or forecasts made by Defendant expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

71.     At all relevant times, the market for Citi's common stock was an efficient market for the following reasons, among others:

(a)     Citi's shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     Citi filed periodic public reports with the SEC and NYSE;

(c)     Citi regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Citi was followed by several securities analysts employed by numerous major brokerage firms, who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm.  Each of these reports was publicly available and entered the public marketplace.

72.     As a result of the foregoing, the market for Citi's shares promptly digested current information regarding Citi from all publicly available sources and reflected such information in the price of Citi's stock.  Under these circumstances, all purchasers of Citi shares during the Class Period suffered similar injury through their purchase of Citi shares at artificially inflated prices and the presumption of reliance applies.

73.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose the serious and longstanding inadequacy of Citi's internal controls and risk management capabilities—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of robust internal controls, particularly in light of the Company's history of repeated regulatory violations and internal control failures, and the impact that could have on the Company's future revenue generation, that requirement is satisfied here.

## CAUSES OF ACTION

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5**
**Against All Defendants**

74.     Plaintiff repeats, incorporates, and realleges every allegation above as if fully set forth herein.

75.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which intended to and, throughout the Class Period, did (i) deceive the investing public, including Plaintiff and other Class Members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Citi common stock at artificially inflated prices.

76.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Citi common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

77.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

78.     During the Class Period, Defendants made the false statements specified above, which they knew to be or recklessly disregarded the truth that they were false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

79.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Citi's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

80.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Citi's common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Citi common stock had been artificially inflated by Defendants' fraudulent course of conduct.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the

Company's common stock during the Class Period.

82.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act Against the Officer Defendants (Corbat, Gerspach, and Mason)

83.     Plaintiff repeats, incorporates, and realleges every allegation above as if fully alleged in this count.

84.     The Officer Defendants acted as controlling persons of Citi within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  By virtue of their high-level positions, participation in and awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and intimate knowledge of the Company's actual performance, and their power to control public statements about Citi, the Officer Defendants had the power and ability to control the actions of Citi and its employees.  By reason of this conduct, the Officer Defendants are liable under Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

85.    Plaintiff demands a trial by jury.

DATED: October 30, 2020

*/s/ Hannah Ross*

Hannah Ross
Gerald H. Silk
Avi Josefson
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
jerry@blbglaw.com
avi@blbglaw.com

*Counsel for Plaintiff City of Sunrise
Firefighters' Pension Fund*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN
  & LEVINSON**
7080 Northwest 4th Street
Plantation, FL 33315
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for City of Sunrise
Firefighters' Pension Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Carl Hochrein, on behalf of City of Sunrise Firefighters' Pension Fund ("Sunrise Firefighters"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Sunrise Firefighters.  I have reviewed the complaint with Sunrise Firefighters' legal counsel.  Based on the legal counsel's knowledge and advice, Sunrise Firefighters has authorized the filing of the complaint.

2. Sunrise Firefighters did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Sunrise Firefighters is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Sunrise Firefighters' transactions in the Citigroup, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Sunrise Firefighters has served as a representative party on behalf of a class in the following action filed under the federal securities laws during the three years preceding the date of this Certification:

    *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.,*
    No. 18-cv-4844 (N.D. Cal.)

6. Sunrise Firefighters will not accept any payment for serving as a representative party on behalf of the Class beyond Sunrise Firefighters' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this ___ day of October, 2020.

Carl Hochrein
Chairman
*City of Sunrise Firefighters' Pension Fund*

**City of Sunrise Firefighters' Pension Fund**
**Transactions in Citigroup, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 6/8/2017 | 2,100 | 63.6808 |
| Purchase | 6/25/2019 | 550 | 67.0464 |
| Purchase | 4/7/2020 | 1,750 | 42.8332 |
| | | | |
| Sale | 7/26/2017 | (1,230) | 68.3338 |
| Sale | 4/9/2019 | (2,000) | 65.1618 |