**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movants and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, AND MARK A. L. MASON,<br><br>        Defendants. | **CASE No.: 1:20-cv-09132-AJN**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DALE TOWNSEND AND JOHN CORSO TO: (1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFFS; AND (3) APPROVE LEAD PLAINTIFFS' SELECTION OF COUNSEL**<br><br><u>**CLASS ACTION**</u> |
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH and MARK A.L. MASON<br><br>        Defendants. | **CASE No.: 1:20-cv-09573-AJN**<br><br><u>**CLASS ACTION**</u> |

TIMOTHY LIM, individually and on behalf of all others similarly situated,

        Plaintiff,

        v.

CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,

        Defendants.

**CASE No.: 1:20-cv-10360-UA**

**CLASS ACTION**

Movants Dale Townsend and John Corso[1] ("Movants") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)    consolidating the above-captioned actions;

(b)    appointing Movants as Lead Plaintiffs for the Class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Citigroup between January 15, 2016 and October 12, 2020, both dates inclusive (the "Class Period")[2]; and

(c)    approving Movants' selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

The *Sunrise* Action, was commenced on October 30, 2020 against the Company and certain of its current and former officers for violations under the Exchange Act. That same day, an early notice was issued pursuant to the PSLRA advising class members of, *inter alia*, the

---

[1] John Corso pursues claims in this litigation in connection with his own Citigroup Inc. ("Citigroup" or the "Company") securities transactions and the Citigroup securities transactions of his wife, Germaine Corso, for whom he made investment decisions. Germaine Corso has duly assigned to John Corso the rights to pursue such claims. *See* Exhibit 2, hereto.

[2] The action *City of Sunrise Firefighters' Pension Fund v. Citigroup Inc., et al*., 1:20-cv-09132-AJN (S.D.N.Y.) ("*Sunrise* Action") has a class period of between February 25, 2017 and October 12, 2020, inclusive. The actions *City Of Sterling Heights General Employees' Retirement System v. Citigroup Inc., et al*., 1:20-cv-09573-AJN (S.D.N.Y.) ("*Sterling Heights* Action") and *Lim v. Citigroup Inc., et al*., 1:20-cv-10360-UA (S.D.N.Y.) ("*Lim* Action" and with the *Sunrise* Action and *Sterling Height* Action, the "Securities Class Actions") have class periods of between January 15, 2016 and October 12, 2020, inclusive. A more inclusive class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc*., No. 3:14-CV-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig*., 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Exhibit 1, hereto. The related *Sterling Heights* Action was commenced on November 13, 2020 and the *Lim* Action was commenced on December 9, 2020. The Securities Class Actions allege the same Exchange Act allegations against the same Defendants.

Defendant Citigroup is a multinational investment bank and financial services corporation. The complaints allege that during the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose: (1) Citigroup's failure to implement and maintain an enterprise-wide risk management and compliance risk management program, internal controls, or a data governance program commensurate with the Company's size, complexity, and risk profile; (2) Citigroup's failure to establish an effective risk governance framework; (3) Citigroup's failure to establish enterprise-wide risk management policies, standards, and frameworks necessary to adequately identify, measure, monitor, and control risks; (4) Citigroup's failure to establish effective front-line units, independent risk management, internal audit, and control functions; (5) Citigroup's failure to develop and execute on a comprehensive plan to address data governance deficiencies, including data quality errors and failure to produce timely and accurate management and regulatory reporting; (6) that Citigroup had failed to make the investments required to address its regulatory shortcomings; (7) that Citigroup had failed to implement and establish the requisite internal controls, risk management and data governance processes to comply with regulatory requirements, existing consent orders, and applicable laws and regulations; (8) that Citigroup was currently exposed to significant financial and operational risk, including risk from outdated and manual processes that left the Company susceptible to material accounting errors; (9) that Citigroup was currently suffering from material deficiencies in its policies, procedures and practices applicable to data integrity

2

and data governance and had failed to develop and execute on a plan to address these deficiencies as required by regulators; (10) that Citigroup lacked the required personnel with appropriate training, experience and authority to implement the required risk management and internal controls; and (11) that as a result of the foregoing, Citigroup had engaged in unsafe and unsound business practices that exposed it to heightened regulatory, legal, business and reputational risks.

On August 13, 2020, *The Wall Street Journal* ("*WSJ*") reported that Citigroup improperly paid almost $900 million to certain lenders of Revlon Inc. as a result of an "operational error." Some of the lenders refused to return the money so Citigroup needed court intervention. On this news, the price of Citigroup stock declined from $53.35 to $52.89 per share on August 13, 2020.

