UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,<br><br>Defendants. | Case No.  1:20-cv-09132-AJN<br>[rel. 1:20-cv-08669-AJN]<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF IRON WORKERS LOCAL 580 JOINT FUNDS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL |
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH and MARK A.L. MASON,<br><br>Defendants. | Case No.  1:20-cv-09573-AJN<br>[rel. 1:20-cv-08669-AJN] |
| TIMOTHY LIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,<br><br>Defendants. | Case No.  1:20-cv-10360-UA |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ........................................................................................................................ 5

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.. 5

II.    IRON WORKERS SHOULD BE APPOINTED LEAD PLAINTIFF .............................. 6

     A.     Iron Workers Is Willing to Serve as a Class Representative .................................. 7

     B.     Iron Workers Has the "Largest Financial Interest" in the Related Actions ........... 8

     C.     Iron Workers Otherwise Satisfies the Requirements of Rule 23 ........................... 9

     D.     Iron Workers Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ....................................................................... 12

III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 13

CONCLUSION .................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
  2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)..............................................................................9

*Bassin v. Decode Genetics, Inc.*,
  230 F.R.D. 313 (S.D.N.Y. 2005) .............................................................................................6

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
  141 F.R.D. 229 (2d Cir. 1992).................................................................................................10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ..............................................................................................5

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
  2018 WL 3093965 (S.D.N.Y. June 21, 2018) ...........................................................................8

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
  2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)...........................................................................10

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................10

*Glauser v. EVCI Career Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) .............................................................................................11

*In re Braskem*,
  2015 U.S. Dist. LEXIS 119183 ...........................................................................................3, 11

*In re Braskem S.A. Sec. Litig.*,
  15 Civ. 5132 (PAE)....................................................................................................................3

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)......................................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
  2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)........................................................................8, 13

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006).................................................................................3, 11

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)....................................................................................................10

ii

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...................................................................5, 6

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ...........................................................................................13

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................................8

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
    2008 WL 2811358 (S.D.N.Y. July 7, 2008) .......................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ...........................................................................................9

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .........................................................................................5

*In re Veeco Instruments, Inc.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) .......................................................................................11

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) .......................................................................................10

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)...............................................................................................5

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) .......................................................................................13

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
    1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ..........................................................................8

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993)..................................................................................................5

*Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*,
    2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) .................................................12

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
    2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017)......................................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .........................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..................................................................................13

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ..........................................................................................12

Private Securities Litigation Reform Act of 1995 ................................................................1, 2, 7

## Rules

Fed. R. Civ. P. 23 .................................................................................................... *passim*

Fed. R. Civ. P. 42 ..............................................................................................................1, 2, 5

iv

Iron Workers Local 580 Joint Funds ("Iron Workers") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42 ("Rule 42"), for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Iron Workers as Lead Plaintiff on behalf of all investors who purchased or otherwise acquired Citigroup Inc. ("Citi" or the "Company") securities between January 15, 2016 and October 12, 2020, inclusive (the "Class Period") (the "Class"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  Citi investors, including

---

[1] The complaint in the first-filed of the Related Actions, styled *City of Sunrise Firefighters Pension Fund v. Citigroup Inc. et al.*, No. 1:20-cv-09132 (S.D.N.Y.) (the "*Sunrise Firefighters* Action"), filed in this Court on October 30, 2020, alleges a class period that only includes investors who purchased or otherwise acquired Citi's common stock between February 25, 2017 and October 12, 2020, inclusive.  Then, on November 13, 2020, the related action styled *City of Sterling Heights General Employees' Retirement System v. Citigroup Inc. et al.*, No. 1:20-cv-09573 (S.D.N.Y.) (the "*Sterling Heights* Action") was also filed in this Court, alleging substantially the same wrongdoing against the same defendants, and with a larger class period including all purchasers of Citi common stock between January 15, 2016 and October 12, 2020, inclusive.  Finally, on December 9, 2020, the related action styled *Lim v. Citigroup Inc. et al.*, No. 1:20-cv-10360 (S.D.N.Y.) (the "*Lim* Action") was also filed in this Court, alleging substantially the same wrongdoing as the other Related Actions against the same defendants, on behalf of a broader class including all investors who purchased or otherwise acquired Citi securities during the same class period alleged in the *Sterling Heights* Action.  Therefore, without conceding that this is the appropriate class or class period, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in the *Sterling Heights* Action and *Lim* Action, and the broader class alleged in the *Lim* Action.

1

Iron Workers, incurred significant losses following the disclosure of the Company's alleged fraud, which caused Citi's stock price to fall sharply, damaging Iron Workers and other Citi investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of the federal securities laws by the same group of defendants arising from the same alleged wrongful misconduct.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In connection with its purchases of Citi securities during the Class Period, Iron Workers incurred losses of approximately $1,149,817 under a first-in, first-out ("FIFO") analysis, or approximately $954,319 under a last-in, first-out ("LIFO") analysis.  *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.  Accordingly, Iron Workers believes that it has the largest financial interest in the relief sought in the Related Actions.

Beyond its considerable financial interest, Iron Workers also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members and because it will fairly and adequately represent the interests of the Class.  As a sophisticated institutional investor with a significant financial interest in the litigation, Iron Workers is a paradigmatic lead plaintiff under the PSLRA, and its appointment would thus advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at *34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733.  For this reason, courts in this

2

Circuit strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g.*, *In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*, 2015 U.S. Dist. LEXIS 119183, at *14 (S.D.N.Y. Sept. 8, 2015) (appointing as lead plaintiff "an institutional investor, the type of investor Congress prefers as lead plaintiff"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n. 8 (S.D.N.Y. 2006) (appointing as lead plaintiff a "large institutional investor . . . precisely the type of plaintiff envisioned under the PSLRA").

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Iron Workers has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Iron Workers respectfully requests that the Court enter an order consolidating the Related Actions, appointing Iron Workers as Lead Plaintiff for the Class, and approving Iron Workers' selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaints of the Related Actions, Citi is a multinational investment bank and financial services corporation.

Throughout the Class Period, Citi assured investors that there were no significant deficiencies or material weaknesses in the Company's internal controls. When faced with periodic regulatory penalties for noncompliance, the Company continued to assure investors that the specific deficiencies at issue were being remediated promptly and that internal controls and regulatory compliance were a top priority at Citi. In particular, Citi assured investors that it

3

satisfied all regulatory requirements and maintained adequate internal controls, data governance, compliance risk management, and enterprise risk management.

In reality, during the Class Period and unbeknownst to investors, Citi's internal controls and risk management capabilities suffered from "serious" and "longstanding" inadequacies that exposed the Company to massive regulatory penalties and will cost significantly more than $1 billion to remediate. Specific control failures about which Citi executives were warned remained unresolved for years and the Company's culture of non-compliance was so widespread that Citi's Chief Executive Officer, Defendant Michael Corbat, exhorted employees in an internal memo that regulatory compliance required more than "checking boxes."

For example, on September 14, 2020, reports surfaced that regulators were preparing to reprimand Citi for failing to improve its risk-management systems. That disclosure caused the price of Citi's stock to decline $2.85 per share, from $51.00 to $48.15, erasing $5.91 billion in shareholder value.

After the market closed on September 14, 2020, an internal memo sent to Citi employees revealed the Company's disregard for adequate internal controls and regulatory compliance. As a result, the price of Citi's stock declined an additional $3.34 per share, from $48.15 to $44.81, erasing $6.93 billion in shareholder value.

Then, on October 13, 2020, Citi reported earnings for the third quarter of 2020, and disclosed that the Company's expenses increased during the third quarter by 5%, to $11 billion, due to an increase in costs including a $400 million fine, investments in infrastructure, and other remediation costs related to control deficiencies. These disclosures caused Citi's stock price to decline by $2.20 per share, from $45.88 to $43.68, erasing $4.57 billion in shareholder value.

As a result of Citi's deception relating to its internal controls and compliance systems, at least $17.43 billion of shareholder value has evaporated and Class members were the ones who suffered from the Defendants' actions.

## ARGUMENT

### I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-*3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law **and** fact. Each action is brought against the Company, as well as certain officers or directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Citi's securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.    IRON WORKERS SHOULD BE APPOINTED LEAD PLAINTIFF

Iron Workers should be appointed Lead Plaintiff because, to its knowledge, it has the largest financial interest in the Related Actions and otherwise satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

6

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Iron Workers satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class. Specifically, Iron Workers, a sophisticated institutional investor willing to serve as Lead Plaintiff, has the largest financial interest in the Related Actions to its knowledge, and otherwise strongly satisfy the requirements of Rule 23.

For all these reasons, as set forth in greater detail below, Iron Workers respectfully urges the Court to appoint it to serve as Lead Plaintiff overseeing the Related Actions.

### A.    Iron Workers Is Willing to Serve as a Class Representative

On October 30, 2020, counsel for plaintiff in the *Sunrise Firefighters* Action caused a notice to be published over *PR Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities fraud class action had been filed against Defendants, and which advised investors in Citi securities that they had until December 29, 2020— *i.e.*, 60 days from the date of the PSLRA Notice—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

Iron Workers has filed the instant motion pursuant to the PSLRA Notice, and has attached a sworn Certification signed on its behalf by Sean Boyle, the Fund Director of Iron Workers, attesting that Iron Workers is willing to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Iron Workers satisfies the first requirement to serve as Lead Plaintiff of the Class.

**B.**      **Iron Workers Has the "Largest Financial Interest" in the Related Actions**

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of its knowledge, Iron Workers has the largest financial interest of any Citi investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, Iron Workers: (1) purchased 139,220 shares of Citi stock; (2) expended $8,845,030 on its purchases of Citi securities; (3) retained 68,542 of its shares of Citi stock; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $1,149,817 under a FIFO analysis, or $954,319 under a LIFO analysis, in connection with its Class Period purchases of Citi securities. *See* Lieberman Decl., Ex. A. To the extent that Iron Workers possesses

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

the largest financial interest in the outcome of this litigation, it is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.   Iron Workers Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.")  Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements.").  Here, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Iron Workers.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to

prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at \*5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Iron Workers' claims are typical of those of the Class.  Iron Workers alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning Citi.  Iron Workers, as did all Class members, purchased Citi securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Citi's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at \*2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Iron Workers has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Related Actions, and submits its choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between Iron Workers' interests and the interests of the Class.  Additionally, Iron Workers has submitted a Certification signed on its behalf by Sean Boyle, the Fund Director of Iron Workers, declaring Iron Workers' commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by Iron Workers demonstrate that it has a sufficient interest in the outcome of this litigation to ensure vigorous adequacy.

Moreover, as noted above, Iron Workers is a sophisticated institutional investor with significant assets under management.  As such, its service as Lead Plaintiff would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").  Indeed, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions such as the Related Actions.  *See, e.g.*, *In re Braskem*, 2015 U.S. Dist. LEXIS 119183, at *14 (appointing as lead plaintiff "an institutional investor, the type of investor Congress prefers as lead plaintiff"); *In re Doral Fin.*, 414 F. Supp. 2d at 403 n. 8 (appointing as lead plaintiff a "large institutional investor . . . precisely the type of plaintiff envisioned under the PSLRA"); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("'[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.'" (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330,

11

332-33 (S.D.N.Y. 2005))); *Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*, 2018 U.S. Dist. LEXIS 41120, at \*17 (S.D.N.Y. Mar. 13, 2018) ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs.").

Iron Workers is, in every respect, exactly the sort of well-managed, sophisticated institutional investor that Congress intended to fulfill the lead plaintiff role created by the PSLRA. Iron Workers provides benefits to both active and retired participants of its joint funds as well as their dependents; annuity, scholarship and vacation benefits; and educational programs for active participants. Additionally, Iron Workers has highly relevant experience serving as a lead plaintiff in other actions under the PSLRA, including in *Gross v. AT&T Inc. et al.*, No. 1:19-cv-02892 (S.D.N.Y.), *Howard v. Arconic Inc. et al.*, No. 2:17-cv-01057 (W.D. Pa.), and *McKenna v. Dick's Sporting Goods, Inc. et al.*, No. 1:17-cv-03680 (S.D.N.Y.).

### D. Iron Workers Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Iron Workers as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Iron Workers to fairly and adequately represent the Class has been discussed above. Iron Workers is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class. Accordingly, Iron Workers should be appointed Lead Plaintiff for the Class.

## III.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Iron Workers has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  *See* Lieberman Decl., Ex. D.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer.  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *See id.*  Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company.  *See id.*

As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Related Actions, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Related

Actions. Thus, the Court may be assured that by approving the selection of counsel by Iron Workers, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Iron Workers respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Iron Workers as Lead Plaintiff for the Class; and (3) approving proposed Lead Plaintiff's selection of Pomerantz as Lead Counsel for the Class.

Dated:  December 29, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Iron Workers Local 580 Joint Funds
and Proposed Lead Counsel for the Class*