| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,<br><br>Defendants. | Case No.: 1:20-cv-09132-AJN<br><br>Honorable Alison J. Nathan |
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,<br><br>Defendants. | Case No.: 1:20-cv-09573-AJN |
| TIMOTHY LIM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,<br><br>Defendants. | Case No. 1:20-cv-10360-UA |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT OF RABI GHOSH AS LEAD PLAINTIFF <u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. STATEMENT OF ISSUES TO BE DECIDED ................................................................ 2

III. FACTUAL BACKGROUND ........................................................................................... 2

IV. ARGUMENT .................................................................................................................... 8

    A. The Related Actions should be consolidated. .................................................................. 8

    B. The Court should appoint Movant as Lead Plaintiff. ....................................................... 9

        i. Movant filed a timely motion. ................................................................................ 10

        ii. Movant has the largest financial interest in the relief sought by the Class. ........... 11

        iii. Movant satisfies the Rule 23 requirements of typicality and adequacy ................. 12

            a) Movant's claims are typical of the claims of the Class. .................................. 12

            b) Movant is an adequate representative for the Class. ....................................... 13

    C. Movant's choice of counsel should be approved. ................................................. 13

V. CONCLUSION ................................................................................................................ 15

Page

**Cases**

*Casper v. Song Jinan*,
  2012 WL 3865267 (S.D.N.Y. Sept. 6, 2012) ........................................................... 14

*Constance Sczesny Tr. v. KPMG LLP*,
  223 F.R.D. 319 (S.D.N.Y. 2004) ........................................................... 8

*Dolan v. Axis Capital Holdings Ltd.*,
  2005 WL 883008 (S.D.N.Y. Apr.13, 2005) ........................................................... 9

*Hom v. Vale, S.A.*,
  2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ........................................................... 11, 12, 13, 14

*In re IMAX Sec. Litig.*,
  2009 WL 1905033 (S.D.N.Y. June 29, 2009) ........................................................... 9

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................... 9

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................... 8, 9

*Pinkowitz v. Elan Corp., PLC*,
  2002 WL 1822118 (S.D.N.Y. July 29, 2002) ........................................................... 8

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014) ........................................................... 8

**Other Authorities**

15 U.S.C. § 78u-4(a)(3)(A) ........................................................... 10, 11

15 U.S.C. § 78u-4(a)(3)(B) ........................................................... passim

15 U.S.C. § 78u-4(e) ........................................................... 11

Fed. R. Civ. P. 23(a) ........................................................... 12, 13

Fed. R. Civ. P. 42(a) ........................................................... 1, 2, 8

## I. PRELIMINARY STATEMENT

Currently pending in this district are three securities class action lawsuits (the "Related Actions") alleging Defendants violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder by the United States Securities Exchange Commission ("SEC").[1] Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court must decide whether to consolidate the Related Actions before selecting a movant to lead this litigation on behalf of the putative class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). As discussed below, consolidation is appropriate under Federal Rule of Civil Procedure 42(a) because the Related Actions involve common legal and factual questions.

After deciding consolidation, the Court must appoint as lead plaintiff the class member it "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i)-(B)(iii). Guiding that determination, the PSLRA creates a presumption that the most adequate plaintiff is the person that "has the largest financial interest" and who "otherwise satisfies the requirements of Rule 23 . . .." *Id.*

Movant Rabi Ghosh ("Movant") believes he has the largest financial interest in the outcome of this litigation because, during the Class Period, he lost at least $577,965 due to the alleged fraud. *See* Declaration of Constantine P. Economides ("Economides Decl."), Exs. A-B.

---

[1] The Related Actions are: (1) *City of Sunrise Firefighters' Pension Fund v. Citigroup Inc. et al.*, No. 1:20-cv-09132 (S.D.N.Y.) ("*Citi I*"), filed on October 30, 2020, on behalf of all investors who purchased or otherwise acquired Citigroup Inc.'s ("Citi" or the "Company") common stock between February 25, 2017 and October 12, 2020, inclusive; (2) *City of Sterling Heights General Employees' Retirement System v. Citigroup Inc. et al.,* No. 1:20-cv-09573 (S.D.N.Y.) ("*Citi II*"), filed on November 13, 2020, on behalf of all purchasers of Citi common stock between January 15, 2016 and October 12, 2020, inclusive; and (3) *Timothy Lim v. Citigroup Inc. et al.*, No. 1:20-cv-10360 (S.D.N.Y.) ("*Citi III*"), filed on December 9, 2020, on behalf of all investors who purchased or otherwise acquired Citi's common stock between February 25, 2017 and October 12, 2020, inclusive. For the purposes of this motion, unless otherwise stated herein, references to ¶ are to the Class Action Complaint for Violations of the Federal Securities Laws filed in *City of Sunrise Firefighters' Pension Fund v. Citigroup Inc. et al.*, No. 1:20-cv-09132, Dkt. No. 1.

Moreover, Movant satisfies the Rule 23 requirements because his claims are typical of the Class's claims, and he will fairly and adequately represent the Class's interests. *See id.* at Ex. C. In addition, Movant's selection of Roche Cyrulnik Freedman, LLP ("RCF") to serve as lead counsel should be approved because the Firm possesses extensive experience and expertise in securities fraud and other class actions. *See id.* at Ex. D. Accordingly, Movant respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Movant as Lead Plaintiff; and (3) approve RCF as Lead Counsel.

## II.  STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Related Actions should be consolidated pursuant to Fed. R. Civ. P. 42(a);

2.  Whether the Court should appoint Movant as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

3.  Whether the Court should approve Movant's selection of RCF as Lead Counsel for the proposed class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## III.  FACTUAL BACKGROUND

Citigroup Inc. ("Citi") is a multinational investment bank and financial services corporation. ¶ 2. Prior to the Class Period, in 2012, Citi entered into a Consent Order (the "2012 Consent Order") with the U.S. Office of the Comptroller of the Currency (the "OCC"). ¶ 19. The 2012 Consent Order cited weaknesses in Citi's internal controls, particularly Anti-Money Laundering ("AML") violations, deficiencies in Citi's compliance program, and failures to file suspicious activity reports. *Id.* The 2012 Consent Order required Citi to remediate those issues, including by improving due diligence processes on foreign correspondent bank customers. *Id.*

Following the 2012 Consent Order, Citi stated "in recent years, we have taken significant steps and developed a comprehensive plan to address legacy AML issues and better manage AML

2

risks comprehensively across products, businesses, and geographies. Because of these actions, many of the issues highlighted in the OCC's Order have already been remediated or are in the process of being remediated. Furthermore, we are developing a plan to address the remaining OCC requirements." ¶ 20.

Citi also assured investors: "We strive to continually operate at the highest standards of conduct in all of our businesses. We are committed to being in compliance with all BSA/AML regulations and expectations . . . . Important progress has been made, and we will continue to work towards having an industry-leading BSA/AML compliance program." ¶ 21.

Throughout the Class Period, Citi continued to assure investors that there were no significant deficiencies or material weakness in the Company's internal controls. ¶ 3. When faced with periodic regulatory penalties for noncompliance, the Company continued to assure investors that the specific deviancies at issue were being remediated promptly and that internal controls and regulatory compliance were a top priority of Citi. *Id.* In particular, Citi assured investors that it satisfied all regulatory requirements and maintained adequate internal controls, data governance, compliance risk management, and enterprise risk management. *Id.*

In reality, during the Class Period and unbeknownst to investors, Citi's internal controls and risk management capabilities suffered from "serious" and "longstanding" inadequacies that exposed Citi to massive regulatory penalties and will cost significantly more than $1 billion to remediate. ¶ 4. Specific control failures about which Citi executives were warned remained unresolved for years and the Company's culture of non-compliance was so widespread that Citi's Chief Executive Officer, Defendant Michael L. Corbat ("Corbat"), exhorted employees in an internal memo that regulatory compliance required more than "checking boxes." *Id.*

*Citi II* and *Citi III* begin the Class Period on January 15, 2016, when the Company issued

a press release announcing its financial results for the quarter and year ended December 31, 2015. *Citi II*, Dkt No. 1, ¶ 20; *Citi III*, Dkt. No. 1, ¶ 22. For the quarter, the Company reported net income of $3.3 billion, or $1.02 per diluted share, on revenues of $18.5 billion. *See id.* Defendant Corbat commented on the results, stating, in relevant part, as follows: "We have made sustainable investments not only in our capital planning process but also in the risk, control and compliance functions, which are critical to maintaining our license to do business. *Id.* We have undoubtedly become a simpler, smaller, safer and stronger institution . . . ." *Id.*

*Citi I* begins the Class Period on February 25, 2017, the first day of trading after Citi filed with the SEC its 2016 Annual Report on Form 10-K. ¶ 22. The 2016 10-K contained certifications by Defendants Corbat and John C. Gerspach that attested to the integrity of the Company's internal controls and veracity of the Annual Report. *Id.* In addition, these Defendants certified that they had disclosed "(a) all significant deficiencies and material weaknesses in the design or operation of internal control … and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting." *Id.*

Throughout the Class Period, Citi issued several public statements and submitted a series of public filings with the SEC, reporting, among other things, the strength of its internal controls, risk management oversight, and compliance. ¶¶ 23-46.

In addition, throughout the Class Period, Citi received multiple regulatory fines and punishments as a result of Defendants' egregious failure to institute and maintain adequate controls and compliance functions. ¶ 48. While these regulatory investigations and censures demonstrated that those at the highest level of the Company were aware of the serious internal controls and risk management issues facing the Company, Defendants never disclosed the magnitude of the

problems. *Id.* At no time during the Class Period, particularly in conjunction with the disclosure of numerous regulatory censures, did Citi disclose the true extent and severity of the control deficiencies that were plaguing the Company and triggered these reprimands. *Id.*

On August 10, 2020, Corbat sent an internal memorandum to the Company, which, at the time, was not disclosed publicly. ¶ 50. In the memo, Corbat wrote "[i]n recent years, we have been working on significant remediation projects to strengthen our controls, infrastructure and governance. While we have made progress, we have work to do to meet the standards that we must hold ourselves to." *Id.* Corbat also noted "execution challenges" the Company had experienced and exhorted employees to "think about infrastructure and controls very differently." *Id.*

The very next day, on August 11, 2020, Citi claimed that it accidentally sent $893 million in principal payments to the creditors of Revlon, Inc., in connection with a loan for which Citi was the administrative agent. ¶ 51. According to Citi's own court filings, submitted when Citi later sought a return of those funds, the overpayment was cause by "issues with the loan processing system." Citi further explained in those filings that "the individual who processed the payment mistakenly did not manually select the correct options and, unfortunately, the manual checks of that selection failed to detect the mistake." *Id.*

Less than a month later, on September 10, 2020, Citi announced in a press release that Corbat would be retiring in February 2021, much earlier than the general expectation that his retirement would come some time in 2022. ¶ 52. In the September 10, 2020 press release, Corbat stated "I am extremely proud of what we have accomplished in the past eight years. We completed our transformation from the financial crisis and emerged a simpler, safer and stronger institution." *Id.* Corbat went on to say, "We have launched significant investments in our infrastructure as part of our push to make strengthening our risk and control environment a strategic priority for the

firm." *Id.*

On September 14, 2020, news broke that federal regulators were preparing to reprimand the Company for failing to improve its risk management systems. ¶ 53. In response to the news, Citi acknowledged that its "risk and control environment" was "not yet where we need to be and that has to change." *Id.* Citi also admitted that its erroneous $900 million payment was an example of the Company's weak "risk and control environment" and was "unacceptable." *Id.*

At an investor conference held that day, Citi highlighted that it would need to spend more than $1 billion in 2020 to fix its internal controls and operational infrastructures and gave guidance that it would continue to build credit reserves in the third quarter. ¶ 54. As a result of these disclosures, Citi's stock declined by $2.85 per share, or 5%, erasing $5.91 billion in shareholder value. *Id.*

Additionally, after the close of the market on September 14, 2020, news organizations published the internal memo from Corbat to Company employees. ¶ 55. The August 10, 2020 memo, urged employees to "think about infrastructure and controls very differently" and insisted that it was "not about getting remediation projects done or checking boxes." *Id.* These disclosures reflecting the lax attitude towards internal controls and regulatory compliance at the Company caused Citi shares to decline by $3.34 per share, erasing an additional $6.93 billion in shareholder value. *Id.*

On October 7, 2020, the anticipated punishment by federal regulators was made public when the OCC issued a $400 million penalty against Citi for failing, over the course of several years, to improve its risk-management systems. ¶ 56. The OCC highlighted Citi's "serious and longstanding deficiencies and unsafe or unsound practices." *Id.* Citi also entered into consent orders with both the OCC and the Federal Reserve requiring a systemic overhaul of the Company's

internal controls, data governance, compliance risk management, and enterprise-wide management. *Id.*

In response, Citi stated it had "redoubled our efforts and have made transforming our risk and control environment a strategic priority … we have accelerated investments and made structural changes. This year alone, we will invest over $1 billion in this area." ¶ 57. Citi went on to state, "[t]he entire management team is committed to achieving operational excellence and best-in-class risk and control environment." *Id.*

On October 13, 2020, Citi reported earnings for the third quarter of 2020. ¶ 58. The Company said its expenses increased by 5%, to $11 billion, in the third quarter, reflecting, among other things, the $400 million fine and investments in infrastructure. *Id.* As a result of these disclosures, the price of Citi stock declined by an additional $2.20 per share, from a close of $45.88 per share on October 12, 2020 to $43.68 on October 13, wiping out an additional $4.57 billion in shareholder value. *Id.*

While Citi has not yet been transparent as to future costs, a report published on October 13, 2020, by an analyst for Deutsche Bank indicated that "it's unclear how much expenses will rise, but the tone on today's earnings call seemed to imply that a lot of spend could be needed to address regulatory issues." ¶ 59. The report went on to say, "[w]e now assume a $3b[illion] increase in related costs in 2022 vs. 2019, with about $1b[illion] already disclosed." *Id.*

Other analysts remarked on Citi's lack of transparency as to future costs. ¶ 60. On October 13, 2020 an analyst for UBS wrote "we think higher costs related to remediating consent orders will continue to impact results in the coming years." *Id.* Additionally, on October 14, 2020, a Piper Sandler analyst warned of "increased uncertainty…given a lack of clarity about the level of investment spending required to improve consent order related to risk controls," and an analyst

from Evercore remarked "while we didn't get much clarity on how to exactly size the impact, [management] was clear in that this is a multi-year transformation that will require incremental spend to improve Citi's risk management, data governance, controls and compliance." (emphasis in original). *Id.*

In total, because of Citi's deception relating to its internal controls and compliance systems, $17.43 billion of shareholder value has evaporated and class members were the ones who suffered from the Defendants' actions. ¶ 61.

## IV.   ARGUMENT

### A.   The Related Actions should be consolidated.

"Consolidation is 'a valuable and important tool of judicial administration' that should be 'invoked to expedite trial and eliminate unnecessary repetition and confusion.'" *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F.Supp.3d 390,394 (S.D.N.Y. 2014) (quoting *Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 130 (2d Cir. 1999)). The Court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a). Absent prejudice to the defendants, "[c]onsolidation of multiple actions alleging securities fraud is appropriate where those actions relate to the same public statements and reports," *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004) (quotations omitted), and "the actions need not be identical to allow for consolidation," *Reitan*, 68 F. Supp. 3d at 394; *Pinkowitz v. Elan Corp., PLC,* 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) ("Neither Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated.") (quotations omitted). "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (entering consolidation order despite different *205

class periods), *reconsidered on other grounds sub nom. In re IMAX Sec. Litig.*, 2009 WL 1905033 (S.D.N.Y. June 29, 2009). Such "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs." *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998) (consolidating cases with different, but overlapping, class periods).

Here, the Related Actions present nearly identical factual and legal issues, allege identical claims against identical defendants, and assert significantly overlapping class periods. *See generally Citi I*, Dkt. No. 1, *Citi II*, Dkt. No. 1, and *Citi III*, Dkt. No. 1. To the extent the class periods overlap, the factual allegations overlap. Even for the non-overlapping period, moreover, all plaintiffs rely on a common pattern in their allegations: that defendants' statements to the investing public misrepresented or omitted to state material facts about the significant deficiencies or material weakness in the Company's internal controls. *See Kaplan*, 240 F.R.D. at 92. Further, the Related Actions share a common legal question: whether defendants' misrepresentations violated federal securities laws. *See id.* In other words, the Related Actions are both "securities fraud claims that arise from a common course of conduct. The dates on which the misrepresentations occurred do not change their nature." *Id.*; *see also Dolan v. Axis Capital Holdings Ltd.,* 2005 WL 883008, at *2 (S.D.N.Y. Apr.13, 2005) (finding consolidation of cases with "similar or overlapping claims" under §§ 10(b) and 20(a) of the Exchange Act, along with Rule 10b–5, appropriate pursuant to Rule 42(a) despite different but "coextensive" class periods). Accordingly, the Related Actions should be consolidated.

**B.      The Court should appoint Movant as Lead Plaintiff.**

Within the first 20 days of filing suit, the PSLRA requires the plaintiff in the first filed class action to publish a notice in a widely circulated national business publication or wire service that advises potential class members the action is pending and that they have a right to move for

lead plaintiff in 60 days. 15 U.S.C. § 78u-4(a)(3)(A).

The Court must consider any motion seeking appointment as lead plaintiff within 90 days of that notice and must appoint the movant that the court determines to be "most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)     has either filed the complaint or made a motion in response to a notice;
>
> (bb)     in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)     otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and possesses, to the best of his knowledge, the largest financial interest in the litigation of any other class member seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against him. Thus, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class. He also satisfies the typicality and adequacy requirements of Rule 23, and, as a result, should be appointed lead plaintiff in the Action.

### i. Movant filed a timely motion.

Within 20 days of the first-filed *Citi I* complaint (*i.e.* on October 30, 2020), Plaintiff City of Sunrise Firefighters' Pension Fund published the required notice through *PR Newswire*, a

widely circulated national business-oriented wire service. 15 U.S.C. § 78u-4(a)(3)(A)(i). *See* Economides Decl., Ex. E. Movant timely filed his motion within the next 60 days, *i.e.,* by December 29, 2020. 15 U.S.C. § 78u-4(a)(3)(A)(i).

### ii.    Movant has the largest financial interest in the relief sought by the Class.

As discussed above, the movant with the largest financial interest in this Action, and who meets Rule 23's adequacy and typicality requirements, is presumptively the lead plaintiff. *Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at \*2 (S.D.N.Y. Mar. 7, 2016). As demonstrated herein, Movant has the largest financial interest in the relief sought by the Class and should therefore be appointed lead plaintiff. *See* Economides Decl., Exs. A-B.

In assessing the largest financial interest, the Court generally considers: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Hom*, 2016 WL 880201, at \*3 (quoting *In re CMED Sec. Litig.,* No. 11-cv-9297 (KBF), 2012 WL 1118302, at \*3 (S.D.N.Y. Apr. 2, 2012) (internal citations omitted)).[2]

During the Class Period, Movant: (1) purchased 206,738 Citi shares; (2) retained 66,093 net shares; (3) expended $12,034,152.14 net funds; and (4) as a result of Defendants' materially false and misleading statements, suffered substantial losses of at least $577,965. Movant, therefore, has a significant financial interest in the outcome of this case. To Movant's knowledge, moreover,

---

[2] "The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has provided instruction on the appropriate method." *Hom*, 2016 WL 880201, at \*3 (quoting *Elstein v. Net1 UEPS Techs., Inc.,* No. 13-cv-9100 (ER), 2014 WL 3687277, at \*6 (S.D.N.Y. July 23, 2014)). Damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, *or* (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and that also satisfy Rule 23.

### iii.    Movant satisfies the Rule 23 requirements of typicality and adequacy.

In addition to demonstrating the largest loss, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Rule 23(a) requires the following four requirements be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a PSLRA case, at this stage of the litigation, "the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met." *Hom*, 2016 WL 880201, at *6 (quoting *Blackmoss Investments, Inc. v. ACA Capital Holdings, Inc.,* 252 F.R.D. 188, 191 (S.D.N.Y. 2008)). As detailed below, Movant satisfies both the typicality and adequacy requirements.

### a)    Movant's claims are typical of the claims of the Class.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. The typicality requirement is satisfied "where the claims arise from the same conduct from which the other class members' claims and injuries arise." *Hom*, 2016 WL 880201, at *6 (quoting *Goldstein v. Puda Coal, Inc.,* 827 F. Supp. 2d 348, 354 (S.D.N.Y. 2011) (internal citations omitted)).

Movant's claims are typical of, if not identical to, the claims of other members of the putative Class. *See id*. Movant, like the other members of the Class, acquired Citi common stock during the Class Period at prices artificially inflated by Defendants' materially false and

misleading statements and was damaged thereby when the truth was revealed. Movant suffered losses similar to those of other Class members, and his losses resulted from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement.

### b) Movant is an adequate representative for the Class.

Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class." The requirement is satisfied if "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Hom*, 2016 WL 880201, at *6 (quoting *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 131 (S.D.N.Y. 2011)).

Movant has met the requirements under Rule 23(a)(4) to fairly and adequately protect the interest of the putative class. *See* Economides Decl., Exes. A-D. Specifically, Movant has retained counsel who, as shown below, is experienced in litigating lawsuits such as the Action; has demonstrated, *supra*, his significant interest in the outcome of the case; and has no reason to believe that his interests are adverse to those of the putative class members. Therefore, Movant is an adequate representative for the Class. *See Hom*, 2016 WL 880201, at *6.

Accordingly, at this stage of the proceedings, Movant has met all requirements for appointment as lead plaintiff. He has timely filed his motion, has sustained the largest amount of losses from Defendants' alleged wrongdoing, and has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23. Thus, Movant is entitled to a presumption that he is the most adequate plaintiff and, as such, should be appointed to lead this Action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)-(II).

### C.     Movant's choice of counsel should be approved.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff

to select and retain lead counsel, subject to the Court's approval. "Although the Court maintains discretion in appointing lead counsel to protect the interests of the class, the statute evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Hom*, 2016 WL 880201, at *7 (quoting *Atwood v. Intercept Pharm., Inc.,* 299 F.R.D. 414, 417 (S.D.N.Y. 2014)); *see e.g. Casper v. Song Jinan*, 2012 WL 3865267, at *3 (S.D.N.Y. Sept. 6, 2012).

The record confirms that Movant's selection of counsel should be approved; RCF is qualified, experienced, and capable of effectively prosecuting this Action on behalf of Movant and the Class. *See* Economides Decl., Exes. C-D.

Most recently, RCF was appointed, and is serving as, Lead Counsel in the securities fraud class actions *Burnham v. Qutoutiao Inc. et al.*, No. 1:20-cv-06707 (S.D.N.Y.); *Chapman v. Fennec Pharma Inc. et al.*, No. 1:20-cv-812 (M.D.N.C.); and *Garcia v. J2 Global, Inc. et al.*, No. 2:20-cv-06096 (C.D. Cal.). RCF has also been appointed, and is serving, as Co-Lead Counsel in the following securities fraud class action cases across the country, including in this District: *Lowry v. RTI Surgical Holdings, Inc. et al.,* No. 1:20-cv-01939 (N.D. Ill.); *Hartel v. Geo Group, Inc. et al.,* No. 9:20-cv-81063 (S.D. Fla.); *Clifford et al. v. Tron Found. et al.,* No. 1:20-cv-02804 (S.D.N.Y.); *Clifford v. Bibox et al.,* No. 1:20-cv-02807 (S.D.N.Y.); *Zhang v. Civic Techs., Inc. et al.,* No. 1:20-cv-02811 (S.D.N.Y.); *Clifford v. Status Research and Development GmbH et al.,* No. 1:20-cv-02815 (S.D.N.Y.); *Williams et al. v. HDR Global Trading Ltd et al.,* No. 1:20-cv-02805 (S.D.N.Y.); *Clifford v. KayDex Pte. Ltd. et al.* No. 1:20-cv-02812 (SDNY); *Zhang v. BProtocol Found., et al.,* No. 1:20-cv-02810 (S.D.N.Y.); *Lee et al. v. Binance et al.*, No. 1:20-cv-02803 (S.D.N.Y.); *Williams v. Quantstamp, Inc. et al.*, No. 1:20-cv-02813 (S.D.N.Y.); and *Williams v. KuCoin et al.*, No. 1:20-cv-02806 (S.D.N.Y.). Additionally, RCF has been appointed, and is

serving, as Co-Lead Counsel in *Leibowitz v. Ifinex Inc.*, No. 1:19-cv-09236-KPF (S.D.N.Y.), an antitrust, market manipulation, and RICO class action.

Moreover, RCF's attorneys have decades of experience in complex litigation, including securities litigation and class actions on behalf of plaintiffs and defendants. *See* Economides Decl., Ex. D. The firm's attorneys have previously been appointed as co-lead counsel in securities class actions, including *Kipling v. Flex Ltd., et al.*, No. 18-CV-02706-LHK, ECF No. 21 (N.D. Cal.), and consumer class actions, including *In re Google Plus Profile Litigation*, No. 5:18-cv-06164-EJD (N.D. Cal.), ECF No. 44, and *In re First American Financial Corporation Cases*, No. 8:19-cv-01105, ECF No. 34 (C.D. Cal.). *See id*. In addition, the firm's attorneys have clerked for federal judges sitting in the Southern District of New York, Eastern District of New York, Eastern District of Pennsylvania, Eastern District of Louisiana, Southern District of Florida, Second Circuit, Fourth Circuit, Fifth Circuit, Ninth Circuit, and United States Supreme Court. *See id.* Movant respectfully submits that this wealth of experience and qualifications demonstrates RCF's ability to provide the highest caliber of representation to the Class.

## V. CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Movant as Lead Plaintiff; (3) approve Movant's selection of RCF as Lead Counsel for the putative class; and (4) grant such other relief as the Court may deem just and proper.

DATED: December 29, 2020    Respectfully Submitted,

           **ROCHE CYRULNIK FREEDMAN LLP**

           */s/ Constantine P. Economides*
           Constantine P. Economides
           Velvel (Devin) Freedman (*pro hac forthcoming*)
           Ivy T. Ngo (*pro hac forthcoming*)

200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 971-5943
Email: ceconomides@rcfllp.com
Email: vel@rcfllp.com
Email: ingo@rcfllp.com

Kyle Roche
Jason Cyrulnik
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Email: kyle@rcfllp.com
Email: jcyrulnik@rcfllp.com

*Counsel for Lead Plaintiff Movant Rabi Ghosh and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac forthcoming*)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Movant Rabi Ghosh*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 29, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Constantine P. Economides
Constantine P. Economides