**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, <br><br> Defendants. | Civil Action No. 1:20-cv-09132 <br><br> CLASS ACTION <br><br> **ORAL ARGUMENT REQUESTED** |
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH and MARK A.L. MASON <br><br> Defendants. | Civil Action No. 1:20-cv-09573 <br><br> CLASS ACTION |

*(caption continues on following page)*

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PUBLIC SECTOR PENSION INVESTMENT BOARD FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**

|  |  |
|---|---|
| TIMOTHY LIM, individually and on behalf of all others similarly situated, | )<br>)<br>) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, | )<br>)<br>) |
|  | ) |
| Defendants. | ) |

Civil Action No. 1:20-cv-10360

CLASS ACTION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT ............................................................................................................................... 6

    A.    PSP Should Be Appointed Lead Plaintiff .......................................................... 6

        1.    PSP Satisfied The PSLRA's Procedural Requirements ...........................................6

        2.    PSP Believes That It Has The Largest Financial Interest In The Relief Sought By The Class ...........................................................................................................7

        3.    PSP Satisfies The Relevant Requirements Of Rule 23 ...........................................8

    B.    PSP Selected Well-Qualified Counsel To Represent The Class ...................................... 9

    C.    Consolidation Of All Related Actions Is Warranted ...................................................... 10

CONCLUSION ........................................................................................................................... 11

i

# TABLE OF AUTHORITIES

## Cases

*Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ....................................... 10

*Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005) ............................................................... 7

*In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286 (E.D.N.Y. 1998) ................................................ 7

*In re Sepracor Inc. Sec. Litig.*, 233 F.R.D. 52 (D. Mass. 2005) .................................................... 7

*Kaplan v. Gelfond*, 240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................... 11

*Lax v. First Merchants Acceptance Corp.*,
    1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............................................................................. 7

*Lopez v. CTPartners Executive Search Inc.*,
    2015 WL 2431484 (S.D.N.Y. May 18, 2015) ........................................................................... 9

*Stitt v. On Deck Capital, Inc.*, 2016 WL 889535 (S.D.N.Y. Feb. 17, 2016) .................................. 8

*Taylor v. Barnes & Noble, Inc.*, 2014 WL 12769396 (S.D.N.Y. July 16, 2014) ......................... 11

*Villella v. Chemical & Mining Co. of Chile Inc.*,
    2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015) ........................................................................... 1

## Statutes

15 U.S.C. § 78u .................................................................................................................... passim

15 U.S.C. §§ 78j ............................................................................................................................. 1

17 C.F.R. § 240 .............................................................................................................................. 1

## Other Authorities

1995 U.S.C.C.A.N. 730 (1995) ...................................................................................................... 9

H.R. Conf. Rep. No. 104-369 (1995) ......................................................................................... 2, 9

S. Rep. No. 104-98 (1995) ............................................................................................................. 2

## Rules

Fed. Civ. R. P. 23 ..................................................................................................................... 2, 6, 8

Fed. Civ. R. P. 42 .................................................................................................................... 1, 11

Public Sector Pension Investment Board ("PSP") respectfully submits this memorandum of law in support of its motion (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of its selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class; (3) for consolidation of all related securities class actions pursuant to Federal Rule of Civil Procedure 42(a); and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above captioned related securities class actions allege that Citigroup Inc. ("Citigroup" or the "Company") and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the actions allege that from January 15, 2016 through October 12, 2020, inclusive (the "Class Period"), Defendants misrepresented and concealed that Citigroup's internal controls and risk management systems suffered from serious and longstanding deficiencies that exposed the Company to massive regulatory penalties and that will cost significantly more than $1 billion to remediate.[1]

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(B)(i). In that regard, the Court is to determine which

---

[1] While the related actions allege different class periods, for the purposes of appointing Lead Plaintiff, the broadest potential period governs. Here, that period is January 15, 2016 through October 12, 2020, inclusive as alleged in *City of Sterling Heights General Employees' Retirement System v. Citigroup Inc.*, No. 20-cv-9573 (S.D.N.Y.) and *Lim v. Citigroup Inc.*, No. 20-cv-10360 (S.D.N.Y.). *See Villella v. Chemical & Mining Co. of Chile Inc.*, 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14, 2015) ("The Court will use the longest-noticed class period . . . as it encompasses more [] class members").

movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Federal Rule of Civil Procedure 23(a).  15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, PSP believes it is the "most adequate plaintiff" by virtue of, among other things, the approximately $14.0 million in losses as calculated under a last-in, first-out ("LIFO") basis and $12.7 million in losses as calculated under a first-in, first-out ("FIFO") basis that it incurred on its investments in Citigroup stock during the Class Period.  PSP also satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the Class, and it will fairly and adequately represent the Class.

Indeed, PSP is more than adequate.  It is one of the largest institutional investors in Canada and is precisely the type of investor that Congress intended to lead securities class actions.  *See* H.R. Conf. Rep. No. 104-369 at *34 (1995); S. Rep. No. 104-98 at *6 (1995).  As a sophisticated institution, PSP has significant experience serving in a fiduciary capacity, supervising the work of outside counsel, and can leverage its resources to help maximize the recovery for the Class. Further, PSP fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to take on the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this case.  *See* Declaration of Javier Bleichmar ("Bleichmar Decl."), Ex. A.

Finally, PSP has selected BFA, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, PSP respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

**FACTUAL BACKGROUND**

Citigroup is a global financial services holding company.  ¶4.[2]  The Company has a long history of regulatory violations and settlements relating to its banking and trading practices.  ¶13. These settlements, which have been memorialized in consent orders with regulatory authorities, have, in general, required that Citigroup and its subsidiary banks improve their compliance, risk management, internal controls and due diligence.  *Id.*

In 2012, the Office of the Comptroller of the Currency ("OCC") instituted a consent order against Citibank N.A. ("Citibank"), a banking subsidiary of Citigroup, for violating anti-money laundering regulations and failing to maintain adequate internal controls and risk management procedures.  ¶14.  The Federal Reserve issued a similar consent order against Citigroup in 2013. ¶15.  In 2014, the OCC issued another consent order against Citibank relating to unsound practices in its foreign exchange trading business.  ¶16.  The Federal Reserve again instituted a similar consent order against Citigroup in 2015 finding that the Company lacked firm-wide risk governance, risk management and compliance policies and procedures to ensure safe and sound banking practices.  ¶17.

Following these regulatory actions, Defendants falsely told investors throughout the Class Period that Citigroup was in full compliance with its obligations under the consent orders and maintained effective risk management and internal controls.  ¶18.  Defendants assured investors that they placed paramount importance on Citigroup's risk management, controls and compliance systems, policies and practices, purportedly investing heavily and sustainably to ensure their

---

[2] All citations to ¶__ refer to the complaint filed in *City of Sterling Heights*, unless otherwise indicated.

3

effective functioning, and that the Company had put in place the infrastructure, processes and procedures necessary to address its regulatory shortcomings.  *Id*.

In truth, Citigroup failed to take the steps necessary to bring its risk management and compliance practices in-line with regulatory standards or its obligations under the consent orders. ¶19.  Investors learned the truth in a series of disclosures beginning on August 13, 2020.  ¶¶43-64. On that day, *The Wall Street Journal* reported that Citigroup had improperly paid $900 million to certain lenders of Revlon Inc. as a result of an "operational error," causing the price of Citigroup stock to decline from $53.35 per share on August 12, 2020 to $52.89 per share on August 13, 2020. ¶44.   Soon thereafter, on September 10, 2020, Citigroup's CEO, Defendant Corbat, stated he would resign effective February 2021.  ¶51.  Subsequently, Wells Fargo issued an analyst report noting the "unusual" and "unexpected" timing of the announcement.  *Id*.

On September 14, 2020, *The Wall Street Journal* reported that the OCC and Federal Reserve were preparing to sanction Citigroup in the form of yet another consent order for failing to sufficiently improve its risk management, and that the regulators' actions were the driving force behind Corbat's unexpected resignation.  ¶53.  In fact, *The Wall Street Journal* reported that "[f]or years, regulators have privately pressed Citigroup and Mr. Corbat to fix the bank's risk systems . . . [and] faulted Citi's management for not giving priority to the risk-management overhaul."  *Id*. On this news, the price of Citigroup stock declined from a close of $51.00 per share on September 11, 2020 to a close of $48.15 per share on September 14, 2020 (the next trading day).  ¶85 [sic].

The next day, on September 15, 2020, *Business Insider* published an article further explaining how the Federal Reserve and OCC engaged in a years-long effort to push Citigroup to fix its risk controls and that entering 2020, Citigroup had numerous outstanding compliance and technology-related issues that had been outlined in regulatory notices known as "Matters

4

Requiring Attention and Matters Requiring Immediate Attention," many of which were "long past due."  ¶55.  *Business Insider* further reported that regulators were "annoyed with Citigroup's noncompliance across numerous issues and felt as if they weren't being heard." *Id*.  This disclosure caused the price of the Company's stock to decline from a close of $48.15 per share on September 14, 2020 to a close of $44.81 per share on September 15, 2020.  ¶57.

On October 7, 2020, the OCC announced the entry of a consent order and $400 million civil penalty against Citigroup and its subsidiary Citibank, finding, among other things, that "[f]or several years, the Bank has failed to implement and maintain an enterprise wide risk management and compliance program, internal controls, or a data governance program" and that "the Bank was in noncompliance . . . and engaged in unsafe or unsound practices that were part of a pattern of misconduct" that "have contributed to violations of laws and regulations."  ¶59.  The Federal Reserve likewise issued a similar cease and desist order to Citigroup on October 7.  ¶60.

Then, on October 13, 2020, Citigroup announced its financial results for the third quarter of 2020 and belatedly admitted that the Company had not moved quickly enough to address its risk management and internal control deficiencies.  ¶62.  Defendants further admitted that ameliorating the issues would not be "quick" or "easy," and that the ultimate costs to implement the required remedies were still unknown, although the amount will be significant. *Id*.  Citigroup further revealed that the $400 million fine negatively impacted the Company's quarterly earnings by $0.19 per share. *Id*.  On this news, the price of Citigroup stock declined from a close of $45.88 per share on October 12, 2020 to a close of $43.68 per share on October 13, 2020.  ¶63.

## ARGUMENT

### A.    PSP Should Be Appointed Lead Plaintiff

PSP respectfully submits that the Court should appoint it Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, PSP believes that it is the presumptively "most adequate plaintiff" because it: (1) complied with the PSLRA's procedural requirements; (2) believes it asserts the largest financial interest in the relief sought by the Class; and (3) satisfies Rule 23's typicality and adequacy requirements.

### 1.    PSP Satisfied The PSLRA's Procedural Requirements

Under the PSLRA, any class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. §§ 78u-4(a)(3)(A).  On October 30, 2020, Plaintiff City of Sunrise Firefighters' Pension Fund ("City of Sunrise") filed the first of the related actions and alleged that Defendants defrauded investors during the period of February 25, 2017 through October 12, 2020, inclusive.  *See City of Sunrise,* ECF No. 1 at ¶1.  On the same day, counsel for City of Sunrise published a notice on *PRNewswire* which alerted investors to the pendency of the action and informed investors of the December 29, 2020 deadline to seek Lead Plaintiff status.  *See* Bleichmar Decl. Ex. B.

On November 13, 2020, Plaintiff City of Sterling Heights General Employees' Retirement System ("City of Sterling Heights") filed a substantially similar action against Defendants which asserts a broader class period of January 15, 2016 through October 12, 2020, inclusive.  *See City*

*of Sterling Heights*, ECF No. 1 at ¶1.  On the same day, counsel for City of Sterling Heights published a notice on *Business Wire* which informed investors of the updated class period and reminded them of the December 29, 2020 Lead Plaintiff deadline.  *See* Bleichmar Decl. Ex. C.[3] Accordingly, PSP satisfies the PSLRA's 60-day requirement through the filing of this motion.

### 2.   PSP Believes That It Has The Largest Financial Interest In The Relief Sought By The Class

PSP believes that it has the "largest financial interest in the relief sought by the Class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  PSP incurred losses of $14.0 million (LIFO) / $12.7 million (FIFO) from its Class Period investments in Citigroup stock.[4]  While PSP experienced some gains on its Class Period investments in Citigroup bonds and options, those gains do not negate the losses PSP incurred on Citigroup stock.  *See In re Sepracor Inc. Sec. Litig.*, 233 F.R.D. 52, 54 (D. Mass. 2005) (declining to aggregate losses and gains across different types of securities).

To the best of PSP's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.  Accordingly, PSP believes that it

---

[3] On December 9, 2020, Plaintiff Timothy Lim filed a substantially similar action against Defendants asserting the same class period alleged in *City of Sterling Heights*; January 15, 2016 through October 12, 2020, inclusive.  *See Lim*, ECF No. 1 at ¶1.

[4] PSP's PSLRA-required Certification is attached as Exhibit A to the Bleichmar Decl.  A chart setting forth the calculation of PSP's financial interest is attached as Exhibit D to the Bleichmar Decl.  Courts generally consider four factors when assessing financial interest: (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered.  *See Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998). Courts may also consider a movant's recoverable losses as assessed under the Supreme Court's ruling in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005).  PSP's motion, PSLRA certification, and loss calculation provide all the trading information necessary to calculate its financial interest under all possible metrics and does not presuppose that there is only one valid methodology, but rather that different metrics may be useful in different circumstances to properly compare the financial interests of competing movants.

7

has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3.    PSP Satisfies The Relevant Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, PSP satisfies the requirements of Rule 23.  *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, the movant must make only "a preliminary showing" that the movant satisfies the adequacy and typicality requirements of Rule 23(a).  *Stitt v. On Deck Capital, Inc.*, 2016 WL 889535, at *2 (S.D.N.Y. Feb. 17, 2016) (citation omitted).  PSP clearly satisfies both requirements.

PSP's claims are typical of the claims of other purchasers of Citigroup securities. Typicality is satisfied when each class member's claims "arise from the same course of events, and the other class members make similar legal arguments to prove liability."  *Id.*  Here, PSP's and all other class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical.  Like all other class members, PSP: (1) purchased Citigroup securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was damaged as a result.  *Id.* at *2-3 (typicality satisfied when movant "claims that [defendant] issued false and misleading statements that caused the company's shares to trade at an inflated price [and] claims arise from the same course of conduct affecting each member of the proposed class").  As such, PSP is typical of the class it seeks to represent.

PSP likewise satisfies the adequacy requirement of Rule 23.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A Lead Plaintiff must not have interests that are antagonistic to the class the movant

8

seeks to represent, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel that is capable and qualified to vigorously represent the interests of the Class. *See Lopez v. CTPartners Executive Search Inc.*, 2015 WL 2431484, at \*2 (S.D.N.Y. May 18, 2015). PSP satisfies these elements because it has a substantial financial stake in the litigation which provides the ability and incentive to vigorously represent the class' claims. PSP's interests are aligned with those of the other class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between PSP and other class members. Further, PSP has significant experience serving in a fiduciary capacity and in supervising the work of outside counsel and is a sophisticated institutional investor that can commit substantial resources to this litigation.

Indeed, PSP—with approximately C\$169.8 billion in net assets as of March 31, 2020—is precisely the type of large and sophisticated institutional investor that Congress encouraged to act as Lead Plaintiff in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at \*34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Further, PSP has demonstrated its adequacy through its selection of BFA as Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

### B.    PSP Selected Well-Qualified Counsel To Represent The Class

Under the PSLRA, the Lead Plaintiff is given the right, "subject to the approval of the court," to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to

9

counsel selection." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at *4 (S.D.N.Y. Apr. 4, 2018) (citation omitted). Here, PSP selected BFA to serve as proposed Lead Counsel for the Class.

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead counsel on behalf of dozens of institutional investors and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. The firm's recent matters include a $234 million recovery in *In re MF Global Holdings Sec. Litig.*, 1:11-cv-07866-VM (S.D.N.Y.); a $219 million recovery in *In re Genworth Financial Inc. Sec. Litig.*, 3:14-cv-00682-JAG (E.D. Va.), the largest securities class action recovery ever achieved in the Eastern District of Virginia; and a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 1:12-cv-02121-LAK (S.D.N.Y.). Currently, BFA is serving as Lead Counsel in the securities class actions concerning Granite Construction Inc., Teva Pharmaceutical Industries Ltd., and Endo International PLC, which courts sustained over defendants' motions to dismiss and are proceeding through discovery. *See The Police Retirement System of St. Louis v. Granite Construction Inc.*, 3:19-cv-4744-WHA (N.D. Cal.); *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, 3:17-cv-558-SRU (D. Conn.); *Pelletier v. Endo Int'l Plc*, 17-cv-5114-MMB (E.D. Pa.). Thus, the Court can be assured that by appointing BFA as Lead Counsel, the Class will receive the highest caliber of legal representation. *See* Bleichmar Decl., Ex. E (BFA firm resume).

### C.     Consolidation Of All Related Actions Is Warranted

There are three related actions pending in this District against Defendants:

| Case | Civil No. | Date Filed |
|---|---|---|
| *City of Sunrise Firefighters' Pension Fund v. Citigroup Inc.* | 1:20-cv-09132 | October 30, 2020 |
| *City of Sterling Heights General Employees' Retirement System v. Citigroup Inc.* | 1:20-cv-09573 | November 13, 2020 |
| *Lim v. Citigroup Inc.* | 1:20-cv-10360 | December 9, 2020 |

These actions present substantially similar factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, against the same defendants, relating to substantially similar periods of time, and are premised on similar types of misstatements regarding Citigroup's alleged longstanding inadequate risk controls and risk management capabilities.  Rule 42(a) grants broad discretion to consolidate cases that involve common questions of law or fact, as here.  *See Taylor v. Barnes & Noble, Inc.*, 2014 WL 12769396, at *2-4 (S.D.N.Y. July 16, 2014).  While *City of Sunrise* starts the class period on a different day than *City of Sterling Heights* and *Lim*, this difference does not render consolidation inappropriate because such "differences do not outweigh the interests of judicial economy served by consolidation."  *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Despite the different start dates for the class period, we believe that consolidation is appropriate here").

## CONCLUSION

For the reasons discussed above, PSP respectfully requests that the Court:  (1) appoint it to serve as Lead Plaintiff; (2) approve its selection of BFA as Lead Counsel for the Class; (3) consolidate all related actions pursuant to Rule 42(a); and (4) grant any such further relief as the Court may deem just and proper.

11

Dated:  December 29, 2020

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Joseph A. Fonti
Erin H. Woods
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com
jfonti@bfalaw.com
ewoods@bfalaw.com

*Counsel for Proposed Lead Plaintiff PSP and*
*Proposed Lead Counsel for the Class*

12