**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-9132-AJN |
| | <u>CLASS ACTION</u> |
| Plaintiff, | |
| v. | |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

*Captions continued on next page.*


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF KBC ASSET MANAGEMENT NV AND PEMBROKE PINES FIREFIGHTERS & POLICE OFFICERS PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS, <u>AND IN OPPOSITION TO THE COMPETING MOTIONS</u>**

| | |
|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:20-cv-9573-AJN |
| | CLASS ACTION |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH and MARK A. L. MASON, | |
| Defendants. | |
| TIMOTHY LIM, Individually and on behalf of all others similarly situated, | Case No. 1:20-cv-10360-AJN |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, | JURY TRIAL DEMANDED |
| Defendants. | |

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ....................................................................................... 1

II.  ARGUMENT............................................................................................................... 4

    A.  KBC and Pembroke Pines Should Be Appointed Lead Plaintiff............................ 4

        1.  KBC and Pembroke Pines Have the Largest Financial Interest ................ 5

        2.  KBC and Pembroke Pines Satisfy Rule 23's Typicality and Adequacy Requirements .................................................................. 10

    B.  KBC and Pembroke Pines' Selection of Lead Counsel Should Be Approved................................................................................................ 12

    C.  The Competing Motions Should Be Denied.......................................................... 13

    D.  PSP Should Be Disqualified Due To Its Overstated Loss Calculation................. 13

    E.  The Related Actions Should Be Consolidated....................................................... 14

III.  CONCLUSION............................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Bausch & Lomb Inc. Sec. Litig.*,
244 F.R.D. 169 (W.D.N.Y. 2007), *opinion modified on denial of
reconsideration*, 2007 WL 3197318 (W.D.N.Y. Oct. 26, 2007) ............................................13

*Bo Young Cha v. Kinross Gold Corp.*,
2012 WL 2025850 (S.D.N.Y. May 31, 2012) ..................................................................2, 5

*Bodri v. Gopro, Inc.*,
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ......................................................................9

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ...................................................................6, 7

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ...............................................................................................6, 7

*Faig v. Bioscrip, Inc.*,
2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) .............................................................3, 12, 13

*Ford v. Voxx Int'l Corp.*,
2015 WL 4393798 (E.D.N.Y. July 16, 2015)......................................................................12

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ........................................................................6

*Lucas v. United States Oil Fund, LP*,
2020 WL 5549719 (S.D.N.Y. Sept. 16, 2020).....................................................................5, 8

*Maliarov v. Eros International PLC*,
2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016).......................................................................7, 9

*Omdahl v. Farfetch Ltd.*,
2020 WL 3072291 (S.D.N.Y. June 10, 2020) ............................................................... *passim*

*Owens v. FirstEnergy Corp.*,
2020 WL 6873421 (S.D. Ohio Nov. 23, 2020)......................................................................7

*Peters v. Jinkosolar Holding Co.*,
2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ........................................................................8

*Plaut v. The Goldman Sachs Grp., Inc.*,
2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)......................................................................14

*Reimer v. Ambac Fin. Grp., Inc.*,
   2008 WL 2073931 (S.D.N.Y. May 9, 2008) ..............................................................11

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) .............................................................................5, 6

*In re Sepracor Inc. Securities Litigation*,
   233 F.R.D. 52 (D. Mass. 2005).................................................................................14

*In re Sequans Commc'ns S.A. Sec. Litig.*,
   289 F. Supp. 3d 416 (E.D.N.Y. 2018) .......................................................................8

*Shenwick v. Twitter, Inc.*,
   2016 WL 10672428 (N.D. Cal. Dec. 22, 2016) .......................................................13

*Springer v. Code Rebel Corp.*,
   2017 WL 838197 (S.D.N.Y. Mar. 2, 2017) .............................................................1, 4

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) .......................................................................14

*In re Vivendi Universal, S.A. Sec. Litig.*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009)......................................................................11

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
   2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) .............................................................5, 8

**STATUTES**

15 U.S.C. § 78c(a)(10)..................................................................................................14

15 U.S.C. § 78u-4(a) ............................................................................................. *passim*

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)................3, 12

iii

KBC and Pembroke Pines respectfully submit this memorandum of law in further support of their motion for entry of an order: (1) appointing KBC and Pembroke Pines as Lead Plaintiff; (2) approving their selection of Motley Rice and Bernstein Litowitz as Lead Counsel; (3) consolidating the Related Actions pursuant to Rule 42(a); and (4) granting such other and further relief as the Court may deem just and proper. ECF No. 25 (the "Motion").[1]

## I.    PRELIMINARY STATEMENT

On December 29, 2020, KBC and Pembroke Pines filed a timely motion under the PSLRA seeking appointment as Lead Plaintiff. In addition to KBC and Pembroke Pines' Motion, motions seeking appointment as Lead Plaintiff were also filed by: (1) Public Sector Pension Investment Board ("PSP") (ECF No. 37); (2) Construction Laborers Pension Trust for Southern California (ECF No. 31); (3) Iron Workers Local 580 Joint Funds (ECF No. 21); (4) Rabi Ghosh (ECF No. 26); and (5) Dale Townsend and John Corso ("Townsend and Corso") (ECF No. 18).[2]

A straightforward application of the PSLRA presumes that the "most adequate plaintiff"— the plaintiff entitled to appointment as lead plaintiff—is the movant asserting the largest financial interest that also makes a *prima facie* showing of typicality and adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Springer v. Code Rebel Corp.*, 2017 WL 838197, at *1 (S.D.N.Y. Mar. 2, 2017) (Nathan, J.) (discussing lead plaintiff selection process under the PSLRA). Here, KBC and Pembroke Pines are the presumptive Lead Plaintiff under the analysis required by the PSLRA.

As detailed below, KBC and Pembroke Pines indisputably have the "largest financial interest" in this litigation, based on the losses incurred on investments in Citigroup securities.

---

[1] All capitalized terms are defined in KBC and Pembroke Pines' opening brief, unless otherwise indicated. *See* ECF No. 28. All citations are omitted and emphasis added unless noted.

[2] The competing movants all agree that consolidation of the Related Actions is appropriate. *See* ECF Nos. 18, 21, 26, 31, 37.

1

Courts in this District, including this Court, routinely hold that loss is the most important metric used to assess financial interest at this stage of the litigation.  *See, e.g.*, *Omdahl v. Farfetch Ltd.*, 2020 WL 3072291, at *2 (S.D.N.Y. June 10, 2020) (Nathan, J.).  That is particularly true when, as here, the case involves numerous Citigroup securities and the three filed complaints identify multiple—and varying—disclosures of the alleged fraud.  Specifically, KBC and Pembroke Pines, with losses of over ***$28 million*** on a LIFO basis, suffered losses that are more than ***two and a half times*** the size of the movant claiming the next largest loss and ***nearly double all of the other movants' losses combined***:[3]

| Movant | Total LIFO Losses |
|---|---|
| KBC and Pembroke Pines | $28,734,173 |
| PSP | $10,782,305 |
| Construction Laborers Pension Trust for Southern California | $2,789,185 |
| Iron Workers Local 580 Joint Funds | $954,319 |
| Rabi Ghosh | $577,965 |
| Townsend and Corso[4] | $108,342 |

---

[3] LIFO is the preferred and most widely accepted methodology for calculating movants' losses. *See Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (observing that "the overwhelming trend . . . nationwide has been to use LIFO").  The movants' LIFO losses are taken from their respective filings.  *See* ECF Nos. 20-3, 24-1, 30-2, 34-2, 35-3, and 40-4.  The fact that the movants specifically address their LIFO losses further demonstrates that LIFO is the appropriate methodology for calculating losses. *See, e.g.*, ECF No. 39 at 7 ("PSP incurred losses of $14.0 million (LIFO) / $12.7 million (FIFO) from its Class Period investments in Citigroup stock.").  While FIFO is not widely utilized by courts in this District to calculate lead plaintiff movants' losses, KBC and Pembroke Pines also assert the largest FIFO loss of $23,779,927.  *See* Exhibit A to the Declaration of Hannah Ross in Further Support of the Motion of KBC Asset Management NV and Pembroke Pines Firefighters & Police Officers Pension Fund for Appointment as Lead Plaintiff, Approval of Their Selection of Lead Counsel, and Consolidation of Related Actions, and in Opposition to the Competing Motions ("Ross Decl.").

[4] Rather than challenge the fact that KBC and Pembroke Pines have the largest financial interest of any movant and are otherwise adequate and typical, Townsend and Corso have withdrawn their motion (*see* ECF No. 43), and movants Rabi Ghosh and Construction Laborers Pension Trust for Southern California do not oppose KBC and Pembroke Pines' Motion (*see* ECF Nos. 45-46).

2

Not only did PSP assert a significantly smaller loss than KBC and Pembroke Pines, but it also overstated its purported loss by failing to account for the fact that it profited by more than $3.1 million on investments in Citigroup bonds and stock options during the Class Period.  This failure to properly offset its gains in securities that are plainly covered by the putative Class definition is itself disqualifying.

In addition to asserting the largest financial interest, KBC and Pembroke Pines are also perfectly situated to represent all Class members and readily satisfy the typicality and adequacy requirements of Rule 23.  As set forth in their initial Motion and supporting papers, KBC and Pembroke Pines are a proper group of two sophisticated institutions, both of which fully understand the lead plaintiff's obligations under the PSLRA and have affirmed their commitment to achieving the best possible result for the Class.  *See* ECF No. 28 at 9-12; ECF No. 34-3 ¶¶ 2-5, 16.  Moreover, KBC and Pembroke Pines have submitted a detailed joint declaration demonstrating that as sophisticated institutional investors—collectively responsible for overseeing more than $100 billion in assets—they have the resources, knowledge, motivation, and prior lead plaintiff experience to work cohesively as a group, adequately oversee counsel, and ensure that the Class's claims are vigorously and efficiently prosecuted, making them the prototypical lead plaintiff envisioned by Congress when it enacted the PSLRA.  *See generally* ECF No. 34-3; *see also* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Faig v. Bioscrip, Inc.*, 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013) (Nathan, J.) (finding that movant's status as institutional investor "weigh[s] in favor" of adequacy).  Indeed,

3

one of the chosen counsel for KBC and Pembroke Pines filed the first action against Citigroup on behalf of a member of the putative Class, thus preserving these important claims.

Because there is no "proof" to rebut KBC and Pembroke Pines' presumptive status as the most adequate plaintiff under the PSLRA, KBC and Pembroke Pines are entitled to appointment as Lead Plaintiff and the competing motions must be denied. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Springer*, 2017 WL 838197, at *1 ("This presumption may only be rebutted by proof that the purportedly most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'").

Accordingly, KBC and Pembroke Pines respectfully request that this Court grant their Motion in its entirety and deny the competing motions.

## II.   ARGUMENT

### A.  KBC and Pembroke Pines Should Be Appointed Lead Plaintiff

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Omdahl*, 2020 WL 3072291, at *2 (discussing the PSLRA's process for selecting a lead plaintiff).  The movant that has the largest financial interest "must only make a preliminary showing that the adequacy and typicality requirements have been met." *Id.* at *3.  The process is sequential and the Court must appoint the presumptively "most adequate plaintiff" unless a competing movant can provide "proof" that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Because KBC and Pembroke Pines are the presumptive

most adequate plaintiff and no "proof" has rebutted that presumption, KBC and Pembroke Pines are entitled to appointment as Lead Plaintiff.

### 1. KBC and Pembroke Pines Have the Largest Financial Interest

In determining whether a movant has the largest financial interest in the litigation, courts in this Circuit, including this Court, and across the country routinely look to the movants' asserted losses. *See, e.g.*, *Omdahl*, 2020 WL 3072291, at *2 (noting that in determining which plaintiff has the largest financial interest, "financial loss[ ]is the most important [factor]"); *Bo Young Cha*, 2012 WL 2025850, at *2 ("Of the [four '*Lax*' factors], courts have consistently held that the fourth factor, the magnitude of the loss suffered, is the most significant.") (collecting cases); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest.").

Courts have found loss to be especially compelling over other metrics of financial interest in cases where, as here, one movant asserted a loss that was substantially larger than the next-largest asserted loss. *See, e.g.*, *Lucas v. United States Oil Fund, LP*, 2020 WL 5549719, at *3 (S.D.N.Y. Sept. 16, 2020) (appointing movant that incurred a loss more than double that of the competing movant); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) (appointing movant that incurred a loss that was the largest by a significant amount). Similarly, courts have recognized that loss is the most illuminating metric where, as here, the case involves multiple partial corrective disclosures reaching investors on a periodic basis.[5] *See, e.g.*, *Weiss*, 2006 WL 197036, at *4. That is because in cases asserting

---

[5] For example, the complaint in the *Sterling Heights* Action alleges that the first disclosure of Citigroup's fraud occurred on August 13, 2020, when *The Wall Street Journal* reported that Citigroup had improperly paid $900 million to certain lenders of Revlon Inc. as a result of an "operational error," causing the price of Citigroup stock to fall by $0.46 per share. *See Sterling Heights* Action, ECF No. 1 ¶¶ 43-44. In total, the complaint in the *Sterling Heights* Action

5

multiple partial disclosures the "fraud premium"—the amount by which the prices of securities were inflated at a given time—varies over the course of the class period such that some transactions will result in greater losses than others.  Because the truth about Citigroup's fraud was leaking to the market for several months before the end of the Class Period, the "fraud premium" varies at different moments in time, making factors other than loss inappropriate as a metric of financial interest at this early stage of the case and without the benefit of expert analysis.  *See Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *5 (S.D.N.Y. Dec. 5, 2019) (finding the retained shares methodology particularly unpersuasive given the existence of three separate disclosures throughout the class period).[6]

Similarly, because the three Related Actions assert multiple—and differing—dates on which the truth was disclosed to investors, an analysis of financial interest at this stage under the Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), is premature and would not be a reliable indicator of financial interest.  *See Cook v. Allergan PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (declining to conduct a *Dura* analysis to determine financial interest at the lead plaintiff stage where the defendant company's misconduct was "partly, but not fully, disclosed at various points during the Class Period" and thus "the 'fraud premium' may have varied throughout the Class Period").  Given that the filed complaints assert

---

identifies four additional disclosures before September 14, 2020, which is the date on which the complaints in the *City of Sunrise* Action and *Lim* Action each allege the first such disclosure occurred:  news that federal regulators were preparing to reprimand the Company for failing to improve its risk management systems and Citigroup's admission that it would need to spend more than $1 billion in 2020 to fix its internal controls and operational infrastructures, which caused the price of Citigroup stock to drop by $2.85 per share.  *City of Sunrise* Action, ECF No. 1 ¶¶ 53-54; *Lim* Action, ECF No. 1 ¶¶ 58-59.

[6] Even if those other factors are considered, the two most important factors—loss and net expenditures—weigh in favor of KBC and Pembroke Pines.  *See* ECF No. 34-2; *see also Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475-76 (S.D.N.Y. 2011) (finding that loss and net expenditures are the "most important" of the four factors).

differing partial disclosures and that there may exist other disclosures that have not yet been asserted, any *Dura* analysis is premature at this stage.

Although PSP meekly suggests that the Court may analyze financial interest at this stage under *Dura* (ECF No. 39 at 7 n.4), PSP fails to present any quantification of its financial interest under *Dura*, or note that there is considerable dispute among courts as to whether it is appropriate to conduct a *Dura* analysis at the lead plaintiff stage. *See Cook*, 2019 WL 1510894, at *3 & n.2. Had PSP truly believed that a *Dura* analysis of loss was relevant on a lead plaintiff motion in this case, it could have conducted such an analysis and submitted it with its papers. Instead, it chose to apply the predominant method of submitting its straight LIFO loss and, as a result, should be required to stand on its analysis.

KBC and Pembroke Pines' approach is entirely consistent with the Court's holding in *Maliarov v. Eros International PLC*, 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) (Nathan, J.). There, the Court rejected the application of a movant that sold its entire position in the securities at issue prior to any disclosure, had no recoverable loss, and, as a result, was atypical of other class members and subject to unique defenses. *Id.* at *4. Of the remaining movants, the Court appointed a class member that—like KBC and Pembroke Pines here—asserted the largest LIFO loss and had a significant recoverable loss. *Id.* at *3-4, *7. Although that movant incurred a significant portion of its loss on shares sold prior to any corrective disclosure, the Court found that movant was typical of other members of the Class and incentivized to "maximiz[e the] recovery if an earlier partial disclosure is supported by the facts." *Id.* at *6.[7] For all of these reasons and according to the

---

[7] The Southern District of Ohio recently reviewed case law in this District, as well as the Sixth Circuit, on the relevance of the *Dura* analysis and decided LIFO loss was the determinative factor of financial interest at the lead plaintiff stage. *See Owens v. FirstEnergy Corp.*, 2020 WL 6873421, at *7, *10 (S.D. Ohio Nov. 23, 2020).

prevailing precedent on this issue, there can be no dispute that KBC and Pembroke Pines suffered the largest losses in connection with their Class Period transactions in Citigroup securities, and thus possess the largest financial interest in this litigation, as illustrated below.



Specifically, KBC and Pembroke Pines incurred losses over *two and a half times greater* than the movant asserting the next largest loss and *nearly double all of the other movants' losses combined*.[8] *See Weiss*, 2006 WL 197036, at *3; *Lucas*, 2020 WL 5549719, at *3. Moreover, KBC *alone* has a larger loss than any other movant. *See In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 425 (E.D.N.Y. 2018) (appointing group where one member standing alone would still have the largest loss); *Peters v. Jinkosolar Holding Co.*, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012) (same). Accordingly, KBC and Pembroke Pines have the largest financial interest in the relief sought by the Class and should be appointed Lead Plaintiff. *See* 15 U.S.C. § 78u-

---

[8] PSP's loss is presented here as properly offset by its $3.1 million profits on Citigroup bonds and options.

4(a)(3)(B)(iii)(I)(bb); *see also Omdahl*, 2020 WL 3072291, at *3 (appointing as lead plaintiff the group of movants with the largest financial losses).

Notably, every movant presented its financial interest in terms of the loss incurred on Class Period investments in Citigroup securities.  PSP, which asserted its financial interest by loss in its opening brief, appears to have hedged, noting that some courts have applied metrics in addition to loss to determine financial interest—no doubt hoping to pivot to a different metric of financial interest depending on which measure turns out to suit its interests.  *See* ECF No. 39 at 7 & n.4 (arguing that "different metrics may be used in different circumstances").[9]  PSP did not, however, quantify its financial interest using any measure other than its loss, and courts reject such eleventh-hour shifts in strategy as gamesmanship.  *See, e.g.*, *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the Majesty Palms Group argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology[.]  This fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology."); *Maliarov*, 2016 WL 1367246, at *4 ("The specter of gamesmanship on these facts causes the Court to question whether Popi will 'fairly and adequately protect the interests of the class.'").  Because KBC and Pembroke Pines asserted a loss that far exceeds the combined losses of all competing movants, it is clear that they have asserted the "largest financial interest" in these claims.

---

[9] While PSP did not explain which metric should be used here, no doubt it would advocate that loss would be the appropriate metric if it claimed the greatest loss.

**2. KBC and Pembroke Pines Satisfy Rule 23's Typicality and Adequacy Requirements**

In addition to possessing the largest financial interest in the relief sought by the Class, KBC and Pembroke Pines also satisfy the typicality and adequacy requirements of Rule 23. On a motion for appointment as lead plaintiff, a movant need only "make a preliminary showing that the adequacy and typicality requirements have been met." *Omdahl*, 2020 WL 3072291, at *3. KBC and Pembroke Pines easily meet the typicality and adequacy requirements of Rule 23.

"The typicality requirement is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Omdahl*, 2020 WL 3072291, at *3 (internal quotations omitted). KBC and Pembroke Pines' claims are typical of the Class because, like all other Class members, KBC and Pembroke Pines (1) purchased Citigroup securities during the Class Period, (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) were damaged thereby. Thus, KBC and Pembroke Pines satisfy the typicality requirement.

To satisfy Rule 23's adequacy requirement, KBC and Pembroke Pines "must demonstrate that (1) [their choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between [them] and the members of the class; and (3) [they have] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Omdahl*, 2020 WL 3072291, at *3 (internal quotations omitted). KBC and Pembroke Pines have further demonstrated their commitment to prosecuting this action efficiently and in the best interests of the Class through the selection of Motley Rice and Bernstein Litowitz as Lead Counsel for the Class. KBC and Pembroke Pines' interests—the vigorous and efficient prosecution of this case to achieve the best possible outcome for the Class, as stated in their Joint Declaration (ECF No. 34-3 ¶¶ 6, 16)—clearly align with the interests of other members of the Class and there are no conflicts between

10

them and the other members of the Class.[10]  Moreover, given the magnitude of their losses (over $28 million), KBC and Pembroke Pines have a sufficient interest in the outcome of this case to ensure its vigorous prosecution.  Therefore, KBC and Pembroke Pines satisfy the adequacy requirement.

Moreover, KBC and Pembroke Pines are a cohesive pair of sophisticated institutional investors that are committed to achieving the best possible result for the Class, and have affirmed their commitment to working together in the prosecution of this action.  *See* ECF No. 34-3 ¶¶ 1-13.  Prior to filing their Motion, KBC and Pembroke Pines conferred to discuss their joint prosecution of the claims against Defendants, including plans for joint decision-making and open communication.  *See id*. ¶¶ 11, 13.  KBC and Pembroke Pines also directed their counsel to enter into a joint prosecution agreement to ensure the efficient and cost-effective litigation of this case, and instructed counsel to keep contemporaneous time records to facilitate proper oversight by KBC and Pembroke Pines.  *See id.* ¶ 15.  The actions taken to date demonstrate that KBC and Pembroke Pines are cooperating and will work cohesively to manage the litigation.  *See Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (finding group of three institutional investors demonstrated their ability to cooperate and jointly prosecute the case where they submitted a declaration indication, *inter alia*, that they had conferred to discuss the litigation

---

[10] As stated in KBC and Pembroke Pines' opening brief, while KBC does not believe that it is required to obtain assignments from its funds to litigate claims for the losses they suffered, out of an abundance of caution it obtained valid assignments of claims from its funds that were executed prior to filing this motion for appointment as lead plaintiff.  *See* ECF No. 28 at 8 n.7; *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 579 (S.D.N.Y. 2009) (rejecting defendants' summary judgment challenge to the standing of foreign investment vehicles such as KBC to assert claims for violations of federal securities laws).  Indeed, PSP's counsel here serves as liaison counsel to KBC in *In re Twitter Inc. Securities Litigation*, No. 4:16-cv-05314-JST (SK) (N.D. Cal.), and affirmed KBC's adequacy and typicality to serve as lead plaintiff in that action.  *See* Ross Decl., Ex. B.

and to formulate a strategy); *Ford v. Voxx Int'l Corp.*, 2015 WL 4393798, at \*4 (E.D.N.Y. July 16, 2015) (same).[11] KBC and Pembroke Pines, collectively responsible for overseeing more than $100 billion in assets, are the prototypical lead plaintiff envisioned by Congress to serve as lead plaintiff under the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at \*34, *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Faig*, 2013 WL 6705045, at \*3 (finding that movant's status as institutional investor "weigh[s] in favor" of adequacy).

Because KBC and Pembroke Pines have the largest financial interest in the relief sought by the Class and otherwise satisfy the relevant requirements of Rule 23, they should be appointed as Lead Plaintiff.

### B.    KBC and Pembroke Pines' Selection of Lead Counsel Should Be Approved

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice unless "necessary to protect the interests of the plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *Omdahl*, 2020 WL 3072291, at \*3 ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel."). Accordingly, KBC and Pembroke Pines' selection of Motley Rice and Bernstein Litowitz—law firms that specialize in prosecuting complex class action litigation and have a history of jointly litigating actions resulting in significant recoveries for

---

[11] Counsel for PSP has served as lead counsel to groups of multiple investors. *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. Genworth Fin., Inc.*, No. 3:14-cv-00682-JAG-RCY (E.D. Va. Nov. 6, 2014), ECF No. 25 (order appointing a group of two institutional investors as lead plaintiff and the Bleichmar law firm as co-lead counsel) (Ross Decl., Ex C).

investors—should be approved.  *See, e.g.*, *Shenwick v. Twitter, Inc.*, 2016 WL 10672428, at *2 (N.D. Cal. Dec. 22, 2016) (concluding Motley Rice "will provide effective representation to the class"); *Omdahl*, 2020 WL 3072291, at *3 (finding Bernstein Litowitz well-qualified to serve as lead counsel); *Shah v. Qualcomm Inc.*, No. 3:17-cv-00121-JAH-WVG, ECF No. 31 (S.D. Cal. May 4, 2017) (appointing Motley Rice and Bernstein Litowitz as co-lead counsel) (Ross Decl., Ex. D).  Thus, KBC and Pembroke Pines' selection of Lead Counsel should be approved.

## C.    The Competing Motions Should Be Denied

As set forth above, each of the other movants claim losses that are substantially smaller than those suffered by KBC and Pembroke Pines.  Moreover, no "proof" exists to rebut KBC and Pembroke Pines' presumptive status as Lead Plaintiff under the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Omdahl*, 2020 WL 3072291, at *2 ("This presumption may only be rebutted by proof that the purportedly most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'").  This, without more, is sufficient to deny the competing movants' motions under the PSLRA's lead plaintiff selection process.  *See Omdahl*, 2020 WL 3072291, at *3 (appointing lead plaintiff movant in absence of proof rebutting presumptive lead plaintiff status); *Faig*, 2013 WL 6705045, at *4 (same).

## D.    PSP Should Be Disqualified Due To Its Overstated Loss Calculation

PSP cannot avail itself of presumptive lead plaintiff status under the PSLRA because it overstated its LIFO loss—no doubt in an attempt to claim the largest loss—by failing to account for the fact that it profited by more than $3.1 million on investments in Citigroup bonds and stock options during the Class Period.  *See* ECF No. 39 at 7 n.4; *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007), opinion *modified on denial of reconsideration*, 2007 WL 3197318 (W.D.N.Y. Oct. 26, 2007) (finding a lead plaintiff movant's loss should have been offset

by gains on other securities of the issuer defendant).  PSP's purported authority for not properly calculating its loss, *In re Sepracor Inc. Securities Litigation*, 233 F.R.D. 52, 54 (D. Mass. 2005), is wholly inapposite, as that decision concerned an action brought on behalf of a class of debt purchasers and, thus, the court found that it was not appropriate to include stock options in the class representative's certification.  By contrast, this case is brought on behalf of purchasers of Citigroup "securities," which includes both bonds and stock options in addition to common stock. *See* 15 U.S.C. § 78c(a)(10).  Although PSP's loss is just a fraction of KBC and Pembroke Pines' loss whether or not those gains are properly considered, PSP's failure to properly calculate its financial interest is itself disqualifying.  *See Plaut v. The Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (rejecting movant's attempt to correct financial interest); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (denying lead plaintiff motion where movant's certification contained errors).  Thus, PSP's motion should be denied.

###    E.    The Related Actions Should Be Consolidated

All movants agree that consolidation of the above-captioned actions is appropriate.  *See* ECF Nos. 18, 21, 26, 31, 37.  Accordingly, the Related Actions, which present virtually identical factual and legal issues arising out of the same alleged course of misconduct and involve the purchase of Citigroup securities, over overlapping class periods, at artificially inflated prices, should be consolidated pursuant to Rule 42(a).  *See Omdahl*, 2020 WL 3072291, at *1 (holding consolidation appropriate where there are common questions of fact and law and the differences do not outweigh the interests of judicial economy served by consolidation).

### III.    CONCLUSION

For the foregoing reasons, KBC and Pembroke Pines respectfully request that the Court enter an order: (1) appointing KBC and Pembroke Pines as Lead Plaintiff; (2) approving their selection of Motley Rice and Bernstein Litowitz as Lead Counsel for the Class; (3) consolidating

the Related Actions; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: January 12, 2021                                    Respectfully submitted,

                                                           **BERNSTEIN LITOWITZ BERGER**
                                                           **  & GROSSMANN LLP**

                                                           */s/ Hannah Ross*
                                                           Hannah Ross
                                                           hannah@blbglaw.com
                                                           Gerald H. Silk
                                                           jerry@blbglaw.com
                                                           Avi Josefson
                                                           avi@blbglaw.com
                                                           1251 Avenue of the Americas
                                                           New York, NY 10020
                                                           Telephone:    (212) 554-1400
                                                           Facsimile:    (212) 554-1444

                                                           *Counsel for Pembroke Pines Firefighters &*
                                                           *Police Officers Pension Fund and Proposed*
                                                           *Lead Counsel for the Class*


                                                           **MOTLEY RICE LLC**

                                                           William H. Narwold
                                                           bnarwold@motleyrice.com
                                                           20 Church St., 17th Floor
                                                           Hartford, CT  06103
                                                           Telephone:    (860) 882-1681
                                                           Facsimile:    (860) 882-1682

                                                           and

                                                           Gregg S. Levin
                                                           glevin@motleyrice.com
                                                           Christopher F. Moriarty
                                                           cmoriarty@motleyrice.com
                                                           Mt. Pleasant, SC  29464
                                                           Telephone:    (843) 216-9000
                                                           Facsimile:    (843) 216-9450

                                                           *Counsel for KBC Asset Management NV*
                                                           *and Proposed Lead Counsel for the Class*

15