# EXHIBIT B

BLEICHMAR FONTI & AULD LLP
LESLEY E. WEAVER (191305)
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020
Email: lweaver@bfalaw.com

Liaison Counsel for Lead Plaintiff and the Class

MOTLEY RICE LLC
GREGG S. LEVIN (admitted *pro hac vice*)
MEGHAN S. B. OLIVER (admitted *pro hac vice*)
MAX N. GRUETZMACHER (admitted *pro hac vice*)
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
Emails: glevin@motleyrice.com
moliver@motleyrice.com
mgruetzmacher@motleyrice.com
cmoriarty@motleyrice.com

Lead Counsel for Lead Plaintiff and the Class

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TWITTER INC. SECURITIES LITIGATION | ) Case No. 3:16-cv-05314-JST (SK)<br>)<br>) **LEAD PLAINTIFF'S NOTICE OF**<br>) **MOTION AND MOTION FOR CLASS**<br>) **CERTIFICATION, APPOINTMENT OF**<br>) **CLASS REPRESENTATIVES, AND**<br>) **APPROVAL OF CLASS COUNSEL**<br>)<br>) JUDGE: Jon S. Tigar<br>) DATE: June 14, 2018<br>) TIME: 2:00 P.M.<br>) DEPT.: Courtroom 9, 19th Floor<br>) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

NOTICE OF MOTION................................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ...........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

I.    INTRODUCTION ............................................................................................................2

II.    LEGAL STANDARD .......................................................................................................3

III.    STATEMENT OF FACTS.................................................................................................4

IV.    ARGUMENT ....................................................................................................................5

    A.    The Requirements Of Rule 23(a) Are Satisfied.........................................................5

        1.    Numerosity:  Members of the Proposed Class Are So Numerous that Joinder of All Members Is Impracticable ............................................5

        2.    Commonality:  Questions of Law and Fact Are Common to the Proposed Class ..................................................................................6

        3.    Typicality:  The Class Representatives' Claims Are Typical of Those of the Proposed Class ..............................................................7

        4.    Adequacy:  Lead Plaintiff and the Fund Will Fairly and Adequately Protect the Interests of the Proposed Class and Should Be Appointed as Co-Class Representatives ...................................................8

    B.    The Requirements Of Rule 23(b)(3) Are Satisfied...................................................11

        1.    Common Questions of Law and Fact Predominate ....................................11

        2.    The Class Is Entitled to a Presumption of Reliance Under Both *Basic* and *Affiliated Ute* .........................................................................13

            a.    The Class is entitled to a presumption of reliance under *Basic*'s fraud-on-the-market theory ................................................13

                i.    The *Cammer v. Bloom* test for market efficiency.............14

                ii.    Twitter stock experienced high trading volume................15

                iii.    A sufficient number of financial analysts covered Twitter..................................................................................15

                iv.    Twitter common stock traded on the NYSE .....................16

                v.    Twitter was eligible for short form registration.................17

                vi.    The price of Twitter common stock reacted to new information..........................................................................17

                vii.    Other market efficiency considerations also support efficiency..........................................................................18

            b.    The Class Is Entitled to a Presumption of Reliance Under *Affiliated Ute* ...........................................................................18

          c.      Damages Will Be Calculated in the Same Manner for All Class Members......................................................................................20

       3.      Superiority Is Established ............................................................21

   C.      Motley Rice And Robbins Geller Should Be Appointed Co-Class Counsel.........22

V.       CONCLUSION.......................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ................................................................................................ 19

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................ 11, 12

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
568 U.S. 455 (2013) ....................................................................................... 3, 12, 19

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ................................................................................... 8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........................................................................................... 13, 16

*Basile v. Valeant Pharmaceutical International, Inc.*,
No. SACV 14-2004-DOC (KES), 2017 WL 3641591 (C.D. Cal. Mar. 15, 2017) ................. 19

*Billhofer v. Flamel Technologies, S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) ............................................................................. 14

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999) ....................................................................... 13, 14, 19

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ................................................................................... 20

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ............................................................... 14, 15, 16, 17

*Cartwright v. Viking Industries, Inc.*,
No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) ................... 13

*Dean v. China Agritech*,
No. CV 11-01331-RGK (PJWx), 2012 WL 1835708 (C.D. Cal. May 3, 2012) ..................... 6

*Dodona I, LLC v. Goldman, Sachs & Co.*,
296 F.R.D. 261 (S.D.N.Y. 2014) ............................................................................. 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................................. 3

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ..................................................................................... 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ........................................................................................... 12, 14

*Freeman v. Laventhol & Horwath*,
915 F.2d 193 (6th Cir. 1990) ................................................................................... 16

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014) ....................................................................................... 12, 13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................................. 6, 8

*Harris v. Alvarado*,
    402 F. App'x 180 (9th Cir. 2010) ................................................................................. 8

*Hatamian v. Advanced Micro Devices, Inc.*,
    No. 14-cv-00226 YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) .......................... 13, 22

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14-cv-01160-JST, 2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ........................... 15, 21

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011) ................................................................................ 14

*In re Bridgepoint Education, Inc. Securities Litigation*,
    No. 12-cv-1737 JM (JLB), 2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ......................... 7, 8

*In re Conseco Life Insurance Co. LifeTrend Insurance Sales & Marketing Litigation*,
    270 F.R.D. 521 (N.D. Cal. 2010) ................................................................................. 7

*In re Cooper Cos. Securities Litigation*,
    254 F.R.D. 628 (C.D. Cal. 2009) ................................................................................ 5, 6

*In re Countrywide Financial Corp. Securities Litigation*,
    273 F.R.D. 586 (C.D. Cal. 2009) ................................................................................ 16, 17

*In re Diamond Foods, Inc., Securities Litigation*,
    295 F.R.D. 240 (N.D. Cal. 2013) ............................................................................ passim

*In re Emulex Corp., Securities Litigation*,
    210 F.R.D. 717 (C.D. Cal. 2002) ................................................................................ 13

*In re Juniper Networks, Inc. Securities Litigation*,
    264 F.R.D. 584 (N.D. Cal. 2009) ................................................................................ 7, 16

*In re LDK Solar Securities Litigation*,
    255 F.R.D. 519 (N.D. Cal. 2009) ................................................................................ 7

*In re LendingClub Securities Litigation*,
    No. C 16-02627 WHA, 2017 WL 4750629 (N.D. Cal. Oct. 20, 2017) ........................... 6

*In re Magma Design Automation, Inc. Securities Litigation*,
    No. C 05-2394 CRB, 2007 WL 2344992 (N.D. Cal. Aug. 16, 2007) ............................. 4

*In re Merck & Co., Securities, Derivative & "ERISA" Litigation*,
    No. 05-1151 (SRC), 2013 WL 396117 (D.N.J. Jan. 30, 2013) ..................................... 12

*In re Montage Technology Group Ltd. Securities Litigation*,
    No. 14-cv-00722-SI, 2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) ............................... 19

*In re Moody's Corp. Securities Litigation*,
    274 F.R.D. 480 (S.D.N.Y. 2011) ................................................................................ 16

*In re NII Holdings, Inc. Securities Litigation*,
    311 F.R.D. 401 (E.D. Va. 2015) ................................................................................ 14

*In re Smith Barney Transfer Agent Litigation*,
    290 F.R.D. 42 (S.D.N.Y. 2013) ................................................................................ 19

*In re UTStarcom, Inc. Securities Litigation*,
No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ..................................... 6

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
571 F.3d 953 (9th Cir. 2009) ....................................................................................... 21

*In re Xcelera.com Securities Litigation*,
430 F.3d 503 (1st Cir. 2005) ....................................................................................... 18

*James v. UMG Recordings, Inc.*,
No. C 11-1613 SI (MEJ), 2012 WL 12265529 (N.D. Cal. Nov. 29, 2012) ........................... 7

*Johnson v. Hartford Casualty Insurance Co.*,
No. 15-cv-04138-WHO, 2017 WL 2224828 (N.D. Cal. May 22, 2017) ............................... 21

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) ...................................................... 21

*K.M. v. Regence Blue Shield*,
No. C13-1214RAJ, 2015 WL 519932 (W.D. Wash. Feb. 9, 2015) ..................................... 11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ................................................................................... 19

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) .................................................................................. 14

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) ................................................................................... 16

*Luna v. Marvell Technology Group, Ltd.*,
No. C 15-05447 WHA, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ......................... 6, 7, 17

*Maiman v. Talbott*,
No. SACV 09-00012 AG (ANx), 2011 WL 13065750 (C.D. Cal. Aug. 29, 2011) ................ 12

*Marsh v. First Bank of Delaware*,
No. 11-cv-05226-WHO, 2014 WL 554553 (N.D. Cal. Feb. 7, 2014) .................................... 3

*Nguyen v. Radient Pharmaceuticals Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012) ............................................................................. passim

*Parra v. Bashas', Inc.*,
536 F.3d 975 (9th Cir. 2008) .......................................................................................... 6

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ...................................................................................... 5, 6

*Petrie v. Electronic Game Card, Inc.*,
308 F.R.D. 336 (C.D. Cal. 2015) .................................................................................. 18

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .................................................................................................... 21

*Richie v. Blue Shield of California*,
No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) .................................... 5

*Siemers v. Wells Fargo & Co.*,
243 F.R.D. 369 (N.D. Cal. 2007) .................................................................................. 22

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ............................................................................. 11

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d. 1227 (9th Cir. 1996) ............................................................................... 21

*Vaquero v. Ashley Furniture Industries, Inc.*,
  824 F.3d 1150 (9th Cir. 2016) .............................................................................. 20

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017)..................................................................................... 17

*Wolin v. Jaguar Land Rover North America, LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................................. 7, 8

**STATUTES**

15 U.S.C. § 78u-4(e)(1) ............................................................................................ 20

15 U.S.C. § 78u-4(e)(2) ............................................................................................ 20

**RULES**

Fed. R. Civ. P. 23(a)(1)............................................................................................... 5

Fed. R. Civ. P. 23(a)(2)............................................................................................... 6

Fed. R. Civ. P. 23(a)(3)............................................................................................... 8

Fed. R. Civ. P. 23(a)(4).......................................................................................... 8, 11

Fed. R. Civ. P. 23(b)(3)........................................................................................ 11, 21

Fed. R. Civ. P. 23(g)(1)(A) ....................................................................................... 23

**TREATISES**

5 James Wm. Moore et al., *Moore's Federal Practice* (2017) ..................................... 8

**REGULATIONS**

17 C.F.R. § 239.13(a)(3)............................................................................................ 17

17 C.F.R. § 239.13(b)(1)............................................................................................ 17

## NOTICE OF MOTION

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on June 14, 2018 at 2:00 p.m., or at a date and time to be determined by the Court, Lead Plaintiff, KBC Asset Management NV ("Lead Plaintiff" or "KBC"), will ask this Court for an Order certifying this matter (the "Action") as a class action pursuant to Federal Rule of Civil Procedure 23, appointing KBC and proposed class representative National Elevator Industry Pension Fund (the "Fund") as Co-Class Representatives, and appointing Motley Rice LLC ("Motley Rice") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Co-Class Counsel. This motion is supported by the following memorandum of points and authorities, the accompanying declaration of Gregg S. Levin with exhibits, all pleadings and papers filed herein, the arguments of counsel, and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

I.      Whether this matter should be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

II.     Whether KBC Asset Management NV and National Elevator Industry Pension Fund should be appointed as Co-Class Representatives.

III.    Whether Motley Rice LLC and Robbins Geller Rudman & Dowd LLP should be appointed as Co-Class Counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff respectfully submits this memorandum of law in support of its motion for (i) class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3); (ii) the appointment of KBC and the Fund as Co-Class Representatives; and (iii) the appointment of Motley Rice and Robbins Geller as Co-Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

## I.    INTRODUCTION

Lead Plaintiff seeks certification of a class consisting of all persons and entities that, during the period from February 6, 2015, through July 28, 2015, inclusive (the "Class Period"), purchased or otherwise acquired shares of the publicly traded common stock of Twitter, Inc. ("Twitter" or the "Company"), and were damaged thereby (the "Class").[1]

Like most securities cases, this Action readily satisfies all the requirements of Rule 23(a): (i) there were hundreds, if not thousands, of purchasers of Twitter common stock during the Class Period, which supports a finding that the Class is so numerous that joinder of all members of the Class would be impracticable; (ii) there exist common questions of law and fact because Class members were injured by the same alleged misconduct;[2] (iii) for the same reason, the claims of the representative parties are typical of the claims and defenses applicable to the Class; and (iv) Lead Plaintiff and the Fund are adequate Co-Class Representatives because their interests are not antagonistic to those of other Class members, and both they and their chosen counsel are fully able to vigorously prosecute this Action on behalf of the Class.

---

[1] *See* Lead Pl.'s Consol. Am. Compl. for Violations of the Fed. Sec. Laws (the "Compl."), ECF No. 81. Excluded from the Class are Twitter; Anthony Noto ("Noto") and Richard Costolo ("Costolo") (together, the "Individual Defendants," and, collectively with Twitter, "Defendants"); members of the Individual Defendants' immediate families; Twitter's subsidiaries and affiliates; any person who is or was an officer or director of Twitter during the Class Period; any entity in which any Defendant has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded person or entity. *Id*. ¶ 158. References to "¶ __" are to paragraphs of the Complaint.

[2] Common questions of law and fact implicated include Defendants' alleged misrepresentations and omissions, the materiality of such misrepresentations and omissions, and Defendants' scienter.

This Action also satisfies Rule 23(b)(3)'s predominance and superiority requirements. Questions common to all Class members predominate over any questions affecting only individual Class members. In particular, a classwide presumption of reliance is satisfied on two independent bases: *first*, as to Defendants' material misrepresentations, Lead Plaintiff may invoke the "fraud-on-the-market" presumption of classwide reliance articulated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and reaffirmed in *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 134 S. Ct. 2398 (2014); and *second*, Defendants' material omissions make available the presumption of classwide reliance articulated in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Further, proceeding as a class action is superior to other available methods for fairly and efficiently adjudicating Class members' claims.

Accordingly, Lead Plaintiff requests certification of the Class, with Lead Plaintiff and the Fund serving as Co-Class Representatives, and Motley Rice and Robbins Geller serving as Co-Class Counsel.

## II. LEGAL STANDARD

On this motion, "'the question [for this Court] is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met.'" *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 245 (N.D. Cal. 2013) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)). While "the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23," "the substantive allegations of the complaint must be accepted as true" and "[n]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23." *Marsh v. First Bank of Del.*, No. 11-cv-05226-WHO, 2014 WL 554553, at *4 (N.D. Cal. Feb. 7, 2014) (internal quotation marks omitted). Questions regarding the merits of the action "'may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *In re Diamond Foods*, 295 F.R.D. at 245 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)).

Recognizing the benefits of class actions, the Ninth Circuit has adopted a liberal construction of Rule 23. *See, e.g.*, *In re Magma Design Automation, Inc. Sec. Litig.*, No. C 05-2394 CRB, 2007 WL 2344992, at *3 (N.D. Cal. Aug. 16, 2007) (recognizing "the Ninth Circuit's policy of liberally construing Rule 23 in the context of class action suits").

## III.    STATEMENT OF FACTS

This Action arises out of Defendants' alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. This Court already has determined that the Complaint adequately pleads that:    (1) Defendants knowingly made inaccurate public statements regarding Twitter's internal metrics; (2) Defendants failed to disclose internal information about those metrics; and (3) these misrepresentations and omissions made during the Class Period resulted in an inflated share price that fell when the truth about user engagement became known. *See* Order Granting in Part & Den. in Part Defs.' Mot. to Dismiss ("MTD Order"), ECF No. 91 at 1.

As alleged in the Complaint, the size of Twitter's user base and those users' engagement on the Twitter platform are critical to the Company's success because Twitter's main source of revenue – advertising – is heavily driven by both metrics.  ¶¶ 23-25, 48. Accordingly, since its initial public offering in November 2013, Twitter had consistently disclosed both metrics to investors.  ¶¶ 5, 20, 36. Yet, beginning on February 5, 2015, and continuing through the Class Period, Twitter refused to disclose critical information about user engagement in any form and further refused to provide meaningful updates on user engagement trends – despite closely tracking Daily Active Users ("DAU") as Twitter's primary user engagement metric during this time. ¶¶ 40-41, 45, 67-68, 84, 104(d). Because engagement information was central to investors' ability to gauge Twitter's potential for growth, analysts had no reason to doubt Twitter's affirmative representations that Monthly Active Users ("MAU") growth had "already turned around" and that user engagement was improving. ¶¶ 40, 51-52, 56-58, 88. In other words, investors were unable to understand that Twitter's statements about MAU acceleration were unrealistic in the absence of DAU metrics showing that user engagement was flat or declining. MTD Order at 23, 25-26.

Defendants misled investors into thinking that Twitter was thriving when, in fact, both user growth and user engagement were stalling.  ¶¶ 4, 56, 67, 86.

On July 28, 2015, less than six months from the start of the Class Period, Twitter hosted a call with investors to discuss the Company's Q2 2015 results, and revealed that:  Twitter's user growth was stagnant and no growth was expected for a considerable period of time; user engagement was declining; new MAUs were lower quality and less engaged than existing users; and new initiatives were not effective at driving MAU growth or engagement growth.  ¶ 60. Following these July disclosures, Twitter's stock price declined, falling 15% to $31.24 per share. ¶ 8; *see also* ¶¶ 138-39; Prof. Steven P. Feinstein, Ph.D., CFA, *Report on Market Efficiency* ¶ 23 (February 15, 2018) ("Feinstein Report"), attached as Exhibit A to the Decl. of Gregg S. Levin in Supp. of Lead Pl.'s Notice of Mot. & Mot. for Class Certification, Appointment of Class Representatives, & Approval of Class Counsel (the "Levin Decl."), filed contemporaneously herewith.

## IV. ARGUMENT

### A. The Requirements Of Rule 23(a) Are Satisfied

Class certification should be granted because this Action satisfies each of the four prerequisites set forth in Rule 23(a) of the Federal Rules of Civil Procedure:  "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation."  *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

#### 1. Numerosity:  Members of the Proposed Class Are So Numerous that Joinder of All Members Is Impracticable

Rule 23(a)(1) permits class certification if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  To satisfy the numerosity requirement, "[a] specific minimum number is not necessary, and plaintiff need not state the exact number of potential class members."  *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9, 2014).  Here, numerosity may be presumed because the Class contains at least 789 unique institutions.  Feinstein Report ¶ 55 & n.16.  *See also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("[N]umerosity is presumed where the plaintiff class

contains forty or more members."). That Twitter had an average of 659.2 million shares outstanding and actively trading on the New York Stock Exchange ("NYSE") during the Class Period, Feinstein Report ¶ 76, further supports a finding that the numerosity requirement is satisfied because the Court may "infer" that the Class is numerous "when a corporation has millions of shares trading on a national exchange." *In re Cooper Cos.*, 254 F.R.D. at 634; *see also Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 WL 4865559, at *6 (N.D. Cal. Oct. 27, 2017) (finding numerosity satisfied when more than 500 million shares were traded, "likely [by] thousands of stockholders," during the class period). The Court may likewise "infer that the numerosity requirement is satisfied" because Twitter common stock had an average weekly trading volume of approximately 106.1 million shares over the Class Period. *Dean v. China Agritech*, No. CV 11-01331-RGK (PJWx), 2012 WL 1835708, at *4 (C.D. Cal. May 3, 2012); *see also* Feinstein Report ¶ 47.

Accordingly, the Class is sufficiently numerous.

### 2. Commonality: Questions of Law and Fact Are Common to the Proposed Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement "'has been construed permissively,'" *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010), and does not require a plaintiff to "show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution," *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2017 WL 4750629, at *4 (N.D. Cal. Oct. 20, 2017) (ellipsis in original) (quoting *Parsons*, 754 F.3d at 675). Indeed, "'[s]o long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Id.*; *see also Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Here, all Class members are alleged to have been "defrauded by the same misleading statements over the same period of time, and suffered similar losses as a result." *Marvell Tech. Grp.*, 2017 WL 4865559, at *2; *see also In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530 (N.D.

Cal. 2009) ("[A]ll class members are unified by an interest in proving the same common course of conduct regarding [the defendants'] allegedly fraudulent . . . representations.").

Questions of law and fact common to the class include:

a.      Whether Defendants' statements to the investing public during the Class Period misrepresented material facts about Twitter;

b.      Whether Defendants' statements omitted material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading;

c.      Whether Defendants acted with the requisite state of mind; and

d.      Whether Twitter's stock price was artificially inflated as a result of Defendants' misrepresentations and/or omissions.

This is "sufficient to fulfill Rule 23(a)'s commonality requirement." *Marvell Tech. Grp.*, 2017 WL 4865559, at *2; *see also In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588-89 (N.D. Cal. 2009) (noting, under Ninth Circuit precedent, "[r]epeated misrepresentations by a company to its stockholders satisfy the commonality requirement" and reciting list of similar commonality factors typical to securities class actions); *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-cv-1737 JM (JLB), 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) (granting class certification and finding commonality satisfied when there were "a number of common questions, including whether Bridgepoint made false statements, whether those statements were material, [and] whether they were intentionally false").[3]

### 3.      Typicality:  The Class Representatives' Claims Are Typical of Those of the Proposed Class

"'[T]o assure that the interest of the named representative aligns with the interests of the class,'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010), Rule

---

[3] A finding of commonality is not affected by the fact that Class members will have varying damages because they purchased and sold securities at different times.  *See James v. UMG Recordings, Inc.*, No. C 11-1613 SI (MEJ), 2012 WL 12265529, at *2 (N.D. Cal. Nov. 29, 2012) ("[E]ven though potential class members may have individual defenses and damages issues, this does not make class certification unreasonable if other common factors predominate." (citing *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 530 n.8 (N.D. Cal. 2010))).

23(a)(3) requires that the class representative's claims and defenses be "typical of the claims or defenses" of the prospective class, Fed. R. Civ. P. 23(a)(3). The standard is "permissive" and class members' claims "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *abrogated on other grounds as recognized in Harris v. Alvarado*, 402 F. App'x 180 (9th Cir. 2010). Instead, "'[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Wolin*, 617 F.3d at 1175. When a proposed class representative's "claims arise from the same events and conduct that gave rise to the claims of other class members," they are "typical of the class." *In re Bridgepoint Educ.*, 2015 WL 224631, at *5.

Here, typicality is satisfied because Lead Plaintiff and the Fund's claims and injuries (i.e., the alleged artificial inflation and consequent market correction of the price of Twitter's stock caused by Defendants' allegedly fraudulent public statements and omissions) arise from the same events and conduct that gave rise to the claims of other Class members.

### 4. Adequacy: Lead Plaintiff and the Fund Will Fairly and Adequately Protect the Interests of the Proposed Class and Should Be Appointed as Co-Class Representatives

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011); *see also* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.25[1] (2017). Thus, "[t]o determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020).

KBC, headquartered in Brussels, Belgium, is an asset management company that manages mutual funds, private funds, and institutional funds. As of year-end 2016, KBC had approximately

€213 billion of assets under management. KBC's funds purchased 647,544 shares of Twitter common stock during the Class Period at artificially inflated prices up to $51.41 per share, held 344,410 shares that were purchased during the Class Period as of April 28, 2015 (the date of Defendants' 1Q15 earnings call), and held 20,870 shares at the end of the Class Period. KBC's funds suffered substantial losses when the truth about Twitter's stagnant user engagement and user growth were revealed to the market. *See* ECF No. 21-3; *see also* Decl. of Bart Elst on Behalf of KBC Asset Mgmt. NV in Supp. of Lead Pl.'s Notice of Mot. & Mot. for Class Certification, Appointment of Class Representatives, & Approval of Class Counsel ¶¶ 2-3 (the "Elst Decl."), attached as Ex. B to the Levin Decl. KBC has certified that it: (1) reviewed a complaint filed in this Action; (2) did not purchase securities at the direction of counsel, or in order to participate in any private securities action; (3) is willing to serve as a representative party on behalf of the Class; and (4) will not accept any payment for serving as a representative party for the Class beyond its respective pro rata share of any recovery, except as ordered or approved by the Court. *See* ECF No. 21-1.[4]

The Fund, headquartered in Newtown Square, Pennsylvania, provides retirement benefits for the members of the International Union of Elevator Constructors. At the time of this filing, the Fund covers over 45,000 active participants and beneficiaries and manages over $6 billion in assets. The Fund purchased 91,770 shares of Twitter common stock during the Class Period at artificially inflated prices up to $49.74 per share, held all of those shares through April 28, 2015 (the date of Defendants' 1Q15 earnings call), and held 16,920 of those shares through the end of

---

[4] Lead Plaintiff has previously been appointed as a class representative in other securities fraud class actions, including *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR (N.D. Cal. Jan. 15, 2014) (a $29.5 million settlement in that action received preliminary approval on October 25, 2017), and *KBC Asset Management NV v. 3D Systems Corp.*, No. 15-cv-02393-MGL (D.S.C. June 12, 2015). In addition, KBC has served as a lead plaintiff in several other actions that have collectively recovered millions of dollars for investors, including: *City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.*, No. 1:11-cv-08332-AJS (N.D. Ill.) ($60 million settlement); *Ross v. Career Education Corp.*, No. 12 C 276 (N.D. Ill.) ($27.5 million settlement); *Birmingham Retirement & Relief System v. S.A.C. Capital Advisors, L.P.*, No. 13 Civ. 2459 (VM) (KNF) (S.D.N.Y.) ($10 million settlement); and *Aruliah v. Impax Laboratories, Inc.*, No. 3:14-cv-03673-JD (N.D. Cal.) ($4.75 million settlement).

the Class Period. The Fund suffered substantial losses when the truth about Twitter's stagnant user engagement and user growth were revealed to the market. *See* ECF Nos. 30-2, 30-3. The Fund has certified that it: (1) reviewed a complaint filed in this Action; (2) did not purchase securities at the direction of counsel, or in order to participate in any private securities action; (3) is willing to serve as a representative party on behalf of the Class; and (4) will not accept any payment for serving as a representative party for the Class beyond its respective pro rata share of any recovery, except as ordered or approved by the Court. *See* ECF No. 30-2.

Adequacy is amply satisfied here because KBC and the Fund's interests are not antagonistic to those of other Class members. Proposed Co-Class Representatives purchased Twitter common stock during the Class Period and were injured by the same alleged material misrepresentations and omissions that injured all proposed Class members. Thus, their interest in establishing Defendants' liability and obtaining the maximum possible recovery is aligned with the interests of absent Class members.

Lead Plaintiff also has demonstrated its willingness and ability to serve as Class Representative, including by: (i) reviewing pleadings; (ii) monitoring the progress of court proceedings; (iii) participating in discussions with Lead Counsel concerning case developments; (iv) requesting and evaluating regular status reports from Lead Counsel; and (v) searching for and producing documents responsive to Defendants' first document request directed to it. *See* Elst Decl. ¶ 4; *see also* correspondence from Christopher F. Moriarty addressed to counsel for Defendants dated February 13, 2018, attached as Ex. D to the Levin Decl. Lead Plaintiff is willing to travel from Brussels, Belgium to sit for a deposition and attend trial. Elst Decl. ¶ 6.

Similarly, the Fund's Trustees have monitored the progress of the litigation since the initial complaint was filed on September 16, 2016, by regularly conferring with counsel and reviewing documents filed in this Action. *See* Decl. of Robert O. Betts in Supp. of Mot. for Class Certification, Appointment of Class Representatives, & Approval of Class Counsel ¶ 3 ("Betts Decl."), attached as Ex. C to the Levin Decl. The Trustees of the Fund understand that they owe a fiduciary duty to all members of the Class to provide fair and adequate representation and intend

to continue to work with counsel to obtain the maximum recovery possible for the Class consistent with good faith and meritorious advocacy. *Id.* ¶ 4.

Moreover, as set forth *infra* Part IV.C, Lead Plaintiff and the Fund have engaged qualified, experienced, and capable attorneys who have an excellent track record in prosecuting complex securities class actions such as this Action. As their actions in this case and others demonstrate, chosen counsel have committed, and are willing to commit, considerable resources to the prosecution of this Action, and have fully, fairly, and more than adequately represented the interests of the Class to date. *See K.M. v. Regence Blue Shield*, No. C13-1214RAJ, 2015 WL 519932, at *4 (W.D. Wash. Feb. 9, 2015) ("Questions of a class representative's adequacy dovetail with questions of his counsel's adequacy.").

In sum, Lead Plaintiff and the Fund are well-suited to represent the Class, have no interests antagonistic to other Class members, and, like other Class members, have been injured by Defendants' alleged material misrepresentations and omissions during the Class Period and suffered losses therefrom. Lead Plaintiff and the Fund are willing and able to prosecute this Action on behalf of the Class and "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

### B. The Requirements Of Rule 23(b)(3) Are Satisfied

In addition to meeting the prerequisites of Rule 23(a), a class action also must satisfy at least one of the conditions of Rule 23(b) to be certified. Lead Plaintiff seeks class certification under Rule 23(b)(3), which requires "predominance" and "superiority," both of which are satisfied here.

#### 1. Common Questions of Law and Fact Predominate

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 428 (D. Ariz. 2013) (same); *see also In re Diamond Foods*, 295 F.R.D. at 246 ("Class certification under Rule 23(b)(3) is proper when common questions

represent a significant portion of the case and can be resolved for all members of the class in a single adjudication."). Accordingly, Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof,'" only "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen*, 568 U.S. at 469 (alterations in original).

Importantly, in securities fraud cases, the common issues of falsity, materiality, and loss causation predominate over any individual issues because "failure of proof" of any of these elements "would end the case" for all putative class members. *Id*. at 468; *see also id*. at 467 ("[M]ateriality is a 'common questio[n]' for purposes of Rule 23(b)(3)." (second alteration in original)); *Erica P. John Fund, Inc. v. Halliburton Co.* (*Halliburton I*), 563 U.S. 804, 813 (2011) (noting plaintiffs are not required to "show loss causation as a condition of obtaining class certification"); *Halliburton II*, 134 S. Ct. at 2416-17; *In re Merck & Co., Sec., Derivative & "ERISA" Litig.*, No. 05-1151 (SRC), 2013 WL 396117, at *12 (D.N.J. Jan. 30, 2013) ("Loss causation for the putative class is also capable of proof through common evidence. Each class member's claim for relief is based on the same corrective disclosures that allegedly caused Merck's stock value to drop.").

"[T]he predominant questions in this case are whether Defendants made material misrepresentations that violated the securities laws, whether [Twitter]'s stock price was artificially inflated during the proposed Class period, and whether purchasers of [the] stock suffered damages as a result." *Maiman v. Talbott*, No. SACV 09-00012 AG (ANx), 2011 WL 13065750, at *6 (C.D. Cal. Aug. 29, 2011). As in most securities fraud class action cases, the answer to each of these questions will be tried and proven by common evidence because Defendants' alleged misconduct affected all Class members in the same manner, i.e., Defendants' alleged false and misleading statements and omissions artificially inflated the price of Twitter's common stock. Thus, "common questions predominate over individual issues." *Id.*; *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . securities fraud" (citing Rule 23(b)(3) advisory committee notes)); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D.

Cal. 2002) ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation[s] Defendants made during the Class Period and are common to the class.").

Simply put, the predominant issue of Defendants' liability may be resolved on a classwide basis by resolution of these common questions. If liability is established, all that will remain is the purely mechanical act of computing the damages suffered by each Class member. As explained *infra* Part IV.B.2.c, damages in this case can be calculated on a classwide basis. *See also* Feinstein Report ¶¶ 147-53.

### 2. The Class Is Entitled to a Presumption of Reliance Under Both *Basic* and *Affiliated Ute*

In a Rule 10b-5 action involving false and misleading statements, the proposed class may avail itself of the fraud-on-the-market presumption of reliance recently reaffirmed by the Supreme Court in *Halliburton II*. *See* 134 S. Ct. at 2417. Furthermore, in "'a mixed case of misstatements and omissions,'" a presumption of reliance under *Affiliated Ute* is applicable if "the case can be characterized as one that primarily alleges omissions." *Binder v. Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999); *see also Cartwright v. Viking Indus., Inc.*, No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887, at *12 (E.D. Cal. Sept. 14, 2009) (same).

Here, Lead Plaintiff and the Fund have established that classwide reliance may be presumed under *Basic* or *Affiliated Ute*.

#### a. The Class is entitled to a presumption of reliance under *Basic*'s fraud-on-the-market theory

Classwide reliance is established in this Action through the "fraud-on-the-market" presumption of reliance – "that the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations" and that investors in such markets transact "in reliance on the integrity of that price" – which the Supreme Court set forth in *Basic*, 485 U.S. at 246-47, and recently reaffirmed in *Halliburton II*, 134 S. Ct. at 2408. Application of *Basic*'s "fraud-on-the-market theory obviates any need for class members to prove reliance individually – the relevant concern at this juncture under Rule 23(b)(3)." *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226 YGR, 2016 WL 1042502, at *6 n.3 (N.D. Cal. Mar. 16, 2016); *see also Basic*, 485 U.S. at 245.

To invoke the *Basic* presumption of reliance, Lead Plaintiff and the Fund must establish that "(1) the alleged misrepresentations were publicly known, (2) the stock traded in an efficient market, and (3) the relevant transaction took place 'between the time the misrepresentations were made and the time the truth was revealed.'" *In re Diamond Foods*, 295 F.R.D. at 247 (quoting *Halliburton I*, 563 U.S. at 811). These prerequisites are readily met here. The Complaint alleges that Defendants made material public misrepresentations and omissions between February 5, 2015 and July 28, 2015 that artificially inflated (or artificially maintained) the market price of Twitter's stock. Lead Plaintiff's funds and the Fund both bought Twitter common stock during this period. *See* ECF No. 21-3; ECF No. 30-2. And, as explained more fully below, Twitter's common stock traded in an efficient market – the NYSE. *See Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. 07-cv-7097, 2008 WL 8166001, at *3 (C.D. Cal. Nov. 13, 2008) (noting that if a stock trades on the NYSE and has a high trading volume, then "an efficient market is presumed" and "reliance is easily pled with a simple allegation that the NYSE price was relied upon.").

### i.      The *Cammer v. Bloom* test for market efficiency

Courts, including the Ninth Circuit, regularly consider the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), when evaluating market efficiency. *See Binder*, 184 F.3d at 1064-65; *see also In re Diamond Foods*, 295 F.R.D. at 247. The five *Cammer* factors are: (1) "whether the stock trades at a high weekly volume"; (2) "whether securities analysts follow and report on the stock"; (3) "whether the stock has market makers and arbitrageurs"; (4) "whether the company is eligible to file [a short form registration statement]"; and (5) "whether there are 'empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price.'" *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 571 (C.D. Cal. 2012) (internal quotation marks omitted); *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 268 n.16 (N.D. Cal. 2011) (same). In addition, some courts have found that additional factors also can weigh in favor of finding market efficiency, *see, e.g.*, *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001), *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 412-13 (E.D. Va. 2015); *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 160

(S.D.N.Y. 2012). *See also infra* Part IV.B.2.a.vii; Feinstein Report ¶¶ 34-44 (discussing the relevance of *Cammer*, *Krogman*, and other factors).

Here, each of the relevant factors supports a finding of market efficiency.

### ii.     Twitter stock experienced high trading volume

Under the first *Cammer* factor, "[a] high average trading volume supports a finding of market efficiency, because it 'implies significant investor interest in the company,' and that interest 'implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information.'" *Nguyen*, 287 F.R.D. at 571. "'[A]verage weekly trading of 2% or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; 1% would justify a substantial presumption.'" *Id*. During the Class Period, an average of approximately 106.1 million shares of Twitter common stock changed hands weekly, and the weekly trading volume during the Class Period was 16.1% of the shares outstanding. *See* Feinstein Report ¶ 47. Such heavy trading volume strongly supports the conclusion that the market for Twitter common stock was efficient during the Class Period.

### iii.     A sufficient number of financial analysts covered Twitter

Under the second *Cammer* factor, "[c]overage by securities analysts indicates market efficiency because the price of a company's stock is often affected by analyst reports of information they learn about that stock." *Nguyen*, 287 F.R.D. at 571 (quoting *Cammer*, 711 F. Supp. at 1286). During the Class Period, at least 35 equity analysts covered Twitter, including major firms such as Bank of America Merrill Lynch, Citigroup, Goldman Sachs, and J.P. Morgan. *See* Feinstein Report ¶¶ 50-53. News regarding Twitter also was available from multiple other sources. *See id.* at ¶¶ 56-58. Thus, the second *Cammer* factor supports a finding of market efficiency. *See, e.g.*, *In re Diamond Foods*, 295 F.R.D. at 248 (noting coverage by thirteen analysts supported finding of market efficiency); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 7406418, at *5 n.2 (N.D. Cal. Dec. 22, 2016) (Tigar, J.) ("It bears noting that other courts have weighed this factor in favor of market efficiency when only four or six analysts published reports during the class period.").

#### iv. Twitter common stock traded on the NYSE

According to the third *Cammer* factor:

> market makers . . . further provide a mechanism through which the market could be expected to receive information and fully incorporate it into the stock price of a security, as these individuals "would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level."

*In re Diamond Foods*, 295 F.R.D. at 248 (quoting *Cammer*, 711 F. Supp. at 1286-87). "'A market-maker is one who helps establish a market for securities by reporting bid-and-asked quotations (the price a buyer will pay for a security and the price a seller will sell a security) and who stands ready to buy or sell at these publicly quoted prices.'" *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 613-14 (C.D. Cal. 2009). During the Class Period, Twitter's common stock traded on the NYSE, virtually guaranteeing a liquid market for the security. *See In re Juniper Networks*, 264 F.R.D. at 591 ("In this case, Plaintiffs made a *prima facie* showing that the fraud-on-the-market presumption of reliance applied because Plaintiffs sufficiently established that Juniper's stock was actively traded on an efficient market – the NASDAQ."); *see also Freeman v. Laventhol & Horwath*, 915 F.2d 193, 199 (6th Cir. 1990) ("[I]t appears that securities traded in national secondary markets such as the New York Stock Exchange . . . are well suited for application of the fraud on the market theory. The high level of trading activity ensures that information from many sources is disseminated into the marketplace and consequently is reflected in the market price. This is the premise upon which the fraud on the market theory rests."); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 489 n.3 (S.D.N.Y. 2011) ("[T]he NYSE is a paradigmatic efficient market." (citing *Basic*, 485 U.S. at 248 n.29)); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 183 (S.D.N.Y. 2008) ("[N]o argument could be made that the New York Stock Exchange is not an efficient market."); *see also* Feinstein Report ¶¶ 59-65. Nonetheless, there were still 147 market makers for Twitter common stock during the Class Period, Feinstein Report ¶ 64, more than fulfilling both the letter and spirit of this factor, *see Cammer*, 711 F. Supp. at 1293 (finding ten market makers justified presumption of efficient market); *In re Diamond Foods*, 295 F.R.D. at 248 (finding nineteen brokers fulfilled this *Cammer* factor for stock trading on developed markets such as the NASDAQ).

### v. Twitter was eligible for short form registration

An issuer is eligible to file a Form S-3 registration statement if it has filed SEC reports for twelve consecutive months, *see* 17 C.F.R. § 239.13(a)(3), and possesses a market capitalization of at least $75 million, *see* 17 C.F.R. § 239.13(b)(1). Because a company's eligibility to file a Form S-3 is "based on the assumption that the market has sufficient information about an issuer," *In re Countrywide*, 273 F.R.D. at 613, Twitter's eligibility to do so is indicative of market efficiency, *see Cammer*, 711 F. Supp. at 1284-85. *See also* Feinstein Report ¶¶ 66-71.

### vi. The price of Twitter common stock reacted to new information

The fifth *Cammer* factor, a causal connection between new information and stock price movement, is "'the essence of an efficient market and the foundation for the fraud on the market theory.'" *Nguyen*, 287 F.R.D. at 574; *In re Countrywide*, 273 F.R.D. at 614 (describing fifth *Cammer* factor as the "most important" in the analysis).[5] The "most common test for a causal connection" is an event study. *In re Countrywide*, 273 F.R.D. at 614; *see also Marvell Tech. Grp.*, 2017 WL 4865559, at *6 (noting an event study "is a feature of virtually every securities action"). "An event study attempts to determine whether new information correlates with a price movement – including the price movement's direction and, perhaps, magnitude. Causation may be inferred from this correlation." *In re Countrywide*, 273 F.R.D. at 614. Here, as explained in his report, Prof. Feinstein has conducted just such an event study, *see* Feinstein Report ¶¶ 89-142, to demonstrate "'empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price," *In re Diamond Foods*, 295 F.R.D. at 248 (quoting *Cammer*, 711 F. Supp. at 1287). Specifically, Prof. Feinstein conducted an event study including empirical tests on Class Period earnings-related announcement events. The results of his event study and statistical analyses are proof of a causal connection between the market learning new information about Twitter and movement in the Company's stock

---

[5] Though admittedly important, "direct evidence of price impact under *Cammer* 5 is not always necessary to demonstrate market efficiency." *Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017).

price.  *See* Feinstein Report ¶ 145; *see also Nguyen*, 287 F.R.D. at 574.  Thus, the fifth *Cammer* factor supports a finding of market efficiency.

### vii.     Other market efficiency considerations also support efficiency

Some courts have found that the additional *Krogman* factors also can weigh in favor of finding market efficiency:  (i) large market capitalization; (ii) large public float; (iii) narrow bid-ask spread; and (iv) the presence of institutional investors.  *See, e.g.*, *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015).

Here, each of these additional factors was present during the Class Period.  As discussed *supra* Part IV.B.2.a.i, Twitter's large market capitalization and large public float support a finding of market efficiency.  Feinstein Report ¶¶ 73-77.  The bid-ask spread for Twitter's common stock in dollar terms averaged $0.01 during the Class Period, well below the typical bid-ask spreads exhibited by other publicly traded stocks in the United States during that period.  *Id.* at ¶¶ 78-82.  Expressed as a percentage, the average bid-ask spread for Twitter common stock over the course of the Class Period was 0.02%.  *Id.* at ¶ 80.  Significantly, courts have found a spread as high as 2.44% to weigh in favor of market efficiency.  *See Nguyen*, 287 F.R.D. at 574 (noting this fact and consequently finding that a spread of 0.58% supported efficiency).  Finally, at least 789 major institutions owned Twitter common stock during the Class Period, further supporting a finding of market efficiency.  *See* Feinstein Report ¶¶ 55 & n.16; *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 515 (1st Cir. 2005) (affirming class certification when "at least thirty" institutional investors invested in Xcelera during the class period).

Each factor discussed above supports a finding of market efficiency.  Accordingly, the Class is entitled to a presumption of reliance.  *See, e.g.*, *Nguyen*, 287 F.R.D. at 575 (holding fraud on the market presumption applies when plaintiffs "clearly met the required showing for an efficient market").

### b.     The Class Is Entitled to a Presumption of Reliance Under *Affiliated Ute*

Because the Complaint also states claims based on Defendants' failure to disclose material information that "a reasonable investor might have considered . . . important in the making of [an

investment] decision," the Class is entitled to a presumption of reliance under *Affiliated Ute*. 406 U.S. at 153-54 (holding presumption appropriate when claims "involv[e] primarily a failure to disclose"); *see also Binder*, 184 F.3d at 1064 (*Affiliated Ute* presumption applies in "cases that primarily allege omissions").

The *Affiliated Ute* doctrine arises out of the pragmatic reality that, "[w]hen a defendant's fraud consists primarily of omissions, '[r]equiring a plaintiff to show a speculative set of facts, i.e., how he would have behaved if omitted material information had been disclosed, places an unrealistic evidentiary burden on the 10(b) plaintiff.'" *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013) (second alteration in original). "Accordingly, reliance is presumed when it would be impossible to prove." *Id*.

As alleged in the Complaint, Defendants deceived the market by omitting material information regarding DAU that was central to investors' ability to gauge Twitter's potential for growth. Accordingly, "positive proof of reliance is not a prerequisite to recovery," but instead may be presumed for all members of the proposed Class. *Affiliated Ute*, 406 U.S. at 153-54; *see also Basile v. Valeant Pharm. Int'l, Inc.*, No. SACV 14-2004-DOC (KES), 2017 WL 3641591, at *13 (C.D. Cal. Mar. 15, 2017) ("This is a case involving a duty to disclose – accordingly *Affiliated Ute* applies."); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, No. 14-cv-00722-SI, 2016 WL 1598666, at *6-7 (N.D. Cal. Apr. 21, 2016) (noting plaintiff entitled to *Affiliated Ute* presumption of reliance when claims primarily involved failure to disclose related-party transactions under GAAP). Moreover, as with the fraud-on-the-market presumption of reliance, a plaintiff need not prove materiality to invoke the *Affiliated Ute* presumption at the class certification stage; it need only be alleged. *See, e.g.*, *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 381 (S.D.N.Y. 2015) ("[B]ecause the Court is satisfied that Kaplan Plaintiffs have sufficiently alleged the materiality of the omissions at issue, reliance may be presumed pursuant to the standard established in *Affiliated Ute*."); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 269 (S.D.N.Y. 2014) ("'Dodona has sufficiently alleged the materiality of the omissions, and reliance may therefore be presumed.'" (citing *Affiliated Ute*, 406 U.S. at 153-54)); *accord Amgen*, 568 U.S. at 467 ("[M]ateriality can be proved through evidence common to the class.").

The Class, therefore, is entitled to the *Affiliated Ute* presumption to establish reliance.

### c. Damages Will Be Calculated in the Same Manner for All Class Members

Courts have consistently found that "the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). This is especially true for securities fraud cases, where the process of computing damages after liability is established is "'virtually a mechanical task.'" *Diamond Foods*, 295 F.R.D. at 252 (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

While not necessary for certification, the damages for all members of the proposed Class here can be calculated by the same methodology. In accordance with the out-of-pocket measure of damages, damages for all members of the Class will be calculated along the lines of the following: for each share of Twitter common stock purchased or acquired during the Class Period and held through at least one of the disclosures of the fraud, the damages shall be the lesser of:

(i) the purchase/acquisition price minus the statutory sales price;[6] or

(ii) the total inflation that was removed from the stock price following the disclosures of the fraud, as determined by the jury.

While the per share damages for each member of the Class may vary based on the timing of stock purchases or acquisitions and stock sales, the methodology used to identify the damages will be the same for all Class members. Feinstein Report ¶¶ 149-53. And, a jury can determine the total inflation that was removed from Twitter's stock price based on the results of an event study similar to that performed by Prof. Feinstein in support of his analysis and opinion regarding the efficiency of the market for Twitter stock. *See, e.g.*, *Diamond Foods*, 295 F.R.D. at 251 ("'The

---

[6] The PSLRA imposes a 90-day look back provision on the calculation of damages. 15 U.S.C. § 78u-4(e)(1). In accordance with that provision, for shares held more than 90 days following "the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market" the statutory sales price is "the mean trading price of [Twitter common stock] during the 90-day period." *Id*. For shares sold prior to the expiration of the 90-day period, the statutory sales price is "the mean trading price of [Twitter common stock] during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the [stock is sold]." 15 U.S.C. § 78u-4(e)(2).

event study method is an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation.'").

### 3. Superiority Is Established

To certify the proposed Class, the Court also must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). "A principal purpose behind Rule 23 class actions is to promote 'efficiency and economy of litigation.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009). Thus, courts often find classwide adjudication to be superior to alternatives in large-scale securities cases such as this one, because "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1234 (9th Cir. 1996). Class treatment also would "permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[M]ost of the plaintiffs would have no realistic day in court if a class action were not available."). "Courts in this district have recognized the utility of the class action device in securities cases." *Hayes*, 2016 WL 7406418, at *10 (Tigar, J.).

Rule 23(b)(3) sets forth four superiority factors: (1) the class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced; (3) the desirability of concentrating the litigation of the claims in one forum; and (4) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). Here, each factor weighs strongly in favor of class certification.

First, the interest of Class members in asserting individual claims is limited. The proposed Class consists of a large number of purchasers of Twitter stock who are geographically dispersed and whose individual damages likely are small enough to keep individual litigation from being economically worthwhile. Absent certification, the burden and expense of litigating would not be distributed among the Class, one of the advantages afforded by the class action mechanism. *See Johnson v. Hartford Cas. Ins. Co.*, No. 15-cv-04138-WHO, 2017 WL 2224828, at *16 (N.D. Cal. May 22, 2017) ("'Where damages suffered by each putative class member are not large, this factor

weighs in favor of certifying a class action.'"); *Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369, 376 (N.D. Cal. 2007) ("The amounts involved are modest per investor. No single investor could hope to recover more than it would cost to prosecute an individual suit.").

Second, Lead Counsel is not aware of other pending § 10(b) litigation commenced by any Class member in the United States that tracks the allegations set forth in the Complaint. The absence of other matters further confirms the limited interest individual Class members have in prosecuting separate actions.

Third, concentrating the litigation in this Court has many benefits, including eliminating the risk of inconsistent adjudications and promoting the fair and efficient use of the judicial system. *See Nguyen*, 287 F.R.D. at 575 ("Concentrating litigation in one forum is desirable where a company was listed on a national exchange, and no one has identified a meaningful difficulty in managing this class action."). Moreover, Twitter maintains its headquarters in San Francisco, further supporting concentrating litigation before this Court. *See Hatamian*, 2016 WL 1042502, at *10 ("[C]oncentrating the litigation in this [c]ourt is adequately justified because [defendant] maintains its headquarters in this District."). These factors thus weigh in favor of class certification.

Finally, there are no management difficulties that will preclude this Action from being maintained as a class action. Consistent with Rule 23(b)(3), certification of the case as a class action would not only be superior to other available methods for fairly and efficiently adjudicating the controversy, but also appears to be the sole method for fairly and efficiently litigating the claims of all members of the proposed Class. *See, e.g.*, *Nguyen*, 287 F.R.D. at 575 ("If united by a common core of facts, and a presumption of reliance on an efficient market, class actions are the superior way to litigate a case alleging violations of securities fraud.").

Accordingly, under Rule 23(b)(3), the class action mechanism is superior to any other method to secure the just, speedy, and efficient determination of Class members' claims.

### C. Motley Rice And Robbins Geller Should Be Appointed Co-Class Counsel

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." Lead Plaintiff respectfully requests that the Court appoint Motley Rice and Robbins Geller as Co-Class

Counsel. In appointing class counsel, the court should consider counsel's work "in identifying or investigating potential claims in the action," "counsel's experience in handling class actions," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Motley Rice and Robbins Geller are well-qualified to prosecute this case on behalf of the Class.

Motley Rice and Robbins Geller attorneys have extensive securities litigation experience and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Motley Rice Firm Resume, attached as Ex. E to the Levin Decl.; Robbins Geller Firm Resume, attached as Ex. F to the Levin Decl. Motley Rice and Robbins Geller attorneys already have undertaken a vigorous prosecution of this Action, including, *inter alia*, conducting an extensive investigation of the claims; developing a detailed plan for the prosecution of the case; preparing a detailed Complaint and successfully defending that Complaint from a Rule 12(b)(6) dismissal; propounding substantial discovery on Defendants and third parties; responding to Defendants' discovery requests; and pursuing class certification. Accordingly, Motley Rice and Robbins Geller fulfill the requirements of Rule 23(g) and the Court should appoint the firms as Co-Class Counsel.

## V. CONCLUSION

Lead Plaintiff respectfully requests that the Court: (i) certify this Action as a class action pursuant to Rules 23(a) and 23(b)(3); (ii) appoint Lead Plaintiff and the Fund as Co-Class Representatives pursuant to Rules 23(a) and 23(b)(3); and (iii) appoint Motley Rice and Robbins Geller as Co-Class Counsel pursuant to Rule 23(g).

DATED: February 15, 2018                 Respectfully submitted,

                                        */s/ Lesley E. Weaver*
                                        LESLEY E. WEAVER (191305)
                                        BLEICHMAR FONTI & AULD LLP
                                        555 12th Street, Suite 1600
                                        Oakland, CA 94607
                                        Telephone: (415) 445-4003
                                        Facsimile: (415) 445-4020

                                        Liaison Counsel for Lead Plaintiff and the Class

MOTLEY RICE LLC
GREGG S. LEVIN (admitted *pro hac vice*)
MEGHAN S. B. OLIVER (admitted *pro hac vice*)
MAX N. GRUETZMACHER (admitted *pro hac vice*)
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile:  (843) 216-9450

Lead Counsel for Lead Plaintiff and the Class

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT H. SAHAM (188355)
DANIEL S. DROSMAN (200643)
NATHAN R. LINDELL (248668)
SUSANNAH R. CONN (205085)
JUAN CARLOS SANCHEZ (301834)
CHRISTOPHER R. KINNON (316850)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone: (619) 231-1058
Facsimile:  (619) 231-7423

Additional Counsel for the Class

**ECF ATTESTATION**

I, Lesley E. Weaver, am the ECF User whose ID and Password are being used to file this Lead Plaintiff's Notice of Motion and Motion for Class Certification.

DATED:  February 15, 2018                    By:                          */s/ Lesley E. Weaver*
                                                                                       LESLEY E. WEAVER