**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated, | Civil Action No. 1:20-cv-09132 |
| | CLASS ACTION |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, | |
| Defendants. | |

| | |
|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:20-cv-09573 |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH and MARK A.L. MASON | |
| Defendants. | |

*(caption continues on following page)*

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE PUBLIC SECTOR PENSION INVESTMENT BOARD FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS, AND IN OPPOSITION TO THE COMPETING MOTIONS**

TIMOTHY LIM, individually and on behalf of all others similarly situated,

                    Plaintiff,

      v.

CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,

                 Defendants.

Civil Action No. 1:20-cv-10360

CLASS ACTION

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................... 1

ARGUMENT ................................................................................................................................... 4

    A.   PSP Has The Largest Financial Interest................................................................................ 8

        1.    PSP Has The Largest Recoverable Loss.................................................................8

        2.    PSP Purchased More Net Shares And Total Shares ..............................................10

    B.   PSP Satisfies The Relevant Requirements Of Rule 23....................................................... 13

    C.   KBC And Pembroke Are A Group That Lacks A Preexisting Relationship .................... 14

    D.   The Remaining Movants Do Not Trigger The Presumption ............................................. 15

CONCLUSION.............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*City of Hollywood Firefighters' Pension Fund v. TransDigm Group, Inc.*,
2017 WL 6028213 (N.D. Ohio Dec. 5, 2017) .......................................................... 12

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) .................................................... 2, 5

*Galmi v. Teva Pharms. Indust. Ltd.*, 302 F. Supp. 3d 485 (D. Conn. 2017).................. 5, 7, 10, 15

*Hedick v. Kraft Heinz Co.,* 2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ......................... 6

*In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298 (S.D. Ohio 2005)................................... 11

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) ............................................................. 16

*In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...................... 6

*In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102 (N.D. Cal. 2001) .............................. 11

*In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156 (S.D.N.Y. 1997) ............................................. 15

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ........................................................................................ 13

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013) ................................................................. 6

*In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618 (S.D.N.Y. 2015)............................................... 15

*In re VimpelCom, Ltd.*, 2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016)......................................... 6

*Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................... 6, 9, 15

*Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259 (S.D.N.Y. 2019)........................................... 6

*Leavitt v. Alnylam Pharms., Inc*., 378 F. Supp. 3d 60 (D. Mass. 2019) ....................................... 7

*Maliarov v. Eros Int'l PLC*, 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ........................... passim

*Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846 (E.D. Pa. 2018)............................................... 7

*Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013)........................ 6

*Ruland v. InfoSonics Corp.,* 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006)........................ 5, 11, 12

*Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265 (S.D.N.Y. 2015)...................................... 6, 10

*Schueneman v. Arena Pharms., Inc.,*
  2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ................................................................... 5, 8, 11

*Stitt v. On Deck Capital, Inc.,*
  2016 WL 889535 (S.D.N.Y. Feb. 17, 2016) ........................................................................... 13

*Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607 (S.D.N.Y. 2015) ...................... 6

*Williams v. Block.One*, 2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020) ........................................ 15

**Statutes**

15 U.S.C. § 78u.............................................................................................................. 1, 4, 10, 13

**Other Authorities**

1995 U.S.C.C.A.N. 730 (1995)...................................................................................................... 14

H.R. Conf. Rep. No. 104-369 (1995).............................................................................................. 14

*Manual for Complex Litigation* (4th ed. 2004)............................................................................. 11

**Rules**

Fed. Civ. R. P. 23 .................................................................................................................... 13, 15

Fed. Civ. R. P. 42 .......................................................................................................................... 16

PSP respectfully submits this memorandum of law in further support of its motion (ECF No. 37) to be appointed Lead Plaintiff, for approval of its selection of BFA as Lead Counsel, for consolidation of all related securities class actions, and in opposition to the competing motions.[1]

## PRELIMINARY STATEMENT

The PSLRA states that the Court is to appoint as Lead Plaintiff the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). This Court, consistent with the overwhelming trend in this District and Circuit, equates "largest financial interest" with "recoverable losses." *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *2-3 (S.D.N.Y. Apr. 5, 2016) (Nathan, J.). Here, PSP has the largest recoverable loss of any movant and thus has the largest financial interest and is entitled to be appointed Lead Plaintiff.[2] PSP is one of the largest institutional investors in Canada, has experience overseeing complex litigation and supervising outside counsel, and is a single sophisticated party represented by a single law firm that will provide the class with excellent and cost-effective representation.

The only movant to claim a facially larger loss than PSP is the KBC and Pembroke group. However, KBC and Pembroke actually have a far smaller financial interest under this Court's ruling in *Eros* and the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336

---

[1] Unless otherwise indicated: citations to ECF No. __ refer to the docket in *City of Sunrise*; capitalized terms are defined in PSP's initial brief (ECF No. 39); and emphasis is added.

[2] On December 29, 2020, PSP and five other movants sought Lead Plaintiff appointment: (1) KBC Asset Management NV ("KBC") and Pembroke Pines Firefighters & Police Officers Pension Fund ("Pembroke") (ECF No. 25); (2) Rabi Ghosh ("Ghosh") (ECF No. 26); (3) Construction Laborers Pension Trust for Southern California ("Laborers Pension Trust") (ECF No. 31); (4) Iron Workers Local 580 Joint Funds ("Iron Workers") (ECF No. 21); and (5) Dale Townsend and John Corso (ECF No. 18). On January 4, 2021, Townsend and Corso submitted a Notice of Withdrawal stating that they "do not appear to have the largest financial interest." ECF No. 43. On January 12, 2021, Ghosh and Laborers Pension Trust likewise submitted notices of non-opposition recognizing that they do not possess the largest financial interest. *See* ECF Nos. 45-46.

(2005).  The Supreme Court held in *Dura* that there must be a causal connection between a plaintiff's investment loss and the defendant's fraudulent conduct.  *Id.* at 346.  That causal connection requires a "corrective disclosure" that reveals the defendant's fraud and causes the price of the securities to decline.  *See id.*  If, however, "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss" and the purchaser is not entitled to a recovery under the federal securities laws.  *Id.* at 342.

KBC and Pembroke acknowledge in their motion that "[t]he truth began to emerge on August 13, 2020, when reports surfaced that Citi had accidentally paid almost $900 million in principal payments to creditors of Revlon, Inc.," causing the price of Citi stock to decline.  *See* ECF No. 28 at 4-5.  Significantly, the vast majority of KBC's losses resulted from its sales of Citigroup stock **before** that August 13 disclosure.  As KBC stated in prior litigation, "losses incurred before the first fraud-correcting disclosure alleged in an action **must**, pursuant to *Dura* . . . be excluded from the PSLRA financial interest analysis."  *See* Bleichmar Decl. Ex. A at 3.

Eliminating the non-recoverable losses under the Supreme Court's holding in *Dura*, which is consistent with this Court's ruling in *Eros* and KBC's own arguments, reduces KBC's and Pembroke's financial interest by nearly 80%, to just $6.0 million.  This is 40% less than PSP's recoverable loss of $10.1 million.[3]  In fact, PSP has the largest recoverable loss of all the other movants **combined.**  As such, PSP has the largest financial interest in the litigation.

---

[3] Charts depicting the calculation of PSP's, KBC's, and Pembroke's recoverable losses under *Dura* are attached as Exhibits B-D to the Bleichmar Decl.

2



PSP's superior financial interest is further confirmed when analyzing the remaining *Lax/Olsten* factors that this Court considered in *Eros*. Similar to recoverable losses, PSP also purchased more total shares and net shares than all other movants ***combined***.



3



Because PSP has the largest financial interest in the litigation and has made a preliminary showing of typicality and adequacy, it is entitled to a strong presumption that it is the most adequate plaintiff. It is a single sophisticated entity represented by a single experienced law firm, whereas KBC and Pembroke are an *unrelated* group with multiple law firms. Accordingly, PSP respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

## ARGUMENT

The PSLRA states that the presumptive Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the [typicality and adequacy] requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "This presumption may only be rebutted by proof that the [] most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Eros*, 2016 WL 1367246, at *2 (citation omitted).

When assessing financial interest at the Lead Plaintiff stage, this Court—consistent with numerous others in this District and Circuit—has held that the most important factor is the amount of "losses that will actually be recoverable in the class action.'" *Id.* Indeed, "courts within [the

4

Second] Circuit overwhelmingly agree that a movant may only include 'losses that will actually be recoverable in the class action.'" *Galmi v. Teva Pharms. Indust. Ltd.*, 302 F. Supp. 3d 485, 498 (D. Conn. 2017) (collecting cases). This makes sense given that "one's financial interest in the litigation can only consist of what one can recover in that action." *Teva*, 302 F. Supp. 3d at 499.

As this Court recognized in *Eros*, the Supreme Court held in *Dura* that recoverable losses in securities fraud actions include only those proximately caused by fraud. *Eros*, 2016 WL 1367246, at *2. *Dura* thus requires "a plaintiff [to] prove that the company's stock price later declined (and thus caused plaintiff's shares to be worth less) immediately following a disclosure of the alleged misconduct to the public." *Id*. "For this reason, losses 'incurred before [a company's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue." *Id.*; *see also Dura*, 544 U.S. at 342 ("if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").

As a result, for purposes of evaluating a Lead Plaintiff movant's financial interest, this Court and numerous others have disregarded losses resulting from securities transactions before the truth was disclosed.[4] *See Eros*, 2016 WL 1367246, at *2; *Teva*, 302 F. Supp. 3d at 498-99 ("Courts within the Second Circuit consistently hold that, when calculating a proposed lead plaintiff's estimated losses, the court 'should not include losses resulting from in-and-out

---

[4] Likewise, courts have also ignored gains on securities transactions that occurred prior to the disclosure of the truth because those gains are not connected to the alleged fraud. *See Schueneman v. Arena Pharms., Inc.,* 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011) ("for purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed"); *see also Ruland v. InfoSonics Corp.,* 2006 WL 3746716, at *5-6 (S.D. Cal. Oct. 23, 2006) (ignoring gains incurred prior to disclosure of truth in light of *Dura*).

transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public'"); *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (rejecting application of Lead Plaintiff movant that "artificially inflate[d] their losses . . . [by] includ[ing] as 'losses' sales that the [movant] made *before* the . . . revelation" of the alleged fraud) (emphasis in original); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (movant's "losses from the sale of [] shares []—prior to the [first pleaded corrective] disclosure—are not recoverable under *Dura* and cannot be considered in calculating her losses"); *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4-5 & n.6 (E.D.N.Y. Mar. 2, 2007) ("it is clear that under *Dura* and its progeny, any losses that [movant] may have incurred before [company's] misconduct was ever disclosed . . . are not recoverable" and "courts cannot include non-recoverable losses in a calculation of each litigant's financial interest").[5]

Since *Eros*, courts have continued to limit their consideration of financial interest to losses that are recoverable under *Dura*. Indeed, "the recent trend in this district is for movants to . . . remove any losses arising from securities that were bought and sold <u>before</u> a defendant's corrective disclosure." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019) (emphasis in original); *see also Hedick v. Kraft Heinz Co.,* 2019 WL 4958238, at *6 (N.D. Ill. Oct. 8, 2019)

---

[5] *See also Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015) ("When selecting a lead plaintiff, courts must consider only those losses that will actually be *recoverable* in the class action") (emphasis in original); *In re VimpelCom, Ltd.*, 2016 WL 5390902, at *2 (S.D.N.Y. Sept. 26, 2016) ("To measure financial loss, courts should only consider those losses that will actually be recoverable in a class action"); *Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) (denying Lead Plaintiff application of movant that "purchased the stock at the allegedly fraudulently inflated price and sold it before the corrective disclosure"); *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) (declining to appoint as Lead Plaintiff movant whose "loss calculation includes trading losses incurred prior to the [first] corrective disclosure . . . [which] are not recoverable in a securities fraud action").

("[T]hose class members who sold their common stock before the first corrective price decline[ ] cannot be said to have suffered economic loss caused by [the] alleged fraud"); *Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 64 (D. Mass. 2019) ("So-called 'in-and-out transactions' . . . are excluded from the calculation of approximate losses because any losses from those transactions lack a causal link to the allegedly false or misleading statements or omissions"); *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 (E.D. Pa. 2018) ("only those losses that are proximately caused by the defendant's fraud are recoverable. Consequently, losses incurred before disclosure of the relevant misrepresentation are not included in recoverable loss"); *Teva*, 302 F. Supp. 3d at 499.

Given the significant trend of courts applying *Dura* at the Lead Plaintiff stage, it is not surprising that KBC itself (as well as its counsel in this case) has endorsed the methodology. KBC acknowledged when represented by Motley Rice (KBC's proposed co-lead counsel here) in a previous case "that losses incurred before the first fraud-correcting disclosure alleged in an action **must**, pursuant to *Dura* . . . be excluded from the PSLRA financial interest analysis." *See* Bleichmar Decl. Ex. A at 3; *see also* Bleichmar Decl. Exs. E at 1-5; F at 1 (KBC acknowledging that it did not have the largest financial interest under *Dura* and withdrawing its Lead Plaintiff motion). Bernstein Litowitz (KBC's other proposed co-lead counsel) has likewise embraced the proposition that "courts 'overwhelmingly agree' that *Dura* applies at the lead plaintiff stage and that only 'losses that will actually be recoverable in the class action' can be considered." *See* Bleichmar Decl. Ex. E at 1 n.2.[6]

---

[6] PSP similarly recognized in its initial brief that "[c]ourts may also consider a movant's recoverable losses as assessed under the Supreme Court's ruling in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005)." ECF No. 39 at 7 n.4. Applying that test makes particular sense here given the amount of unrecoverable losses KBC asserts, its and its lawyers' prior adoption of that test, and the jurisprudence of this Court as well as that of this District and Circuit.

In addition to recoverable losses, courts also routinely look to the remaining *Lax/Olsten* factors to assess financial interest: (1) the total number of shares purchased; (2) net shares purchased; and (3) total net funds expended. *See Eros*, 2016 WL 1367246, at *2. Courts applying *Dura* frequently place significant weight on the net shares factor because "the candidate with the most net shares purchased will normally have the largest potential damage recovery." *See Arena Pharms.,* 2011 WL 3475380, at *4; *see also Eros,* 2016 WL 1367246, at *5 ("largest number of combined net shares" purchased is "[a]n additional factor counsel[ing] in favor of appoint[ment]"). KBC has likewise recognized in prior cases the importance of net shares given that the movant with the most net shares "is also likely to have the most 'recoverable' losses among all movants." *See* Bleichmar Decl. Ex. A at 4.

### A.    PSP Has The Largest Financial Interest

#### 1.    PSP Has The Largest Recoverable Loss

PSP has the largest financial interest in this case under the Supreme Court's holding in *Dura*, as reflected in the chart below. *See* Bleichmar Decl. Exs. B-D. The losses below exclude gains and losses on sales of Citigroup securities prior to the first alleged corrective disclosure on August 13, 2020. *See City of Sterling Heights* ¶43.

| Movant | Recoverable Loss (LIFO)[7] |
|---|---|
| PSP | $10,118,306 |
| KBC and Pembroke | $5,957,697 |
| Laborers Pension Trust | $1,858,135 |
| Iron Workers | $1,366,172 |
| Ghosh | $667,984 |
| Townsend and Corso | $22,636 |

This Court in *Eros* applied a slightly modified *Dura* analysis because the Lead Plaintiff movants there did not provide the Court with "sufficient data" to conduct more than a "rough estimate" of each movant's recoverable loss. *Eros*, 2016 WL 1367246, at *2. Even when utilizing the same calculation this Court applied in *Eros*, PSP still has the largest recoverable loss.

| Movant | Recoverable Loss *Eros* Method (LIFO)[8] |
|---|---|
| PSP | $9,006,066 |
| KBC and Pembroke | $4,341,840 |
| Laborers Pension Trust | $1,340,243 |
| Ghosh | $718,705 |
| Iron Workers | $534,661 |
| Townsend and Corso | $13,538 |

Significantly, KBC itself recognized that "[t]he truth began to emerge on August 13, 2020, when reports surfaced that Citi had accidentally paid almost $900 million in principal payments to creditors of Revlon, Inc.," and that "as a result of these disclosures, the price of Citi common stock dropped precipitously." ECF No. 28 at 4-5; *see also City of Sterling Heights* ¶¶43-44 (describing corrective disclosure and stock price decline from August 12-13, 2020).

---

[7] PSP assessed the movants' recoverable losses under the LIFO accounting method because that is the method that virtually every court has applied at the Lead Plaintiff stage. *See e.g., Alibaba*, 102 F. Supp. 3d at 531-32 (analyzing recoverable losses under the LIFO and noting that "most courts have adopted LIFO and have 'generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases'"). Nevertheless, under either LIFO or FIFO, PSP has the largest financial interest under the recoverable loss scenarios discussed herein.

[8] Charts depicting the calculation of PSP's, KBC's, and Pembroke's recoverable losses under the method this Court utilized in *Eros* are attached as Exhibits G–I to the Bleichmar Decl.

Under *Dura* (and consistent with *Eros*), the Court is to disregard any losses and gains incurred prior to that disclosure. While KBC and Pembroke claim a total loss of $28.7 million (ECF No. 28 at 6), that number includes approximately $22.7 million in losses incurred by KBC from sales of Citigroup stock early in the Class Period, prior to the first pleaded corrective disclosure on August 13, 2020. Because KBC acknowledges that the truth did not begin to be revealed until that date, under *Dura* and *Eros*, the losses KBC incurred on its earlier sales are not recoverable and cannot count towards its financial interest. *See Eros*, 2016 WL 1367246, at *2-3 (refusing to consider losses on sales of stock prior to first alleged disclosure); *Teva*, 302 F. Supp. 3d at 499 (refusing to consider losses on sales of shares "that were bought and sold during the class period and prior to the disclosure of [defendant's] alleged false statements"); *CannaVest,* 93 F. Supp. 3d at 274-75 ("transactions that took place prior to [the first corrective disclosure], will not be considered in calculating recoverable loss or in determining lead plaintiff status").

When losses and gains from sales prior to the August 13, 2020 disclosure are removed from the financial interest calculation, PSP's recoverable loss is $10.1 million, 40% greater than KBC's and Pembroke's recoverable loss of $6.0 million. Likewise, under the recoverable loss method this Court applied in *Eros*, PSP's loss is $9.0 million, which is 52% greater than KBC's and Pembroke's loss of $4.3 million. As such, PSP has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 2.    PSP Purchased More Net Shares And Total Shares

PSP not only has the largest recoverable loss in this case, but it also asserts the largest financial interest under the remaining *Lax/Olsten* factors. *See Eros*, 2016 WL 1367246, at *2 (explaining how in addition to recoverable loss courts consider "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . . ; (3) the net funds expended during the class period"). As set forth in the chart below, PSP purchased

nearly 345,000 net shares, *five times* more than Ghosh—the movant with the second most net shares—and *six times* more than KBC and Pembroke.  PSP also purchased over 6.5 million total shares, 36% more than KBC and Pembroke.

| Movant | Net Shares Purchased | Total Shares Purchased |
|---|---|---|
| **PSP** | 344,690 | 6,538,238 |
| **Ghosh** | 66,093 | 206,738 |
| **KBC and Pembroke** | 55,587 | 4,167,923 |
| **Townsend and Corso** | 1,400 | 4,900 |
| **Iron Workers** | (37,343)[9] | 139,220 |
| **Laborers Pension Trust** | (52,335) | 197,421 |

Courts consider these factors because they provide an objective basis to compare the financial interests of movants while losses may be impacted by sales of stock unrelated to the fraud, as discussed above.  *See Manual for Complex Litigation* § 31.31 (4th ed. 2004) (explaining *Lax-Olsten* factors are "helpful 'because they look to relatively objective indicators'").

Courts applying *Dura* place particular weight on the net shares metric because the investor that purchased the most net shares "will normally have the largest potential damage recovery." *Arena Pharms.*, 2011 WL 3475380, at *4 ("Courts that focus on potential recovery place the greatest weight on the number of net shares purchased during the class period"); *In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (number of net shares purchased is "determinative" of financial interest); *InfoSonics*, 2006 WL 3746716, at *6 ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery").  This is because the movant that purchased the most net shares—*i.e.*,

---

[9] Iron Workers purchased negative net shares and expended negative net funds.  *See* ECF No. 24-1.  This means that it sold more Citigroup stock than it purchased during the Class Period and received more in proceeds from those sales than it spent to buy the stock.  Courts have held that such "net sellers" and "net gainers" are atypical and inadequate Lead Plaintiffs because they may have benefitted from the alleged fraud.  *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (rejecting Lead Plaintiff motion of net seller and net gainer because they will have "trouble proving damages").

the movant who purchased and continued to hold a large number of shares through the end of the Class Period—will have a greater financial interest in the litigation because it was "left holding the bag when the fraud [was] revealed and the price of the stock drop[ped]." *City of Hollywood Firefighters' Pension Fund v. TransDigm Group, Inc.*, 2017 WL 6028213, at *2 (N.D. Ohio Dec. 5, 2017). Here, the amount of net shares PSP held at the end of the Class Period clearly shows that it was far more impacted than any other movant. *Id.*

That KBC and Pembroke expended slightly more net funds than PSP ($30.5 million v. $30.2 million) is outweighed by the fact that PSP incurred, by far, the largest recoverable loss and purchased the most net shares and total shares by a significant margin. This is a minute difference of roughly 1%.



Such a slight difference cannot overcome the advantage that PSP asserts on net shares and total shares purchased, as well as the critical metric of recoverable loss. *See InfoSonics*, 2006 WL 3746716, at *4-6 (appointing movant that incurred the largest recoverable loss, purchased the most shares and net shares, but did not expend the most net funds).

12

## B.    PSP Satisfies The Relevant Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, PSP satisfies the requirements of Rule 23.  *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(cc).  To overcome the presumption entitling PSP to appointment, the PSLRA requires "proof" of inadequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  No such proof exists in this case, and any arguments to the contrary should be rejected.  *See In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 288 F.R.D. 26, 39 (S.D.N.Y. 2012) (rejecting speculative assertions that "fail[ed] to meet the exacting proof standard required under the PSLRA").

PSP's claims are typical because like all other class members, PSP: (1) purchased Citigroup securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was damaged as a result.  *Stitt v. On Deck Capital, Inc.*, 2016 WL 889535, at *2-3 (S.D.N.Y. Feb. 17, 2016) (typicality satisfied when movant "claims that [defendant] issued false and misleading statements that caused the company's shares to trade at an inflated price [and] claims arise from the same course of conduct affecting each member of the proposed class").

PSP likewise satisfies the adequacy requirement of Rule 23 because it is capable of "fairly and adequately protect[ing] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  PSP has a substantial financial stake in the litigation and experience overseeing complex litigation and supervising outside counsel.  *See* ECF Nos. 39 at 9; 40-1; 40-4.  With approximately C$169.8 billion in net assets, there is no question that PSP is more than capable of devoting resources to this case and overseeing the matter.  *See* ECF No. 39 at 9.  Further, PSP's interests are aligned with those of other Class members and are not antagonistic in any way.  There are no

13

facts to suggest any actual or potential conflict of interest or other antagonism between PSP and other Class members.

PSP has further demonstrated its adequacy through its selection of BFA as Lead Counsel to represent the Class, a law firm that has achieved billions of dollars in recoveries and has consistently demonstrated its ability to litigate securities class actions in an efficient and effective manner. *See* ECF Nos. 39 at 9-10; 40-5.

In sum, PSP is a sophisticated institutional investor with the experience and resources necessary to oversee counsel and prosecute this action in the best interests of the Class. It is a single sophisticated institution represented by a single law firm. PSP also has a seasoned in-house counsel office dedicated to actively overseeing the litigation to ensure it is litigated efficiently and that the Class achieves the best possible result. PSP is precisely the type of investor that Congress encouraged to act as Lead Plaintiff in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995).

C.    **KBC And Pembroke Are A Group That Lacks A Preexisting Relationship**

KBC and Pembroke are an unrelated group comprised of a Belgian financial conglomerate and a Florida pension fund involving three law firms.[10] As this Court stated in *Eros*, courts "in this District, . . . permit [] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Eros*, 2016 WL 1367246, at *5. Here, it is uncertain how KBC's and Pembroke's "grouping would best serve the

---

[10] KBC and Pembroke state in their brief that they are represented by two law firms, Bernstein Litowitz and Motley Rice. *See* ECF No. 28 at 12-14. KBC adds in its PSLRA certification that "KBC is also represented and counseled in this matter by its attorney, Deborah M. Sturman [("Sturman")] of Sturman LLC." ECF No. 34-1 at 3 ¶9.

class." *Id.* As submitted above, PSP, the movant that asserts the largest financial interest, proposes to lead this case by itself and with a single firm.[11]

Indeed, "it is clear that the model envisioned by the PSLRA [is] one strong plaintiff with one counsel who will speak on its behalf." *In re Texlon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 817 (N.D. Ohio 1999). It is for this reason that numerous courts have held that groups of *unrelated* entities with multiple law firms are disfavored as compared to a single, strong, sophisticated institution such as PSP. *See e.g., In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621, 624 (S.D.N.Y. 2015) (rejecting group of "unrelated plaintiffs" and appointing "a single entity represented by a single law firm"); *Alibaba*, 102 F. Supp. 3d at 534, 540 (declining to appoint unrelated group composed of "random cumulations of plaintiffs" and multiple law firms given that "the mushrooming presence of ever-more attorneys in a case more often serves to delay than to expedite the just and efficient administration of justice"); *Teva* 302 F. Supp. 3d at 494-495 (appointing single institution and single law firm and rejecting group due to "lack of a preexisting relationship" among the plaintiffs); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff"); *In re Williams v. Block.One*, 2020 WL 4505569, at *3 (S.D.N.Y. Aug. 4, 2020) (rejecting group of "unrelated plaintiffs" and appointing single lead plaintiff).

### D.      The Remaining Movants Do Not Trigger The Presumption

Because PSP has the largest financial interest in this case and otherwise satisfies the requirements of Rule 23, the competing motions submitted by KBC and Pembroke, Laborers Pension Trust, Iron Workers, Ghosh, and Townsend and Corso should be denied. *See In re Cavanaugh*, 306

---

[11] The group the Court appointed in *Eros* was comprised of "long-time" friends that had a "relationship that pre-dates this action by almost a decade." *Eros*, 2016 WL 1367246, at *5.

F.3d 726, 732 (9th Cir. 2002) ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical").

## CONCLUSION

For the reasons discussed above, PSP respectfully requests that the Court: (1) appoint it as Lead Plaintiff; (2) approve its selection of BFA as Lead Counsel for the Class; (3) consolidate all related actions pursuant to Rule 42(a); and (4) grant any such further relief as the Court may deem just and proper.

Dated: January 12, 2021                    Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Joseph A. Fonti
Erin H. Woods
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
jfonti@bfalaw.com
ewoods@bfalaw.com

*Counsel for Proposed Lead Plaintiff PSP and
Proposed Lead Counsel for the Class*

16