# EXHIBIT E

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION** | **MDL No. 17-2795 (MJD/KMM)** |
| This Document Relates to:<br><br>Civil Action No. 18-296 (MJD/KMM)<br>Civil Action No. 18-297 (MJD/KMM)<br>Civil Action No. 18-298 (MJD/KMM)<br>Civil Action No. 18-299 (MJD/KMM) | **OREGON'S [PROPOSED] SUR-REPLY IN RESPONSE TO NEW ARGUMENTS RAISED BY KBC ASSET MANAGEMENT NV ON REPLY** |

Court-appointed Lead Plaintiff Oregon respectfully submits this sur-reply in response to arguments raised for the first time by KBC on reply. *See MDL*, ECF No. 71.[1]

## ARGUMENT

Oregon was correctly appointed as Lead Plaintiff because it has the "largest financial interest" in the *CenturyLink* securities action under the PSLRA and the principles set forth in the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"), as required by this Court in *Kops v. NVE Corporation*, 2006 WL 2035508 (D. Minn. July 19, 2006) (Davis, J.) ("*Kops*") and "overwhelming" case law nationwide.[2] *See MDL*, ECF No. 63 at 1-2, 6-11. Despite addressing *Dura* in multiple briefs since moving for appointment as Lead Plaintiff seven months ago, KBC never once disputed the calculation of Oregon's and KBC's losses under *Dura* or specifically identified any partial corrective disclosures that could impact that calculation. To the contrary, KBC's updated appeal brief before this Court ***exclusively*** focused on arguing that *Dura* did not apply at the Lead Plaintiff stage. *See MDL*, ECF No. 45 at 10-15.

Now, in its reply, KBC for the first time cites two supposed partial disclosures—neither of which were pleaded in any complaint or identified in any of the 17 other briefs filed in connection with the competing motions seeking Lead Plaintiff appointment.

---

[1] Defined terms have the same meaning as in Oregon's opposition brief. *See MDL*, ECF No. 63. All emphasis is added and citations and internal quotations omitted unless noted. Citations to "Ex. __" are to the accompanying Affidavit of Michael D. Blatchley.

[2] *See, e.g.*, *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 238-39 (E.D.N.Y. 2011) (citing *Kops*); *Galmi v. Teva Pharm. Indus. Ltd.*, 2017 WL 7261318, at * 6 (D. Conn. July 11, 2017) (courts "overwhelmingly agree" that *Dura* applies at the lead plaintiff stage and that only "losses that will actually be recoverable in the class action" can be considered).

KBC's tack is improper, as it never before identified any un-pleaded partial disclosures that could somehow impact its financial interest here. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) (courts do "not consider issues raised for the first time on appeal in a reply brief"). To the contrary, KBC has consistently argued that consideration of partial disclosures is irrelevant because *Dura* is "inapplicable" to the Court's determination of financial interest. *See, e.g.*, *MDL*, ECF No. 45 at 10-15.

In any event, KBC's last-ditch arguments are wrong. To start, KBC misleadingly claims that Oregon's *Dura* loss is actually $913,476, instead of the $4.6 million calculated by Oregon. *Cf. Craig*, ECF No. 47-3 at 5 *with MDL*, ECF No. 71 at 12, 15.[3] Although KBC proffers a new calculation of Oregon's loss, KBC fails to provide the Court with KBC's own loss under that same methodology. Indeed, KBC fails to inform the Court that, even under KBC's new method, Oregon **still** has a larger financial interest than KBC.

---

[3] KBC does not dispute that Oregon's *Dura* loss of $4.6 million was correctly calculated under the method Oregon has repeatedly described. As Oregon previously explained, that calculation excludes losses incurred on sales of shares that occurred prior to the first alleged partial disclosures—a method of calculating *Dura* losses that KBC itself previously endorsed. *See Craig*, ECF Nos. 47 at 2-3, 8; 47-3 at 5, 47-4 at 12; Ex. A (KBC arguing that "losses incurred before the first fraud-correcting disclosure alleged in an action must, pursuant to [*Dura*], be excluded"). KBC's new *Dura* method does not merely exclude losses incurred before the first alleged disclosure. Instead, KBC's new method multiplies the number of shares Oregon held over the two pleaded corrective disclosures by the share price decline on those dates. *See MDL*, ECF No. 71 at 2. But KBC's loss under its new *Dura* method ($724,830) is still far less than Oregon's—and thus, Oregon has the largest financial interest no matter which *Dura* method is used. In all events, KBC is wrong to claim that Oregon's *Dura* method (which KBC previously endorsed) is somehow internally inconsistent or in any way legitimizes KBC's attempt to inflate its loss by citing un-pleaded and unsupported partial disclosures on reply. *Cf. MDL*, ECF No. 71 at 12-13.

When compared on an apples-to-apples basis, Oregon has a far larger financial interest under either *Dura* method:

|  | ***Dura* Loss As Calculated In Prior Rounds Of Briefing** | ***Dura* Loss As Calculated In KBC's Reply** |
|---|---|---|
| **Oregon** | $4,655,093 | $913,476 |
| **KBC** | $1,879,073 | $724,830 |

Accordingly, KBC's new calculation does nothing to alter the conclusion that Oregon has the largest financial interest in the *CenturyLink* securities action under *Dura* and this Court's decision in *Kops*.

KBC next contends – again, for the first time – that there were supposedly additional, earlier partial corrective disclosures of the fraud years before the end of the Class Period. *See MDL*, ECF No. 71 at 13-14. But KBC concedes that these two supposed corrective disclosures **were not pleaded** in any of complaints filed in this matter, which instead alleged that the truth was revealed in two disclosures at the end of the Class Period in June 2017. *See id.* at 12-13. Because neither of KBC's proffered disclosures were in fact pleaded in any complaint, they cannot be considered in the financial interest analysis. *See, e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007) ("*Dura*…and *Kops*…require a court to make pre-discovery loss causation determinations regarding asserted claims…based on **the facts alleged in the complaint**.").[4]

---

[4] *See also Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *3 (S.D.N.Y. Apr. 5, 2016) (rejecting lead plaintiff movant because partial disclosures supporting loss under *Dura* were based on "unsupported allegations," holding "determinations of largest financial interest must be based on the facts alleged in the complaint"); *Teva*, 2017 WL 7261318, at

- 3 -

Courts are particularly wary of movants who proffer un-pleaded partial disclosures because of the possibility that they may attempt to manipulate their financial interest by introducing new facts after the lead plaintiff deadline has expired—precisely as KBC attempts to do here. *See, e.g.*, *Topping*, 95 F. Supp. 3d at 620 & n.14 (declining to consider claimed financial interest based on factual allegations made after lead plaintiff deadline expired, noting that considering un-pleaded partial disclosures "would be an invitation to other litigants to 'game the system'…to maximize their chances of being appointed lead plaintiff"). That KBC never identified these supposed partial corrective disclosures in any of the six briefs it previously filed only highlights their lack of validity.[5]

---

\*10 (that lead plaintiff movant failed to substantiate alleged partial disclosures with pleaded facts should "prevent [it] from claiming losses that resulted from those alleged disclosures"); *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618-22 (S.D.N.Y. 2015) (declining to consider losses based on alleged partial disclosure pleaded for the first time in a "corrected" complaint filed after lead plaintiff deadline); *Bensley*, 277 F.R.D. at 240 (rejecting claimed losses of lead plaintiff movant on grounds that the complaint "has not alleged sufficient facts from which this Court can confidently infer that the [alleged] disclosure actually revealed fraud or misconduct sufficient to qualify as a partial disclosure"); *Foster v. Maxwell Techs., Inc.*, 2013 WL 5780424, at \*4 (S.D. Cal. Oct. 24, 2013) (rejecting movant who claimed larger losses based on purported partial corrective disclosure not alleged in the filed complaints because "[t]he Court is limited to considering the allegations in the pending complaints at this stage of the litigation"); *Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678, at \*3 (S.D.N.Y. Feb. 1, 2013) (refusing to consider un-pleaded partial disclosure identified for the first time on reply).

[5] *See also Comverse*, 2007 WL 680779, at \*6 ("[I]t would be unfair to speculate that [a movant] will be able to demonstrate loss causation for [claimed partial disclosures], despite its patent failure to allege facts in support thereof."). Indeed, that neither KBC nor its counsel filed a complaint alleging these supposed partial disclosures in the nine months since this case was first initiated speaks volumes about their conviction that they give rise to compensable losses.

Further undermining KBC's argument is its failure to explain how the purported disclosures it identifies are related to the allegations in the *CenturyLink* securities action, or how they could have revealed the fraud at issue in this case.[6] Nor does KBC provide any analysis or calculation to show how these newly identified un-pleaded partial disclosures actually impact the financial interest analysis. In reality, KBC's proffered un-pleaded and unsubstantiated disclosures do not in any way support its eleventh-hour gambit here. To the contrary, as KBC conceded in its opening brief, Oregon's financial interest is larger than KBC's when calculated under *Dura*, and thus Magistrate Judge Perez-Montes's order appointing Oregon as Lead Plaintiff could not possibly be "clearly erroneous or contrary to law." L.R. 72.2(a)(3).[7]

---

[6] The December 13, 2015 *Oregonian* article KBC claims caused CenturyLink's stock to drop is focused on "long hold times and missed appointments." *MDL*, ECF No. 71 at 14. KBC fails to explain how these facts are related to the improper billing practices that are alleged to be the basis of the fraud in the filed complaints. *See, e.g.*, *Teva*, 2017 WL 7261318, at *10. And while KBC argues that the Arizona Attorney General's filing of an Assurance of Discontinuance on April 6, 2016 constitutes a corrective disclosure, it concedes that none of the filed complaints identified that document at all. *See MDL*, ECF No. 71 at 12-13. Moreover, the Assurance of Discontinuance did not in fact become public until April 7, 2016, and CenturyLink's stock price *increased* the following day. *See* Exs. B & C. In other words, there is absolutely no basis for the Court to consider KBC's newfound but wholly unsubstantiated disclosures at this late date.

[7] KBC curiously claims it never "conceded" that it lacks the largest financial interest when *Dura* is applied. ECF No. 71 at 14-15. But by asking the Court to reverse its decision in *Kops*, KBC necessarily concedes it lacks the largest financial interest under *Dura*, as there would be no need to seek reversal of that decision if the opposite were true.

Last, KBC claims – again, for the first time – that Magistrate Judge Perez-Montes's exercise of discretion to bar KBC from serving as Lead Plaintiff under the PSLRA's so-called "five-in-three" provision was "arbitrary." *MDL*, ECF No. 71 at 5.[8]

KBC is wrong. In fact, in applying the bar, Magistrate Judge Perez-Montes specifically noted that KBC is an institutional investor (*Craig v. CenturyLink Inc.*, 2017 WL 4768566, at *4 (W.D. La. Oct. 20, 2017)), cited the relevant statutory text, and considered the sworn certification that KBC itself submitted detailing its prior service as a Lead Plaintiff—a document that is intended to allow the court to determine whether the bar applies. *See* 15 U.S.C. § 78u-4(a)(2)(A)(v); S. Rep. 104-98, at *10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689 (1995).[9] Thus, the decision was anything but "arbitrary."

Indeed, KBC does not challenge that KBC has in fact served in more than five cases in the past three years, and thus KBC cannot contest that Magistrate Perez-Montes's findings that bar applied were "clearly erroneous." Further, because KBC concedes that the provision is discretionary, KBC cannot claim that Magistrate Perez-Montes's exercise of that discretion was "contrary to law." In all events, Oregon was correctly appointed as

---

[8] KBC previously claimed that the bar should not apply because KBC is an institution, and that its prior service as a Lead Plaintiff did not constitute "proof" of inadequacy—not that Magistrate Judge Perez-Montes failed to consider the relevant evidence or that the decision was so illogical as to have been "arbitrary." *See, e.g., MDL*, ECF No. 45 at 3-8.

[9] For these reasons, KBC is wrong to claim that it was somehow denied a fair hearing. Indeed, KBC was previously challenged under this three provision, and thus was clearly on notice it could apply here. *See* Ex. D. KBC's strategic choice not to address a provision of the statute pursuant to which KBC filed its motion is not a denial of due process.

Lead Plaintiff because it has the largest financial interest in the litigation and is unquestionably qualified to represent the Class.  KBC's appeal should be denied.

CONCLUSION

For the reasons set forth above and in its prior submissions, Oregon respectfully requests that the Court affirm Magistrate Judge Perez-Montes's Order appointing Oregon as Lead Plaintiff.

Dated:  March 27, 2018

Respectfully submitted,

/s/ Michael D. Blatchley
—————————————————
John Browne, NYS Bar No. 3922747
Michael D. Blatchley, NYS Bar No. 4747424
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
johnb@blbglaw.com
michaelb@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
**STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com

*Special Assistant Attorneys General and
Counsel for Lead Plaintiff the State of Oregon
by and through the Oregon State Treasurer and
the Oregon Public Employee Retirement Board,*

*on behalf of the Oregon Public Employee Retirement Fund, and Lead Counsel for the Class*

Richard A. Lockridge, MN No. 64117
Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN P.L.L.P**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
ralockridge@locklaw.com
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund*

- 8 -