**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-9132-AJN |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

*Captions continued on next page.*

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
KBC ASSET MANAGEMENT NV AND PEMBROKE PINES FIREFIGHTERS &
POLICE OFFICERS PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFF,
APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND
CONSOLIDATION OF RELATED ACTIONS,
<u>AND IN OPPOSITION TO THE COMPETING MOTIONS</u>**

| | |
|---|---|
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH and MARK A. L. MASON,<br><br>     Defendants. | Case No. 1:20-cv-9573-AJN<br><br>CLASS ACTION<br><br><br><br>JURY TRIAL DEMANDED |
| TIMOTHY LIM, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,<br><br>     Defendants. | Case No. 1:20-cv-10360-AJN<br><br>CLASS ACTION<br><br><br><br>JURY TRIAL DEMANDED |

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ....................................................................... 1

II.    ARGUMENT ................................................................................................... 3

       A.    KBC And Pembroke Pines Have The Largest Financial Interest ........................... 3

       B.    *Dura* Does Not Support The Appointment of PSP ................................................... 5

       C.    KBC and Pembroke Pines Are A Proper Group .................................................. 10

III.   CONCLUSION ................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blitz v. AgFeed Indus., Inc.*,
2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012)...................................................................4, 5

*Cheng v. Canada Goose Holdings Inc.*,
2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ...........................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .............................................................................6

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ................................................................. *passim*

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...................................................................................9

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005).......................................................................................................... *passim*

*Fialkov v. Celladon Corp.*,
2015 WL 11658717 (S.D. Cal. Dec. 9, 2015)..........................................................................8

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................3

*Galmi v. Teva Pharm. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017).......................................................................................6

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 112 (S.D.N.Y. 2010) ...........................................................................................10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)......................................................................................6

*Kniffin v. Micron Tech., Inc.*,
379 F. Supp. 3d 259 (S.D.N.Y. 2019)......................................................................................6

*In re LightInTheBox Holding Co., Sec. Litig.*,
2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013).........................................................................6

*Maliarov v. Eros Int'l PLC*,
2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016)................................................................. *passim*

*In re McKesson HBOC, Inc. Sec. Litig.*,
97 F. Supp. 2d 993 (N.D. Cal. 1999) .......................................................................................5

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................................9

*Omdahl v. Farfetch Ltd.*,
  2020 WL 3072291 (S.D.N.Y. June 10, 2020) ...................................................3, 10

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) ..........................................................................7

*Porzio v. Overseas Shipholding Grp.*,
  2013 WL 407678 (S.D.N.Y. Feb. 1, 2013)..............................................................6

*Richardson v. TVIA, Inc.*,
  2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .........................................................4

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) .......................................................................3, 4

*Ruland v. InfoSonics Corp.*,
  2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ..........................................................9

*Sallustro v. CannaVest Corp.*,
  93 F. Supp. 3d 265 (S.D.N.Y. 2015)..................................................................6, 10

*Schueneman v. Arena Pharm., Inc.*,
  2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ...........................................................9

*In re Surebeam Corp. Sec. Litig.*,
  2004 WL 5159061 (S.D. Cal. Jan. 5, 2004)...........................................................10

*Topping v. Deloitte Touche Tohmatsu CPA*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015)......................................................................6

*In re Twitter Inc. Sec. Litig.*,
  326 F.R.D. 619 (N.D. Cal. 2018)..........................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................................................................5

*In re Watchguard Sec. Litig.*,
  2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) .................................6, 9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...............................................................................10

iii

## I.   **PRELIMINARY STATEMENT**

The pending motions require the Court to determine whether KBC and Pembroke Pines or PSP has the largest financial interest in the relief sought in this litigation.[1]  While the PSLRA does not provide a test for determining financial interest, the vast majority of courts confronting this issue base the financial interest analysis on loss incurred, typically on a "last-in, first-out" ("LIFO") basis.  Under that approach, KBC and Pembroke Pines suffered more than $28 million in losses on their Class Period transactions in Citigroup stock, giving them a financial interest that is more than two-and-a-half times greater than PSP.  Given the broad precedent supporting the use of LIFO loss as a proxy for financial interest, it is not surprising that PSP argued in its opening brief that this Court should determine financial interest by looking to the amount of loss suffered.

Now, seeing that it lacks the largest loss, PSP argues for the application of other tests to measure financial interest, without explaining why the LIFO losses it cited just weeks ago are no longer a reliable indicator.  Regardless of which method the Court uses to determine financial interest here, KBC and Pembroke Pines have a greater financial interest than PSP.  For example, PSP now argues that, rather than focusing on LIFO loss alone, the Court should consider the four "*Lax*" factors: (1) total shares purchased; (2) net shares purchased; (3) net expenditures; and (4) loss.  But KBC and Pembroke Pines surpass PSP on what courts have agreed are the most important of these four factors: loss and net expenditures.  Contrary to PSP's suggestion that net shares and total shares purchased should control, those two factors are the least relevant in this case because the litany of partial corrective disclosures renders misleading the "net shares" analysis, which focuses only on holdings as of the disclosure that ends the class period.  Moreover, the Class

---

[1] Unless noted, all references to "ECF No. _" are to the docket in the *City of Sunrise* Action, all terms are defined in KBC and Pembroke Pines' opening and opposition briefs (ECF Nos. 28, 47), and all citations are omitted and emphasis added.

definition includes investors in all Citigroup "securities," including bonds, and therefore it does not make sense to focus only on net "shares" while ignoring PSP's bonds and options trading.

As a result of these partial disclosures and the various alleged misrepresentations during the nearly five-year Class Period, the "fraud premium"—the amount by which the prices of securities were artificially inflated—likely varied over time and by security.[2] As many courts have observed, shares purchased and net shares purchased—already the least important of the *Lax* factors—are even less useful analytical tools where several corrective disclosures are involved. Because a proper determination of the fraud premium goes to the merits of plaintiffs' claims, any analysis thereof is premature, and the Court should focus on approximate loss.

Despite asking the Court to focus on the "net shares" analysis, which disregards the partial disclosures of the alleged fraud, PSP separately contends that the Court should utilize those same partial disclosures to apply a results-driven analysis that PSP inaccurately asserts is supported by *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"). PSP's "*Dura*" argument is predicated on the incorrect and self-serving assumption that the only disclosures of the fraud are those identified in the complaints filed to date. KBC and Pembroke Pines, working with a forensic economics expert, already have identified an additional disclosure, which is not reflected in the filed complaints: an August 2018 announcement that Citigroup was fined $8.6 million and entered into a Consent Order with the Federal Reserve Board related to the improper execution of mortgage documents, a clear indication of deficient internal controls. *See* Hartzmark Decl. ¶ 22. Taking this additional disclosure into account, KBC and Pembroke Pines have a larger financial interest using PSP's own "*Dura*" methodology: $18.9 million compared to PSP's "*Dura*" loss of $11.1

---

[2] *See* Ex. A, Declaration of Michael L. Hartzmark, Ph.D. ("Hartzmark Decl.") ¶¶ 10-21. All references to "Ex. _" are to the exhibits to the Reply Declaration of Hannah Ross submitted herewith.

million (when offset by PSP's substantial profit from investments in Citigroup bonds and options).

Clearly, the "*Dura*" analysis that PSP proposes is subjective and entirely dependent upon the corrective disclosures that are selected for inclusion in the analysis. If anything, KBC and Pembroke Pines' "interest in expanding the recovery period is in line with the [C]lass's interest in maximizing recovery" and strongly supports KBC and Pembroke Pines' appointment here. *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *6 (S.D.N.Y. Apr. 5, 2016) (Nathan, J.). In contrast, PSP improperly limits the Class by arguing that the only corrective disclosures (and thus the only price declines giving rise to compensable losses) are those asserted in the three filed complaints. The Court should be skeptical of the gamesmanship inherent in PSP's resort to inconsistent and changing metrics of financial interest, which is more focused on securing a leadership role for PSP and its counsel than in providing the Court with a reliable, objective means under controlling precedent to assess PSP's real interest in this litigation.

## II.  ARGUMENT

### A.  KBC And Pembroke Pines Have The Largest Financial Interest

Courts in this Circuit and around the country, including this Court, universally acknowledge that loss suffered is the most important factor in assessing financial interest under the PSLRA. *See, e.g.*, *Omdahl v. Farfetch Ltd.*, 2020 WL 3072291, at *2 (S.D.N.Y. June 10, 2020) (Nathan, J.) ("The last factor, financial loss, is the most important of the four."); *Maliarov*, 2016 WL 1367246, at *2 ("It is well settled that financial loss, the last factor, is the most important element of the test."); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures."); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e . . . shall place the most emphasis on the last of the four factors: the

approximate loss suffered").[3]  KBC and Pembroke Pines have, by far, the largest LIFO losses of any movant.  Relying on well-settled authority, PSP, like all other movants, initially argued that the Court should base its financial interest analysis on PSP's LIFO and FIFO losses, and those losses were the only calculations PSP provided in support of its motion.  *See* ECF No. 40-4.[4]

Only after realizing that it did not possess the largest loss, PSP switched gears to suggest several alternate factors and calculations.  *See* ECF No. 49 at 4-12.  PSP provides no reason for changing course, and courts routinely reject such eleventh-hour shifts in strategy as gamesmanship.  *See, e.g.*, *Cook v. Allergan PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (McMahon, C.J.) (the fact that a movant that initially presented its losses under LIFO and "alter[ed] its calculation [to *Dura*] when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted").

But even under the alternate methodologies PSP now proffers, KBC and Pembroke Pines have the largest financial interest.  The *Lax* factors that PSP raises in its opposition brief—(1) shares purchased, (2) net shares purchased, (3) net funds expended, and (4) losses suffered—"are properly ordered, so that the number of shares purchased (Factor 1) is the least important and the loss suffered (Factor 4) is the most important." *Richman*, 274 F.R.D. at 476.  PSP concedes that KBC and Pembroke Pines have a larger financial interest under the loss and net expenditures factors (ECF No. 49 at 1, 12), which courts have recognized as the most important elements of

---

[3] *See also Blitz v. AgFeed Indus., Inc.*, 2012 WL 1192814, at *7 (M.D. Tenn. Apr. 10, 2012) ("[O]f the four factors set forth in the Manual for Complex Litigation, the most important factor is the approximate losses suffered by the plaintiff."); *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) ("Of the *Olsten-Lax* factors, courts consider the fourth factor, the approximate losses suffered, as most determinative.").

[4] Although PSP hedged by noting the existence of other measures of financial interest, PSP did not quantify its financial interest using any measure other than loss. *See* ECF No. 39 at 7 & n.4.

*Lax.  See, e.g.*, *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 (S.D.N.Y. 2008) (appointing as lead plaintiff movant with the greatest net expenditures and largest loss over a competing movant with larger total and net shares).

Disregarding this authority and the facts of this case, PSP incorrectly argues that more weight should be given to net shares and total shares.  *See* ECF No. 49 at 10-12.  These least-important *Lax* factors are of particularly limited import here given that the Class includes multiple purchases of securities other than stock, such as the Citigroup bonds and options that PSP traded. *See In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996 (N.D. Cal. 1999) (finding net shares "provides little insight" when different securities are involved).  The existence of numerous partial disclosures of the fraud further minimizes the importance of the "net shares" metric, which looks only to the shares held as of the final corrective disclosure.

Because KBC and Pembroke Pines "suffered greater approximate [LIFO] losses," and also expended more net funds than PSP to purchase Citigroup securities during the Class Period, they have "the largest financial interest" under the *Lax* factors.  *Varghese*, 589 F. Supp. 2d at 396.

## B.  *Dura* Does Not Support The Appointment of PSP

In addition to wrongly claiming the largest financial interest under the *Lax* factors (which focus on LIFO loss and ignore partial disclosures), PSP separately contends that the Court should disregard its LIFO loss and scrutinize the multiple disclosures of the alleged fraud to determine financial interest by applying an oversimplified interpretation of loss causation principles espoused in *Dura*.  *See* ECF No. 49 at 8-10.  Putting aside the inconsistencies in PSP's competing analyses of financial interest, many courts decline to apply a loss causation methodology premised on *Dura* at the lead plaintiff appointment stage because doing so requires the court to prematurely delve into a merits analysis.  *See, e.g.*, *Cook*, 2019 WL 1510894, at *3 (declining to conduct a "*Dura*" analysis to determine financial interest at the lead plaintiff stage); *Blitz*, 2012 WL 1192814, at *4

5

(noting that *Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses").  That is, applying PSP's "*Dura*" approach requires the Court to identify the disclosures of the alleged fraud that caused compensable losses.  Because "numerous factors may affect the price of a security," in its opinion in *Dura*, "[t]he Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue."  *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at \*15 n.6 (W.D. Wash. July 13, 2005).[5]

Even if the Court were to apply PSP's new-found "*Dura*" approach, KBC and Pembroke Pines still have the largest financial interest.  PSP improperly limited its "*Dura*" analysis to the corrective disclosures alleged in the complaints filed to-date.  That approach is unduly narrow, and KBC and Pembroke Pines, through their diligent investigation supported by an expert in forensic economics, already have identified an additional corrective disclosure on August 10, 2018.  That day, Citigroup was fined $8.6 million and entered into a Consent Order with the Federal Reserve

---

[5] This Court's decision in *Maliarov* does not counsel otherwise, as the Court appointed a movant that incurred some of its losses in the period following a partial disclosure, over a movant who incurred ***no losses*** on shares held through the corrective disclosure.  *See* 2016 WL 1367246, at \*3-4.  Similarly, the court in *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at \*7 (E.D.N.Y. Mar. 2, 2007), set aside a movant who had ***gains*** on shares held through the disclosures, and in *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 618 (S.D.N.Y. 2015), the movant that was denied lead plaintiff appointment "did not own any shares" at the end of the class period.  Contrary to PSP's characterization of dicta in *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019), there the court declined to decide whether it should apply *Dura* at the lead plaintiff stage.  And the court in *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015), was not presented with any evidence of a varying fraud premium, but when faced with that evidence in *Cook*, Chief Judge McMahon found the application of *Dura* was premature.  *Cook*, 2019 WL 1510894, at \*3.  PSP's remaining authority either involved: a single disclosure and, thus, no evidence of a varying fraud premium, *see Porzio v. Overseas Shipholding Grp.*, 2013 WL 407678, at \*3 (S.D.N.Y. Feb. 1, 2013), and *In re LightInTheBox Holding Co., Sec. Litig.*, 2013 WL 6145114, at \*3 (S.D.N.Y. Nov. 21, 2013); no dispute about the corrective disclosures, *see Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 272-77 (S.D.N.Y. 2015); or the court did not have enough information to determine whether to credit a disclosure not pleaded in any complaint, *see Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 503 (D. Conn. 2017).

Board as a result of improper execution of residential mortgage-related documents. *See* Exs. B & C. Such misconduct directly implicates Citigroup's failed compliance controls that are at the heart of this case. This disclosure caused the price of Citigroup shares to decline by $1.72 per share, or 2.39%—a decline that was statistically significant when compared with the broader market. *See* Hartzmark Decl. ¶ 22 & n.21. Taking into account the August 10 disclosure, KBC and Pembroke Pines have a "*Dura*" loss of $18.9 million, compared to PSP's "*Dura*" loss of just $11.1 million (or $14.3 million if improperly ignoring PSP's multi-million dollar gain from trading Citigroup bonds and options, which offset PSP's losses). *See id*. ¶¶ 23-25.

Consideration of this August 10 disclosure demonstrates why it is premature to apply *Dura* at this stage: the purported "*Dura*" analysis is driven by the selection of corrective disclosures that are included, but there is no operative pleading defining the corrective disclosures, no pleading filed by KBC, Pembroke Pines, or PSP, and the three complaints filed by other plaintiffs do not even agree as to the dates on which the alleged fraud was disclosed. *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (noting that, at the lead plaintiff stage, the class "should be defined as the broadest, most inclusive potential class . . . because at the outset of a case the court should . . . narrow the allegations only after the parties have had the opportunity to develop the record").[6]

---

[6] KBC acknowledged in an out-of-district action that some courts have excluded pre-disclosure sales from the loss calculation under *Dura*. ECF No. 50-1. In that case, four disclosures occurred in the span of just over a month, whereas here, KBC and Pembroke have identified disclosures going back several years. KBC recognized the movant that had won on three of the four *Lax* factors, with that investor reporting a smaller loss that, notably, included gains on notes (as PSP ought to have done here). *Id*. PSP also directs the Court to a brief Bernstein Litowitz filed on behalf of a different client in another out-of-district action. ECF No. 50-5. In that action, KBC withdrew its motion without endorsing the specific arguments raised by the competing movant. ECF No. 50-6. But for the sake of clarity, KBC and Pembroke Pines are not saying that the Court should make a finding of loss based on unpleaded allegations. Rather, they are demonstrating how

The Court's decision in *Maliarov* also supports KBC and Pembroke Pines, whose "interest in expanding the recovery period is in line with the [C]lass's interest in maximizing recovery" because KBC and Pembroke Pines incurred some losses before the first currently pled disclosure. *Maliarov*, 2016 WL 1367246, at *6.[7]  If appointed, KBC and Pembroke Pines would maximize both their own recovery and the recovery of the Class by seeking to develop evidence to support additional disclosures that harmed investors.  In stark contrast, PSP's misguided focus on *Dura* to advance its own motion inhibits its ability to vigorously represent the Class.  If PSP argues that the only disclosures of the fraud are those identified in the filed complaints, it limits its ability (and the Class's) to fully recover the losses caused by the alleged fraud.  PSP would likely respond that the pleaded corrective disclosures should control at this stage, and that PSP cannot commit that it will not develop and assert additional disclosures if appointed Lead Plaintiff.  But such a response only highlights why in a case with a long class period and multiple disclosures it is virtually impossible to accurately assess financial interest under *Dura*.  To wit, applying a "*Dura*" analysis is premature and further investigation and analysis is needed to fully assess each date during Class Period on which news about compliance problems impacts the price of Citigroup securities.

Courts have also recognized that engaging in a "*Dura*" analysis at the lead plaintiff stage is not appropriate when the case involves a varying "fraud premium," which confounds the calculation of recoverable losses.  *See Cook*, 2019 WL 1510894, at *3 (varying fraud premium made it "unwise to embrace . . . [a] convoluted [*Dura*] loss calculation methodology at the expense

---

making loss causation determinations at this stage can come into conflict with the requirement of the PSLRA that the investor with the largest financial interest in the litigation be appointed to lead the Class.

[7] *See also Fialkov v. Celladon Corp.*, 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015) (finding that "[a]t this stage in the proceedings, the Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest").

of . . . considerably more straightforward [LIFO] calculations"). That is the case here, where several factors likely caused the fraud premium to vary, including the nearly five-year long Class Period, multiple corrective disclosures, drastic stock price fluctuations, and information concealed from the public changing over time. *See* Hartzmark Decl. ¶¶ 10-21. It is for these reasons that the "most illuminating" metric is "approximate loss, the only factor that makes no assumptions regarding the fraud premium." *Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *16; *Cook*, 2019 WL 1510894, at *3 (rejecting *Dura* methodology in case involving a multi-year class period and multiple partial disclosures); *Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *5 (S.D.N.Y. Dec. 5, 2019) (finding net shares unpersuasive given the varying fraud premium).[8]

Even using PSP's flawed *Dura* methodology, limiting the analysis to the disclosures pleaded in the complaints, and ignoring the August 2018 disclosure, once PSP's gains are properly offset, its *Dura* LIFO loss is just $7 million, compared to KBC and Pembroke Pines' $6 million. *See* Hartzmark Decl. ¶¶ 23, 26. This slight difference under an entirely subjective "*Dura*" analysis is not nearly enough to warrant dismissing the fact that KBC and Pembroke Pines lost nearly three times more than PSP on a LIFO basis, and have a greater financial interest under the *Lax* factors.[9]

---

[8] The few cases to focus on the net shares and total shares factors—none of which are in this Circuit—assumed that the "fraud premium" stayed constant throughout the class period because the complaint only asserted a single disclosure, *Ruland v. InfoSonics Corp.*, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006), or disclosures in close succession at the end of the class period, *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1106 (N.D. Cal. 2001); *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *1 (S.D. Cal. Aug. 8, 2011). In doing so, these courts acknowledged that using metrics other than losses "gets into trouble . . . if the amount of the 'fraud premium' varied over the course of the class period." *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999). PSP also doubles down on its argument that it need not factor in its gains on Citigroup bonds and options, but in *Schueneman*, the court relied on loss calculations that included "losses **and gains**" during the class period. 2011 WL 3475380, at *4.

[9] PSP's calculations under the "Recoverable Loss *Eros* Method" (ECF No. 49 at 9), are not appropriate here. The movants in *Maliarov* "did not provide sufficient data to conduct" a calculation of losses, and "[a]s a result," the Court was left to conduct its own "rough estimate" of

###### C.    KBC and Pembroke Pines Are A Proper Group

KBC and Pembroke Pines are a proper group under the PSLRA, which expressly provides for groups of investors to serve as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Contrary to PSP's assertion, courts in this District generally do not require that the group members have a preexisting relationship.  *See, e.g.*, *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) ("A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small and therefore presumptively cohesive."); *see also Omdahl*, 2020 WL 3072291, at *2 (appointing two institutional investors that did not have a pre-existing relationship).[10]  The evidence submitted to date demonstrates that KBC and Pembroke Pines are a cohesive pairing of sophisticated institutional investors that are willing and able to oversee the prosecution of this action and maintain a focus on maximizing any recovery for the Class.  *See* ECF No. 34-3 ¶¶ 1-13.  Moreover, because KBC alone has a larger financial interest than PSP and "alone qualifies as the presumptive lead plaintiff[,] [i]t makes no practical difference if [KBC] chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff."  *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004).  Accordingly, KBC and Pembroke Pines are an appropriate group.

### III.    CONCLUSION

For all the reasons set forth above and in their opening brief, KBC and Pembroke Pines respectfully request that the Court grant their motion.

---

loss.  2016 WL 1367246, at *2.  There is no need to resort to this method here, where the movants submitted proper LIFO loss calculations.  ECF Nos. 34-1, 34-2, 40-1, 40-4; *see also Sallustro*, 93 F. Supp. 3d at 276 (rejecting the *Maliarov* loss method because it "leads to absurd results").

[10] Similarly, counsel for PSP serves as liaison counsel in a case where KBC and an investor with no preexisting relationship to KBC were appointed as class representatives.  *See In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 631 (N.D. Cal. 2018).

10

Dated: January 19, 2021

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

*/s/ Hannah Ross*
Hannah Ross
hannah@blbglaw.com
Gerald H. Silk
jerry@blbglaw.com
Avi Josefson
avi@blbglaw.com
1251 Avenue of the Americas
New York, NY 10020
Telephone:    (212) 554-1400
Facsimile:     (212) 554-1444

*Counsel for Pembroke Pines Firefighters &*
*Police Officers Pension Fund and Proposed*
*Lead Counsel for the Class*


**MOTLEY RICE LLC**

William H. Narwold
bnarwold@motleyrice.com
20 Church St., 17th Floor
Hartford, CT  06103
Telephone:    (860) 882-1681
Facsimile:     (860) 882-1682

and

Gregg S. Levin
glevin@motleyrice.com
Christopher F. Moriarty
cmoriarty@motleyrice.com
Mt. Pleasant, SC  29464
Telephone:    (843) 216-9000
Facsimile:     (843) 216-9450

*Counsel for KBC Asset Management NV*
*and Proposed Lead Counsel for the Class*

11