**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,<br><br>                    Defendants. | Civil Action No. 1:20-cv-09132<br><br>CLASS ACTION<br><br>**ORAL ARGUMENT REQUESTED** |
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH and MARK A.L. MASON<br><br>                    Defendants. | Civil Action No. 1:20-cv-09573<br><br>CLASS ACTION |

*(caption continues on following page)*

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
THE PUBLIC SECTOR PENSION INVESTMENT BOARD FOR APPOINTMENT AS
LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND
CONSOLIDATION OF RELATED ACTIONS**

|  |  |  |
|---|---|---|
| TIMOTHY LIM, individually and on behalf of all others similarly situated, | ) ) ) ) | Civil Action No. 1:20-cv-10360 |
|  | ) | CLASS ACTION |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, | ) ) ) ) |  |
| Defendants. | ) ) |  |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .................................................................................................................... 2

    A.   PSP Has The Largest Financial Interest.............................................................. 2

        1.     The "Overwhelming" Trend Is To Apply *Dura* .......................................2

        2.     PSP Raised *Dura* In Its Opening Brief ...................................................8

        3.     PSP Purchased More Total Shares and Net Shares Under *Lax/Olsten* ....................9

    B.   PSP Satisfies The Relevant Requirements Of Rule 23 ........................................ 9

    C.   KBC And Pembroke Are A Group That Lacks A Preexisting Relationship .................... 10

## TABLE OF AUTHORITIES

**Cases**

*Bodri v. Gopro, Inc.*, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ............................................... 9

*Cook v. Allergan PLC*, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ......................................... 7

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) .............................................................. passim

*Galmi v. Teva Pharms. Indust. Ltd.*, 302 F. Supp. 3d 485 (D. Conn. 2017) .......................... passim

*Hedick v. The Kraft Heinz Company*,
    2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ................................................................. 5

*In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169 (W.D.N.Y. 2007) ..................................... 10

*In re Comverse Tech., Inc. Sec. Litig.*,
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ....................................................... 3, 4, 6

*In re VimpelCom, Ltd. Sec. Litig.*, 2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016) ......................... 5

*Khunt v. Alibaba*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015) ......................................................... 3, 5

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
    2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ................................................................. 7

*Maliarov v. Eros Int'l PLC*, 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ............................. passim

*Owens v. FirstEnergy Corp.*, 2020 WL 6873421 (S.D. Ohio Nov. 23, 2020) ......................... 7, 10

*Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846 (E.D. Pa. 2018) ............................................... 5

*Plaut v. Goldman Sachs Group, Inc.*,
    2019 WL 4512774 (S.D.N.Y Sept. 19, 2019) .................................................... 6, 8, 10

*Ruland v. InfoSonics Corp.*, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) ................................. 9

*Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265 (S.D.N.Y. 2015) ...................................... 3, 4, 5

*Schueneman v. Arena Pharms., Inc.*, 2011 WL 3475380 (S.D. Cal. Aug 8, 2011) ....................... 5

*Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409 (E.D. Pa. 2019) ......................................... 10

*Topping v. Deloitte Touche Tohmatsu CPA*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015) ............................................................................ 5

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
    2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ................................................................. 7

**<u>Statutes</u>**

15 U.S.C. § 78u.................................................................................................................. 9

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................................. 2

## PRELIMINARY STATEMENT

There is no dispute that PSP asserts the largest **recoverable** loss in this case.[1]  As a result, it has the largest financial interest in the litigation consistent with the Supreme Court's ruling in *Dura*, this Court's decision in *Eros*, as well as the "overwhelming[]" trend in this District and Circuit.  *Galmi v. Teva Pharms. Indust. Ltd.*, 302 F. Supp. 3d 485, 498 (D. Conn. 2017).

The only movant to oppose PSP's motion is the unrelated KBC and Pembroke group.[2]  Because they cannot claim the greatest recoverable loss, they urge the Court to ignore *Dura* and misconstrue *Eros*.  Those decisions make clear that nearly 80% of KBC's losses are unrecoverable.  The timing of the corrective disclosures—including as pled in the ***complaint filed by counsel for KBC and Pembroke***—demonstrate that the vast majority of KBC's losses resulted from "in-and-out" transactions that have no connection to the fraud.  *See* ECF No. 28 at 4-5.

KBC and Pembroke do not offer a good reason to depart from *Dura* and *Eros* and have not explained why KBC, after previously adopting *Dura* at the lead plaintiff stage on multiple prior occasions, reversed course here to claim that applying *Dura* is "premature."  ECF No. 47 at 6.  KBC and Pembroke now contend that the Court can most reliably assess financial interest by taking KBC's losses at face value without conducting ***any*** analysis of its recoverable loss.  This approach is not reliable and courts have rejected it.  A "lack of inquiry [in not applying *Dura*] would not serve the purposes of the PSLRA, which seeks to hand the reigns of class action litigation to the most adequate plaintiff."  *Teva*, 302 F. Supp. 3d. at 500.  Accordingly, the Court should apply *Dura* and determine that PSP has the largest financial interest.

---

[1] Citations to ECF No. ___ refer to the docket in *City of Sunrise*; capitalized terms are defined in PSP's initial and opposition briefs (ECF Nos. 39, 49); and emphasis is added.

[2] Laborers Pension Trust, Ghosh, and Townsend and Corso filed notices of non-opposition recognizing that they do not possess the largest financial interest.  *See* ECF Nos. 43, 45-46.  Iron Workers abandoned its motion by failing to submit an opposition brief.

PSP also otherwise satisfies Rule 23 because it is a single sophisticated institution that selected a single, highly experienced law firm, and will be an excellent steward for the Class. As such, it is the presumptive Lead Plaintiff under the PSLRA.

KBC and Pembroke's next contention, that PSP "changed horses in mid-stream" by relying on *Dura*, is factually incorrect. PSP did no such thing. PSP stated in its initial brief that courts apply *Dura* in the appropriate circumstances. (ECF No. 39 at 7 n.4). PSP then applied *Dura* in its opposition brief after KBC first disclosed that nearly 80% of its losses were unrecoverable. KBC and Pembroke's final claim that PSP should be "disqualified" because it did not subtract its profits on bonds and options from its significant stock losses is also unfounded. PSP explicitly stated in its opening brief that it incurred gains on bonds and options (ECF No. 39 at 7), submitted all trading information to the Court, and properly did not offset its losses with those gains based on well-reasoned precedent. In any event, this argument is irrelevant because PSP's gains on bonds and options do not change its *Dura* loss. PSP is entitled to Lead Plaintiff appointment.

## ARGUMENT

### A.  PSP Has The Largest Financial Interest

#### 1.  The "Overwhelming" Trend Is To Apply *Dura*

As this Court recognized in *Eros*, the Supreme Court held in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) that recoverable losses in securities fraud actions include only those proximately caused by fraud. *See Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *2 (S.D.N.Y. Apr. 5, 2016). If "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss" and the purchaser cannot recover under the federal securities laws. *Dura*, 544 U.S. at 342.

This is why the "overwhelming[]" trend is to apply *Dura* at the Lead Plaintiff stage, including when the filed complaints allege multiple corrective disclosures. *Teva*, 302 F. Supp. 3d

at 498. Like in *Eros*, determining which investor has the "largest financial interest" in this case requires assessing which investor has the most "losses that will actually be recoverable in the class action." *Eros*, 2016 WL 1367246, at *2. "[W]here (as here) it is clear from the face of the pleadings that most of [an investor's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at [the Lead Plaintiff] stage." *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007); *see also Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273-74 (S.D.N.Y. 2015) ("[t]he court would be abdicating its responsibility under the PSLRA if it were to ignore [the issue of loss causation at the lead plaintiff] stage" because it would be "irreconcilable with this Court's duty to ascertain which plaintiff has the greatest financial interest in this litigation"). Such a "lack of inquiry would not serve the purposes of the PSLRA, which seeks to hand the reigns of class action litigation to the most adequate plaintiff." *Teva*, 302 F. Supp. 3d. at 500; *see also Khunt v. Alibaba*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (rejecting argument that treats "*Dura* as a merits decision that should not control at this stage of the litigation").

Here, there is no dispute that investors could not have incurred recoverable losses ***prior*** to August 13, 2020. None of the three complaints—including the complaint KBC and Pembroke's own counsel filed—pled a disclosure of Defendants' misconduct occurring ***before*** August 13, 2020. *See City of Sunrise* ¶62; *City of Sterling Heights* ¶43; *Lim* ¶67. Moreover, KBC and Pembroke agreed in their opening brief for Lead Plaintiff appointment that August 13, 2020 is the earliest date an investor could have incurred losses in this action. *See* ECF No. 28 at 4. There is also no dispute that the vast majority of KBC's losses resulted from its sales of stock ***before*** that August 13 disclosure. ***Eliminating these non-recoverable losses reduces KBC and Pembroke's***

3

*financial interest by nearly 80%, to approximately $6.0 million.  This is 40% less than PSP's recoverable loss of $10.1 million.*

Faced with a smaller *Dura* loss than PSP, KBC and Pembroke do not offer a good reason why the Court should "abdicat[e] its responsibility" under the PSLRA to select the investor with the "largest financial interest," which here, requires an application of *Dura*.  *CannaVest*, 93 F. Supp. 3d at 273-74.  And they do not present any possible scenario under which they could ***recover*** more than PSP in this action.

Instead, KBC and Pembroke offer three unpersuasive reasons for this Court to ignore *Dura*. ***First***, they speculate "that there may exist other disclosures that have not yet been asserted."  ECF No. 47 at 7.  This speculative argument is unfounded and should not be credited.  *See Teva*, 302 F. Supp. 3d at 502 (it is "unfair to speculate that [the movant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege facts in support thereof"); *Comverse*, 2007 WL 680779, at *6 (permitting such speculation would encourage proposed lead plaintiffs to "overstate their losses at the outset of a lawsuit," in the hope that, by the time their true interest is revealed, it is "too late to appoint a more deserving lead plaintiff").  KBC and Pembroke's counsel did not plead those hypothetical disclosures in their filed complaint, and they make no proffer that an unpled disclosure occurred.

***Second***, KBC and Pembroke contend that it is "premature" to apply *Dura* because the filed complaints allege "multiple partial corrective disclosures."  ECF No. 47 at 5-6.  Under the law, whether there is one or multiple pled disclosures is of no moment.  The law is clear that "determinations of largest financial interest must be ***based on the facts alleged in the complaint***" on file, which here, allege multiple disclosures.  *Eros*, 2016 WL 1367246, at *3; *see also Comverse*, 2007 WL 680779, at *5 ("*Dura* [and its progeny] . . . require a court to make pre-

4

discovery loss causation determinations . . . that are based on the facts alleged in the complaint"); *Teva*, 302 F. Supp. 3d at 498-99 ("Courts within the Second Circuit consistently hold that, when calculating a proposed lead plaintiff's estimated losses, the court should not include losses resulting from [] transactions, which took place . . . before the misconduct ***identified in the complaint*** was ever revealed to the public").

Indeed, this Court in *Eros* applied *Dura* at the Lead Plaintiff stage when there were multiple alleged corrective disclosures.  *See Eros*, 2016 WL 1367246, at *1-3; *see also Teva*, 302 F. Supp. 3d at 492, 498 (in case involving multiple disclosures, "[a]lthough *Dura* was a case that involved the pleading standards for alleging loss causation, its reasoning has been extended to the context of a motion for appointment as lead plaintiff"); *Alibaba*, 102 F. Supp. 3d at 528, 532 (assessing *Dura* when complaints alleged multiple corrective disclosures); *CannaVest*, 93 F. Supp. 3d at 268, 273 (finding that despite multiple disclosures, "losses result[ing] from [] transactions, which took place . . . before the misconduct identified was ever revealed to the public are not to be included in loss calculations for purposes of selecting lead plaintiff").[3]

***Third***, KBC and Pembroke suggest that *Dura* is "not [a] reliable indicator of financial interest" because of a hypothetical varying "fraud premium."  ECF No. 47 at 6.  Courts have specifically rejected this proposition.  *See CannaVest*, 93 F. Supp. 3d at 274 (rejecting argument

---

[3] *See also Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 612-13, 617-18 (S.D.N.Y. 2015) (explaining in case with eight disclosures that "[w]hen selecting a lead plaintiff, courts must consider only those losses that will actually be *recoverable* in the class action"); *In re VimpelCom, Ltd. Sec. Litig.*, 2016 WL 5390902, at *2 (S.D.N.Y. Sept. 26, 2016) (applying *Dura* at Lead Plaintiff stage when complaint alleged four disclosures); *Hedick v. The Kraft Heinz Company*, 2019 WL 4958238, at *6 (N.D. Ill. Oct. 8, 2019) (refusing to credit losses that occurred "before the disclosures alleged in the complaints" which alleged multiple disclosures); *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 848-49 (E.D. Pa. 2018) (finding that "losses that were incurred before any disclosure . . . are not recoverable" in case with "three corrective disclosures"); *Schueneman v. Arena Pharms., Inc.*, 2011 WL 3475380, at *1, 3 (S.D. Cal. Aug 8, 2011) (same).

that courts should ignore *Dura* despite multiple disclosures and potential "ups and downs in the fraud premium"); *see also Plaut v. Goldman Sachs Group, Inc.*, 2019 WL 4512774, at *4 (S.D.N.Y Sept. 19, 2019) ("Under the circumstances presented here, in which the complaint alleges multiple partial disclosures over the course of the Class Period . . . I am inclined to exclude in-and-out transactions prior to the first alleged corrective disclosure").

Critically, in this case there are ***no corrective disclosures or variations in the fraud premium*** during the time that KBC incurred $22.7 million in unrecoverable losses. This is because there is no dispute that the first corrective disclosure occurred, at the earliest, on August 13, 2020—just ***two months*** prior to the end of the nearly ***five-year*** Class Period—and that KBC suffered the $22.7 million loss prior to August 13, rendering it unrecoverable. There is no suggestion that the fraud premium varied before August 13. To credit KBC's unrecoverable loss because multiple disclosures occurred ***afterward*** is illogical and contrary to law. *Dura* is particularly reliable here because "it is clear from the face of the pleadings that most of [KBC's] losses were suffered before any alleged corrective disclosure." *Comverse*, 2007 WL 680779, at *5.



6

Even KBC and its counsel have adopted *Dura* at the Lead Plaintiff stage, specifically in *CenturyLink* (*see* ECF Nos. 50-5, 50-6) where the complaints alleged multiple disclosures, including one that occurred **two years** prior to the end of the Class Period. Yet neither KBC nor its counsel made any protestations there of varying "fraud premium" or *Dura*'s "prematur[ity]." ECF No. 47 at 6; *see also* Bleichmar Decl. Ex. A ¶¶54, 83-86; Ex. B ¶¶29-32; Ex. C ¶¶61-62. And in *General Motors*, KBC and Motley Rice similarly argued that "losses incurred before the first fraud-correcting disclosure alleged in an action **must,** pursuant to *Dura* . . . be excluded from the PSLRA financial interest analysis." ECF No. 50-1 at 4. The complaint in that case alleged three partial disclosures that, as here, occurred just before the end of the Class Period. *See* Bleichmar Decl. Ex. D ¶¶63-64, 66-68. That KBC and its counsel took these contrary positions in prior cases is inconsistent with their arguments now and further counsels in favor of *Dura*'s application.[4]

Finally, KBC and Pembroke's statement that their approach "is entirely consistent with the Court's holding" in *Eros* is wrong. ECF No. 47 at 7-8. In *Eros*, the Court explicitly applied *Dura* in a case involving multiple partial disclosures, just as here, and concluded that "[w]hen evaluating

---

[4] KBC and Pembroke's cited authority supports PSP or is distinguishable. *Owens v. FirstEnergy Corp.*, 2020 WL 6873421, at *7 (S.D. Ohio Nov. 23, 2020) is a Sixth Circuit case that explained that **"[c]ourts in the Second Circuit read Dura to require courts to consider this causal connection when evaluating financial interest at the lead plaintiff stage."** *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, 2006 WL 197036, at *5 (S.D.N.Y. Jan. 25, 2006) considered *Dura* in a case involving multiple disclosures in finding that the presumptive Lead Plaintiff "can allege that the subject of the fraudulent statement [] was the cause of the actual loss suffered, [thus satisfying] the tests articulated by [*Dura*.]" *Li Hong Cheng v. Canada Goose Holdings Inc.*, 2019 WL 6617981, at *5 (S.D.N.Y. Dec. 5, 2019) did not discuss *Dura* and the "movants agree[d]" which movant had "sustained the greatest financial loss from the alleged misconduct." The court in *Cook v. Allergan PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) did not apply *Dura* because "it [was] not clear where a *Dura* analysis would lead" because the "fraud premium may have varied **throughout** the Class Period as a result of [] partial corrective disclosures. . . **at various points** during the Class Period," and applying *Dura* did "not necessarily alter [the] conclusion" of which movant had the largest financial interest. Here, KBC and Pembroke have not, and cannot, point to any disclosure until the end of the Class Period, on August 13, 2020, and it is clear from the face of the pleadings that PSP has the largest financial interest under *Dura*.

financial loss, 'courts *must* consider only those losses that will actually be recoverable in the class action'" because "losses 'incurred before [the] misconduct was ever disclosed to the public are not recoverable.'" *Eros*, 2016 WL 1327246, at *2. The Court then denied the motion of an investor that asserted no recoverable loss "based on the facts alleged in the complaint[s]" and appointed the movant with the largest recoverable loss specifically *because* the Court applied *Dura* at the Lead Plaintiff stage. *Id.* at *2-3. Accordingly, *Eros* is perfectly analogous here and there is no reason for the Court to depart from its ruling.[5]

### 2. PSP Raised *Dura* In Its Opening Brief

KBC and Pembroke contend that PSP engaged in "gamesmanship" by applying *Dura* for the first time in its opposition brief. ECF No. 47 at 9. That is simply untrue. PSP has been consistent and stated in its *initial brief* that "[c]ourts may also consider a movant's recoverable losses as assessed under the Supreme Court's ruling in *Dura*." ECF No. 39 at 7 n.4.

PSP had no way of knowing that KBC would be moving for Lead Plaintiff appointment, let alone that it would claim $22.7 million in unrecoverable losses, necessitating the need for a specific *Dura* analysis. *See Teva*, 302 F. Supp. 3d at 500 (movant "had no reason to know that [opposing movant] would seek to include significant losses incurred prior to the [corrective] disclosure . . . . it had no reason to raise the issue of *Dura* loss calculation before opposing"); *Plaut*, 2019 WL 4512774, at *4 n.9 (rejecting argument that "use of the traditional LIFO approach in [] opening brief forecloses [movant] from using this modified [*Dura*] approach in its opposition brief"). This is even more so because PSP's losses are largely unaffected by *Dura*. Its *Dura* loss

---

[5] KBC and Pembroke's cited authority that LIFO is the preferred method (ECF No. 47 at 2, 5, 7-9) "is unhelpful to the court because those cases do not adequately consider which losses should be considered." *Teva*, 302 F. Supp. 3d at 499. PSP does not dispute that LIFO is the appropriate accounting methodology, just that it must be modified to account for the Supreme Court's ruling in *Dura* given the timing of KBC's losses prior to any corrective disclosures.

8

is $10.1 million (ECF No. 49 at 2) and its LIFO loss is $10.8 million according to KBC and Pembroke (ECF No. 47 at 2). And without subtracting PSP's profits on other securities from its stock losses, PSP's LIFO loss is $14.0 million (ECF No. 39 at 2), further demonstrating that PSP's losses are consistent among the methods and that it had no reason to apply *Dura* until learning that nearly 80% of KBC's losses were unrecoverable. There is no "gamesmanship" here.[6]

### 3.    PSP Purchased More Total Shares and Net Shares Under *Lax/Olsten*

PSP also has the largest financial interest under the remaining *Lax/Olsten* factors, purchasing more total shares and net shares than all other movants ***combined***. *See* ECF No. 49 at 10-12. This is a separate reason why PSP has the largest financial interest. *See Eros*, 2016 WL 1367246, at *5 (appointing movant that purchased "largest number of [] net shares"); *Schueneman*, 2011 WL 3475380, at *4 ("the candidate with the most net shares purchased will normally have the largest potential damage recovery"). KBC and Pembroke's slight 1% advantage on net funds expended is outweighed by PSP's clear advantage on recoverable losses, total shares purchased, and net shares purchased. *See Ruland v. InfoSonics Corp.,* 2006 WL 3746716, at *4-6 (S.D. Cal. Oct. 23, 2006) (appointing movant that incurred the largest recoverable loss, purchased the most shares and net shares, but did not expend the most net funds).

### B.    PSP Satisfies The Relevant Requirements Of Rule 23

PSP is one of the largest and most sophisticated institutional investors in Canada, and KBC and Pembroke have not provided "proof" of PSP's inadequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Rather, KBC and Pembroke simply contend that PSP did not subtract its profits on bonds and options from its significant stock losses—a treatment that is supported by the law and consistent

---

[6] *Eros* does not support KBC and Pembroke. There, a movant "filed his lawsuit alleging [an additional disclosure of fraud] on the last day … to file a lead plaintiff motion." 2016 WL 1367246, at *4. Nor does *Bodri v. Gopro, Inc*., 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016), in which a movant made no reference to the relevant methodology until the opposition brief.

with this Court's focus on "recoverable losses." *Eros*, 2016 WL 1367246, at \*2. Plans of allocation—including those prepared by KBC's proposed lead counsel here—routinely employ formulas that do not subtract gains on different securities and instead set the recognized loss to zero for securities with a gain. *See* Bleichmar Decl. Ex. E ¶¶22, 26; Ex. F. ***Regardless, "[t]his issue is largely academic" because PSP asserts the largest recoverable loss under Dura whether its profits on other securities are subtracted from stock losses or not.*** *FirstEnergy*, 2020 WL 6873421, at \*7 (discussing legal authority as to whether profits and losses on different securities should be aggregated together). PSP was fully transparent, disclosed that it "experienced some gains on its Class Period investments in Citigroup bonds and options" (ECF No. 39 at 7), and submitted the necessary trading information to the Court. *See* ECF Nos. 40-1; 40-4.[7]

### C. KBC And Pembroke Are A Group That Lacks A Preexisting Relationship

KBC and Pembroke have not explained how their group would "best serve the class" as compared to a single Lead Plaintiff and Lead Counsel structure. *Eros*, 2016 WL 1367246, at \*5. KBC and Pembroke note that BFA "serves as liaison counsel to KBC in *In re Twitter Inc. Securities Litigation* . . . and affirmed KBC's adequacy and typicality to serve as lead plaintiff in that action." ECF No. 47 at 11. But PSP and BFA are not contesting KBC's typicality or adequacy in this case; simply that PSP is the "most adequate plaintiff" pursuant to the lead plaintiff selection criteria mandated by the PSLRA.[8]

---

[7] KBC and Pembroke's cited authority is inapposite. *Plaut*, 2019 WL 4512774, at \*5 and *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) involved movants that omitted class period transactions from their PSLRA certifications. PSP's PSLRA certification is complete and accurate, and KBC and Pembroke do not claim otherwise. *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) combined bond and stock transactions but neither focused on "potential recovery" nor addressed the authority PSP puts forward here.

[8] In the *Genworth* securities litigation cited by KBC and Pembroke, where BFA served as Lead Counsel to two institutional investors, there was no competing single movant. *See* ECF No. 48-3.

Dated:  January 19, 2021                              Respectfully Submitted,

                                                       **BLEICHMAR FONTI & AULD LLP**

                                                       */s/ Javier Bleichmar*
                                                       Javier Bleichmar
                                                       Joseph A. Fonti
                                                       Erin H. Woods
                                                       7 Times Square, 27th Floor
                                                       New York, New York 10036
                                                       Telephone: (212) 789-1340
                                                       Facsimile:  (212) 205-3960
                                                       jbleichmar@bfalaw.com
                                                       jfonti@bfalaw.com
                                                       ewoods@bfalaw.com

                                                       *Counsel for Proposed Lead Plaintiff PSP and*
                                                       *Proposed Lead Counsel for the Class*

11