# EXHIBIT B

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  lportnoy@glancylaw.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY ALLEN PETERSEN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CENTURYLINK, INC., GLEN F. POST, III, R. STEWART EWING, JR., and DAVID D. COLE, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Larry Allen Petersen ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by CenturyLink, Inc., ("CenturyLink" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by CenturyLink; and (c) review of other publicly available information concerning CenturyLink.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that acquired CenturyLink's securities between August 3, 2016, and June 19, 2017, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     CenturyLink is an integrated communications company that purportedly provides an array of services to residential and business customers including local and long-distance voice, broadband, Multi-Protocol Label Switching ("MPLS"), private line (including special access), Ethernet, colocation, hosting (including cloud hosting and managed hosting), data integration, video, network, public access, Voice over Internet Protocol ("VoIP"), information technology, and other ancillary services.

3.     On June 16, 2017, *Bloomberg* reported that a former CenturyLink employee claimed she was fired for blowing the whistle on the Company's high-pressure sales culture that allegedly left customers paying millions of dollars for accounts they didn't request. *Bloomberg* further reported that the complaint

---

[1] "Defendants" refers to CenturyLink, Inc., Glen F. Post, III, R. Stewart Ewing, Jr., and David D. Cole, collectively.

alleged that the Company "allowed persons who had a personal incentive to add services or lines to customer accounts to falsely indicate on the CenturyLink system the approval by a customer of new lines or services."

4. On this news, the Company's stock price fell $1.23 per share, or nearly 5%, to close at $25.72 per share on June 16, 2017, on unusually heavy trading volume.

5. On June 19, 2017, *Bloomberg* reported that a consumer complaint was filed against CenturyLink based on the whistle blower complaint alleging claims of fraud, unfair competition, and unjust enrichment.

6. On this news, the Company's stock price fell $0.36 per share to close at $25.36 per share on June 19, 2017.

7. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company allowed employees to add services or lines to customer accounts without customer approval; and (2) that, as a result of the foregoing, Defendants' statements about CenturyLink's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  In addition, the Company maintains offices in this Judicial District; and, a consumer class action alleging fraud and unjust enrichment claims against the Company has been filed in this Judicial District, *McLeod v. CenturyLink, Inc., et al.*, Docket No. 2:17-cv-04504 (C.D.Cal, June 18, 2017).

12.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.    Plaintiff Larry Allen Petersen, as set forth in the accompanying certification, incorporated by reference herein, purchased CenturyLink securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.    Defendant CenturyLink, Inc. is incorporated in Louisiana and its headquarters are in Monroe, Louisiana.  CenturyLink's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "CTL."

15.    Defendant Glen F. Post, III ("Post") was the Chief Executive officer ("CEO") of CenturyLink at all relevant times.

16.    Defendant R. Stewart Ewing, Jr. ("Ewing") was the Chief Financial officer ("CFO") of CenturyLink at all relevant times.

17.    Defendant David D. Cole ("Cole") was the Executive Vice President and Controller of CenturyLink at all relevant times.

18.    Defendants Post, Ewing, and Cole (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power

and authority to control the contents of CenturyLink's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. CenturyLink is an integrated communications company that purportedly provides an array of services to residential and business customers including local and long-distance voice, broadband, MPLS, private line (including special access), Ethernet, colocation, hosting (including cloud hosting and managed hosting), data integration, video, network, public access, VoIP, information technology, and other ancillary services.

### Materially False and Misleading

### Statements Issued During the Class Period

20. The Class Period begins on August 3, 2016. On that day, the Company issued a press release entitled "CenturyLink Reports Second Quarter 2016 Results." Therein, the Company, in relevant part, stated:

> MONROE, La., Aug. 3, 2016 /PRNewswire/ -- CenturyLink, Inc. (NYSE: CTL) today reported results for second quarter 2016.

> "CenturyLink delivered solid second quarter financial results with

total operating revenues and core revenues in line with our guidance, and operating cash flow and adjusted diluted earnings per share that exceeded our previous guidance," said Glen F. Post III, chief executive officer and president. "Our new sales and marketing leadership team continues to refine our sales channels and associated go-to-market strategies for the Business market, and continues to pivot toward higher-value bundled solutions for the Consumer market. While second quarter Consumer subscriber metrics were softer than anticipated, we expect to see an improvement in unit trends in the second half of the year.

"We also are continuing to invest with a 'network first' focus on delivering higher broadband speeds and in the transformation and virtualization of our network infrastructure through the deployment of NFV[4] and SDN[5] technologies. We ended the quarter with more than 8.4 million addressable households and businesses with 40 Mbps or higher speeds, including 1.2 million GPON-enabled addressable units. We expect to reach 11 million 40 Mbps or higher, including 2 million GPON-enabled addressable households and businesses by year-end 2017," concluded Post.

**Consolidated Financial Results**

**Operating revenues** for second quarter 2016 were $4.40 billion compared to $4.42 billion in second quarter 2015. Declines in legacy[1,6] and data integration revenues were partially offset by higher strategic revenues[1,6], and increased high-cost support revenues related to Connect America Fund Phase 2 (CAF Phase 2) in second quarter 2016.

**Operating expenses** decreased to $3.75 billion from $3.87 billion in second quarter 2015. Excluding special items, operating expenses decreased to $3.73 billion from $3.84 billion in second quarter 2015. The year-over-year decrease in operating expenses was primarily driven by lower depreciation and amortization expenses and employee-related costs.

**Operating income** increased to $650 million from $549 million in second quarter 2015 due to lower operating expenses this quarter compared to the same year-ago period.

**Operating cash flow** (as defined in our attached supplemental schedules), excluding special items, increased to $1.65 billion from $1.62 billion in second quarter 2015. For second quarter 2016, CenturyLink achieved an operating cash flow margin, excluding special items, of 37.5% versus 36.8% in second quarter 2015.

**Net income and diluted earnings per share (EPS)** were $196 million and $0.36, respectively, for second quarter 2016, compared to $143 million and $0.26, respectively, for second quarter 2015. The increase in diluted EPS was due to higher net income and the impact of the lower number of shares outstanding due to share repurchases in 2015.

**Adjusted net income and adjusted diluted EPS** (as reflected in our attached supplemental schedule) exclude the after-tax impact of special items, the non-cash after-tax impact of the amortization of certain intangible assets related to major acquisitions since mid-2009, and the non-cash after-tax impact to interest expense relating to the assignment of fair value to the outstanding debt assumed in connection with those acquisitions. Excluding these items, CenturyLink's adjusted net income for second quarter 2016 was $342 million compared to adjusted net income of $308 million in second quarter 2015. Second quarter 2016 adjusted diluted EPS was $0.63 compared to $0.55 in the year-ago period due to higher adjusted net income and the impact of the lower number of shares outstanding due to share repurchases in 2015.

The accompanying financial schedules provide additional details regarding the company's special items and reconciliations of non-GAAP financial measures for the three months and six months ended June 30, 2016 and 2015.

21.     On August 4, 2016, the Company filed its quarterly report on Form 10-Q for the 2016 fiscal second quarter.  The 10-Q was signed by Defendant Cole, and reaffirmed the Company's statements about its financial results contained in the press release issued on August 3, 2016.

22.     On October 31, 2016, the Company issued a press release entitled "CenturyLink Reports Third Quarter 2016 Results."  Therein, the Company, in

relevant part, stated:

> MONROE, La., Oct. 31, 2016 /PRNewswire/ -- CenturyLink, Inc. (NYSE: CTL) today reported results for third quarter 2016.
>
> **Consolidated Financial Results**
>
> **Operating revenues** for third quarter 2016 were $4.38 billion compared to $4.55 billion in third quarter 2015. A decline in high-cost support revenues related to the acceptance of Connect America Fund Phase 2 (CAF Phase 2) support payments during third quarter 2015, a substantial portion of which related to a one-time true-up for the first half of the year, along with a decline in legacy[1,4] revenues, was partially offset by higher strategic revenues[1,4] in third quarter 2016.
>
> **Operating expenses** decreased to $3.79 billion from $3.90 billion in third quarter 2015 primarily driven by a decline in severance expenses and lower depreciation and amortization expenses, which were partially offset by higher data integration (CPE) costs. Excluding special items (primarily severance costs), operating expenses decreased to $3.78 billion from $3.82 billion in third quarter 2015.
>
> **Operating income** decreased to $595 million from $656 million in third quarter 2015 primarily due to lower legacy and CAF Phase 2 revenues, which were partially offset by lower operating expenses this quarter compared to the same year-ago period.
>
> **Operating cash flow** (as defined in our attached supplemental schedules), excluding special items, decreased to $1.60 billion from $1.78 billion in third quarter 2015.
>
> **Net income and diluted earnings per share (EPS)** were $152 million and $0.28, respectively, for third quarter 2016, compared to $205 million and $0.37, respectively, for third quarter 2015. Net income was lower due to the decline in operating income along with a loss reported in other income associated with the early retirement of debt. The decrease in diluted EPS was due to lower net income partially offset by the impact of the lower number of shares outstanding due to share repurchases in 2015.
>
> **Adjusted net income and adjusted diluted EPS** (as reflected in our attached supplemental schedule) exclude the after-tax impact of

special items, the non-cash after-tax impact of the amortization of certain intangible assets related to major acquisitions since mid-2009, and the non-cash after-tax impact to interest expense relating to the assignment of fair value to the outstanding debt assumed in connection with those acquisitions. Excluding these items, CenturyLink's adjusted net income for third quarter 2016 was $305 million compared to adjusted net income of $390 million in third quarter 2015. Third quarter 2016 adjusted diluted EPS was $0.56 compared to $0.70 in the year-ago period due to lower adjusted net income partially offset by the impact of the lower number of shares outstanding due to share repurchases in 2015.

The accompanying financial schedules provide additional details regarding the company's special items and reconciliations of non-GAAP financial measures for the three months and nine months ended September 30, 2016 and 2015.

**Segment Financial Results[5]**

**Business segment** revenues were $2.61 billion, a decrease of 1.1% from third quarter 2015, primarily due to a decline in legacy revenues, which was partially offset by a 6% growth in high-bandwidth data revenues. Strategic revenues were $1.23 billion in the quarter, an increase of 5.1% from third quarter 2015.

**Consumer segment** revenues were $1.47 billion, a decrease of 2.5% from third quarter 2015, primarily due to a decline in legacy voice revenues, which was partially offset by growth in broadband and Prism[®] TV revenues. Strategic revenues were $789 million in the quarter, a 3.4% increase over third quarter 2015.

23.     On November 4, 2016, the Company filed its quarterly report on Form 10-Q for the 2016 fiscal third quarter.  The 10-Q was signed by Defendant Cole, and reaffirmed the Company's statements about its financial results contained in the press release issued on October 31, 2016.

24.     On February 8, 2017, the Company issued a press release entitled "CenturyLink Reports Fourth Quarter And Full-Year 2016 Results."  Therein, the Company, in relevant part, stated:

MONROE, La., Feb. 8, 2017 /PRNewswire/ -- CenturyLink, Inc. (NYSE: CTL) today reported results for fourth quarter and full-year 2016.

"CenturyLink achieved significant progress on our operational initiatives in 2016; however, full-year 2016 operating revenues and cash flows were below our expectations, primarily due to lower strategic revenue growth," said Glen F. Post, III, CenturyLink chief executive officer and president. "We are not satisfied with these results and are making progress in a number of areas focused on continuing to improve our customer experience and further positioning CenturyLink for long-term growth."

"We saw continued improvement in our broadband customer trend during the second half of 2016 and achieved modest Consumer broadband customer growth in the fourth quarter. We also continued to enhance the broadband speeds across our network and achieved nearly 5% year-over-year growth in Business high-bandwidth data services revenue in the second half of 2016. Additionally, we recently realigned our organization into primary customer-facing units enabling faster decision making and market responsiveness, increased accountability and an enhanced customer experience. Finally, our pending acquisition of Level 3 and pending sale of our data centers and associated colocation business align with our network-first focus while enhancing our opportunities to deliver complementary hosting, cloud and managed services. As we look to the future, we believe we are well positioned to drive profitable growth and shareholder value," concluded Post.

**Fourth Quarter 2016 Consolidated Financial Results**

**Operating revenues** for fourth quarter 2016 were $4.29 billion compared to $4.48 billion in fourth quarter 2015 as the declines in legacy[3,4] voice and low-bandwidth data services revenues were partially offset by growth in strategic revenues[3,4].

**Operating expenses** increased to $3.90 billion from $3.73 billion in fourth quarter 2015, primarily driven by Level 3 acquisition costs and an increase in severance costs, which were partially offset by lower depreciation and amortization expenses. Excluding special items (primarily severance and Level 3 acquisition costs), operating

expenses were $3.70 billion compared to $3.71 billion in fourth quarter 2015.

**Operating income** decreased to $392 million from $751 million in fourth quarter 2015 primarily due to the revenue and expense items described above.

**Operating cash flow** (as defined in our attached supplemental schedules), excluding special items, decreased to $1.59 billion from $1.82 billion in fourth quarter 2015 due to the decline in operating revenues outlined above.

**Net income and diluted earnings per share (EPS)** were $42 million and $0.08, respectively, for fourth quarter 2016, compared to $338 million and $0.62, respectively, for fourth quarter 2015. The decrease in net income and diluted EPS was due to the decline in operating income.

**Adjusted net income and adjusted diluted EPS** (as reflected in our attached supplemental schedule) exclude the after-tax impact of special items, the non-cash after-tax impact of the amortization of certain intangible assets related to major acquisitions since mid-2009, and the non-cash after-tax impact to interest expense relating to the assignment of fair value to the outstanding debt assumed in connection with those acquisitions. Excluding these items, CenturyLink's adjusted net income for fourth quarter 2016 was $292 million compared to adjusted net income of $434 million in fourth quarter 2015. Fourth quarter 2016 adjusted diluted EPS was $0.54 compared to $0.80 in the year-ago period due to lower adjusted net income.

**Full-Year 2016 Consolidated Financial Results**

**Operating revenues** decreased to $17.5 billion from $17.9 billion in 2015. The decline in operating revenues was driven by lower voice, low-bandwidth data services and data integration revenues. These revenue declines were partially offset by increases in strategic revenues resulting primarily from increased business customer demand for high-bandwidth data services, along with growth in broadband and CenturyLink® Prism™ TV revenues.

**Operating expenses** decreased to $15.1 billion from $15.3 billion in 2015 primarily driven by lower depreciation and amortization expenses partially offset by Level 3 acquisition costs and an increase in severance costs. Excluding special items (primarily severance and Level 3 acquisition costs), operating expenses declined to $14.9 billion in 2016 from $15.1 billion in 2015.

**Operating income** decreased to $2.3 billion from $2.6 billion in 2015 primarily due to the revenue and expense items described above.

**Operating cash flow**, excluding special items, was $6.5 billion in 2016 compared to $7.0 billion in 2015.  The operating cash flow decline was driven by the decline in operating revenues outlined above.

**Net income and diluted earnings per share (EPS)** were $626 million and $1.16, respectively, for 2016, compared to $878 million and $1.58, respectively, for 2015. The decrease in net income and diluted EPS was due to the decline in operating income.

**Adjusted net income and adjusted diluted EPS**, (as reflected in our attached supplemental schedule) exclude the after-tax impact of special items, the non-cash after-tax impact of the amortization of certain intangible assets related to major acquisitions since mid-2009, and the non-cash after-tax impact to interest expense relating to the assignment of fair value to the outstanding debt assumed in connection with those acquisitions. Excluding these items, CenturyLink's adjusted net income decreased to $1.3 billion in 2016 from $1.5 billion in 2015. Adjusted diluted EPS for 2016 was $2.45 compared to $2.71 in 2015 primarily due to lower 2016 adjusted net income.

The accompanying financial schedules provide additional details regarding the company's special items and reconciliations of non-GAAP financial measures for the three months and twelve months ended December 31, 2016 and 2015.

**Fourth Quarter 2016 Segment Financial Results**[5]

**Business segment** revenues were $2.55 billion, a decrease of 4.1% from fourth quarter 2015, primarily due to a decline in legacy

revenues, which was partially offset by 3.0% growth in high-bandwidth data revenues. Strategic revenues were $1.23 billion in the quarter, an increase of 1.1% from fourth quarter 2015.

**Consumer segment** revenues were $1.45 billion, a decrease of 4.3% from fourth quarter 2015, primarily due to a decline in legacy voice revenues, which was partially offset by growth in Prism$^{TM}$ TV revenues. Strategic revenues were $784 million in the quarter, a 1.4% increase over fourth quarter 2015.

**Realignment into Customer-Facing Organizations**

In January 2017, CenturyLink implemented an organization change designed to better align its customer-facing organizations into three business units: Consumer; Enterprise; and IT and Managed Services. These organizations are fully integrated with Sales, Marketing and Service Delivery support teams to enable faster decision-making, market responsiveness and deeper accountability. This organization change is expected to create greater focus on the customer experience in each business unit and accelerate strategic revenue growth. CenturyLink also expanded its Product Development and Technology function to include Network Operations, Planning, Design and Construction to better support this new organizational structure.

25. On February 23, 2017, the Company filed its annual report on Form 10-K for the 2016 fiscal year. The 10-K was signed by Defendant Cole, and reaffirmed the Company's statements about its financial results contained in the press release issued on February 8, 2017.

26. On May 3, 2017, the Company issued a press release entitled "CenturyLink Reports First Quarter 2017 Results." Therein, the Company, in relevant part, stated:

MONROE, La., May 3, 2017 /PRNewswire/ --

- Achieved first quarter operating revenues of approximately $4.2 billion
- Generated operating income of $631 million in first quarter
- Generated operating cash flow[1] of $1.53 billion and free cash flow[1,2] of $492 million in first quarter, both excluding special

items[1]

- Achieved first quarter net income of $163 million and diluted EPS of $0.30
- Generated adjusted net income[1] of $284 million and adjusted diluted EPS[1] of $0.52, excluding special items, in first quarter
- Continued to invest to drive higher speeds throughout our footprint; ended the quarter with more than 3.5 million addressable units capable of broadband speeds of 100Mbps or higher and more than 1.4 million addressable units capable of 1Gig or higher
- Completed sale of data centers and colocation business on May 1, 2017; expect net after-tax cash proceeds of approximately $1.75 billion
- Received shareholder approval for acquisition of Level 3 Communications; remain on track to complete the transaction by end of September 2017

CenturyLink, Inc. (NYSE: CTL) today reported results for first quarter 2017.

"CenturyLink's first quarter high-bandwidth data services revenues for Enterprise customers grew by 2% sequentially and 4% year-over-year, driven by increasing demand for higher-speed Enterprise data services as businesses continue their digital transformation," said Glen F. Post, III, CenturyLink chief executive officer and president. "This increasing demand further validates the rationale for our pending acquisition of Level 3 Communications, which will transform CenturyLink into the second largest domestic communications provider serving global enterprise customers.

"We continue to make good progress in obtaining the necessary approvals for the pending Level 3 acquisition and integration planning for the combination is on track. We are very pleased with the extremely talented and experienced senior leadership team for the combined company, announced last week, which will be effective at closing. We continue to expect to complete the transaction by the end of September 2017," concluded Post.

**First Quarter 2017 Consolidated Financial Results**

**Operating revenues** for first quarter 2017 were $4.21 billion compared to $4.40 billion in first quarter 2016 due to the decline in legacy[3,4] revenues.

**Operating expenses**[5] decreased to $3.58 billion from $3.71 billion in first quarter 2016, primarily driven by the termination of depreciation expense related to the data centers and colocation business divested on May 1, 2017, along with lower salaries and wages expense related to the headcount reduction in fourth quarter 2016. Excluding special items, operating expenses were $3.61 billion compared to $3.69 billion in first quarter 2016.

**Operating income** decreased to $631 million from $688 million in first quarter 2016 primarily due to the operating revenues decline described above, partially offset by lower operating expenses.

**Operating cash flow** (as defined in our attached supplemental schedules), excluding special items, decreased to $1.53 billion from $1.68 billion in first quarter 2016 due to the decline in operating revenues outlined above.

**Net income and diluted earnings per share (EPS)** were $163 million and $0.30, respectively, for first quarter 2017, compared to $236 million and $0.44, respectively, for first quarter 2016. The decrease in net income and diluted EPS was due primarily to the decline in operating income.

**Adjusted net income and adjusted diluted EPS** (as reflected in our attached supplemental schedule) exclude the after-tax impact of special items, the non-cash after-tax impact of the amortization of certain intangible assets related to major acquisitions since mid-2009, and the non-cash after-tax impact to interest expense relating to the assignment of fair value to the outstanding debt assumed in connection with those acquisitions. Excluding these items, CenturyLink's adjusted net income for first quarter 2017 was $284 million compared to adjusted net income of $386 million in first quarter 2016. First quarter 2017 adjusted diluted EPS was $0.52 compared to $0.71 in the year-ago period due to lower adjusted net income.

Case 2:17-cv-04579-GBW-SK Document 1 Filed 06/21/17 Page 16 of 35 Page ID #:16

The accompanying financial schedules provide additional details regarding the company's special items and reconciliations of non-GAAP financial measures for the three months ended March 31, 2017 and 2016.

**First Quarter 2017 Segment Financial Results**[6]

As initially announced in its fourth quarter 2016 earnings release, CenturyLink implemented an organization change designed to better align its customer-facing organizations into three business units: Consumer, Enterprise, and IT and Managed Services. As a result of this reorganization, the company reassigned its information technology, managed hosting, cloud hosting and hosting area network services from its former Business segment to a new operating segment; however this segment is immaterial to overall results and is not a reportable segment. The results of the company's Enterprise and Consumer segments are summarized below:

**Enterprise segment** revenues were $2.36 billion, a decrease of 3.5% from first quarter 2016, primarily due to a decline in legacy revenues, which was partially offset by 4.2% growth in high-bandwidth data services revenues. Total strategic revenues were $1.08 billion in the quarter, an increase of 2.9% from first quarter 2016.

**Consumer segment** revenues were $1.41 billion, a decrease of 5.2% from first quarter 2016, primarily due to a decline in legacy voice revenues, as well as lower satellite video revenues. Total strategic revenues were $764 million in the quarter, a decrease of 1.3% from first quarter 2016, due primarily to the restructuring of a satellite video services contract.

27.    On May 5, 2017, the Company filed its quarterly report on Form 10-Q for the 2017 fiscal first quarter.  The 10-Q was signed by Defendant Cole, and reaffirmed the Company's statements about its financial results contained in the press release issued on May 3, 2017.

28.    The above statements identified in ¶¶20-27 were materially false and/or misleading, as well as failed to disclose material adverse facts about the

Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company allowed employees to add services or lines to customer accounts without customer approval; and (2) that, as a result of the foregoing, Defendants' statements about CenturyLink's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

29. On June 16, 2017, *Bloomberg* reported that a former CenturyLink employee claimed she was fired for blowing the whistle on the Company's high-pressure sales culture that allegedly left customers paying millions of dollars for accounts they didn't request. *Bloomberg* further reported that the complaint alleged that the Company "allowed persons who had a personal incentive to add services or lines to customer accounts to falsely indicate on the CenturyLink system the approval by a customer of new lines or services." In greater part, *Bloomberg* reported:

> A former CenturyLink Inc. employee claims she was fired for blowing the whistle on the telecommunications company's high-pressure sales culture that left customers paying millions of dollars for accounts they didn't request, according to a lawsuit filed this week in Arizona state superior court.
>
> The company's shares fell the most in six weeks on the news, while the shares of merger partner Level 3 Communications Inc. also dropped sharply.
>
> The plaintiff, Heidi Heiser, worked from her home for CenturyLink as a customer service and sales agent from August 2015 to October 2016. The suit claims she was fired days after notifying Chief Executive Officer Glen Post of the alleged scheme during a companywide question-and-answer session held on an internal message board.
>
> The complaint alleges CenturyLink "allowed persons who had a personal incentive to add services or lines to customer accounts to falsely indicate on the CenturyLink system the approval by a customer

of new lines or services." This would sometimes result in charges that hadn't been authorized by customers, according to the complaint.

CenturyLink, of Monroe, La., is in the midst of a $34 billion merger with Level 3 Communications Inc., whose CEO, Jeff Storey, will become chief of CenturyLink in 2019 as the company goes up against powerhouses such as AT&T Inc. in bidding for businesses' heavy internet traffic. CenturyLink, which provides communications and data services nationwide and offers hosting, cloud, and information technology services, booked $816 million in net income on $17.5 billion in sales last year.

Shares of CenturyLink closed down 4.6 percent at $25.72 after trading down about 7 percent earlier in the session, in their biggest intraday decline since May 4. Level 3 shares ended down 2.8 percent at $62.03. CFRA cut its recommendation on shares of CenturyLink to hold from buy.

CenturyLink "holds itself and its employees to the highest ethical standards" and has "an Integrity Line in place, 24 hours a day, seven days a week," Mark Molzen, a spokesman, said in a statement. "This employee did not make a report to the Integrity Line and our leadership team was not aware of this matter until the lawsuit was filed. We take these allegations seriously and are diligently investigating this matter."

Heiser's complaint alleges that she became increasingly concerned about what she observed at CenturyLink after news of Wells Fargo & Co.'s regulatory troubles broke in September. In that case, Wells Fargo employees opened deposit and credit card accounts without customers' consent to earn incentives and meet sales goals. Without admitting wrongdoing, Wells Fargo ended up firing more than 5,000 employees and agreeing to pay $185 million in fines, in addition to compensating customers for fees related to the unauthorized accounts. The complaint likens what Heiser said CenturyLink sales agents did to the Wells Fargo scandal and estimated the alleged unauthorized fees amounted to "many millions" of dollars. She says her concerns were bolstered by posts she had read on review websites.

A review of Yelp and Pissed Consumer finds evidence of irate customers. "They signed me up unauthorized," wrote Sierrah U. of

CLASS ACTION COMPLAINT
17

Bend, Ore., on Yelp in February 2015. "I was talking to someone interested in signing up two weeks ago after realizing my modem was incapable I told the guy I didn't want to sign up and I would call back later if I was still interested, he got really upset hung up on me. Two weeks later I receive a bill! With a ton a fees, I don't even have internet with them!"

When a customer complained about an unauthorized charge, customer service and sales agents like Heiser were directed "to inform the complaining customer that CenturyLink's system indicated the customer had approved the service," according to the complaint, and as a result "it was really the customer's word against CenturyLink."

"CenturyLink is going to be in a world of hurt if this turns out to be true," said Roger Entner, an analyst with Recon Analytics.

Initially, Heiser told her direct superiors about her suspicions and was told in response to her complaints to "stay positive and not to mention her concerns again," according to the complaint. Heiser didn't report her concerns to the Federal Communications Commission or the Occupational Safety and Health Administration, a division of the U.S. Department of Labor.

Five months before she was fired, Heiser said, she experienced dropped calls with customers due to what the complaint described as a "malfunctioning system." She reported the issue repeatedly to superiors, according to the complaint. The dropped calls were allegedly cited by CenturyLink as the reason for her dismissal, which came two days after the question-and-answer session.

To lead the combined operations of CenturyLink and Level 3, activist investor Keith Meister's hedge fund, Corvex Management LLP, had sought a telecom veteran, prevailing with Storey's selection. (Meister says Corvex has built up a 5.5 percent stake in CenturyLink.) Still, Post, the current CEO, will stay on as executive chairman when Storey takes the helm.

Phone service giants such as AT&T Inc., Verizon Communications Inc., and Sprint have all settled cases in which third-party companies had been adding services to customers' phone bills without consent. These "cramming" issues typically involved $9.99 monthly charges

for horoscopes and trivia games. That is different from a telephone company employee who may be looking to meet sales goals by creating false accounts or adding services to existing accounts without the subscriber's knowledge or consent.

T-Mobile U.S. Inc. was the subject of a critical report in December from a labor group called Change to Win Retail Initiatives that said the carrier put its sales staff under pressure to meet difficult sales goals. The pressure caused T-Mobile employees to force some customers to enroll in services they didn't necessarily want or authorize, according to the report. T-Mobile declined to comment on the allegation.

"When sales targets are unrealistic and employees' livelihoods are at stake, some people are going to take shortcuts," said Entner, the telecom analyst. "Companies have the responsibility to make sure the goals are realistic. You don't want to drive people to break the law."

30. On this news, the Company's stock price fell $1.23 per share, or 4.5%, to close at $25.72 per share on May June 16, 2017, on unusually heavy trading volume.

31. On June 19, 2017, *Bloomberg* reported that a consumer complaint was filed against CenturyLink based on the whistle blower complaint alleging claims of fraud, unfair competition, and unjust enrichment. In greater part, *Bloomberg* reported:

CenturyLink Inc., sued last week by a former employee for allegedly running a sales incentive scheme and firing her for drawing attention to it, is now the subject of a class-action complaint seeking damages as high as $12 billion.

The complaint, which comes as the Monroe, La., telecommunications company is in the midst of a $34 billion merger with Level 3 Communications Inc., seeks to establish a class of consumers harmed by an alleged high-pressure sales culture. Last week's self-proclaimed whistleblower, Heidi Heiser, says such a culture left customers paying millions of dollars for accounts they didn't request.

The new lawsuit, filed in the central district of California late Sunday

night, cites Heiser's suit, as well as similar accusations posted on social media and consumer review websites by people identifying themselves as CenturyLink customers, and accuses CenturyLink of fraud, unfair competition, and unjust enrichment.

"Ms. Heiser's allegations of what she observed, and what CenturyLink corporate culture encouraged, are consistent with the experiences of hundreds of thousands and potentially millions of consumers who have been defrauded by CenturyLink," the complaint states. "It is estimated that the damages to consumers could range between $600 million and $12 billion, based on CenturyLink's 5.9 million subscribers."

"The fact that a law firm is trying to leverage a wrongful termination suit into a putative class action lawsuit does not change our original position," Mark Molzen, a CenturyLink spokeman, said in a statement, adding that Heiser failed to report her allegations to the company's 24-hour Integrity Line. He said her claims "are completely inconsistent" with company policy and culture and that "we take these allegations seriously and are diligently investigating this matter."

Class actions are common after contentious allegations against large companies. Sunday's lawsuit was brought on behalf of the consumers by the Geragos & Geragos law firm, led by celebrity attorney Mark J. Geragos. Heiser didn't report her concerns to the Federal Communications Commission or other authorities.

The named plaintiffs in the case are Craig McLeod and Steven L. McCauley, both current customers of CenturyLink. During a conversation in early April with a sales agent on CenutryLink's website, McLeod, 65, was offered a faster internet link for an extra $2 a month with a two-year contract, and accepted, according to the complaint. He alleges he incurred considerably higher fees than quoted and was charged for a repair that never was made.

In an interview, McLeod, a semi-retired truck driver, said that in the area of Alabama where he lives, CenturyLink is the only hardwired internet provider available.

"I'm pretty much stuck with CenturyLink," he said. "I am seriously considering moving just because of them. The internet is that

important to me."

On Friday, CenturyLink's shares fell the most in six weeks on the news of Heiser's suit, while the shares of merger partner Level 3 also dropped sharply. The merger will put CenturyLink up against powerhouses such as AT&T Inc. in bidding to provide communications services to businesses. CenturyLink, which provides data services nationwide, including hosting, cloud, and information technology services, booked $816 million in net income on $17.5 billion in sales last year.

Heiser's complaint alleges that Heiser became increasingly concerned about what she observed at CenturyLink after news of Wells Fargo & Co.'s regulatory troubles broke in September. In that case, Wells Fargo employees, to earn incentives and meet sales goals, opened deposit and credit card accounts without customers' consent. Without admitting wrongdoing, Wells Fargo ended up firing more than 5,000 employees and agreeing to pay $185 million in fines, in addition to compensating customers for fees related to the unauthorized accounts.

32.     On this news, the Company's stock price fell $0.36 per share, or 1.4%, to close at $25.36 per share on May June 19, 2017.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired CenturyLink's securities between August 3, 2016, and June 19, 2017, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, CenturyLink's common stock actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate

discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of CenturyLink shares were traded publicly during the Class Period on the NYSE. As of April 27, 2017, CenturyLink had 548,812,063 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by CenturyLink or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of CenturyLink; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to

them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

39. The market for CenturyLink's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, CenturyLink's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired CenturyLink's securities relying upon the integrity of the market price of the Company's securities and market information relating to CenturyLink, and have been damaged thereby.

40. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of CenturyLink's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about CenturyLink's business, operations, and prospects as alleged herein.

41. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about CenturyLink's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other

members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

42. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

43. During the Class Period, Plaintiff and the Class purchased CenturyLink's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

44. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding CenturyLink, their control over, and/or receipt and/or modification of CenturyLink's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning CenturyLink, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

45.     The market for CenturyLink's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, CenturyLink's securities traded at artificially inflated prices during the Class Period.  On October 27, 2016, the Company's stock price closed at a Class Period high of $31.00 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of CenturyLink's securities and market information relating to CenturyLink, and have been damaged thereby.

46.     During the Class Period, the artificial inflation of CenturyLink's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about CenturyLink's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of CenturyLink and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

47.     At all relevant times, the market for CenturyLink's securities was an efficient market for the following reasons, among others:

(a)     CenturyLink stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, CenturyLink filed periodic public reports

with the SEC and/or the NYSE;

(c)     CenturyLink regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     CenturyLink was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

48.    As a result of the foregoing, the market for CenturyLink's securities promptly digested current information regarding CenturyLink from all publicly available sources and reflected such information in CenturyLink's stock price. Under these circumstances, all purchasers of CenturyLink's securities during the Class Period suffered similar injury through their purchase of CenturyLink's securities at artificially inflated prices and a presumption of reliance applies.

49.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

# NO SAFE HARBOR

50.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of CenturyLink who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase CenturyLink's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

53.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for CenturyLink's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about CenturyLink's financial well-being and prospects, as specified herein.

55.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of CenturyLink's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about CenturyLink and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and

members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing CenturyLink's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of CenturyLink's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's

securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired CenturyLink's securities during the Class Period at artificially high prices and were damaged thereby.

59.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that CenturyLink was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their CenturyLink securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.     Individual Defendants acted as controlling persons of CenturyLink within the meaning of Section 20(a) of the Exchange Act as alleged herein. By

CLASS ACTION COMPLAINT
30

virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65. As set forth above, CenturyLink and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the

other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  June 21, 2017                    **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lesley F. Portnoy*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  lportnoy@glancylaw.com

*Attorneys for Plaintiff*

# GLANCY PRONGAY & MURRAY LLP

**SWORN CERTIFICATION OF PLAINTIFF**
**CenturyLink, Inc. Securities Litigation**

I, Larry Allen Petersen, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase CenturyLink, Inc., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in CenturyLink, Inc. during the Class Period set forth in the Complaint are attached in Exhibit A.

5. I have not served as a representative party on behalf of a class under this title during the last three years, except as follows:


6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

_Larry Petersen_

Date: June 20 2017

[REDACTED]


I am NOT a current or former employee of CenturyLink, Inc.
RETURN TO:
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

Case 2:17-cv-04579-GBW-SK Document 1 Filed 06/21/17 Page 35 of 35 Page ID #:35

**Larry Allen Petersen's Transactions in**
**CenturyLink, Inc. (CTL)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 08/26/2016 | Bought | 500 | $29.4500 |