**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF SUNRISE FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON,<br><br>Defendants. | Civil Action No. 1:20-cv-09132<br><br>CLASS ACTION<br><br>**ORAL ARGUMENT REQUESTED** |
| CITY OF STERLING HEIGHTS GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH and MARK A.L. MASON<br><br>Defendants. | Civil Action No. 1:20-cv-09573<br><br>CLASS ACTION |

*(caption continues on following page)*

**SURREPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE PUBLIC SECTOR PENSION INVESTMENT BOARD FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS**

|  |  |
|---|---|
| TIMOTHY LIM, individually and on behalf of all others similarly situated, | Civil Action No. 1:20-cv-10360 |
| Plaintiff, | CLASS ACTION |
| v. |  |
| CITIGROUP INC., MICHAEL L. CORBAT, JOHN C. GERSPACH, and MARK A. L. MASON, |  |
| Defendants. |  |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT..........................................................................................................2

    A.   Financial Interest Analysis Must Be Based On Facts Alleged In The Complaints.............2

    B.   The August 2018 Disclosure Is Inconsistent With The Filed Complaints ........................6

    C.   KBC And Pembroke's Expert Report Is Untimely And Conclusory...............................7

## PRELIMINARY STATEMENT

KBC and Pembroke agree that PSP has the largest recoverable loss under *Dura* based on the facts alleged in the complaints, including the complaint that their own counsel filed ("*City of Sunrise*").[1]  *See* ECF No. 51 at 9.  Because this undermines their motion, KBC and Pembroke, for the first time on reply, attempt to introduce a new, unpled partial disclosure in August 2018 to increase their *Dura* loss or to avoid the application of *Dura* altogether.  This Court rejected a virtually identical attempt in *Eros*, finding that inserting "additional disclosure allegations in the eleventh hour" is the type of "gamesmanship" that caused the Court to "question whether [the movant] will fairly and adequately protect the interests of the class."  *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016) (Nathan, J.).

Crediting this new unpled allegation would in the future not only reward the proverbial moving of the goal posts, but also undermine the PSLRA's statutory framework because "individuals who would otherwise be able to meet the requirements of a lead plaintiff motion under the expanded partial disclosure date would be precluded from filing such motions given the expiration of the PSLRA's time limit for doing so."  *Id.*

What's more, KBC and Pembroke's counsel appear to have excluded this disclosure from their *City of Sunrise* complaint because it is inconsistent with its allegations.  Paragraph 48 specifically lists four instances between December 2017 and November 2019 in which regulators fined Citigroup, but that paragraph excluded the August 2018 announcement of an $8 million fine.  *See* ECF No. 1.  The *City of Sunrise* complaint then explicitly alleges that despite these "multiple regulatory fines," "Citi's stock price [] trade[d] at artificially inflated prices throughout the Class

---

[1] Citations to ECF No. ___ refer to the docket in *City of Sunrise*; capitalized terms are defined in PSP's initial and opposition briefs (ECF Nos. 39, 49); and emphasis is added.

Period" until August 2020 when "The Truth Emerges." ¶¶48-50. KBC and Pembroke do not explain how the $8 million fine in August 2018 could have revealed the truth when the complaint their counsel filed states that $160 million in fines was insufficient to do so.

The August 2018 disclosure was also never mentioned in the two other complaints investors filed, in any of the briefs filed by KBC and Pembroke, or by any other Lead Plaintiff movant. Rather, KBC and Pembroke stated in their opening brief that "[t]he truth began to emerge [two years later] on August 13, 2020." ECF No. 28 at 4. Crediting this August 2018 announcement as a corrective disclosure now would be inconsistent with KBC and Pembroke's prior arguments. To be clear, PSP, if appointed Lead Plaintiff, will review all these announcements of regulatory fines on the merits and assess, objectively and impartially, whether they belong in this case. But it is counter to well-established legal precedent for Lead Plaintiff movants to introduce new facts outside of the four corners of the complaints that increase their losses.

Finally, KBC and Pembroke submit with their reply brief an expert report that calculates *Dura* losses incorrectly, and is untimely and otherwise conclusory because it does not substantiate its work. The Court should not consider the report.

## ARGUMENT

### A.    Financial Interest Analysis Must Be Based On Facts Alleged In The Complaints

*Eros* is clear. The most important metric in determining financial interest is the amount of "recoverable losses" ***"based on the facts alleged in the complaint."*** *Eros*, 2016 WL 1367246, at *3. "In selecting a plaintiff to lead this litigation at this stage of the proceedings, ***the court can and must only consider the pleadings before it***." *In re Comverse Tech.*, 2007 WL 680779, at *6 (E.D.N.Y. Mar. 2, 2007). KBC and Pembroke's contention that it is "unduly narrow" for the Court

2

to consider only "the corrective disclosures alleged in the complaints filed to-date" (ECF No. 51

at 6) is the opposite of the law, and they do not cite a single case to support this point.[2]

Here, the filed complaints allege that the earliest possible disclosure of Defendants' fraud

occurred in August 2020.  *See City of Sunrise* ¶¶49, 62; *City of Sterling Heights* ¶43; *Lim* ¶67:

- KBC and Pembroke's counsel filed the *City of Sunrise* complaint on October 30, 2020, and did not plead a corrective disclosure prior to August 2020.  *Id.* ¶¶49, 62.

- The PSLRA notice disseminated by KBC and Pembroke's counsel stated that ***"[t]he truth began to emerge on August 13, 2020,"*** based on ***"an extensive proprietary investigation and a careful evaluation of the merits of this case."***  ECF No. 40-2.

- City of Sterling Heights filed its complaint on November 13, 2020, and pled that the first corrective disclosure occurred on ***August 13, 2020***.  *City of Sterling Heights* ¶43.

- City of Sterling Heights's PSLRA notice stated that the first disclosure of the fraud occurred "[o]n ***August 13, 2020***."  ECF No. 40-3.

- *Lim*, filed on December 9, 2020, did not plead a corrective disclosure prior to August 2020 and the PSLRA notice Lim's counsel published did not state there were any disclosures prior to August 2020.  *Lim* ¶¶55-67; Bleichmar Decl. Ex A.

- Relying on these notices, six movants sought Lead Plaintiff appointment.  No movant suggested a corrective disclosure before August 2020 and KBC and Pembroke asserted that ***"[t]he truth began to emerge on August 13, 2020."***  ECF No. 28 at 4.

- KBC and Pembroke further recognized in their opposition brief that ***"the complaint in the Sterling Heights Action alleges that the first disclosure of Citigroup's fraud occurred on August 13, 2020."***  ECF No. 47 at 5, n.5.

Now, KBC and Pembroke claim for the first time on reply that they "identified an

additional disclosure, ***which is not reflected in the filed complaints***" that occurred ***two years***

***earlier, in August 2018.***  ECF No. 51 at 2.  KBC and Pembroke contend that this shows that

---

[2] *See Sallustro v. CannaVest*, 93 F. Supp. 3d 265, 275 (S.D.N.Y. 2015) ("Dura [and its progeny] . . . require a court to make pre-discovery loss causation determinations . . . that are based on the facts alleged in the complaint"); *Porzio v. Overseas Shipholding,* 2013 WL 407678, at *3 n.37 (S.D.N.Y. Feb. 1, 2013) (limiting consideration to "theory of fraud set forth in the various complaints"); *Foster v. Maxwell Techs.,* 2013 WL 5780424, at *4 (S.D. Cal. Oct. 24, 2013) ("Court is limited to considering the allegations in the pending complaints at this stage of the litigation").

"applying a '*Dura*' analysis is premature and further investigation is needed" (ECF No. 51 at 8) even though their counsel said it had already conducted "an extensive [] investigation and a careful evaluation of the merits of this case." ECF No. 40-2. This contention is logically inconsistent.

In any event, this Court and others have repeatedly held that any modification to the corrective disclosures alleged in the complaints after the Lead Plaintiff deadline (or even just before) is counter to the PSLRA statutory framework. The PSLRA's deadline for filing Lead Plaintiff motions precludes consideration of allegations "asserted for the first time in a complaint . . . filed **after** the sixty (60) day window has closed." *Topping v. Deloitte Touche Tohmatsu*, 95 F. Supp. 3d 607, 618-20 (S.D.N.Y. 2015). Once the sixty-day deadline expires, the allegations under which movants' financial interests are assessed are set and cannot be changed. *See id.* Under this framework, *Dura* is applied in an objective and consistent manner.

*Eros* is directly on-point. There, a Lead Plaintiff movant sold all of its stock prior to the first corrective disclosure alleged in the filed complaints, rendering its losses unrecoverable under *Dura*. *Eros*, 2016 WL 1367246, at *3-4. The movant, however, filed a new complaint "**on the last day** for potential class members to file a lead plaintiff motion" that added a new, earlier corrective disclosure. *Id.* This Court rejected the new disclosure and explained that it was "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour." *Id.* at *4. Such "gamesmanship," the Court concluded, would leave "individuals who would otherwise be able to meet the requirements of a lead plaintiff motion under the expanded partial disclosure date [] precluded from filing such motions given the expiration of the PSLRA's time limit for doing so."[3] *Id.*

---

[3] KBC and Pembroke agree that "the Court should [not] make a finding of loss based on unpleaded allegations." ECF No. 51 at 7-8, n.6. But then they argue that the Court can consider this unpled allegation for a different reason: to show how "making loss causation determinations at this stage

Likewise, in *Deloitte*, a movant attempted to file a "corrected" complaint that added a new disclosure to increase that movant's *Dura* loss after the PSLRA's sixty-day deadline expired. 95 F. Supp. 3d at 615, 619-20. Judge Ramos refused to consider the new disclosure because doing so "would 'effectively render the strict timeliness set forth in the PSLRA meaningless," "would nullify Congress's attempt to expedite the lead plaintiff appointment process," and prejudice other investors because all movants "who filed their motions to serve as lead plaintiff" did so "in reliance on the Complaint as it was filed."[4] *Id.*

The issues surrounding KBC and Pembroke's "additional disclosure allegations" are more pronounced than in *Eros, Deloitte,* and *Goldman. Eros*, 2016 WL 1367246, at *4. Here, they waited until the reply brief, filed weeks after the Lead Plaintiff deadline expired, to come forward with a new disclosure. Every movant acknowledged the corrective disclosures pleaded in the complaints and that none occurred prior to August 2020. Accordingly, the disclosures pleaded in the filed complaints cannot be altered at this late stage. *See id.* at *3-4.

---

can come into conflict with the requirement of the PSLRA that the investor with the largest financial interest in the litigation be appointed to lead the class." *Id.* This argument is counter to law. KBC and Pembroke's reliance on this new disclosure cannot be reconciled with *Eros* and the well-settled law that movants' financial interests must be "based on the facts alleged in the complaint." *Eros*, 2016 WL 1367246, at *3.

[4] *See also Plaut v. Goldman Sachs*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) ( "it would be inappropriate to select [a movant] as lead plaintiff" when it injected partial disclosures "twenty days ***after*** the deadline for motions to serve as lead plaintiff" because a "principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [the movant] and its counsel have engaged here") (emphasis in original); *Porzio,* 2013 WL 407678, at *3 n.37 (refusing to credit corrective disclosure "allege[d] in [movant's] reply" because "these are not part of the allegations in the Complaints"); *Maxwell*, 2013 WL 5780424, at *4 (rejecting corrective disclosure not alleged in the filed complaints); *Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *5 (N.D. Ill. Oct. 8, 2019) (refusing to credit unpled allegations after expiration of 60-day deadline).

### B.    The August 2018 Disclosure Is Inconsistent With The Filed Complaints

Not only is the new August 2018 disclosure unpled, it is inconsistent with the allegations in the *City of Sunrise* complaint, adopted by KBC and Pembroke in their initial Lead Plaintiff brief. *See* ECF No. 28 at 4 and n.6. That complaint pleads that "Citi received multiple regulatory fines and punishments" between 2017 and 2019, the precise period that KBC and Pembroke now point to with their new August 2018 disclosure, including a: (i) $70 million fine from the OCC; (ii) $10.5 million fine from the SEC; (iii) $25 million fine from the OCC; and (iv) £44 million fine from the Bank of England. *Id.* ¶48. The *City of Sunrise* complaint alleges that those $160 million in fines "failed to disclose the magnitude and extent of the problems [with internal controls] and the fact that properly addressing such problems would have a material impact on Citi's finances," which "caused Citi's stock price to trade at artificially inflated prices" *until "the truth emerge[d]" beginning in August 2020*. ¶¶49-50.

Against that backdrop, KBC and Pembroke do not show how the new August 2018 disclosure—an $8 million fine from the Federal Reserve (ECF No. 51 at 6)—revealed the truth when the *City of Sunrise* complaint pleads that larger and more serious fines from a variety of different government regulators, in the U.S. and abroad, were *insufficient*, and in fact "caused Citi's stock price to trade at artificially inflated prices" for *an additional two years*. *Id.* ¶49; *See Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 503 (D. Conn. 2017) (refusing to credit partial disclosures proffered on reply when "the factual allegations are not sufficient for me to conclude that those statements" revealed the relevant misconduct). ECF No. 40-2.[5]

---

[5] Importantly, the Court is not at this stage making a binding determination regarding which partial disclosures apply. Rather, under the PSLRA's Lead Plaintiff provisions, the Court is simply determining which movant has demonstrated that it has the largest financial interest based on the allegations currently before the Court. While KBC and Pembroke cannot add corrective disclosures at this late juncture, it will be the responsibility of the Court-appointed Lead Plaintiff

### C.     KBC And Pembroke's Expert Report Is Untimely And Conclusory

KBC and Pembroke also submit on reply an untimely expert report from Michael L. Hartzmark ("Report").  *See* ECF No. 54-1.  The report is incorrect and conclusory.  As an initial matter, the Report incorrectly calculates PSP's *Dura* loss to be either $11 million (including the August 10, 2018 disclosure, *id.* ¶25); or $7 million (excluding the August 10, 2018 disclosure, *id.* ¶26).  The Report can only reach these conclusions by including gains that PSP experienced on bonds and options.  However, as PSP already made clear, it experienced those gains ***prior*** to any corrective disclosure (or in between disclosures) and thus they are unconnected to the fraud and cannot be considered under *Dura.  See* ECF Nos. 49 at 5 n.4; 50-2; 52 at 2.  KBC and Pembroke simply "asked [the expert] to include any gains or losses during the Class Period on all bond and options transactions," and he did so without an independent analysis of his own.  *Id.* ¶23.

When correctly calculated, PSP's *Dura* loss is $14.2 million (including the August 10, 2018 disclosure, Bleichmar Decl. Ex. B) and $10.1 million (excluding the August 10, 2018 disclosure, ECF No. 50-2).  PSP already provided back-up data demonstrating the calculations.

The report is also conclusory because it fails to explain or set forth its methodology.  The Report does not even reconcile the August 2018 disclosure with the allegations in the *City of Sunrise* complaint and how it could have revealed the fraud when that complaint alleges that four larger and more serious fines during the same time period did not.  Accordingly, the Court should not consider the Report.

---

to assert what it determines to be the most appropriate corrective disclosures that will maximize the potential recovery for the Class.  *See In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2011 WL 4538428, at *1-2 (S.D.N.Y. Sept. 29, 2011) (Lead Plaintiff has authority to determine the claims to assert as part of the prerogative to "exercise control over the litigation as a whole").

Dated:  January 26, 2021

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Joseph A. Fonti
Erin H. Woods
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com
jfonti@bfalaw.com
ewoods@bfalaw.com

*Counsel for Proposed Lead Plaintiff PSP and
Proposed Lead Counsel for the Class*

8