UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/4/21

---

City of Sunrise Firefighter's Pension Fund, *individually and on behalf of all others similarly situated*,

    Plaintiff,

  –v–

Citigroup Inc., *et al.*,

    Defendants.

20-cv-9132 (AJN)

---

City of Sterling Heights General Employee's Retirement System, *individually and on behalf of all others similarly situated*,

    Plaintiff,

  –v–

Citigroup Inc., *et al.*,

    Defendant.

20-cv-9573 (AJN)

---

Timothy Lim,

    Plaintiff,

  –v–

Citigroup Inc., *et al.*,

    Defendant.

20-cv-10360 (AJN)

MEMORANDUM
OPINION & ORDER

1

ALISON J. NATHAN, District Judge:

Three institutional investors and putative class members of related securities class actions have each brought a motion to consolidate the cases and to be appointed lead plaintiff and have their respective chosen counsel as lead counsel, pursuant to the Private Securities Litigation Reform Act. For the reasons that follow, the cases are consolidated and putative class member Public Sector Pension ("PSP") is appointed lead plaintiff with its chosen counsel as lead counsel.

I.   BACKGROUND

On October 30, 2020, City of Sunrise Firefighters Pension Fund filed a class action Complaint against Citigroup Inc. and multiple officers of the company for violations of sections 10(b) and (2)(a) of the Securities and Exchange Act and SEC Rule 10b-5. Case No. 20-cv-9132, Dkt. No. 1. Subsequently, two additional securities class action cases were filed against Defendants and the Court accepted them as related to the *City of Sunrise* action. *See* Case Nos. 20-cv-9573 (*City of Sterling Heights Employees' Retirement System v. Citigroup, et al.*), 20-cv-10360 (*Lim v. Citigroup, et al.*).

On December 29, 2020, multiple potential class members filed motions to consolidate the three securities class actions and to be appointed as lead plaintiffs, with their respective counsel as lead counsel. Case No. 20-cv-9132, Dkt. Nos. 18-42. After a number of those potential lead plaintiffs withdrew their motions, three remain in contention: Iron Workers Local 580 Joint Funds ("Ironworkers"), KBC Asset Management NV and Pembroke Pines Firefighters & Police Officers Pension Fund ("KBC"), and Public Sector Pension Investment Board ("PSP"). Dkt. Nos. 43, 45-46. On January 29, 2021, Plaintiff City of Sterling Heights General Employees'

Retirement System filed a notice of voluntary dismissal without prejudice to its ability to participate in the action as an absent class member. Case No. 20-cv-9573, Dkt. No. 64.

## II. DISCUSSION

Before the Court are the motions of the three potential class members (Ironworkers, KBC, and PSP) to consolidate the cases and to be appointed lead plaintiff. For the reasons that follow, *City of Sunrise* (Case No. 20-cv-9132) and *Lim* (Case No. 20-cv-10360) are consolidated and *City of Sterling Heights* (Case No. 20-cv-9573) is dismissed without prejudice to City of Sterling Heights' ability to participate in the action as an absent class member. PSP is appointed lead plaintiff and its chosen counsel, BFA, as lead counsel.

### A. Motion to Consolidate

Federal Rules of Civil Procedure Rule 42 permits a Court to consolidate multiple actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). The complaints in both *City of Sunrise* and *Lim* allege that Defendants made materially misleading representations regarding its failure to improve internal controls and risk management systems that violated sections 10(b) and 20(a) of the Securities and Exchange Act and SEC rule 10-b(5). Consolidation of these two actions is therefore appropriate. *See Dolan v. Axis Capital Holdings Ltd.*, No. 04-CV-8564, 2005 WL 883008, at *2 (S.D.N.Y. Apr. 13, 2005) (consolidating cases where "[e]ach of the Actions implicates similar or overlapping claims under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 . . . along with Rule 10b-5," and "both complaints rest on the same fundamental allegations that defendants made material misrepresentations.").

The plaintiff in *City of Sterling Heights* has voluntarily dismissed its claims without prejudice, and City of Sterling Heights maintains its right to participate in the case as an absent class member. *City and Sunrise* and *Lim* are therefore consolidated into a single action and *City of Sterling Heights* is dismissed.

### B. Motion to Appoint Lead Plaintiff and Lead Counsel

The now consolidated case is subject to the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4, which governs securities class actions brought in accordance with the Federal Rules of Civil Procedure. *See Kassover v. UBS A.G.,* No. 08 CIV. 2753 LMM KNF, 2008 WL 5395942, at *2 (S.D.N.Y. Dec. 19, 2008). Under PSLRA, "[a]s soon as practicable after" the decision to consolidate "is rendered," the Court is to "appoint the most adequate plaintiff" in the class "as lead plaintiff for the consolidated actions." 15 U.S.C. § 78u-4(a)(3)(B)(1).

### 1. Timeliness of Movant's Motions

"The PSLRA requires a plaintiff who files a complaint to publish, in a widely circulated business-oriented publication or wire service, a notice advising members of the purported class of 'the pendency of the action, the claims asserted therein, and the purported class period' and permits that, 'not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff[.]'" *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 25-26 (E.D.N.Y. 2019) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)).

On October 30, 2020, counsel for the plaintiff in *City of Sunrise* published a notice of this action over the *PR Newswire*, advising potential class members that they had until December 29, 2020 to file a motion to be appointed as lead plaintiff. *See* Dkt. No 23 at 7 & Dkt. No. 24, Ex B.

4

While "The PSLRA does not further define what type of publication is required" for the notice provision, *PR Newswire* has been deemed sufficient by numerous courts in the district. *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004). All pending motions were filed on December 29, 2020, within 60 days after the notice was published, and are therefore timely.

### 2. Lead Plaintiff

The PSLRA instruct courts "to appoint as lead plaintiff 'the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). In determining which potential plaintiff is the most capable, "[t]here is a rebuttable presumption that the appropriate plaintiff is the person or group of persons that (1) filed the original complaint or filed a motion in response to the notice, (2) has the largest financial interest in the relief being requested, and (3) meets the requirements of Rule 23 of the Federal Rules of Civil Procedure." *McKenna v. Dick's Sporting Goods, Inc,* No. 17-CV-3680 (VSB), 2018 WL 1083971, at *3 (S.D.N.Y. Feb. 27, 2018) (citing § 78u–4(a)(3)(B)(iii)(I)). "Other class members may rebut this presumption by providing evidence that the presumptively adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id* (citing § 78u–4(a)(3)(B)(iii)(II)).

### a. Greatest Financial Interest

In order to determine which potential lead plaintiff has the "greatest financial interest" under PLSA, "courts in this district consider . . . (1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended during the class period, and (4) the plaintiff's approximate losses." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263

(S.D.N.Y. 2019). This final factor is by far the most important. *See id.* (citing *Hansen v. Ferrellgas Partners, L.P.*, 2017 WL 281742, at *2 n.3 (S.D.N.Y. Jan. 19, 2017)). In evaluating approximate losses, most courts in this district rely on the "last in, last out" or "LIFO" method, though some will consider the "FIFO" method. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 & n.5 (S.D.N.Y. 2015).

When calculating approximate loss for the purposes of appointing a lead plaintiff under the PSLRA, following the Supreme Court's decision in *Dura Pharmaceuticals v. Brudo*, 544 U.S. 336 (2005), courts in this district ordinarily will not include losses that occurred prior to the first corrective disclosure of the alleged fraudulent misrepresentation made by the defendant. *See Sallustro,* 93 F. Supp. 3d at 273-74. In *Dura*, the Supreme Court held that in a "fraud-on-the-market" case, a plaintiff must show that the defendant proximately caused plaintiff's losses by demonstrating not just that the misrepresentations caused an inflation of the share price, but also that the "share price fell significantly after the truth became known." 544 U.S. at 247. *See In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825 NGG RER, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (explaining that after *Dura* "a plaintiff must [] prove that the company's stock price later declined (and thus caused plaintiff's shares to be worth less) immediately following a disclosure of the alleged misconduct to the public.").

Though *Dura* concerned a motion to dismiss a securities class action, courts nonetheless apply *Dura* when considering financial interest for the purposes of appointing a lead plaintiff. *See In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, No. 13 CIV. 6016 PKC, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) ("While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint lead counsel."). Because the lead plaintiff should be the class member who stands to recover the most *from that litigation*,

courts should "consider only those losses that will actually be recoverable in the class action," *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015), and make "determinations of largest financial interest" only "based on the facts alleged in the complaint." *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *3 (S.D.N.Y. Apr. 5, 2016) (quotations omitted). *See also Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273-74 (S.D.N.Y. 2015) ("[T]he court would be abdicating its responsibility under the PSLRA if it were to ignore the issue of loss causation at the lead plaintiff stage" because it would be "irreconcilable with this Court's duty to ascertain which plaintiff has the greatest financial interest in this litigation") (quotations and brackets omitted). Therefore, ordinarily only the losses that occurred after the first public disclosure will be considered in determining which potential lead plaintiff has the greatest financial interest.

To be sure, conducting an analysis of which losses are recoverable at this stage may not always be so simple. This is particularly true where a complaint alleges that multiple disclosures occurred and thus the "fraud premium," i.e., the inflation of the stock due to alleged misrepresentations or omissions, varies throughout the class period. *See Cook v. Allergn PLC*, No. 18 CIV. 12089 (CM), 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019). For that reason, some courts have been reluctant to apply *Dura* at the appointment-of-lead-plaintiff stage if a case involves multiple disclosures and the analysis of recoverable losses is murky and lacks sufficient evidence. *See Cook*, 2019 WL 1510894, at *3 (declining to adopt one movant's *Dura* analysis of eligible losses because it was "convoluted" and not "self-evident.").

Moreover, courts are especially skeptical of a movant who initially presents one position in their opening brief and switch to another in their opposition after a new movant comes in alleging a greater loss. *See Cook*, 2019 WL 1510894, at *3 ("The fact that DeKalb used the

same methodology as BRS in its original moving papers – only to alter its calculation when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of *Dura* on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted."); *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under this methodology, did the Majesty Palms Group argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology," and "[t]his fact alone counsels in favor of adopting the LIFO methodology, as opposed to the retained shares methodology."). Similarly, in *Maliarov*, this Court was also "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour" in support of their *Dura* analysis. *Maliarov,* 2016 WL 1367246, at *4. Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999) ("[L]osses must be determined on the basis of its filings within the time frame dictated by § 78u–4(a)(3)(A)(i)"); *Topping,* 95 F. Supp. 3d at 618 (disregarding movant's assertion of an "ostensible partial disclosure" that "was not included in the original Complaint" and thus did not fall within the PLRSA's 60-day notice requirement).

Turning now to the potential lead plaintiffs in this case, the movants each filed a timely brief on December 29, 2020, the final day to file under the PSLRA 60-day time period. Dkt. Nos. 21, 28, 37. In their motions, the movants alleged the follow amounts of losses and indicators of financial interests.

|  | LIFO losses | FIFO losses |
|---|---|---|
| **Ironworkers** | $954,319 | $1,149,817 |
| **KBC** | $28.7 million | N/A |
| **PSP** | $14 million | $12.7 million |

Following these initial motions, Ironworkers declined to file an opposition or reply. Considering that its losses are dwarfed by those the other movants, it is eliminated from contention. That leaves KBC and PSP in the running.

KBC and PSP filed oppositions on January 12, 2021. Dkt. Nos. 47, 49. In its opposition, PSP argued that while KBC "facially" had the largest LIFO loss, after conducting a *Dura* analysis and excluding all of the losses incurred prior to the first corrective disclosure alleged in the *City of Sunrise* complaint, that PSP in fact had the largest recoverable lost and thus the greatest financial interest. Dkt. No. 49 at 1-3. KBC argues in response that the Court should not apply a *Dura* analysis, because partial disclosures occurred throughout the class period, and that even under a *Dura* analysis, KBC still has the largest financial interest. Dkt. No. 47 at 7-9, Dkt. No. 41 at 5-8. In particular, KBC argues that the reason it still has the largest financial interest under a *Dura* analysis is because it has identified an additional partial disclosure that occurred prior to the one alleged in the complaint, and taking into account losses after that disclosure, KBC's LIFO losses are greater than PSPs. Dkt. No. 51 at 6-7.

In these oppositions and replies, KBC and PSP allege the following loss amounts.

|  | **LIFO Losses (*Dura*) excluding additional disclosure** | **LIFO losses (*Dura*) with additional disclosure** |
|---|---|---|

9

| | | |
|---|---|---|
| **KBC** | $6 million | $18.9 million |
| **PSP*** | $10.1 million<br>(According to KBC, $7 million) | $ 14.2. million<br>(according to KBC, $11.1) |

* Figures vary due to the exclusion / inclusion of PSP's $3.1 million in gains on Citigroup bonds and options. Dkt. No. 60 at 7.

Importantly, the parties' respective calculations for PSP's losses vary due to a disagreement as to whether PSP's gains on stocks and bonds should be included. KBC argues that PSP "fail[ed] to account for the fact that it profited by more than $3.1 million on investments in Citigroup bonds and stock options during the Class Period." Dkt. No. 47 at 3. Because the class here is suing for losses on Citigroup "securities," KBC argues that PSP's gains on these assets should be excluded. Dkt. No. 47 at 13-14. PSP's disagrees that the Court should exclude any gains from Citigroup bonds and options, which it claims were realized prior to the initial disclosure. Dkt. No. 60 at 7.

In assessing PSP's financial interest in this case, the Court must look to the amount of recoverable losses. Though "Rule 10b-5 and the PSLRA do not endorse any economic theory or methodology that should be used to quantify/demonstrate economic loss," *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 159 (S.D.N.Y. 2012), courts may need to offset losses with certain gains in calculating the amount of damages incurred. *See Abrahamson v. Fleschner*, 568 F.2d 862, 878 (2d Cir. 1977) (ordinarily "a plaintiff may [not] recover for losses, but ignore his profits, where both result from a single wrong" in a suit for violation of securities laws). Here, if Plaintiff were to prevail, then at the damages stage of the case it is possible that at least some of the gains on bonds and options that PSP incurred as a result of the fraud would

need to be offset by the losses on Citigroup stocks that PSP incurred as a result of the fraud. *See In re Vivendi,* 284 F.R.D. at 159 (offsetting losses with some, but not all gains argued by Defendants). This is a fact intensive inquiry that, under *Dura*, will likely depend on the timing of the gains in relation to the disclosures. *See Ruland v. InfoSonics Corp.,* No. 06CV1231 BTMWMC, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006) (explaining that "[a]lthough a precise determination of damages is not possible at this stage of the litigation, courts typically equate "largest financial interest" with the amount of potential recovery," and thus considering whether to offset some gains realized in connection with the fraud). Therefore, depending on the facts, the Court may consider the potential offsetting of recoverable losses as a factor in appointing a lead plaintiff. *See In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) (collecting cases where district courts have declined to appoint a lead plaintiff that was a net gainer and thus benefited from the inflated share price).

Setting aside the issue of whether to offset PSP's losses in this manner, the Court must decide whether to apply *Dura* or consider the LIFO losses for the entire class period. To be sure, PSP did not explicitly argue for a *Dura* analysis in its opening brief, which in some cases may draw the skeptical eye of courts, *see Cook*, 2019 WL 1510894, at *3, but it did "provide all the trading information necessary to calculate its financial interest under all possible metrics," and stated that it did "not presuppose that there is only one valid methodology." Dkt. No. 39 at 7. In any event, KBC and PSP largely agree on the amount of the other's losses under a *Dura* analysis once the issue of whether to offset PSP's gains is removed from the equation. The Court thus sees no reason not to apply *Dura* here, as most other courts in this district have done, *see, e.g., Sallustro* 93 F. Supp. 3d at 273-74, and rely on the figures corresponding to losses that occurred after the disclosures.

11

That leads to the final question of which disclosure should be the starting point for the *Dura* analysis: the initial disclosure pled in the Complaint, or the additional disclosure alleged by KBC in its Reply Brief on January 19, 2021, twenty days after the deadline to file under PSLRA had elapsed. Alleging an additional partial disclosure in subsequent briefings in order to increase the amount of recoverable losses for the purposes of the lead plaintiff analysis is the kind of gamesmanship that is inconsistent with the purposes of PSLRA. *See Maliarov,* 2016 WL 1367246, at *4; *Topping,* 95 F. Supp. 3d at 618. The Court therefore will consider recoverable losses based on the facts alleged in the Complaint alone.

Applying these principles to the facts available to the Court, the Court determines that PSP has the greatest financial interest in this case. Though KBC has by far the largest amount of LIFO losses during the class period, once the *Dura* analysis is properly applied, PSP has a larger recoverable loss. Even the courts that are wary of the *Dura* analysis have nonetheless recognized that "courts have been reluctant to appoint a plaintiff who has sold the majority or a portion of its stock prior to a corrective disclosure." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115 (E.D.N.Y. 2012). Considering that nearly 80% of KBC's losses were incurred prior to the first disclosure alleged in the Complaint, its overall (i.e. non-*Dura*) LIFO losses during the class period are not a persuasive indicator that it would be the appropriate lead plaintiff. And PSP's potential offsets to its losses do not change the analysis. PSP maintains that in the event it succeeds as lead plaintiff then, come damages time, the Court should not offset its losses with gains on bonds and options because they were realized prior to the first disclosure. Dkt. No. 49 at 5-6. But even assuming that the Court would actually offset PSP's losses with *all* of those gains, PSP still has a larger LIFO loss under a *Dura* analysis than KBC by one million. Therefore, the Court determines that PSP has a greater financial interest than KBC.

### b. Rule 23 Requirements

The Court also determines that PSR has made the basic showing that it satisfies the adequacy and typicality requirements of Rule 23. *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011). "At this stage, a movant satisfies the typicality requirement where it has suffered the same injuries as the other class members as a result of the same conduct by defendants and has claims based on the same legal issues." Kniffin, 379 F. Supp. 3d at 265 (quotations omitted). PSP alleges the same injuries, losses on Citigroup securities as a result of the same alleged Citigroup fraud, as those of the class. Moreover, "[i]n considering the adequacy of a proposed lead plaintiff, a court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation." *Baydale v. Am. Exp. Co.,* No. 09 CIV. 3016 (WHP), 2009 WL 2603140, at *2 (S.D.N.Y. Aug. 14, 2009). PSP meets these requirements as well, as there are no discernable conflicts and, as described below in part II.3, its chosen counsel is an experienced securities class action law firm.

### c. Rebuttable presumption

Therefore, because PSP has the greatest financial interest and meets the basic Rule 23 requirements, the "rebuttable presumption" is that PSP is "the appropriate plaintiff" to lead this case. *McKenna*, 2018 WL 1083971, at *3 (citing § 78u–4(a)(3)(B)(iii)(I)). While "[o]ther class members may rebut this presumption by providing evidence that the presumptively adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class,'" *id.*, no such evidence has been presented here. To the contrary, unlike KBC, PSP is a single institutional investor instead of a group of two otherwise un-related institutional investors. Though such a

relationship is by no means a determinative factor and courts consider the matter on a case-by-case basis, *see Marivola*, 2016 WL 1367246, at *5, some courts have declined to appoint plaintiffs "whose grouping appears to be solely a product of the litigation, because, to allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) (quotations omitted). The Court thus appoints PSP as lead Plaintiff.

### 3. Lead Counsel

The PSLRA permits that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class." *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 31 (E.D.N.Y. 2019). The Court will look to the level of counsel's experience as lead counsel or co-lead counsel in securities litigations and securities fraud class actions. *Id.* (approving in part because a firm had been appointed as lead counsel in other cases); *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *4 (S.D.N.Y. Apr. 4, 2018) (approving selection of lead counsel where the "attorneys . . . have had substantial experience with securities litigations as well as securities fraud class actions.).

PSP's choice of counsel is an experienced securities class action law firm. Bleichmar Fonti & Auld LLP has recovered hundreds of millions of dollars on behalf of class members in dozens of major securities class actions across the country and in this district. Dkt. No. 39 at 10 (citing multiple cases where BFA obtained large securities class action recoveries as lead counsel). The Court therefore determines that BFA is qualified to represent the interests of the class and appoints BFA lead counsel.

### III. CONCLUSION

For the reasons stated above, PSP's motion, 20-cv-9132, Dkt. No. 37, is granted. Pursuant to Federal Rule of Civil Procedure 42(a), Case No. 20-cv-9132, and any pending, previously or subsequently filed, removed, or transferred actions that are related to the claims asserted in the above-captioned action, including Case No. 20-cv-10360, are hereby CONSOLIDATED for all purposes. The Consolidated Action shall be captioned as "*In re Citigroup Securities Litigation*," and the file shall be maintained under Master File No. 20-cv-9132.

Public Sector Pension Investment Board is APPOINTED to serve as Lead Plaintiff pursuant to Section 27(a)(3)(B) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, in the Consolidated Action. PSP's choice of counsel is APPROVED, and Bleichmar Fonti & Auld LLP are APPOINTED as Lead Counsel for the Class.

This resolves 20-cv-9132, Dkt. Nos. 18, 21, 25, 26, 31, and 37. The Clerk is respectfully directed to close case number 20-cv-9573, per Dkt. No. 13.

SO ORDERED.

Dated: February 4, 2021
    New York, New York

_____
ALISON J. NATHAN
United States District Judge