# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

                                 :

IN RE CITIGROUP SECURITIES        :     Case No. 1:20-cv-09132-AJN

LITIGATION                          :

                                 :

                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
## TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Sharon L. Nelles (*nelless@sullcrom.com*)
David M.J. Rein (*reind@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

*Attorneys for Defendants Citigroup Inc., Michael L.
Corbat, Barbara J. Desoer, John C. Gerspach, and
Mark A. L. Mason*

Mary Eaton (*mary.eaton@freshfields.com*)
Shannon K. McGovern (*shannon.mcgovern@freshfields.com*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022-4611
Telephone:    (212) 277-4000
Facsimile:    (212) 277-4001

*Attorneys for Defendants Ellen M. Costello, Grace E.
Dailey, John C. Dugan, Duncan P. Hennes, Peter B.
Henry, Franz B. Humer, S. Leslie Ireland, Lew W.
Jacobs, IV, Renee J. James, Eugene M. McQuade,
Michael E. O'Neill, Anthony M. Santomero, James S.
Turley, Deborah C. Wright, Alexander R. Wynaendts,
and Ernesto Zedillo Ponce de Leon*

June 4, 2021

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...................................................................................1

**ALLEGATIONS OF THE COMPLAINT** ...................................................................4

    A.    Citigroup Informs Investors of the Risk of Adverse Regulatory Actions. ..............4

    B.    Citigroup and Citibank Enter into Consent Orders in October 2020. .....................6

    C.    Citibank Mistakenly Wires Funds in August 2020. ................................................7

    D.    Plaintiffs File a Sprawling Complaint. ....................................................................7

**LEGAL STANDARD** ..................................................................................................8

**ARGUMENT** ...............................................................................................................9

I.    **PLAINTIFFS DO NOT PLEAD ANY MATERIAL MISREPRESENTATION OR OMISSION.** .........................................................................................................9

    A.    The Complaint Fails to Allege that Defendants' Statements Were False. ...............9

        1.    Plaintiffs Misconstrue the Statements on Which They Primarily Rely. ......9

        2.    Defendants Never Made Any Assurances, and None of Defendants' Statements Was Rendered False by the 2020 Consent Orders. .................10

        3.    None of Defendants' Forward-Looking Statements Was False. ...............16

        4.    None of Defendants' Opinion Statements Was False. ...............................17

        5.    None of Defendants' Statements About Financial Controls Was False. ...18

    B.    The Challenged Statements Are Immaterial as a Matter of Law. ..........................20

    C.    Plaintiffs' Omissions Claims Are Just a Repackaging of Insufficient Misrepresentation Claims. ....................................................................................23

II.    **PLAINTIFFS DO NOT PLEAD A STRONG INFERENCE THAT DEFENDANTS ACTED WITH FRAUDULENT INTENT.** ......................................26

    A.    The Complaint's Generic Allegations of Motive and Opportunity Are Insufficient. ...........................................................................................................27

    B.    The Complaint's Speculation as to Conscious Misbehavior or Recklessness Is Insufficient. ...........................................................................................................28

## TABLE OF CONTENTS
### (cont.)

**Page**

III. **PLAINTIFFS' NEWLY ADDED CLAIMS AGAINST THE 17 DIRECTOR DEFENDANTS FAIL.**.................................................................................32

IV. **PLAINTIFFS DO NOT PLEAD LOSS CAUSATION.** ................................................34

V. **PLAINTIFFS DO NOT PLEAD A "CONTROL PERSON" CLAIM.** ......................35

**CONCLUSION** ...........................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito* v. *IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995)........................................................................................27

*In re Adelphia Comm'cns Corp. Sec. & Derivative Litig.*,
   2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007)..........................................................3

*Altayyar* v. *Etsy, Inc.*,
   731 F. App'x 35 (2d Cir. 2018) ...............................................................................20

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..........................................................................8, 30, 35

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
   2009 WL 4823923 (S.D.N.Y. Dec. 14, 2009) ........................................................23

*In re Banco Bradesco S.A. Sec. Litig.*,
   277 F. Supp. 3d 600 (S.D.N.Y. 2017).............................................................14, 19

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
   980 F. Supp. 2d 564 (S.D.N.Y. 2013)....................................................................26

*Basic Inc.* v. *Levinson*,
   485 U.S. 224 (1988)................................................................................................24

*In re BHP Billiton Ltd. Sec. Litig.*,
   276 F. Supp. 3d 65 (S.D.N.Y. 2017).......................................................................17

*In re BISYS Sec. Litig.*,
   397 F. Supp. 2d 430 (S.D.N.Y. 2005).....................................................................32

*Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys.* v. *Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011)......................................................................4

*Boca Raton Firefighters & Police Pension Fund* v. *Bahash*,
   506 F. App'x 32 (2d Cir. 2012) ..............................................................................20

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004).....................................................................29

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Burr* v. *Equity Bancshares, Inc.*,
   2020 WL 6063558 (S.D.N.Y. Oct. 14, 2020) ....................................................21, 25

*C.D.T.S.* v. *UBS AG*,
   2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ............................................11, 22, 33

*Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014)..........................................................................20

*Charter Twp. of Clinton Police & Fire Ret. Sys.* v. *KKR Fin. Holdings LLC*,
   2010 WL 4642554 (S.D.N.Y. Nov. 17, 2010)..................................................25

*In re China N. E. Petroleum Holdings Ltd. Sec. Litig.*,
   2014 WL 7236914 (S.D.N.Y. Dec. 11, 2014) ..................................................33

*In re China Organic Sec. Litig.*,
   2013 WL 5434637 (S.D.N.Y. Sept. 30, 2013)..................................................34

*In re Citibank Aug. 11, 2020 Wire Transfers*,
   2021 WL 606167 (S.D.N.Y. Feb. 16, 2021)......................................................7

*In re Citigroup, Inc. Sec. Litig.*,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004)............................................................24

*City of Brockton Ret. Sys.* v. *Avon Prods. Inc.*,
   2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)..................................................29

*City of Brockton Ret. Sys.* v. *Shaw Grp. Inc.*,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008).............................................................32

*City of Omaha Police & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*,
   450 F. Supp. 3d 379 (S.D.N.Y. 2020).........................................................30-31

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*,
   752 F.3d 173 (2d Cir. 2014)..........................................................1, 2, 20, 24

*City of Westland Police & Fire Ret. Sys.* v. *MetLife, Inc.*,
   129 F. Supp. 3d 48 (S.D.N.Y. 2015)..............................................................22

*Colbert* v. *Rio Tinto PLC*,
   824 F. App'x 5 (2d Cir. 2020) ......................................................................14

*Das* v. *Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018)...................................................19, 28, 31

**TABLE OF AUTHORITIES**
**(cont.)**

**Page(s)**

*In re DDAVP Direct Purchaser Antitrust Litig.*,
　585 F.3d 677 (2d Cir. 2009) ........................................................................26

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
　2017 WL 4049253 (S.D.N.Y. June 28, 2017) .............................................25

*Diehl* v. *Omega Protein Corp.*,
　339 F. Supp. 3d 153 (S.D.N.Y. 2018) ........................................................22

*ECA* v. *JP Morgan Chase Co.*,
　553 F.3d 187 (2d Cir. 2009) ............................................................. 2, 21-22

*Ernst & Ernst* v. *Hochfelder*,
　425 U.S. 185 (1976) ....................................................................................26

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
　2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ............................................31

*Fogel* v. *Vega*,
　759 F. App'x 18 (2d Cir. 2018) ..................................................................2, 20

*In re Gentiva Sec. Litig.*
　932 F. Supp. 2d 352 (E.D.N.Y. 2013) ........................................................22

*Gray* v. *Wesco Aircraft Holdings, Inc.*,
　454 F. Supp. 3d 366 (S.D.N.Y. 2020) ........................................................17

*Green* v. *Deutsche Bank Aktiengesellschaft*,
　2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019) ...........................................19

*Haw. Structural Ironworkers Pension Tr. Fund* v. *AMC Ent. Holdings, Inc.*,
　422 F. Supp. 3d 821 (S.D.N.Y. 2019) ........................................................23

*Hensley* v. *IEC Elecs. Corp.*,
　2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014) ...........................................31

*In re HEXO Corp. Sec. Litig.*,
　2021 WL 878589 (S.D.N.Y. Mar. 8, 2021) ................................................31

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016) .................................................................................20

*Kalnit* v. *Eichler*,
   264 F.3d 131 (2d Cir. 2001) ..........................................................................3, 27

*Lachman* v. *Revlon, Inc.*,
   487 F. Supp. 3d 111 (E.D.N.Y. 2020) .............................................................19

*In re Lehman Bros. Sec. & ERISA Litig.*,
   2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013) ..................................................24

*Lentell* v. *Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) .............................................................................34

*In re Liberty Tax, Inc. Sec. Litig.*,
   828 F. App'x 747 (2d Cir. 2020) .....................................................................20

*In re Lions Gate Ent. Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) .................................................................25

*Lipow* v. *Net1 UEPS Techs., Inc.*,
   131 F. Supp. 3d 144 (S.D.N.Y. 2015) ...........................................................3, 30

*Lopez* v. *Ctpartners Exec. Search Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016) ...............................................................16

*In re Loral Space & Commc'ns Ltd. Sec. Litig.*,
   2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ...................................................25

*Luo* v. *Sogou, Inc.*,
   465 F. Supp. 3d 393 (S.D.N.Y. 2020) .............................................................12

*In re Marsh & McLennan Cos. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) .............................................................34

*Menaldi* v. *Och-Ziff Capital Mgmt. Grp. LLC*,
   277 F. Supp. 3d 500 (S.D.N.Y. 2017) .................................................. 1, 12-13

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010) .............................................................................24

*In re Nokia Corp. Sec. Litig.*,
   2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021) ................................................14

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Okla. Firefighters Pension & Ret. Sys.* v. *Corbat*,
  2017 WL 6452240 (Del. Ch. Dec. 18, 2017).......................................................................7, 33

*Okla. Law Enf't Ret. Sys.* v. *Telefonaktiebolaget LM Ericsson*,
  2020 WL 127546 (S.D.N.Y. Jan. 10, 2020) .............................................................................23

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)..............................................................................................................15, 17

*Parkcentral Glob. Hub Ltd.* v. *Porsche Auto. Holdings SE*,
  763 F.3d 198 (2d Cir. 2014)........................................................................................................4

*In re PetroChina Co. Sec. Litig.*,
  120 F. Supp. 3d 340 (S.D.N.Y. 2015)......................................................................................13

*Plumbers' Union Local No. 12 Pension Fund* v. *Swiss Reinsurance Co.*,
  753 F. Supp. 2d 166 (S.D.N.Y. 2010).......................................................................................22

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009).......................................................................................29

*In re Qudian Inc. Sec. Litig.*,
  2020 WL 3893294 (S.D.N.Y. July 10, 2020) .........................................................................13

*Reese* v. *Bahash*,
  574 F. App'x 21 (2d Cir. 2014) .................................................................................................20

*Rombach* v. *Chang*,
  355 F.3d 164 (2d Cir. 2004).......................................................................................................27

*S.C. Ret. Sys. Grp. Tr.* v. *Eaton Corp. PLC*,
  791 F. App'x 230 (2d Cir. 2019) .......................................................................................... 9-10

*S. Cherry St., LLC* v. *Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009).................................................................................................27, 28

*Salim* v. *Mobile Telesystems PJSC*,
  2021 WL 796088 (E.D.N.Y. Mar. 1, 2021) .............................................................................26

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016).......................................................................................22

*Schiro* v. *Cemex, S.A.B. de C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019).......................................................................................29

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Schwab* v. *E\*TRADE Fin. Corp.*,
  752 F. App'x 56 (2d Cir. 2018) ........................................................24

*Scott* v. *Gen. Motors Co.*,
  605 F. App'x 52 (2d Cir. 2015) ........................................................20

*Seaman* v. *Cal. Bus. Bank*,
  2014 WL 1339649 (N.D. Cal. Apr. 2, 2014) ........................................28

*Sfiraiala* v. *Deutsche Bank Aktiengesellschaft*,
  729 F. App'x 55 (2d Cir. 2018) ....................................................3, 30

*Shields* v. *Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)............................................................28

*Singh* v. *Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019)..........................................................4, 21

*Slayton* v. *Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010).............................................................11

*In re Societe Generale Sec. Litig.*,
  2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010).......................................23

*Stratte-McClure* v. *Morgan Stanley*,
  784 F. Supp. 2d 373 (S.D.N.Y. 2011).................................................22

*Strougo* v. *Barclays PLC*,
  105 F. Supp. 3d 330 (S.D.N.Y. 2015).................................................22

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Cap. Inc.*,
  531 F.3d 190 (2d Cir. 2008)............................................................32

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................8, 9

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993)...............................................................24

*Tongue* v. *Sanofi*,
  816 F.3d 199 (2d Cir. 2016)............................................................18

*Tyler* v. *Liz Claiborne, Inc.*,
  814 F. Supp. 2d 323 (S.D.N.Y. 2011)................................................31

**TABLE OF AUTHORITIES**
**(cont.)**

**Page(s)**

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ........................................................................23

*Woodward* v. *Raymond James Fin., Inc.*,
    732 F. Supp. 2d 425 (S.D.N.Y. 2010) ........................................................................23

*In re Xinhua Fin. Media, Ltd. Sec. Litig.*,
    2009 WL 464934 (S.D.N.Y. Feb. 25, 2009) .......................................................... 23-24

**Statutes and Regulations**

15 U.S.C. § 78u-4 ...................................................................................................3, 9, 27

15 U.S.C. § 78u-5 ............................................................................................................16

12 C.F.R. § 4.32 ...............................................................................................................25

12 C.F.R. § 4.36 ...............................................................................................................25

12 C.F.R. § 261.2 .............................................................................................................25

17 C.F.R. § 229.303 .........................................................................................................26

## PRELIMINARY STATEMENT

In October 2020, Citigroup Inc. and Citibank, N.A. entered into consent orders with their U.S. banking regulators and agreed to strengthen their risk management systems and controls. Inevitably, securities litigation followed. Although Plaintiffs' amended complaint sprawls for 588 paragraphs over 258 pages, it boils down to a single assertion: that the 2020 Consent Orders render dozens of prior general statements about Citigroup's "risk management" or controls a fraud on Citigroup investors. Plaintiffs' effort to convert a regulatory settlement into securities fraud is classic "fraud by hindsight," which courts in this Circuit consistently reject. *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 183-88 (2d Cir. 2014).

Plaintiffs' complaint does not plead the fundamental elements—falsity, materiality, scienter, and loss causation—of securities fraud. *To begin*, Plaintiffs challenge three overlapping categories of statements, but none of the statements was false. First, Plaintiffs take snippets of Defendants' disclosures regarding, for instance, capital requirements or the impact of Brexit, and misinterpret them in an effort to connect them to the unrelated controls mentioned in the Consent Orders. Second, Plaintiffs assert that garden-variety descriptions of Citigroup's risk management procedures gave assurances to investors that regulators would find those procedures sufficient or that they never would fail. The statements contained no such assurances, and, in fact, Citigroup expressly warned investors of the risk that its regulators could determine that it did not have adequate policies and procedures in place, and that this determination could result in adverse regulatory action. Because Plaintiffs cannot point to anything in the Consent Orders indicating that any of the challenged statements was false, there is no securities law violation here. *See Menaldi* v. *Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 512 (S.D.N.Y. 2017) (no false statement where defendant "had indeed implemented a compliance program and issued policies and procedures aiming to ensure . . . compliance"). Third, Plaintiffs challenge forward-looking

statements or opinions, including, for example, statements about future investments, or about Citigroup becoming "simpler, smaller, and stronger," or about the effectiveness of controls not mentioned in the Consent Orders. But Plaintiffs fail to plead that these statements were not believed when made or that they would have misled investors as to future risks that Citigroup in fact disclosed, and thus these statements too cannot support Plaintiffs' claims.

*Next*, the statements that Plaintiffs challenge are also immaterial as a matter of law. The Second Circuit has repeatedly held that virtually identical statements by financial institutions regarding "risk management practices" are "too general to cause a reasonable investor to rely upon them" and that "[n]o investor would take such statements seriously in assessing a potential investment." *ECA* v. *JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009); *see also Pontiac*, 752 F.3d at 177, 183 (statements about "risk management policies" do not "ris[e] to the level of materiality"). Indeed, the Second Circuit has held that far more specific statements than those challenged here are inactionable, rejecting claims based on statements about "'highly disciplined' risk management" and "set[ting] the standard for best practices in risk management techniques" even though those statements claimed that the defendant's risk management practices were superior to others. *ECA*, 553 F.3d at 205-06.

Nor do Plaintiffs allege a material omission premised on a duty to disclose. Rather, Plaintiffs ask this Court to hold that Citigroup is liable for not anticipating and disclosing the substance of future regulatory determinations, a theory explicitly rejected by the Second Circuit, because "[i]t is axiomatic that companies 'do not have a duty to disclose uncharged, unadjudicated wrongdoing.'" *Fogel* v. *Vega*, 759 F. App'x 18, 24 (2d Cir. 2018). And contrary to Plaintiffs' contentions otherwise, neither SEC disclosure nor accounting rules requires Defendants to predict the measures that regulators might ultimately require and their costs.

*Further*, the complaint also fails to adequately allege scienter by any Defendant. Plaintiffs have not met their burden to plead with "particularity facts giving rise to a strong inference" of fraudulent intent. 15 U.S.C. § 78u-4(b)(2)(A). The complaint offers no cognizable "motive and opportunity" to commit fraud. Rather, Plaintiffs merely assert that Citigroup's officers and directors—like officers and directors of all public companies—had an incentive to increase their compensation by making Citigroup more profitable. This does not suffice. *See Kalnit* v. *Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (motives "common to all corporate executives" cannot plead scienter). Plaintiffs' attempts to allege Defendants' scienter also fall far short because Plaintiffs plead no facts—whether based on internal documents, witness statements, or otherwise—that any Defendant knew that her or his statements were false when made. Instead, Plaintiffs speculate that the regulators must have told Defendants at unspecified points in time about the deficiencies that would later be identified in the 2020 Consent Orders. However, assumptions regarding what "the individual defendants 'must have been aware' of," even if tied to "a litany of publicly disclosed fines and enforcement actions," cannot establish scienter. *Sfiraiala* v. *Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 59 (2d Cir. 2018). Likewise, Plaintiffs cannot meet their scienter pleading burden "simply by virtue of [Defendants'] high-level positions." *Lipow* v. *Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015).

Plaintiffs' gratuitous claims against 17 directors fail for all the same reasons. There is no false statement, no materiality, and no scienter. That the directors signed documents containing some of the challenged statements while they "served as outside directors or audit committee members" is not enough. *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2007 WL 2615928, at *5 (S.D.N.Y. Sept. 10, 2007). These claims should be swiftly dismissed.

*Finally*, Plaintiffs do not plead loss causation because none of the four purported

corrective disclosures revealed the falsity of any challenged statement and, as to two purported

corrective disclosures, no new information was revealed at all. And for the same reasons that they

do not plead a primary securities fraud claim, Plaintiffs also do not plead a control person claim.

In short, the Second Circuit has emphatically rejected the "simple equation" urged

here: that "a prima facie case of securities fraud" may be pleaded by pointing to general statements

about "regulatory compliance" and then claiming with hindsight that "significant regulatory

violations" showed that the statements must have been fraudulent when made. *Singh* v. *Cigna*

*Corp.*, 918 F.3d 57, 60 (2d Cir. 2019). This Court should do the same and dismiss the complaint.

## ALLEGATIONS OF THE COMPLAINT[1]

### A.    Citigroup Informs Investors of the Risk of Adverse Regulatory Actions.

Citigroup is "among the 'largest and most complex' firms in the world," with

dozens of subsidiaries and business in "more than 160 countries." (Amended Complaint ("AC")

¶¶ 1, 58.) Citigroup operates under extensive worldwide regulation and examination. In the United

States, the Board of Governors of the Federal Reserve System ("Federal Reserve") supervises

Citigroup, and the Office of the Comptroller of the Currency ("OCC") supervises Citibank,

Citigroup's bank subsidiary. (*Id.* ¶ 2.) Like other "systemically important" financial institutions

(*id.* ¶ 1), Citigroup has been the subject of regulatory enforcement action.[2]

---

[1] In deciding this motion, the Court considers only well-pleaded factual allegations. *See Parkcentral Glob. Hub Ltd.* v. *Porsche Auto. Holdings SE*, 763 F.3d 198, 202 (2d Cir. 2014). The Court may also consider documents "incorporated by reference in" or "integral to and relied upon in the complaint," and "documents required by law to be, and that have been, filed with the SEC." *Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys.* v. *Mechel OAO*, 811 F. Supp. 2d 853, 865 (S.D.N.Y. 2011).

[2] Plaintiffs contrast Citigroup with other financial institutions, like JPMorgan Chase, HSBC, Wells Fargo, and Bank of America. (AC ¶¶ 1, 90.) Those firms and others are no stranger to regulatory enforcement action, including by the Federal Reserve and OCC. (*See* Declaration of Sharon L. Nelles ("Nelles Decl.") ¶¶ 5-6.)

Between January 15, 2016 and October 12, 2020 (Plaintiffs' alleged "Class Period"), Citigroup cautioned investors that Citigroup and Citibank were under "heightened regulatory scrutiny and expectations" from the Federal Reserve, OCC, and other regulators, and that part of that scrutiny involved monitoring of Citigroup's and Citibank's "governance and risk management practices." (Nelles Decl. Ex. ("Ex.") 4 at 62.) Citigroup explained that, "[a]t any given time, Citi is defending a significant number of legal and regulatory proceedings and is subject to numerous governmental and regulatory examinations, investigations and other inquiries." (Ex. 7 at 61.) Citigroup also warned investors that these proceedings "may result in adverse judgments, settlements, fines, penalties, restitution, disgorgement, injunctions or other relief" (Ex. 12 at 283), and that "Citi can be subject to enforcement proceedings not only because of violations of law and regulation, but also due to a failure, as determined by its regulators, to have adequate policies and procedures, or to remedy deficiencies on a timely basis" (Ex. 21 at 55).

Citigroup did not assure investors that its risk management systems and controls would never fail. In its annual reports, Citigroup stated that these systems and controls were "designed to," not guaranteed to, "protect Citi." (*E.g.*, AC ¶¶ 317-39.) Citigroup expressly warned that "[t]here is no guarantee" that its "investments" or "other initiatives" will "be as productive or effective as Citi expects, or at all." (Ex. 13 at 49.) Citigroup further added that its "legal risk . . . cannot be reliably estimated or measured based on forecasts" (Ex. 12 at 116), including because it "continually face[d] ongoing regulatory uncertainties and changes, both in the U.S. and globally" (Ex. 13 at 48), and that its "areas of ongoing regulatory . . . uncertainties and changes" were "too numerous to list completely" (Ex. 21 at 47). And Citigroup explained that these "[o]ngoing regulatory uncertainties and changes make Citi's and its management's long-term business, balance sheet and budget planning difficult or subject to change." (Ex. 13 at 48.) Citigroup also

apprised investors of the threat of "unpredictable" "operational disruption" and "incidents," including as a result of "human error." (Ex. 21 at 51.) Far from "assur[ing] investors that Citigroup had, in fact, made all necessary investments to ensure the effective functioning of the Company's risk management systems" (AC ¶ 14), Citigroup's then-CEO, Mr. Corbat, warned that "I'm pleased but not satisfied in terms of where we are, and we've got more work to do." (Ex. 3 at 13.)

### B. Citigroup and Citibank Enter into Consent Orders in October 2020.

In October 2020, Citigroup entered into a consent order with the Federal Reserve and Citibank entered into two consent orders with the OCC (collectively, the "2020 Consent Orders"). The Federal Reserve order states that "the most recent supervisory assessment of Citigroup" "identified significant ongoing deficiencies in implementation and execution by Citigroup with respect to various areas of risk management and internal controls." (Ex. 24 at 1.) The OCC orders describe "deficiencies in [] data governance, risk management, and internal controls," and impose a $400 million fine. (Ex. 25 at 1; Ex. 26 at 4.) All three orders state that Citigroup or Citibank has already "begun taking corrective action and has committed to taking all necessary and appropriate steps to remedy the deficiencies identified" by the regulators. (Ex. 24 at 2; Ex. 25 at 4; Ex. 26 at 4.)

The complaint asserts that the OCC fine "demonstrates that the Citibank Board . . . engaged in 'misconduct that is reckless, flagrant, willful, or knowing,'" citing the OCC "supervisory handbook." (AC ¶ 9.) Neither the Comptroller's Handbook nor the 2020 OCC Orders supports that assertion. The Handbook says that "[e]xaminers should propose" civil money penalties in cases of "serious misconduct," but does not limit civil money penalties only to "serious misconduct," and states that "serious misconduct" "includ[es]," but is not limited to, knowing or reckless conduct. (Ex. 27 at 51.) As to the 2020 OCC Orders, they do *not* use language regarding intent, knowledge, or recklessness. (Exs. 25, 26.) That absence is conspicuous.

In addition to the 2020 Consent Orders, Plaintiffs cite consent orders years earlier between Citigroup or Citibank and the Federal Reserve or OCC regarding Bank Secrecy Act compliance and foreign exchange trading. (AC ¶¶ 81, 86, 88.) Although unmentioned in the complaint, the Delaware Court of Chancery dismissed stockholder derivative claims against the Citigroup Board based on these and other consent orders. *Okla. Firefighters Pension & Ret. Sys.* v. *Corbat*, 2017 WL 6452240, at *5 (Del. Ch. Dec. 18, 2017). As the court explained, the mere fact that Citigroup entered into consent orders and paid fines did not suggest that the Board acted in "bad faith" or "impl[y] scienter on the part of the director Defendants." *Id.* at *26.

### C.    Citibank Mistakenly Wires Funds in August 2020.

In August 2020, Citibank mistakenly transferred approximately $900 million to certain Revlon creditors about three years before the payments were due, an incident that is subject to ongoing litigation. (AC ¶ 137.) In a decision now on appeal, Judge Furman held that, under New York law, the non-returning creditors could keep the money Citibank "indisputably transferred by mistake." *In re Citibank Aug. 11, 2020 Wire Transfers*, 2021 WL 606167, at *41 (S.D.N.Y. Feb. 16, 2021). Judge Furman made clear that, notwithstanding the error, Citibank "took [its] role seriously in adopting [a] six-eye approval process for wire transfers of the kind" at issue. *Id.* There are no allegations in that case regarding misconduct by Citigroup's senior officers or directors. Likewise, there is no reference in the 2020 Consent Orders to the wire transfer error.

### D.    Plaintiffs File a Sprawling Complaint.

Plaintiffs challenge as false 35 statements made in 22 SEC filings, press releases, calls, and conferences spanning more than four years.[3] Many of the statements generally describe

---

[3] For the Court's convenience, Exhibit 1 is a chart summarizing the challenged documents and statements. Though the complaint counts 21 documents containing false or misleading statements, it repeats the number 20 twice. (AC at 186, 200.)

the design of Citigroup's risk management systems and controls (*e.g.*, AC ¶ 317 ("Compliance organization is designed to protect Citi")) or investments therein (*e.g.*, *id.* ¶ 431 ("We have launched significant investments in our infrastructure as part of our push to make strengthening our risk and control environment a strategic priority for the firm.")). Some of the statements, including those regarding regulatory capital requirements and geopolitical risks, have nothing to do with the issues discussed in the 2020 Consent Orders. None of the statements assured investors that Citigroup's systems were failproof or that regulators would never find them deficient.

Plaintiffs claim that these statements were rendered false by the 2020 Consent Orders and assert claims under Section 10(b) of the Securities Exchange Act against Citigroup and three Officer Defendants[4] and 17 Director Defendants[5] (together, the "Individual Defendants"), and under Section 20(a) against the Officer Defendants. Although Citigroup's stock price has since rebounded, the complaint identifies four dates in September and October 2020 on which Citigroup's stock fell, including by 0.3% on the day the 2020 Consent Orders were released. (AC ¶ 548.) Plaintiffs purport to sue on behalf of investors who acquired Citigroup stock, or traded in certain Citigroup options, during the Class Period, which spans nearly half a decade.

## LEGAL STANDARD

Securities claims face "[e]xacting pleading requirements." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Rule 9(b) requires Plaintiffs to "state[] with particularity" "the circumstances constituting fraud." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Under the Private Securities Litigation Reform Act of 1995

---

[4] The "Officer Defendants" are Michael L. Corbat, John C. Gerspach, and Mark A. L. Mason.

[5] The "Director Defendants" are Ellen M. Costello, Grace E. Dailey, Barbara J. Desoer, John C. Dugan, Duncan P. Hennes, Peter B. Henry, Franz B. Humer, S. Leslie Ireland, Lew W. Jacobs, IV, Renee J. James, Eugene M. McQuade, Michael E. O'Neill, Anthony M. Santomero, James S. Turley, Deborah C. Wright, Alexander R. Wynaendts, and Ernesto Zedillo Ponce de Leon.

("PSLRA"), Plaintiffs must not only "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading"; they must also "state with particularity facts giving rise to a strong inference that the defendant acted with [scienter]." 15 U.S.C. § 78u-4(b). "To qualify as 'strong,'" the inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

## ARGUMENT

## I. PLAINTIFFS DO NOT PLEAD ANY MATERIAL MISREPRESENTATION OR OMISSION.

### A. The Complaint Fails to Allege that Defendants' Statements Were False.

Plaintiffs fail to plead falsity for at least five reasons. *First*, Plaintiffs lead with snippets from three statements, which they emphasize throughout their complaint. But they mischaracterize these statements, which were unrelated to the issues discussed in the 2020 Consent Orders. *Second*, as to all of the challenged statements, Plaintiffs cannot identify any assurance that regulators would not later deem Citigroup's controls deficient. *Third*, Plaintiffs fail to plead liability based on Defendants' forward-looking statements. *Fourth*, Plaintiffs do not plead liability based on Defendants' opinion statements. *Finally*, Plaintiffs fail to plead falsity based on statements regarding financial reporting controls that have nothing to do with the Consent Orders.

#### 1. Plaintiffs Misconstrue the Statements on Which They Primarily Rely.

Plaintiffs choose three purported false statements to highlight in their complaint (*see* AC ¶ 4), but misconstrue their meaning or provide only snippets stripped of context. *See S.C. Ret. Sys. Grp. Tr.* v. *Eaton Corp. PLC*, 791 F. App'x 230, 234 (2d Cir. 2019) ("Considering [the] response in full—rather than considering the edited version that plaintiff provides in its brief—no misrepresentation or omission occurred."). Plaintiffs first accuse Defendants of stating that Citigroup "was 'operating above every one of our regulatory requirements'" (AC ¶ 357), but omit

that this statement referred only to Citigroup operating above minimum regulatory *capital* requirements (*e.g.*, as to the ratio of equity to assets) (Ex. 10 at 2), an issue about which Plaintiffs allege no falsity.

Similarly, Plaintiffs repeatedly assert that, also in July 2017, "Citigroup even cited as evidence the fact that 'the dogs [*i.e.*, regulators] haven't barked,' when discussing the strength of its risk management systems." (AC ¶¶ 4, 126, 239 (alteration in original).) But Plaintiffs incorrectly alter the quote. The actual statement is about risks involving "geopolitical volatility"— from the "Arab Spring," "Brexit," and "near-Grexit"—and how *those* "dogs" did not "bark" (*i.e.*, cause harm to Citigroup). (Ex. 10 at 5.) Plaintiffs allege nothing about how Citigroup handled those risks, which are not addressed in the 2020 Consent Orders.

Finally, Plaintiffs emphasize that Citigroup "proclaimed itself to be a 'systemically responsible' institution" in its annual reports. (AC ¶ 4.) But the actual statement proclaims nothing of the sort. Rather, Citigroup stated that "Citi *asks all employees* to ensure that their decisions pass three tests: they are in Citi's clients' interests, create economic value and are always systemically responsible." (*E.g.*, Ex. 12 at 66 (emphasis added).) The reports then say that Citigroup "manages its risks through each of [] three lines of defense" that "collaborate with each other in structured forums and processes to bring various perspectives together and to *lead the organization toward outcomes that are* in clients' interests, create economic value and are *systemically responsible.*" (*E.g.*, Ex. 12 at 67 (emphases added).) Plaintiffs do not claim that Citigroup failed to ask employees to follow these processes and thus, again, do not allege falsity.

### 2. Defendants Never Made Any Assurances, and None of Defendants' Statements Was Rendered False by the 2020 Consent Orders.

As to all 35 of the challenged statements (Ex. 1), Plaintiffs' theory of falsity relies on the regulators' determinations of deficiencies in the 2020 Consent Orders. But the consent

orders post-date all of the statements and Plaintiffs' presumption that Defendants must have known of the regulators' determinations years or months in advance is impermissible "fraud by hindsight." *Slayton* v. *Am. Express Co.*, 604 F.3d 758, 776 (2d Cir. 2010). "A violation of Rule 10b-5 cannot occur unless an alleged material misstatement or omission was false at the time it was made." *C.D.T.S.* v. *UBS AG*, 2013 WL 6576031, at *3 (S.D.N.Y. Dec. 13, 2013). "Without contemporaneous falsity there simply is no fraud." *Id.*

That the 2020 Consent Orders described deficiencies as "longstanding" (Ex. 24 at 2) based on a "recent supervisory assessment" (*id.* at 1), makes no difference. The challenged statements did not comment on in-progress assessments or assure investors that regulators would never find deficiencies in Citigroup's risk management systems. On the contrary, Citigroup expressly warned investors regarding that very risk. (*Supra* at 5.) Nor can Plaintiffs rely on the occurrence of the August 2020 Revlon wire transfer error, which post-dates all but one of the alleged misstatements and was publicly reported almost immediately (AC ¶ 137), to plead that the challenged statements were false. Citigroup never assured investors that the company was immune from controls failures and errors, and also warned investors of this risk. (*Supra* at 5-6.)

In an effort to plead falsity based on these later events, Plaintiffs assert that Defendants provided "*assurances* to investors that Citigroup acted consistently with legal and regulatory requirements" and that "Defendants consistently and repeatedly *assured* investors that Citigroup had, in fact, made *all* necessary investments to *ensure* the effective functioning of the Company's risk management systems." (AC ¶¶ 4, 14 (emphases added).) Yet the complaint alleges no statement made by any Defendant containing any such assurances, much less explicitly using such terms. And because Defendants "provided no assurance to investors" that "procedures would be sufficient to guarantee compliance," Plaintiffs cannot base falsity on the fact that regulators

-11-

later identified deficiencies in those procedures. *Luo* v. *Sogou, Inc.*, 465 F. Supp. 3d 393, 409 (S.D.N.Y. 2020). Rather, the challenged statements (Ex. 1) fall into the following categories:

*i. Design of Risk Management Systems and Controls.* Plaintiffs point to statements in Citigroup's 2015-2019 annual reports describing the design of Citigroup's risk management and controls, including that (i) Citigroup's "Compliance organization is designed to protect Citi," (ii) the Internal Audit group's role is to monitor and report "the effectiveness of Citi's governance and controls designed to mitigate Citi's exposure to risks and to enhance Citi's culture of compliance and control," (iii) the Citigroup Board "oversees Citi's risk-taking activities," (iv) "Citi's Company-wide risk governance framework consists of the policies, standards, procedures, and processes through which Citi identifies, assesses, measures, manages, monitors, reports and controls risks," and (v) the "risk governance framework has been developed in alignment with the expectations of the [OCC] Heightened Standards." (*See* AC ¶¶ 317, 319, 321, 379, 381, 391.) Plaintiffs assert that these statements were false or misleading because the 2020 Consent Orders identified deficiencies in the "risk governance framework," but do not allege that the designs and procedures Defendants described did not exist or were misdescribed. The 2020 Consent Orders do not state, for instance, that Citigroup's Compliance organization had not actually been "designed to protect Citi," or that Citigroup's Internal Audit group did not actually have a role in monitoring risk, or that the Citigroup Board did not actually oversee "Citi's risk-taking activities," or that Citigroup's "risk governance framework" did not consist of "policies, standards, procedures, and processes" for assessing risk, or that Citigroup's "risk governance framework" was not developed according to the expectations of the OCC's Heightened Standards. It is axiomatic that statements regarding efforts to create a "robust internal compliance framework" are not false where a company has "indeed implemented a compliance program and issued policies

and procedures aiming to ensure . . . compliance." *Menaldi*, 277 F. Supp. 3d at 512.[6]

Plaintiffs also ignore that the *same* disclosures expressly warned investors that Citigroup could be subject to adverse regulatory action "due to a failure, as determined by its regulators, to have adequate policies and procedures, or to remedy deficiencies on a timely basis." (*Supra* at 5.) Such warnings cautioned that regulators could disagree with the Company's policies and procedures, and defeat any claim that Defendants made "specific, confident assurances of compliance." *In re Qudian Inc. Sec. Litig.*, 2020 WL 3893294, at *3 (S.D.N.Y. July 10, 2020).

***ii. "Investments" in Risk Management and Controls.*** Plaintiffs next challenge as false statements regarding "investments" in risk management and controls. For instance, Plaintiffs complain about a January 2016 statement by Citigroup's then-CEO that Citigroup had "made sustainable" or "necessary" "investments" in "risk, control and compliance functions." (AC ¶¶ 310, 312.) But Plaintiffs do not contend that Citigroup failed to make these investments, and ignore Mr. Corbat's qualification that he was "not satisfied in terms of where we are" and that "we've got more work to do." (Ex. 3 at 13.) Plaintiffs also challenge a July 2017 statement regarding "investments that we've made in controls." (AC ¶ 355.) Plaintiffs omit the caution immediately after that "we recognize our job is not done." (Ex. 10 at 1.)[7]

---

[6] *See In re PetroChina Co. Sec. Litig.*, 120 F. Supp. 3d 340, 360 (S.D.N.Y. 2015) ("Since the [complaint] does not challenge the actual existence of these rules, nor [the] description of them, Plaintiffs have not demonstrated that the Company's statements were false or misleading.").

[7] Plaintiffs challenge two other general statements regarding investments, without pleading falsity: (i) a statement in June 2017 that, as of then, "[f]rom an infrastructure perspective, we've got, really if not all, certainly most of the systems or base systems that we need," before a discussion of specific branch and ATM investments in Mexico (AC ¶ 353; Ex. 9 at 3); and (ii) a statement in October 2019 that "we remain committed to investing in the products in which we see the best growth opportunities as well as in our own infrastructure for the purpose of safety and soundness" (AC ¶ 408; Ex. 19 at 2). These statements too were paired with warnings that, for instance, Citigroup would incur "continued infrastructure cost," which "includes things like enhancing our data capabilities" and "improving our compliance in risk and finance infrastructure." (Ex. 19 at 19.)

Plaintiffs' assertion that statements regarding past investments were proven false or misleading by the 2020 Consent Orders fails because the orders do not state that Citigroup did not make the "investments" described, and so do not suggest falsity. *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 648 (S.D.N.Y. 2017) ("[p]laintiff has not alleged that [company] management did not, in fact, conduct the evaluations described in those statements," even if the evaluations ultimately proved inadequate).

    ***iii. General Statements Regarding "Progress.***" Plaintiffs also challenge various general statements regarding "progress" Citigroup made in its risk management and controls years or months before the 2020 Consent Orders, including a letter accompanying the Citigroup FY 2018 Proxy Statement. The letter stated that "[m]anagement also made progress on the regulatory front last year," and that "[o]ur three lines of defense—the business lines, the control functions, and internal audit—dove deeply and, where necessary, took proactive steps in critical risk areas." (AC ¶ 398.) Plaintiffs omit, through an ellipsis, that Defendants explained the specific "progress on the regulatory front" mentioned in the letter and that it was in reference to "a successful result" in a particular Federal Reserve "stress test." (Ex. 14 at 4.) Plaintiffs do not dispute that this in fact occurred. Plaintiffs instead assert that the statements were false because regulators later identified deficiencies in Citigroup's risk management and controls (AC ¶ 399), but that the regulators subsequently deemed progress insufficient does not mean that progress had not been made. *See Colbert* v. *Rio Tinto PLC*, 824 F. App'x 5, 10-11 (2d Cir. 2020) (statements about "ramp up" not misleading for omitting "serious issue" and devaluation of business); *In re Nokia Corp. Sec. Litig.*, 2021 WL 1199030, at *18 (S.D.N.Y. Mar. 29, 2021) (statements regarding "progress" not misleading despite "significant problems").

    Plaintiffs likewise challenge, on the basis of the 2020 Consent Orders, an

April 2020 statement that Citigroup had "delivered" "strong risk management" (AC ¶ 429) and a September 2020 press release in which Mr. Corbat stated that Citigroup "emerged a simpler, safer and stronger institution" from the years-earlier financial crisis. (AC ¶¶ 429, 431). Plaintiffs do not point to any facts that would render these statements false, and also ignore their context, including accompanying warnings about the "challenging" and "uncertain" environment (Ex. 22 at 2) and that "there is always more to do" as to risk management and controls (Ex. 23 at 2). *See Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) ("an investor reads each statement within such a document, whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information"). Indeed, the first statement, regarding "strong risk management," referred to risks from the "macro environment" in April 2020, *i.e.*, related to the COVID pandemic (Ex. 22 at 2), and about which Plaintiffs allege nothing. Regardless, no reasonable investor would read Citigroup's statements about "progress" as a promise that regulators would deem Citigroup's risk management sufficient, especially when Citigroup expressly warned investors of the risk that they would not (*see supra* at 5).

*iv. Statements Regarding Prior Controls Issues and Expenses.* Plaintiffs cite three prior OCC settlements—in March 2019, as to the Fair Housing Act; in October 2019, as to real estate owned properties; and in January 2020, as to the purchase of flood insurance—and point to press statements made immediately after regarding "strengthen[ing] processes and controls" and that "the [C]ompany was 'pleased to have the matter resolved.'" (AC ¶¶ 400, 410-11.) Plaintiffs challenge these statements as false on the basis that the 2020 Consent Orders identified more general "deficiencies in internal controls and compliance risk management." (*Id.* ¶ 411.) The orders, however, do not cite any ongoing violations related to the particular issues in the earlier

settlements. Nor did Citigroup, by expressing pleasure at having "resolved" a specific matter, or by noting that it had "strengthened controls" in these specific areas, communicate to investors an assurance (contrary to its express warnings) that it had fixed all issues generally with its risk management and controls and would not be subject to future regulatory action.

Plaintiffs also challenge statements about how, at specific points in time, years before the 2020 Consent Orders, Citigroup's "risk and compliance" budget was "plateauing" or had "plateaued." (AC ¶ 329 & Ex. 6 at 9 (November 2016: "what we're seeing *now* is a plateauing of the budget that's going into risk and compliance" (emphasis added)); AC ¶ 351 & Ex. 8 at 15 (April 2017: "cost is still running high, but it's plateaued," as of then).) Nothing in the complaint, or the 2020 Consent Orders, suggests that costs had not plateaued in 2016 or 2017, or otherwise casts any doubt on the truth of these statements.

### 3.    None of Defendants' Forward-Looking Statements Was False.

Plaintiffs challenge multiple forward-looking statements. [8] Forward-looking statements are subject to the PSLRA's safe harbor, 15 U.S.C. § 78u-5, and cannot be actionable if they "[i] [are] identified and accompanied by meaningful cautionary language *or* [ii] [are] immaterial *or* [iii] the plaintiff fails to prove that [they were] made with actual knowledge that [they were] false or misleading." *Lopez* v. *Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 25 (S.D.N.Y. 2016). The forward-looking statements challenged here were accompanied by express warnings, including that they were "based on management's current expectations and [were] subject to uncertainty and changes in circumstances," (*e.g.*, Ex. 19 at 1) and were "not [a]

---

[8] *E.g.*, AC ¶ 398 (the Board "will continue to pay close attention to—and expect management to make continued progress on—regulatory matters in 2019 and beyond"); *id.* ¶ 402 ("we won't change our commitment to safety and soundness and to making investments necessary to strengthen our infrastructure and control environment"); *see also* Ex. 1 (listing forward-looking statements).

guarantee[] of future results or occurrences" (*e.g.*, Ex. 2 at 9). Such warnings are sufficient. *See In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 84 (S.D.N.Y. 2017) (applying PSLRA safe harbor based on similar disclaimer). The statements are also protected by the safe harbor for the separate reasons that they were immaterial (*see infra* at 20-23), and Plaintiffs do not allege that any Defendant had contemporaneous knowledge of any statement's falsity (*see infra* at 26-32).

### 4.   None of Defendants' Opinion Statements Was False.

Plaintiffs also challenge multiple opinion statements.[9] "[A] sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong." *Omnicare*, 575 U.S. at 186. Liability may lie in only three limited situations: (i) "the speaker did not hold the belief she professed," (ii) "the supporting fact[s] she supplied were untrue," or (iii) the opinion "omits material facts about the [speaker's] inquiry into or knowledge concerning a statement of opinion" and "those facts conflict with what a reasonable investor would take from the statement itself." *Id*. at 186, 189. As to the last prong, "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts" and therefore expect an actor to "know[], but fail[] to disclose, some fact cutting the other way." *Id.* at 189-90. Plaintiffs basing liability on statements of opinion face "no small task," and "[t]he Supreme Court has emphasized that th[e] standard will not be easy to satisfy," *Gray* v. *Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 400 (S.D.N.Y. 2020).

Plaintiffs fail to meet this high standard. They do not allege that any Defendant disbelieved any opinion statement (*see infra* at 28-29), that any Defendant provided any untrue

---

[9] *E.g.*, AC ¶ 327 ("I thought we had no significant control lapses unlike the year before"); *id.* ¶ 310 (opining in January 2016 that Citigroup has "become a simpler, smaller, safer, and stronger institution"); *id.* ¶ 353 (opining in June 2017 that "we've got, really if not all, certainly most of the systems or base systems that we need"); *see also* Ex. 1 (listing opinion statements).

supporting facts, or that a reasonable investor would read general opinion statements regarding, for instance, Citigroup being a "simpler, safer and stronger institution" as an assurance that the regulators would not later identify deficiencies in Citigroup's risk management and controls—a possibility that was expressly disclosed. (*See supra* at 5.)

The Second Circuit's decision in *Tongue* v. *Sanofi*, 816 F.3d 199 (2d Cir. 2016) is illustrative. The court held that "optimism, even exceptional optimism, about the likelihood of drug approval" was not false or misleading even though, at the time of the optimistic statements, a regulatory "dialogue was ongoing" and the regulator had expressed concern about the drug in a way that "tended to cut against [defendants'] projections"—and even though investors "perhaps would have acted otherwise had the feedback been disclosed." *Id.* at 211-12. Plaintiffs here do not even reach the unsuccessful pleading in *Tongue* because they fail to allege any undisclosed, adverse regulatory feedback at the time of the challenged opinions. (*See infra* at 28-30.)

### 5. None of Defendants' Statements About Financial Controls Was False.

Finally, Plaintiffs assert that Defendants are liable for still other statements, also phrased as opinions, regarding the effectiveness of "controls over [Citigroup's] public disclosures and financial reporting." (AC ¶ 461.) In particular, Plaintiffs claim that the 2020 Consent Orders rendered false earlier certifications made pursuant to the Sarbanes-Oxley Act ("SOX certifications") that "Citi's internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of its financial reporting and the preparation of financial statements for external reporting purposes in accordance with U.S. generally accepted accounting principles," and that "management believes that, as of [the end of a reporting period], Citi's internal control over financial reporting was effective." (*Id.* ¶ 488.)

As a threshold, and determinative, matter, Plaintiffs' effort to conflate the kind of controls at issue in the 2020 Consent Orders with the financial reporting controls at issue in SOX

-18-

certifications has been rejected, including by this Court. SOX certifications "pertain to the effectiveness" of financial reporting controls and "do not concern controls generally." *Green* v. *Deutsche Bank Aktiengesellschaft*, 2019 WL 4805804, at *2 (S.D.N.Y. Sept. 30, 2019) (Nathan, J.). Financial reporting controls were not at issue or even mentioned in the 2020 Consent Orders, and a "failure in internal controls" as to non-financial-reporting laws has nothing to do with a "Company's financial reporting." *Banco Bradesco*, 277 F. Supp. 3d at 648. In summary, the SOX certifications do not cover non-financial controls, and there are no factual allegations that the financial controls covered by the SOX certifications were inaccurate.

Moreover, Plaintiffs' effort to repackage their claims around a different system of controls fails for the same reasons that Plaintiffs fail to plead falsity as to the other challenged statements. Plaintiffs assert that the SOX certifications are false only because the 2020 Consent Orders identified deficiencies in Citigroup's "internal control system" (AC ¶ 492), but that again is a classically improper form of fraud-by-hindsight pleading. Plaintiffs misconstrue statements regarding the "design[]" of financial reporting controls, and opinions regarding those controls, as ironclad assurances and guarantees that Citigroup had and would have no controls deficiencies. Courts have uniformly rejected these sorts of allegations in the SOX certification context. *See, e.g.*, *Lachman* v. *Revlon, Inc.*, 487 F. Supp. 3d 111, 134 (E.D.N.Y. 2020) ("Plaintiffs fail to allege that [the company's] SOX certifications were materially false or misleading simply because a weakness in [the company's internal controls over financial reporting] was later discovered."). Moreover, because SOX certifications "contain[] an important qualification that the certifying officer's statements are true 'based on his knowledge,'" courts have required plaintiffs to plead actual knowledge that the statements were false. *Das* v. *Rio Tinto PLC*, 332 F. Supp. 3d 786, 812 (S.D.N.Y. 2018). Plaintiffs fall well short of that requirement. (*See infra* at 26-32.)

### B.  The Challenged Statements Are Immaterial as a Matter of Law.

Plaintiffs' claims should also be dismissed on the independent ground that the challenged statements are indistinguishable from those that the Second Circuit has repeatedly held are immaterial as a matter of law. The Second Circuit has explained in nearly a dozen decisions that "general" or "aspirational" statements, including "representations regarding [] risk management policies" and "compliance, reputation, and integrity," are "too general to cause a reasonable investor to rely upon them" and thus cannot form the basis for a securities fraud claim. *Pontiac*, 752 F.3d at 183-85 & n.53 (statements that "[w]e rigorously want to avoid risk concentrations of all kinds" and "are basically obsessed with risk diversification" are immaterial); *see In re Liberty Tax, Inc. Sec. Litig.*, 828 F. App'x 747, 750-51 (2d Cir. 2020) (statement that "[o]ur compliance task force was very successful in analyzing, reviewing and evaluating the work of our compliance department and taking appropriate action to ensure that the standards of the [company's] brand are upheld" was immaterial); *ECA*, 553 F.3d at 205-06.[10] Even if Plaintiffs had alleged that these statements were "knowingly and verifiably false when made"—and Plaintiffs have not—"their generality" "prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *Pontiac*, 752 F.3d at 183. "No investor would take

---

[10] *See also Fogel*, 759 F. App'x at 23-24 ("[g]eneral statements about honesty and integrity, including those about general compliance with the law," and "statements regarding [] 'internal controls'" inactionable); *Altayyar* v. *Etsy, Inc.*, 731 F. App'x 35, 37-38 (2d Cir. 2018) ("vague aspirational statements" and "statements of policy and values" inactionable); *Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*, 818 F.3d 85, 97 (2d Cir. 2016) (statements regarding "culture of high ethical standards, integrity, operational excellence, and customer satisfaction" inactionable); *Scott* v. *Gen. Motors Co.*, 605 F. App'x 52, 54 (2d Cir. 2015) (statements regarding company's "reputation" and aim to "increase [] profitability" inactionable); *Reese* v. *Bahash*, 574 F. App'x 21, 23 (2d Cir. 2014) ("statements regarding the 'independence' and 'integrity' of [company's] ratings" inactionable); *Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC*, 750 F.3d 227, 235 (2d Cir. 2014) (statements "concerning the company's minimum control requirements" inactionable); *Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012) ("generalizations about a company's business practices and integrity" inactionable).

such statements seriously in assessing a potential investment, for the simple fact that almost every" financial institution makes these "routine representations." *ECA*, 553 F.3d at 206.

The Second Circuit's recent decision in *Singh* is on all fours with this case. Plaintiffs there "relie[d] on a simple equation": first, point to "vague corporate statements affirming the importance of regulatory compliance; next, point to significant regulatory violations; and *voila*, you have alleged a prima facie case of securities fraud!" 918 F.3d at 60. "The problem with this equation," the Court recognized, "is that such generic statements do not invite reasonable reliance" and thus cannot be "*materially* misleading." *Id.* The statements labeled immaterial by *Singh* related to the company's "commitment to regulatory compliance," including that it had "established policies and procedures to comply with applicable requirements" and "'expect[ed] to continue to allocate significant resources' to compliance." *Id.* at 60-61. That the defendant was subject to regulatory enforcement action did not render those statements material because "general statements about reputation, integrity, and compliance with ethical norms are inactionable." *Id.* at 63. Nor could a "reasonable investor" rely on these statements "as representations of satisfactory compliance" because there were no "detailed" "assurances of actual compliance." *Id.* at 63-64. Just as in *Singh*, Plaintiffs here do not (and cannot) identify any assurance of compliance, and rely instead on "simple and generic assertions about having 'policies and procedures' and allocating 'significant resources,'" none of which is material. *Id.* at 64.

Similarly, last year, in *Burr* v. *Equity Bancshares, Inc.*, this Court recognized that statements about a company's "business philosophy," including whether it had "'responsible' lending practices," were immaterial as a matter of law. 2020 WL 6063558, at *3, *6 (S.D.N.Y. Oct. 14, 2020) (Nathan, J.). In so doing, this Court noted that the Second Circuit in *ECA* rejected claims based on statements that the company "set the standard for best practices in risk

management techniques" and that its "risk management processes are 'highly disciplined'" because those statements "would not reasonably affect investor behavior and so cannot form the basis for a claim under § 10(b)." *Id.* at \*6. Tellingly, the statements challenged here are *less specific* than those in *ECA* because they do not compare Citigroup to its competitors or suggest that Citigroup set "the standard for best practices" and plainly are immaterial.

Indeed, since *ECA*, district courts in this Circuit have held inactionable as a matter of law statements that are substantively indistinguishable from, or more specific than, the statements challenged here. These immaterial statements have related to:

- "implement[ation of] a comprehensive compliance program which covered" issues in a prior plea agreement, *Diehl* v. *Omega Protein Corp.*, 339 F. Supp. 3d 153, 162 (S.D.N.Y. 2018);

- an "effective compliance organization" and "very tight compliance programs," *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 401 (S.D.N.Y. 2016);

- "clear risk management objectives," "well-established strategy and framework for managing risk," "world-class compliance function," and "strengthened" "risk culture and control framework," *Strougo* v. *Barclays PLC*, 105 F. Supp. 3d 330, 343-47 (S.D.N.Y. 2015);

- a "disciplined" "approach to risk and expense managements," *City of Westland Police & Fire Ret. Sys.* v. *MetLife, Inc.*, 129 F. Supp. 3d 48, 77-78 (S.D.N.Y. 2015);

- a "controlled and disciplined risk culture," *C.D.T.S.*, 2013 WL 6576031, at \*2-5;

- the "ability to 'manage a tremendous amount of risk in a smart and disciplined way,'" *Stratte-McClure* v. *Morgan Stanley*, 784 F. Supp. 2d 373, 380, 385 (S.D.N.Y. 2011);

- "best-of-class" and "robust" compliance programs, *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 370 (E.D.N.Y. 2013);

- "careful management of inherent credit risk," *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 354 (S.D.N.Y. 2011);

- "active management of financial market risk," "cautious stance," and "ability to 'manage volatility,'" *Plumbers' Union Local No. 12 Pension Fund* v. *Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 175, 183 (S.D.N.Y. 2010);

- "highly sophisticated" "risk control systems," *In re Societe Generale Sec. Litig.*, 2010 WL 3910286, at \*3, \*8 (S.D.N.Y. Sept. 29, 2010);

- a "commitment to risk management and conservative lending practices," *Woodward* v. *Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 434-45 (S.D.N.Y. 2010); and

- the "commit[ment] to achieving a strong risk control, resulting in 'no surprises' and a distinctive risk management capability," *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 2009 WL 4823923, at *8, *11-12 (S.D.N.Y. Dec. 14, 2009).

In some instances, the courts held immaterial statements that are almost word-for-word the same as here. *Compare Austl. & N.Z. Banking*, 2009 WL 4823923, at *9 ("Internal Audit provides independent assurance that the design and operation of the risk and control framework across the [Company] is effective") *with* AC ¶ 319 ("Internal Audit also provides independent assurance . . . regarding the effectiveness of Citi's governance and controls designed to mitigate Citi's exposure to risks and to enhance Citi's culture of compliance and control.").

Plaintiffs cannot save their claims by pointing to statements describing "progress" in controls and "strong risk management." (*See* AC ¶¶ 355, 429.) This Court has explained that statements regarding a company's "great progress," in any endeavor, "are so vague and ill-suited to concrete measurement that they constitute puffery," and therefore cannot support a securities fraud claim. *Haw. Structural Ironworkers Pension Tr. Fund* v. *AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 846 (S.D.N.Y. 2019) (Nathan, J.); *see Okla. Law Enf't Ret. Sys.* v. *Telefonaktiebolaget LM Ericsson*, 2020 WL 127546, at *7 (S.D.N.Y. Jan. 10, 2020) ("[G]eneral statements about . . . corporate 'excellence' and progress, are nonactionable puffery."). Courts have also repeatedly dismissed claims based on use of "soft adjectives," like "strong," because they "are nothing more than puffery, which is not actionable under the securities laws." *In re Xinhua Fin. Media, Ltd. Sec. Litig.*, 2009 WL 464934, at *8 (S.D.N.Y. Feb. 25, 2009). The same result is compelled here.

### C.    Plaintiffs' Omissions Claims Are Just a Repackaging of Insufficient Misrepresentation Claims.

Unable to identify any false statement, Plaintiffs allege that Defendants failed to

disclose the controls deficiencies identified in the 2020 Consent Orders and the costs for remediating them. (AC §§ VI.B.1-2). Plaintiffs cannot prevail on an omission theory that is "'simply the inverse of the [p]laintiffs' misrepresentation allegations[]' because the only thing they omitted was the 'truth that the statement misrepresents.'" *Schwab* v. *E\*TRADE Fin. Corp.*, 752 F. App'x 56, 59 (2d Cir. 2018). Courts have consistently rejected this maneuver, where the omissions are "defined in terms of the absence of the information that would correct the misrepresentation." *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, at *3 (S.D.N.Y. Oct. 22, 2013).

Regardless, "[s]ilence, absent a duty to disclose, is not misleading," *Basic Inc.* v. *Levinson*, 485 U.S. 224, 239 n.17 (1988), and "a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact," *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993). In the context of adverse regulatory action, courts in this Circuit consistently hold that "companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.'" *Pontiac*, 752 F.3d at 184; *see In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 365 (2d Cir. 2010) ("Disclosure is not a rite of confession or exercise of common law pleading."). Indeed, in a prior securities suit against Citigroup based on purported omissions regarding "litigation risks associated with . . . Enron-related" activities, Judge Swain dismissed because "Citigroup was not required to make disclosures predicting such litigation." *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377-78 (S.D.N.Y. 2004).

Pursuant to this well-established law, Citigroup was not required to accuse itself of controls deficiencies or to volunteer predictions of the adverse action its regulators could take in the future and the costs of remediating those issues. Nor was Citigroup required to disclose to investors the substance of its communications with banking regulators. On the contrary, because of legal restrictions and penalties associated with disclosure of confidential supervisory

-24-

information, Citigroup was prohibited from disclosing such information. *See* 12 C.F.R. §§ 4.32, 4.36, 261.2. To the extent Plaintiffs argue that the mere existence of Citigroup's policies gave rise to "a duty to disclose the Bank's internal control deficiencies[,] . . . this argument fails." *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253, at *7 (S.D.N.Y. June 28, 2017).

Plaintiffs also try to locate a duty to disclose in accounting and SEC rules, but plead no breach of these provisions. Plaintiffs first assert that Citigroup's financial statements violated Accounting Standards Codification 450 ("ASC 450"), which requires a specific accrual for a loss contingency that is "probable" and for which "the amount of loss can be reasonably estimated." (AC ¶¶ 438, 441.) To base securities fraud on this theory, Plaintiffs must plead that an "earlier impairment charge was so clearly required by accounting principles that the failure to take such a charge was fraudulent." *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004). Here, the loss contingency that Plaintiffs fault Defendants for not revealing, by as early as January 2016, is the specific additional dollar cost to remediate the controls deficiencies identified in October 2020. Criticizing Defendants for not knowing of regulatory enforcement action years in advance and for not having anticipated future enforcement costs is a "naked form of hindsight pleading." *Charter Twp. of Clinton Police & Fire Ret. Sys.* v. *KKR Fin. Holdings LLC*, 2010 WL 4642554, at *19 (S.D.N.Y. Nov. 17, 2010).[11] This Court has rejected precisely that sort of theory because "[t]hat the allowances for loan losses proved wrong in hindsight does not make them actionable misrepresentations." *Burr*, 2020 WL 6063558, at *6.[12]

Plaintiffs next invoke SEC Item 303, which requires disclosure of "known trends

---

[11] Tellingly, "even with the benefit of hindsight," Plaintiffs "cannot fix the precise date on which [the Company] could have estimated its loss." *Salim* v. *Mobile Telesystems PJSC*, 2021 WL 796088, at *8 (E.D.N.Y. Mar. 1, 2021).

[12] Plaintiffs' accounting claim "also fails" for failure to plead the requisite "fraudulent intent." *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 22 n.6 (S.D.N.Y. 2016); *see infra* at 26-32.

or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). Here, too, Plaintiffs simply assume that Defendants knew of adverse "trends or uncertainties," and plead no particularized allegations regarding what each Defendant knew and when (*see infra* at 28). Plaintiffs' omission claim also ignores that Citigroup *did* warn investors of the risk of regulatory enforcement "due to a failure . . . to have adequate policies and procedures, or to remedy deficiencies on a timely basis" (*supra* at 5). Citigroup repeatedly disclosed that regulators could find that its efforts at compliance were not sufficient and, beyond that, Citigroup was not required to go. *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013) ("where there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk").

## II.   PLAINTIFFS DO NOT PLEAD A STRONG INFERENCE THAT DEFENDANTS ACTED WITH FRAUDULENT INTENT.

Plaintiffs also do not allege that Defendants made the challenged statements with the "intent to deceive, manipulate, or defraud," an independent reason for dismissal. *Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185, 193 (1976). Plaintiffs must state "facts giving rise to a *strong* inference that the defendant acted" with scienter, and that inference "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *ECA*, 553 F.3d at 198; *see* 15 U.S.C. § 78u-4(b)(2)(A). "In a case involving multiple defendants," Plaintiffs must plead "a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009).

At a minimum, Plaintiffs must establish "conscious recklessness" "approximating actual intent." *S. Cherry St., LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009). They must plead "facts to show that defendants had both motive and opportunity to commit fraud" or

"facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rombach* v. *Chang*, 355 F.3d 164, 176 (2d Cir. 2004). The complaint pleads neither.

### A. The Complaint's Generic Allegations of Motive and Opportunity Are Insufficient.

To plead scienter based on "motive and opportunity," Plaintiffs must allege particularized facts regarding motive ("concrete" and "personal" benefits for the false statements), and opportunity (the "means" and "likely prospect" of achieving the benefits). *S. Cherry*, 573 F.3d at 108. Notably, Plaintiffs do not plead any "unusual insider trading activity during the class period," which "may permit an inference of bad faith and scienter." *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).

Plaintiffs instead base scienter on the Individual Defendants' alleged desire to "reduce Citigroup's efficiency ratio" by "slash[ing] costs," "thereby increasing profitability and the Company's stock price and their compensation." (AC ¶ 297.) However, assertions "that defendants were motivated by a desire to maintain or increase executive compensation," and "misrepresented the corporation's financial condition to inflate the price of the common stock and to maintain artificially high prices in order to protect their executive positions and compensation," are anything but "concrete" or "personal." *Kalnit*, 264 F.3d at 139-40. The motive to increase profitability and boost stock price and compensation "are generally possessed by most corporate directors and officers." *Id*. If motive could be pleaded in this way, "the required showing of motive and opportunity would be no realistic check on aspersions of fraud, and mere misguided optimism would become actionable." *Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994).

Motive and opportunity are especially farfetched here because Plaintiffs allege that Citigroup was a highly scrutinized company and that its regulators would be aware of the supposed falsity of the statements as they occurred. (*E.g.*, AC ¶ 427 (noting "heightened regulatory scrutiny

and expectations").) Under these circumstances, "[i]t is hard to see what benefits accrue from a short respite from an inevitable day of reckoning." *Shields*, 25 F.3d at 1130; *see Seaman* v. *Cal. Bus. Bank*, 2014 WL 1339649, at *6 (N.D. Cal. Apr. 2, 2014) (that a company "was being closely monitored by the FDIC" would "tend to suggest the opposite" of scienter).

> **B.      The Complaint's Speculation as to Conscious Misbehavior or Recklessness Is Insufficient.**

Having failed to allege scienter through motive and opportunity, Plaintiffs attempt to plead conscious misbehavior and recklessness. To do so, Plaintiffs must adequately allege that Defendants' conduct in making the statements was "an *extreme departure* from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *S. Cherry*, 573 F.3d at 109 (emphasis added). Where, as here, Plaintiffs fail to establish motive, "the strength of the circumstantial allegations must be correspondingly greater." *Das*, 332 F. Supp. 3d at 813. Plaintiffs assert that Defendants "knew or recklessly disregarded" that their statements were false or misleading (AC ¶ 576), but never identify a specific contemporaneous document, report, communication, or statement setting forth the "true facts" of which Defendants were purportedly aware when making any challenged statement. Instead, Plaintiffs speculate about what regulators told Defendants and make assumptions based on corporate roles and resignations, but none of these allegations supports a cogent and compelling inference that Defendants made the statements with fraudulent intent.

*Speculation Regarding Regulatory Communications.* Plaintiffs attempt to rely on the 2020 Consent Orders, but they cannot support a strong inference of scienter because "the fact that" Defendants "came to learn that the Company's controls had been ineffective in past years does not show that they knew that the internal controls were inadequate" when "the allegedly misleading statements were made." *Schiro* v. *Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 307

(S.D.N.Y. 2019).[13] Plaintiffs hypothesize, based on vague media reports, that at some unspecified

time, "federal regulators repeatedly pressured" Defendants to address "longstanding deficiencies

in the Company's risk systems and internal controls." (AC ¶ 237.) These "conclusory allegations"

regarding "reports" fail to identify "*specific* contradictory information" "available to the

defendants *at the same time* they made their misleading statements," and thus cannot plead

scienter. *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536, 545 (S.D.N.Y. 2009); *see*

*City of Brockton Ret. Sys.* v. *Avon Prods. Inc.*, 2014 WL 4832321, at *23 (S.D.N.Y. Sept. 29,

2014) (article that "present[ed] no particularized facts" concerning defendant's knowledge at the

time of the alleged misstatements was "not sufficient to demonstrate . . . the requisite scienter").

Plaintiffs instead cite general Federal Reserve and OCC "guidelines," claiming that

they "require[d] the regulators" to provide "constant communication and formal written reports

concerning identified deficiencies" to Citigroup. (AC ¶ 243.) But that regulators periodically or

even frequently communicate with officers and directors, and raise concerns regarding

non-compliance during those communications, does not mean that the regulators communicated

the specific deficiencies identified in the 2020 Consent Orders years or months earlier, or informed

Defendants that their general statements regarding risk management and controls were materially

false or misleading. *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 562

(S.D.N.Y. 2004) ("Even if the Individual Defendants had this information to the effect that [the

company's] data might not have met the standards [the company] set, such knowledge is

insufficient to lead to an inference that the speakers knew that the general and optimistic statements

about [a product's] clinical and commercial possibilities of which Plaintiffs complain were

---

[13] Plaintiffs seize on language in the 2020 Consent Orders about deficiencies "previously identified by the Federal Reserve" (AC ¶ 240), but acknowledge that this language is about deficiencies identified in prior, *publicly announced* consent orders (*id.*), not about concealed facts.

untrue."); *see also ATSI*, 493 F.3d at 106 (plaintiff may not "sufficiently plead fraud by simply providing a method for the defendant to discover the underlying details"). Plaintiffs' attempt to plead scienter based on an assumption regarding what "the individual defendants 'must have been aware of'" has routinely been rejected by courts in this Circuit, even when tied to "a litany of publicly disclosed fines and enforcement actions." *E.g.*, *Sfiraiala*, 729 F. App'x at 59.

   ***Misreading of the OCC Penalty Provisions.*** Plaintiffs next assert that they have pleaded scienter because OCC money penalties are reserved for "effectively intentional" misconduct, according to the Comptroller's Handbook. (AC ¶ 254.) However, as discussed above (*supra* at 6), the Comptroller's Handbook makes clear that civil money penalties are *not* reserved for only knowing or reckless conduct. Tellingly, the 2020 Consent Orders with Citigroup and Citibank do *not* use language regarding intent, knowledge, or recklessness (Exs. 24-26). In any event, Plaintiffs' assertions about state of mind for violations of bank regulatory requirements do not establish that any Defendant was aware that a statement to investors was false or misleading.

   ***Assumptions Based on Corporate Role.*** Plaintiffs also rely on the assertion that the Individual Defendants had the "duty and responsibility to oversee risk management, risk compliance, and internal controls." (AC ¶¶ 255, 282). But Plaintiffs "must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions." *Lipow*, 131 F. Supp. 3d at 163. "Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight" whatsoever. *Id*. At bottom, Plaintiffs assert that the Individual Defendants "*should* have known," but "these sorts" of "allegations are insufficient to allege scienter." *City of Omaha Police & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 425 (S.D.N.Y. 2020) (Nathan, J.) (emphasis added).

**Impermissible Reliance on Executive Departures.** Plaintiffs also attempt to plead scienter by citing the resignations of Citigroup's former CEO and Chief Risk Officer (AC ¶ 289), but such resignations do not evidence scienter because "there are any number of reasons that an executive might resign, most of which are not related to fraud," *Das*, 332 F. Supp. 3d at 815. Even "[a]brupt resignations, amidst bad financial news . . . are not surprising," and do not support scienter. *In re HEXO Corp. Sec. Litig.*, 2021 WL 878589, at *21 (S.D.N.Y. Mar. 8, 2021).

**The "Core Operations" Doctrine.** Out of options, Plaintiffs rely on the assertion that "Citigroup's risk management systems and internal controls constituted core operations of the Company." (AC ¶ 302.) "[M]any courts have 'expressed doubts as to [the core operations doctrine's] continuing import'" after passage of the PSLRA, *City of Omaha*, 450 F. Supp. 3d at 423, and it is not "independently sufficient to raise a strong inference of scienter," *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018). At best, the doctrine only "bolsters the strength of the inference of scienter when plaintiff has *already* adequately alleged facts indicating that defendants might have known their statements were false." *Tyler* v. *Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011) (emphasis added). Further, even if the doctrine survived the PSLRA's enactment, "[c]ourts applying the doctrine have generally 'required that the operation in question constitute nearly all of a company's business before finding scienter.'" *Hensley* v. *IEC Elecs. Corp.*, 2014 WL 4473373, at *5 (S.D.N.Y. Sept. 11, 2014). Plaintiffs cannot plausibly allege that risk management and internal controls "constitute nearly all" of Citigroup's business. *Id.* In any event, that risk management and internal controls are generally important says nothing about whether Defendants intended to mislead investors when they made the challenged statements.

*      *      *

Plaintiffs have fallen far short of their high burden to plead facts that show that Defendants intended to defraud investors. Plaintiffs cannot stack up inadequate allegations and "save their claims from dismissal by arguing that their various allegations of motive and opportunity and conscious misbehavior or recklessness—though insufficient when considered in isolation—are somehow adequate when considered together." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 449 (S.D.N.Y. 2005); *see City of Brockton Ret. Sys.* v. *Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (rejecting similar argument that "zero plus zero plus zero plus zero plus zero adds up to something"). There is a far more compelling inference here: Defendants made good-faith general statements regarding Citigroup's risk management systems and controls, but Citigroup's regulators nevertheless determined, years or months later, that these systems and controls were insufficient—as Citigroup had disclosed could occur. That is not securities fraud.[14]

## III.   PLAINTIFFS' NEWLY ADDED CLAIMS AGAINST THE 17 DIRECTOR DEFENDANTS FAIL.

Plaintiffs' amended complaint takes the unusual step of adding claims against 17 Director Defendants. Those claims also should be dismissed, for two primary reasons.

*First*, Plaintiffs fail to plead that the Director Defendants made a material misrepresentation. Plaintiffs assert that these Defendants signed (i) a letter that generally described Citigroup's "three lines of defenses," and (ii) Citigroup's annual reports, which generally

---

[14] Unable to plead scienter on the part of any Individual Defendant, Plaintiffs assert that they have pleaded "Citigroup's corporate scienter." (AC ¶ 307.) "In most cases, the most straightforward way" to plead scienter "for a corporate defendant will be to plead it for an individual defendant." *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Here, Plaintiffs do not plead a basis for imputing scienter to Citigroup other than through the 20 Individual Defendants accused of fraud, and thus the claim fails for the same reasons.

described the design of Citigroup's risk management and controls (AC ¶ 55). As discussed (*supra* at 9-23), those statements are neither false nor material and provide no basis for a claim.[15]

       *Second*, Plaintiffs fail to plead scienter as to the Director Defendants. At the outset, in 2017, the Delaware Court of Chancery dismissed stockholder derivative claims against the Citigroup Board because plaintiffs "fail[ed] to demonstrate scienter" and it was not "reasonably conceivable that the directors acted in bad faith." *Okla. Firefighters*, 2017 WL 6452240, at *1-2. Those claims were brought under different legal theories and focused on different regulatory actions, but they were also premised on Citigroup and Citibank entering into consent orders, and the court held that this circumstance did "not imply bad faith" or "scienter." *Id.* at *26.

       Here too, Plaintiffs rely on the existence of consent orders but cannot plead any Director Defendant's scienter. Plaintiffs focus their allegations on "*executive* compensation" (AC ¶ 299 (emphasis added)), and thus do not even attempt to plead motive for the 17 Director Defendants. Plaintiffs instead attempt to plead scienter against the Director Defendants on the undifferentiated basis that they all were "Members of the Audit and Risk Management Committees" (AC § V.C) at some point during the Class Period,[16] but scienter "is not amenable to group pleading." *C.D.T.S.*, 2013 WL 6576031, at *6. An allegation that a defendant is "Chairman of the Audit Committee" or the like "does not," without a "corresponding fraudulent intent," "satisfy [plaintiff's] burden of pleading scienter." *In re China N. E. Petroleum Holdings Ltd. Sec. Litig.*, 2014 WL 7236914, at *3 (S.D.N.Y. Dec. 11, 2014). That the Director Defendants "had a legal duty to monitor" Citigroup's compliance with applicable law (AC ¶ 236) likewise "is

---

[15] Mr. O'Neill's April 2016 statement that "I thought we had no significant control lapses" in 2015, "unlike the year before" (AC ¶ 327), is an inactionable opinion about prior controls issues (*supra* at 17-18).

[16] Plaintiffs ignore that, with one exception, the Director Defendants were not members of these committees for the entire Class Period.  (*See* AC ¶ 54.)

insufficient to raise a strong inference of scienter without allegations," missing here, "of what information was reasonably available to them or how they were reckless in their duties." *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 488 (S.D.N.Y. 2006) (dismissing claims against audit committee defendants).

## IV.    PLAINTIFFS DO NOT PLEAD LOSS CAUSATION.

In addition to falsity, materiality, and scienter, Plaintiffs must allege facts showing that the alleged misrepresentations "concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005). Although loss causation inquiries sometimes can be "fact-based," a court must dismiss a complaint that does "not adequately [plead] facts which, if proven, would show that [the] loss was caused by the alleged misstatements as opposed to intervening events." *Id.* at 174.

Here, Plaintiffs rely on four purported corrective disclosures in September and October 2020. (AC ¶ 533.) However, as discussed (*supra* at 9-19), nothing alleged to have been revealed on the purported corrective disclosure dates—including publication of the 2020 Consent Orders—revealed that prior general statements regarding the existence and design of Citigroup's risk management systems actually were false. That is fatal to loss causation. *See In re China Organic Sec. Litig.*, 2013 WL 5434637, at *7 (S.D.N.Y. Sept. 30, 2013).

As to the September 15, 2020 and October 13, 2020 alleged corrective disclosures, Plaintiffs also do not plead that *any* undisclosed fact was revealed:

***September 15, 2020.*** Plaintiffs claim that an internal Citigroup memo was published that day (AC ¶ 542), but the same memo was *previously* publicly discussed, in an article that Plaintiffs allege constituted a separate corrective disclosure a day earlier (Ex. 28). The memo also included no corrective information, instead urging Citigroup employees to continue to make progress in reinforcing controls. (Ex. 29.)

-34-

***October 13, 2020.*** Plaintiffs identify Citigroup's 3Q 2020 earnings release as a corrective disclosure because it purportedly revealed "the $400 million fine's impact on Citigroup's earnings," and that Citigroup still needed to take steps to "remediate issues," with an unknown cost and timeline. (AC ¶ 553.) But the size of the penalty had been revealed to the market a week earlier in a separate alleged corrective disclosure (*id.* ¶ 548), and Citigroup had already disclosed, on multiple prior occasions, the need for continued investments in risk and operational control enhancements, including in the same statements Plaintiffs challenge as false or misleading. *See* Ex. 19 at 19 (acknowledging that Citigroup would incur "continued infrastructure cost" related to "improving [its] compliance in risk and finance infrastructure").

## V.      PLAINTIFFS DO NOT PLEAD A "CONTROL PERSON" CLAIM.

Plaintiffs assert control person claims under Section 20(a) of the Exchange Act against the three Officer Defendants. For the reasons that the complaint does not plead a primary securities law violation, it also does not plead control person liability.[17] *See ATSI*, 493 F.3d at 108.

### CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed with prejudice.

---

[17] For two of the three Officer Defendants, Plaintiffs additionally cannot assert a control person claim for the periods of time during which those Defendants were not Citigroup senior executives. (*See* AC ¶¶ 32, 33 (alleging that Mr. Gerspach left Citigroup in February 2019, during the Class Period, and that Mr. Mason has been Citigroup's CFO only since Mr. Gerspach left).)

Dated:   New York, New York                Respectfully submitted,
         June 4, 2021

                                           /s/ Sharon L. Nelles
                                           Sharon L. Nelles (*nelless@sullcrom.com*)
                                           David M.J. Rein (*reind@sullcrom.com*)
                                           SULLIVAN & CROMWELL LLP
                                           125 Broad Street
                                           New York, New York 10004-2498
                                           Telephone:    (212) 558-4000
                                           Facsimile:    (212) 558-3588

                                           *Attorneys for Defendants Citigroup Inc., Michael L.*
                                           *Corbat, Barbara J. Desoer, John C. Gerspach, and*
                                           *Mark A. L. Mason*

                                           /s/ Mary Eaton
                                           *Signature used with permission pursuant
                                            to S.D.N.Y. ECF Rule 8.5
                                           Mary Eaton (*mary.eaton@freshfields.com*)
                                           Shannon K. McGovern (*shannon.mcgovern@freshfields.com*)
                                           FRESHFIELDS BRUCKHAUS DERINGER US LLP
                                           601 Lexington Avenue, 31st Floor
                                           New York, New York 10022-4611
                                           Telephone:    (212) 277-4000
                                           Facsimile:    (212) 277-4001

                                           *Attorneys for Defendants Ellen M. Costello, Grace E.*
                                           *Dailey, John C. Dugan, Duncan P. Hennes, Peter B.*
                                           *Henry, Franz B. Humer, S. Leslie Ireland, Lew W.*
                                           *Jacobs, IV, Renee J. James, Eugene M. McQuade,*
                                           *Michael E. O'Neill, Anthony M. Santomero, James S.*
                                           *Turley, Deborah C. Wright, Alexander R. Wynaendts,*
                                           *and Ernesto Zedillo Ponce de Leon*