# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

September 20, 2021

Via ECF

Hon. Alison J. Nathan,
    United States District Court,
        Southern District of New York,
            40 Foley Square, Room 2102,
                New York, New York  10007.

Re:    *In re Citigroup Securities Litigation*, No. 1:20-cv-09132 (AJN)

Dear Judge Nathan:

On behalf of Defendants, I write to inform the Court of the attached Second Circuit decisions in *Plumbers & Steamfitters Local 773 Pension Fund* v. *Danske Bank A/S*, 2021 WL 3744894 (2d Cir. Aug. 25, 2021) ("*Danske Bank*") and *Asay* v. *Pinduoduo Inc.*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) (summary order) ("*Pinduoduo*"). In both cases, the Second Circuit reaffirmed that general statements like those at issue in this case cannot sustain securities fraud claims as a matter of law.

In *Danske Bank*, the Second Circuit held that a bank's "aver[ments] that it took steps to comply with AML protocols" were immaterial as a matter of law, notwithstanding alleged AML deficiencies at the bank. 2021 WL 3744894, at *8. The court reasoned that the challenged statements, such as that the bank "takes the steps necessary to comply with internationally recognised standards, including Know Your Customer procedures," were not assertions about "particular acts of compliance" and were too "generic" to be actionable. *Id.* The court distinguished its decision in *Meyer* v. *Jinkosolar Holdings*, 761 F.3d 245, 250 (2d Cir. 2014), upon which Plaintiffs' opposition relies,

Hon. Alison J. Nathan, U.S.D.J.                                                    -2-

because *Jinkosolar* included "highly detailed" statements about "specific pollution-abatement equipment [and] 24-hour monitoring teams," whereas the statements challenged in *Danske Bank* were "of the same order" as statements previously held "too general to induce reliance," 2021 WL 3744894, at *8. So too here.

If anything, the *Danske Bank* defendants' statements concerning the bank's compliance efforts were *more* detailed than those here, further underscoring the inapplicability of *Jinkosolar* to this case. The statement that the *Danske Bank* defendants "take[] steps necessary to comply with internationally recognised standards, including Know Your Customer procedures," *id.*, for example, is more specific than Citigroup's statements that its "[c]ompliance organization is *designed to* protect Citi" and that its "Risk Governance Framework has been *developed in alignment* with the expectations of" regulator standards (AC ¶¶ 317, 335 (emphasis added)). Citigroup's statements did not specify "particular acts of compliance," *Danske Bank*, 2021 WL 3744894, at *8, and are not within "the realm of securities fraud," *id. at* *1.

In *Pinduoduo*, the Second Circuit held that statements describing a company's "strict" measures to combat counterfeiting on its e-commerce platform were not actionable despite allegations that those measures were "plainly failing" at the time the statements were made. 2021 WL 3871269, at *2, *3. The court again distinguished *Jinkosolar* on the basis that Pinduoduo disclosed "contemporaneous examples of anti-counterfeiting failures and risks," thereby suggesting uncertainty as to the success of the measures described. *Id*. at *3.

Similar cautionary statements regarding "contemporaneous" risks to

Hon. Alison J. Nathan, U.S.D.J.                                                                   -3-

Citigroup were made here. *Compare id.* (Pinduoduo "ha[s] been and may continue to be subject to allegations and lawsuits" concerning counterfeiting on its e-commerce platform, citing "specific legal and regulatory action taken against them") *with* ECF No. 116 at 5 ("[a]t any given time, Citi is defending a significant number of legal and regulatory proceedings and is subject to numerous governmental and regulatory examinations [and] investigations," and citing specific regulatory actions and investigations throughout the class period); *compare Pinduoduo*, 2021 WL 3871269, at \*3 ("[a]lthough we have adopted strict measures to protect us [against counterfeiting] . . . these measures may not always be successful or timely") *with* ECF No. 116 at 12-13 (despite systems and policies "designed to protect Citi," Citigroup may experience "a failure, as determined by its regulators, to have adequate policies and procedures, or to remedy deficiencies on a timely basis"). Like the disclosures in *Pinduoduo*, Citigroup's warnings to investors defeat any claim that Citigroup gave "comfort" regarding its regulatory compliance. *See* ECF No. 123 at 27.

Respectfully submitted,

*/s/ Sharon L. Nelles*

Sharon L. Nelles

cc:      All Counsel of Record (via ECF)