20-1423
*Asay v. Pinduoduo*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of August, two thousand twenty-one.

PRESENT:
        BARRINGTON D. PARKER,
        GERARD E. LYNCH,
        JOSEPH F. BIANCO,
            *Circuit Judges*.

_____

Kerry Asay, Johan Johan,

        *Plaintiffs-Appellants*,

Jiaxiang Wei, individually and on behalf of all others similarly situated,

        *Plaintiffs*,

Yoen Hung, individually and on behalf of all others similarly situated,

        *Consolidated Plaintiff*,

        v.                             20-1423

Pinduoduo Inc., Zheng Huan, Lei Chen, Zhenwei Zheng, Junyun Xiao, Haifeng Lin,

        *Defendants-Appellees*,

Tian Xu, Zhen Zhang, Nanpeng Shen, Jianming Yu,

*Defendants.*[*]

FOR PLAINTIFFS-APPELLANTS: STEPHEN J. ODDO, Robbins LLP, San Diego, CA (Gregory E. Del Gaizo, Robbins LLP, San Diego, CA; Ex Kano S. Sams II, Glancy Prongay & Murray LLP, Los Angeles, CA; Laurence Rosen, Phillip Kim, Jonathan Horne, The Rosen Law Firm, P.A., New York, NY, *on the brief*).

FOR DEFENDANTS-APPELLEES: ROBERT A. FUMERTON (Scott D. Musoff, New York, NY, Chi Tsun Steve Kwow, Hong Kong, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Kerry Asay and Johan Johan ("Plaintiffs") appeal from the March 30, 2020 Order and Opinion and March 31, 2020 judgment of the United States District Court for the Southern District of New York (Castel, *J.*), dismissing their federal securities claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant-Appellee Pinduoduo, Inc. ("Pinduoduo" or the "the Company") is a Chinese company that operates an e-commerce platform selling consumer products, and the individual defendants-appellees are certain of its executives.[1]

---

[*] The Clerk of Court is respectfully directed to amend the caption as above.

[1] Only Pinduoduo (and not its named executives) entered an appearance in the district court proceedings. Defendants-Appellees Zheng Huang, Lei Chen, Zhenwei Zheng, Junyun Xiao, and Haifeng Lin were served pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention") after the district court granted the motion to dismiss, and join Pinduoduo's brief on appeal.

Plaintiffs allege that Pinduoduo's Registration and Prospectus ("Offering Documents"), for its Initial Public Offering ("IPO") on July 26, 2018, included material misrepresentations and omissions related to the Company's anti-counterfeiting measures and marketing expenses that violated Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77o, and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), §§ 78j(b), 78t(a).   On appeal, Plaintiffs challenge the district court's conclusions that these federal securities claims failed to state a claim because: (1) Pinduoduo had sufficiently warned investors of the risks related to the sale of counterfeit goods on its platform; (2) the Company did not violate the securities laws in not disclosing interim financial data related to marketing and advertising expenses; and (3) to the extent that Plaintiffs' claims were subject to heightened pleading standards, they had failed to allege scienter.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

### I.    Standard of Review

We review the dismissal of claims under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019).   We accept as true "all well-pleaded factual allegations in the complaint, draw[] all reasonable inferences in favor of the nonmoving party, and consider[], in addition to the complaint, and written instruments attached, statements incorporated by reference, and public disclosure documents filed with the SEC."   *Id.* (internal citations and quotation marks omitted).

### II.    Pleading Claims under the Securities Act and the Exchange Act

Section 11 of the Securities Act imposes liability if "any part of the registration statement[]

3

. . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Section 11 imposes "absolute liability—as opposed to requiring any particular state of mind or scienter—as long as a plaintiff establishes one of the three bases for liability" under the statute. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 172–73 (2d Cir. 2021) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff must state a claim "that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]

Further, as relevant here, Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, imposes liability against "any person" who "make[s] any untrue statement of a material fact or . . . omit[s] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Accordingly, Plaintiffs must plead that Pinduoduo "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *Gamm*, 944 F.3d at 463 (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 106 (2d Cir. 1998)). Additionally, because the instant case is a private securities class action, the Private Securities Litigation Reform Act ("PSLRA") and its pleading requirements also apply. *See* 15 U.S.C. § 78u–4. As such, Plaintiffs must

---

[2] If the claim "sounds in fraud," however, a heightened pleading standard applies instead. *Rombach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004).

"specify the [fraudulent] statements . . . and explain why the statements were fraudulent." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020) (internal quotation marks omitted).   Further, to allege scienter under the PSLRA, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u–4(b)(2)(A) – in this case, an "intent to deceive, manipulate, or defraud, . . . or reckless conduct."   *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 n.3 (2d Cir. 2007) (internal citations and quotation marks omitted).

Although the parties dispute whether the Section 11 claims also should be evaluated under the heightened pleading standard, we decline to address that issue because, as set forth below, those claims were properly dismissed by the district court even utilizing the traditional pleading standard under Federal Rule of Civil Procedure 8(a).   The federal securities claims in the Consolidated Class Action Complaint (the "Complaint") allege two categories of materially misleading statements and omissions in the Offering Documents – namely, those regarding Pinduoduo's anti-counterfeiting measures and those related to its marketing expenses.   We address each category of allegations in turn.

III.   **<u>Anti-Counterfeiting Measures</u>**

The first category of allegedly misleading statements relates to Pinduoduo's statements in the Offering Documents about its anti-counterfeiting measures designed to control the sale of counterfeit goods on its e-commerce platform.   Plaintiffs allege that, although Pinduoduo touted its "strict" anti-counterfeiting measures in the Offering Documents, the Company did not actually implement them.   Instead, according to Plaintiffs, as the Chinese government increased efforts to crackdown on the sale of counterfeit goods, Pinduoduo merely paid lip-service to anti-

counterfeiting and became "the counterfeiters' forum of choice."  Appellants' Br. at 7.  For example, the Complaint alleges that Pinduoduo's automated system for processing brand authorization forms was easily manipulated – allowing merchants to sell counterfeit goods for months or years – and if merchants were ever caught selling counterfeit goods they received only "meaningless slaps on the wrist."  Joint App'x at 49–50.  Moreover, the Complaint alleges that, unlike its larger competitors Alibaba and JD.com, which had thousands of employees and volunteers working to combat the sale of counterfeit goods on their platforms, Pinduoduo employed only seven Quality Control Associates who spot-checked only a fraction of its orders.

Therefore, the question is whether the Offering Documents misrepresented its anti-counterfeiting efforts.  Both below and on appeal Plaintiffs seek to draw a parallel between those statements by Pinduoduo and statements we found to be misleading in *Meyer v. Jinkosolar Holdings Company* regarding the implementation of pollution-abatement measures in China by the Chinese solar-cell and panel manufacturing company Jinkosolar that were "both present and substantial" at the time of the offering.  761 F.3d 245, 251 (2d Cir. 2014).  Here, Plaintiffs assert that Pinduoduo's Offering Documents boasted "strict" anti-counterfeiting measures that were "plainly failing" at the time of Pinduoduo's IPO.  Appellants' Br. at 20–21.  In other words, they argue that Pinduoduo provided generic disclosures that, like in *Jinkosolar*, were insufficient to account for the materialization of counterfeiting risks, which was inevitable given the number of counterfeit products being sold on the Pinduoduo platform.  We disagree.

Here, unlike in *Jinkosolar*, the materialized risks were disclosed in the Offering Documents.  In particular, Pinduoduo disclosed that, in January 2018, the Company had been required by the Chinese government to "strengthen supervision [of its merchants]" for anti-

6

counterfeiting purposes and had nevertheless already been sued in the United States in July 2018 (the same month as the IPO) for trademark-related issues.  Joint App'x at 177.  The Company further disclosed that they "have been and may continue to be subject to allegations and lawsuits claiming that products listed or sold through our platform by third-party merchants are counterfeit."  *Id*. at 176.  Moreover, with respect to its anti-counterfeiting measures, the Offering Document noted that, "[a]lthough we have adopted strict measures to protect us . . . *these measures may not always be successful or timely*."  *Id.* at 177 (emphasis added).  Thus, Pinduoduo's statements "suggest[] caution (rather than confidence) regarding the extent of [their] compliance." *Singh v. Cigna Corp.*, 918 F.3d 57, 64 (2d Cir. 2019).   Unlike in *Jinkosolar*, a reasonable investor, based on the specificity of the contemporaneous examples of anti-counterfeiting failures and risks, would have understood that Pinduoduo's anti-counterfeiting measures were not, at the time of the offering, successfully "prevent[ing] substantial violations of [] Chinese regulations" and international laws.  *Jinkosolar*, 761 F.3d at 251.  Pinduoduo's statements, particularly those related to the specific legal and regulatory action taken against them, reflect the Company's "uncertainty as to the very possibility of maintaining adequate compliance mechanism[s] in light of complex and shifting government regulations."  *Cigna*, 918 F.3d at 64.

Moreover, to the extent Plaintiffs rely on Pinduoduo's use of the term "strict" to describe its anti-counterfeiting measures to establish an actionable misstatement, such vague and generalized language is a mere statement of non-actionable puffery.  *See, e.g.*, *In re Synchrony*, 988 F.3d at 170 ("Vague positive statements regarding a corporate entity's risk management strategy . . . and business practices are too general to cause a reasonable investor to rely upon them." (internal quotation marks omitted)); *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687,

7

708 (9th Cir. 2021) (dismissing as puffery, statement made by executives that Google had "very robust and strong privacy program").

We also find unpersuasive Plaintiffs' contention that we should reverse the district court's dismissal of their anti-counterfeiting claims on the "entirely separate ground" that "Pinduoduo did not meaningfully follow the measures it boasted it had implemented." Appellants' Br. at 25. Although Plaintiffs allege that there was a "skeleton crew" of compliance personnel and purportedly deficient brand authorization process, they are unable to plausibly plead how these allegations are materially inconsistent with Pinduoduo's public statements, including that the Company "ha[s] been and may continue to be subject to allegations and lawsuits claiming [counterfeit] products" are sold on its platform and that its anti-counterfeiting measures "may not always be successful or timely," nor have the Plaintiffs plausibly pled that such statements are materially misleading. Joint App'x at 176–77. In short, to the extent that the Registration Statement generally describes measures implemented by Pinduoduo to combat the sale of counterfeit goods, none of these allegations regarding deficiencies in those measures contradicted the statements in the Offering Documents or rendered them materially misleading, especially in view of the disclosures regarding the historical and ongoing problems and risks associated with its anti-counterfeiting measures.

Accordingly, the district court properly dismissed the claims to the extent they were based upon statements in the Offering Documents regarding anti-counterfeiting measures.

## IV.    **Marketing Expenses**

The second category of allegedly misleading statements relates to Pinduoduo's statements regarding its marketing expenses, and its purported failure to disclose interim marketing and

expense data from the second quarter of 2018 ("Q2 2018 data"). According to the Complaint, Pinduoduo relies on its customers recruiting others to its platform to continue to grow and be profitable.[3] In the Offering Documents, the Company disclosed that it had relied on organic marketing to grow its user base through "leverag[ing] social networks," Joint App'x at 173, and its "innovative 'team purchase' model," *id.* at 165, which allows customers to coordinate and place group orders. Pinduoduo further disclosed that its growth and profitability "depends on our ability to, among other things, increase our number of active buyers." *Id.* at 175. Pinduoduo also noted that its marketing expenses had "increased substantially" beginning in 2016.[4] *Id.* Elsewhere in the Offering Documents, Pinduoduo substantiated that statement with financial and operating data (including marketing costs) going back to 2016. *See id.* at 166. Additionally, Pinduoduo stated that they "expect our operating costs and expenses to increase in absolute amounts in the future due to[] . . . sales and marketing expenses as we continue to expand our buyer base." *Id*. at 175. Despite these disclosures, Plaintiffs assert that, in connection with its IPO on July 26, 2018, Pinduoduo was legally required to disclose the marketing data from the second quarter, ending June 30, 2018. In particular, the Complaint alleges that the Offering Documents were materially misleading in this regard because Pinduoduo "avoided mentioning or reporting the Q2 financial results in the Registration Statement" and did not "even warn in the

---

[3] Unlike its competitors, Pinduoduo's business model does not rely on charging merchants a significant commission on their sales.

[4] More specifically, the Company disclosed that expenses had risen from "RMB169.0 million in 2016 to RMB1,344.6 million (US$214.4 million) in 2017, and increased from RMB73.9 million in the three months ended March 31, 2017 to RMB1,217.5 million (US$194.1 million) in the three months ended March 31, 2018." *Id.*

Registration Statement that its sales and marketing expenses and net loss had soared in Q2 2018." *Id*. at 67–68.   We disagree and conclude that the district court correctly held that the interim data was not material given the disclosures on expenses that had already been made.

It is well settled in the Second Circuit that the test for whether an omission of interim financial data is material, and therefore violates Section 11 of the Securities Act, is "whether there is 'a substantial likelihood that the disclosure of the omitted [information] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'"   *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 37 (2d Cir. 2017) (quoting *DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003)).

Plaintiffs assert that the reason the Q2 2018 data was material despite the other disclosures was because, for the first time, Pinduoduo was experiencing an unprecedented increase in marketing expenses without a corresponding increase in new users.   But Pinduoduo clearly announced that its marketing expenses had been steadily and exponentially increasing since 2016, and cautioned investors that if it "continue[s] to incur substantial marketing expenses without being able to achieve the anticipated buyer and merchant growth, [the Company's] operating results may be materially and adversely affected."   Joint App'x at 175.   Moreover, these statements were supported by the financial data provided to investors.   As the district court correctly found, an investor could have looked at the data provided and "understood that over the preceding year, the Company's marketing expenses had grown by a multiplier of sixteen." Special App'x at 19.   Similarly, an investor could have calculated per-user acquisition costs (by dividing marketing expenses in a reporting period by the number of new users in that period) to show that such costs had already quadrupled in the first quarter of 2018, which reduces the import

10

of the information in the second quarter of 2018 that the user acquisition costs had then doubled. Thus, the Offering Documents clearly disclosed substantial increases in marketing expenses, and further cautioned investors that such increases could continue into the future and materially and adversely affect the Company's operating results.

In sum, given the disclosures regarding the significant increase in marketing costs in prior reporting periods, the doubling of user acquisition costs in the second quarter of 2018 would not have significantly altered the "total mix" of information.[5]  Accordingly, the district court properly dismissed Plaintiffs' claims related to the nondisclosure of the Q2 2018 data.[6]

---

[5]  Plaintiffs also assert that Pinduoduo had a duty to disclose the interim financial information under Item 303 of Regulation S-K, which requires disclosure of "any known trends . . . or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any *material* way."  17 C.F.R. § 229.303 (emphasis added).  Because we conclude that the disclosure of the Q2 2018 data is not material in the context of Pinduoduo's offering documents, Item 303 does not provide an actionable basis for Plaintiffs' claims.  *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (holding an omission "actionable only if it satisfies [ ] materiality requirements" and "all of the other requirements to sustain an action" under the relevant law).

[6]  Given that we have concluded that the district court properly dismissed all of the claims because none of the statements at issue were materially misleading, we need not address the district court's holding that Plaintiffs failed to sufficiently allege scienter.  Similarly, we need not address Defendants-Appellees' argument that the claims failed to plausibly allege loss causation.

## V.    **Additional Claims**

Because we conclude the district court properly dismissed the claims under Section 11 of the Securities Act and Section 10(b) of the Exchange Act, and the Complaint thus failed to plausibly allege primary violations of the securities laws, the district court also correctly dismissed the claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act.  *See, e.g.*, *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 78 (2d Cir. 2001); *Rombach*, 355 F.3d at 177–78.

*          *          *

We have considered all of Plaintiffs' remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court