

Javier Bleichmar
Partner
212 789 1341 direct
212 205 3961 fax
jbleichmar@bfalaw.com

September 27, 2021

**VIA ECF**
The Honorable Alison J. Nathan
United States District Court for the Southern District of New York
40 Foley Square, Room 2102
New York, New York 10007

*Re*:    *In re Citigroup Securities Litigation*, No. 1:20-cv-09132-AJN (S.D.N.Y.)

Dear Judge Nathan:

On behalf of the Plaintiffs and the putative class, we write in response to Defendants' September 20, 2021 letter raising two Second Circuit decisions ("Defs' Letter").  (ECF No. 129.) As an initial matter, the letter is procedurally improper because it presents argument and amounts to a sur-reply that is not permitted under the rules.[1] Apparently unsatisfied with their agreed-upon 52-pages of briefing, Defendants now seek to tack on three more pages of unnecessary repetition.

Indeed, Defendants' Letter is a rehash of the same points made in their briefs, and the two decisions they use as an excuse to submit further argument add nothing new and rather confirm that the authoritative case here is *Meyer v. Jinkosolar*, 761 F.3d 245 (2d Cir. 2014) – already exhaustively discussed by both parties. (*See* ECF Nos. 123, 127.)  More specifically, Defendants' submissions already had erroneously argued that Citigroup's false statements are too general and vague and not as detailed and specific as those in *Jinkosolar*. (*See* ECF Nos. 116 at 20, 123 at 11.)   They now submit *Plumbers & Steamfitters v. Danske Bank A/S*, -- F.4th --, 2021 WL 3744894 (2d Cir. Aug. 25, 2021), to repeat the same flawed argument. (Defs' Letter at 1-2.)  But *Danske* relies on *Jinkosolar* and falls squarely within its analytical paradigm when it says that

---

[1] Rule 3.B of this Court's Individual Practices in Civil Cases states that "[s]ur-reply memoranda will not be accepted without prior permission of the Court."  Defendants did not obtain prior permission of the Court.

Honorable Alison J. Nathan
September 27, 2021
Page 2

"[a]lthough Danske averred that it took steps to comply with AML protocols and vaguely recited some AML buzzwords, it claimed no particular acts of compliance." (ECF No. 129-1 at 28.)  In contrast, Defendants' false statements here were far more detailed than the generic statements in *Danske*.  Like the statements in *Jinkosolar* (and perhaps even more so), they spoke specifically of "particular acts of compliance," citing the specific regulations with which Defendants' purportedly complied – "Appendix D" and "Regulation YY."  For instance:[2]

- The Risk Governance Framework has been developed in alignment with the expectations of the Office of the Comptroller of the Currency (OCC) Heightened Standards [Appendix D]. It is also aligned with the relevant components…of the Federal Reserve's Enhanced Prudential Standards for Bank Holding Companies and Foreign Bank Organizations [Regulation YY]. (ECF No. 72 ¶¶ 335, 364, 381.)

And where the *Danske* defendants said generically that they "take[] steps necessary to comply," (ECF No. 129-1 at 27), Defendants here falsely detailed exactly the steps they supposedly took:

- To anticipate, mitigate and control operational risk, Citi has established policies and a global framework for assessing, monitoring and communicating operations risks and the overall operating effectiveness of the internal control environment across Citigroup. (*Id.* ¶¶ 345, 374, 391, 423.)

- Citigroup's Board of Directors oversees Citi's risk taking activities. To do so, directors review risk assessments and reports prepared by Risk, Compliance…and Internal Audit and exercise independent judgment to question, challenge, and when necessary, oppose recommendations and decisions made by senior management that could cause Citi's risk profile to exceed its risk appetite or jeopardize the safety and soundness of the firm. (*Id.* ¶¶ 321, 343, 372, 389, 421.)[3]

Citigroup's statements were not only highly specific, they were also repeated dozens of times throughout the Class Period, while the *Danske* statements were limited to two isolated averments in Corporate Responsibility Reports issued in 2013 and 2014, nearly five years before

---

[2] Defendants also purport to compare Citigroup's false and misleading statements to those in *Danske*, but fall short because they limit their comparison to only one of many false statements.  (Defs' Letter, at 2.)

[3] *See also, e.g.,* ¶¶ 315, 337, 366, 370, 383.

Honorable Alison J. Nathan
September 27, 2021
Page 3

the end of the class period.  (ECF No. 129-1 at 26.)  Where, as here, "statements are made repeatedly in an effort to reassure the investing public about matters particularly important to the company and investors, those statements may become material to investors." *In re BHP Billiton Ltd. Sec. Litig.*, 276 F.Supp.3d 65, 79 (S.D.N.Y. 2017) (internal quotation omitted).

Likewise inapposite is the non-precedential summary order in *Asay v. Pinduoduo Inc.*, -- Fed. Appx --, 2021 WL 3871269 (2d Cir. Aug. 31, 2021).  For one thing, *Pinduoduo* involved a single, one-time disclosure in a registration statement that said that the issuer had "strict" anti-counterfeiting measures. (ECF No. 129-2 at 5).  That statement, which the *Pinduoduo* court said was not detailed enough under *Jinkosolar*, (ECF No. 129-2, at 6-7), is a far cry from the dozens of lengthy and detailed statements at issue here.  (*See, e.g.,* ECF No. 72 ¶¶ 310-432.)

Moreover, *Pinduoduo* concluded that the "materialized risks were disclosed" by the defendants and that "a reasonable investor, based on the specificity of the contemporaneous [risk warnings], would have understood" that defendants' anti-counterfeiting measures were not preventing legal violations.  (ECF No. 129-2 at 7.)  The same cannot be said about the Citigroup risk warnings identified in Defendants' Letter.  Not only were those risk warnings generic and untethered to Defendants' false and misleading statements, they also did not warn of materialized risks.  Quite the opposite, Citigroup warned about potential failures that it ***already knew had occurred***.  (*See, e.g.,* ECF No. 123, at 14-18.)  And "to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *10 (S.D.N.Y. Mar. 28, 2018).

Respectfully submitted,

*/s/ Javier Bleichmar*

Javier Bleichmar

cc: All counsel of record (by ECF)