On August 17, 2020, The *WSJ* published another article which revealed that the improper payment to lenders in the Revlon matter involved Citigroup's own funds and been characterized as an "operational mistake." On this news, the price of Citigroup stock declined from $52.93 per share on August 14, 2020 to $51.42 per share on August 17, 2020.

On September 7, 2020, the *WSJ* reported that Citigroup's manual checks had failed to detect the mistaken payment and that this fiasco showed Citigroup's failure to implement effective internal controls and compliance systems. On this news, the price of Citigroup stock declined from $52.52 per share on September 4, 2020 to $51.04 per share on September 8, 2020, on abnormally high trading volume.

On September 14 2020, *Business Insider* reported the full text of a memo dated August 10, 2020 that Citigroup CEO, Michael Corbat, wrote acknowledging that Citigroup had not achieved the necessary level of internal controls and infrastructure. On this news, the price of Citigroup stock declined from a close of $51.00 per share on September 11, 2020 to a close of $48.15 per share on September 14, 2020.

On September 15, 2020, Piper Sandler issued an analyst report on Citigroup which reduced earnings estimates for the Company and noted the price of Citigroup stock declined in response to the threat of a consent order from the Office of the Comptroller of the Currency ("OCC"). On this news, the price of Citigroup stock declined from a close of $48.15 per share on September 14, 2020 to a close of $44.81 per share on September 15, 2020.

On October 13, 2020, Citigroup issued a press release announcing its results for the third quarter of 2020 which revealed that income had declined 34% from the prior-year period, driven in part by an increase in expenses, including the $400 million civil penalty imposed on Citigroup in connection with the OCC consent order. That same day, Citigroup held an investor call where Defendants Corbat and Mason contradicted Defendants' Class Period representations and belatedly admitted that the Company had not moved quickly enough to address risk management and internal control deficiencies. On this news, the price of Citigroup stock declined from a close of $45.88 per share on October 12, 2020 to a close of $43.68 per share on October 13, 2020. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Movants and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

The above-captioned related actions have been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## II.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movants satisfy all three of these criteria, and thus are entitled to the presumption of being the "most adequate plaintiffs" for the Class.

### A. Movants Are Willing to Serve as Class Representatives

Movants have filed herewith PSLRA certifications attesting that they are willing to serve as representatives of the class and are willing to provide testimony at deposition and trial, if necessary. *See* Exhibit 2, hereto. Accordingly, Movants satisfy the first requirement to serve as Lead Plaintiffs for the Class.

### B. Movants Have the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[3] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movants lost $108,341.52 in connection with their purchases of Citigroup securities. *See* Exhibit 3, hereto. Movants are not aware of any other movant that has suffered greater losses in Citigroup securities during the Class Period. Accordingly, Movants satisfy the largest financial interest requirement to be appointed as Lead Plaintiffs for the class.

---

[3] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

### C. Movants Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

#### 1.    Movants' Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiffs to be identically situated with all class members. *Id*.

Here, Movants' claims are typical of the claims asserted by the Class. Movants, like all members of the Class, allege that Defendants violated the Exchange Act by issuing false and

7

misleading statements about Citigroup's business and operations. Movants' interests are closely aligned with the other Class members' and Movants' interests are, therefore, typical of the other members of the Class.

### 2. Movants Are Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movants have communicated with competent, experienced counsel concerning this case and made this motion to be appointed as Lead Plaintiffs. Moreover, Movants agreed to file their motion as a group and with each other. Movants are not aware that any conflict exists between their claims and those asserted on behalf of the Class. Movants also sustained financial losses from investments in Citigroup securities and are, therefore, extremely motivated to pursue claims in this action.

### D. Movants Are Presumptively the Most Adequate Plaintiffs

The presumption in favor of appointing Movants as Lead Plaintiffs may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

8

The presumption that Movants are the most adequate Lead Plaintiffs is not, therefore, subject to rebuttal. Movants have suffered financial losses and have the largest financial interest in this case of any timely lead plaintiff. The ability of Movants to represent the Class fairly and adequately is discussed above. Movants are not aware of any unique defenses Defendants could raise against them that would render Movants inadequate to represent the Class.

## III.    MOVANTS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiffs to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiffs' selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movants have selected Rosen Law as Lead Counsel. The firm has been actively involved in the case researching Movants' and Class Plaintiffs' claims as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Exhibit 4, hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movants' counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movants' selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movants respectfully request the Court issue an Order: (1) consolidating the related actions; (2) appointing Movants as Lead Plaintiffs of the Class; (3) approving Movants' selection of Rosen Law as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: December 29, 2020

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movants and the Class*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim