# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
      :
      :
      :
IN RE CITIGROUP SECURITIES     :    Case No. 1:20-cv-09132-LAP
LITIGATION     :
      :
      :
      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Sharon L. Nelles (*nelless@sullcrom.com*)
David M.J. Rein (*reind@sullcrom.com*)
Leonid Traps (*trapsl@sullcrom.com*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

*Attorneys for Defendants Citigroup Inc., Michael L. Corbat, John C. Gerspach, and Mark A. L. Mason*

July 7, 2023

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT............................................................................................................................2

I.    PLAINTIFFS' PROPOSED AMENDMENT IS FUTILE BECAUSE IT DOES
      NOT REMEDY THE PLEADING FAILURES IDENTIFIED IN THE COURT'S
      DISMISSAL DECISION..................................................................................................3

      A.    Plaintiffs Still Fail To Identify a Materially False Statement or Omission .............3

            1.    Statements in Annual Reports Regarding Risk Governance Framework....4

            2.    Statement Regarding Investments in Mexico ..............................................6

            3.    Statement Regarding General "Transformation".........................................7

            4.    "New" Statements Regarding "Project Rainbow".......................................8

            5.    Purported Omissions in Citigroup's Annual Reports ...............................12

      B.    Plaintiffs Still Fail Adequately To Allege a Strong Inference of Scienter ............13

            1.    Plaintiffs Do Not Even Try To Plead a Motive to Defraud. ......................13

            2.    Plaintiffs Still Do Not Adequately Plead Any Defendant's Conscious
                  Misconduct or Recklessness. ...................................................................14

            3.    Plaintiffs Still Do Not Adequately Plead Collective Corporate Scienter. .18

II.   PLAINTIFFS' MOTION ALSO SHOULD BE DENIED BECAUSE OF
      PLAINTIFFS' UNEXPLAINED AND UNDUE DELAY IN SEEKING TO
      AMEND ........................................................................................................................19

CONCLUSION .......................................................................................................................20

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re Adient plc Securities Litigation*,
    2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)..............................................................................5

*In re American Express Co. Securities Litigation*,
    2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008).........................................................................16

*Arkansas Public Employees Retirement Sys.* v. *Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) ..............................................................................................14, 18

*In re AstraZeneca Securities Litigation*,
    2022 WL 4133258 (S.D.N.Y. Sept. 12, 2022).........................................................................20

*Baez* v. *Delta Airlines, Inc.*,
    2013 WL 5272935 (S.D.N.Y. Sept. 18, 2013).........................................................................19

*In re Bank of America AIG Disclosure Securities Litigation,*
    980 F. Supp. 2d 564 (S.D.N.Y. 2013).....................................................................................13

*City of Sterling Heights Police & Fire Retirement Sys.* v. *Reckitt Benckiser Grp.*,
    587 F. Supp. 3d 56 (S.D.N.Y. 2022).........................................................................................9

*Diehl* v. *Omega Protein Corp.*,
    339 F. Supp. 3d 153 (S.D.N.Y. 2018).....................................................................................10

*In re Doral Fin. Corp. Securities Litigation*,
    563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008).............................................................................16

*In re Eaton Vance Mut. Funds Fee Litigation*,
    403 F. Supp. 2d 310 (S.D.N.Y. 2005).....................................................................................20

*ECA* v. *JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009).....................................................................................................11

*Glaser* v. *The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011).....................................................................................11

*Gross* v. *AT&T Inc.*,
    2021 WL 9803956 (S.D.N.Y. Sept. 27, 2021)...........................................................................6

*Hawaii Structural Ironworkers Pension Tr. Fund* v. *AMC Entertainment Holdings*,
    422 F. Supp. 3d 821 (S.D.N.Y. 2019).......................................................................................9

**TABLE OF AUTHORITIES**
**(cont.)**

*Jackson* v. *Abernathy*,
　　960 F.3d 94 (2d Cir. 2020)......................................................................................14, 15, 19

*In re JP Morgan Chase Securities Litigation*,
　　2007 WL 950132 (S.D.N.Y. Mar. 29, 2007),...........................................................................4

*Lehmann* v. *Ohr Pharmaceutical Inc.*,
　　2020 WL 6729116 (S.D.N.Y. Nov. 16, 2020)...................................................................2, 19

*Lesesne* v. *Brimecome*,
　　918 F. Supp. 2d 221 (S.D.N.Y. 2013)....................................................................................20

*Lightfoot* v. *Union Carbide Corp.*,
　　1997 WL 752357 (S.D.N.Y. Dec. 2, 1997) .............................................................................3

*Loc. No. 38* v. *American Express Co.*,
　　724 F. Supp. 2d 447 (S.D.N.Y. 2010)....................................................................................15

*Lucente* v. *IBM Corp.*,
　　310 F.3d 243 (2d Cir. 2002)......................................................................................................2

*In re Lululemon Securities Litigation*,
　　14 F. Supp. 3d 553 (S.D.N.Y. 2014)........................................................................................5

*Menaldi* v. *Och-Ziff Cap. Mgmt. Grp.*,
　　164 F. Supp. 3d 568 (S.D.N.Y. 2016)....................................................................................10

*United States ex rel. Miller* v. *Citigroup Inc.*,
　　2022 WL 2237619 (S.D.N.Y. June 2, 2022) .........................................................................17

*Nandkumar* v. *AstraZeneca PLC*,
　　2023 WL 3477164 (2d Cir. May 16, 2023) ...........................................................................18

*Nightingale Grp., LLC* v. *CW Capital Mgmt.*,
　　2012 WL 2674539 (S.D.N.Y. July 5, 2012) ...............................................................3, 19, 20

*Omnicare, Inc.* v. *Laborers Dist. Council Construction Indus. Pension Fund*,
　　575 U.S. 175 (2015)................................................................................................................16

*Ritchie Capital Mangement, L.L.C.* v. *General Electric Capital Corp.*,
　　821 F.3d 349 (2d Cir. 2016)....................................................................................................20

*Sgalambo* v. *McKenzie*,
　　739 F. Supp. 2d 453 (S.D.N.Y. 2010)......................................................................................4

**TABLE OF AUTHORITIES**
**(cont.)**

*Shemian* v. *Research In Motion Ltd.*,
  2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ........................................................................12

*Shields* v. *Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)......................................................................................................14

*State Trading Corp. of India, Ltd.* v. *Assuranceforeningen Skuld*,
  921 F.2d 409 (2d Cir. 1990)......................................................................................................19

*Steamfitters Local 449 Pension Plan* v. *AT&T Inc.*,
  2022 WL 17587853 (2d Cir. Dec. 13, 2022) .............................................................................5

*Tesla Wall Sys., LLC* v. *Related Cos., L.P.*,
  2018 WL 4360777 (S.D.N.Y. Aug. 15, 2018)...........................................................................19

*In re UBS AG Securities Litigation*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)............................................................................6

*In re Wachovia Equity Securities Litigation*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011).......................................................................................16

*In re Weight Watchers Int'l Inc. Securities Litigation*,
  504 F. Supp. 3d 224 (S.D.N.Y. 2020).......................................................................................14

*Woolgar* v. *Kingstone Cos. Inc.*,
  477 F. Supp. 3d 193 (S.D.N.Y. 2020)....................................................................................5, 6

**Statute**

15 U.S.C. § 78u-5(c) ........................................................................................................................12

**Regulations**

12 C.F.R. § 4.32 ..............................................................................................................................13

12 C.F.R. § 4.36 ..............................................................................................................................13

12 C.F.R. § 4.37 ..............................................................................................................................13

12 C.F.R. § 261.2(b)(1).....................................................................................................................13

12 C.F.R. § 229.303 .........................................................................................................................13

**PRELIMINARY STATEMENT**

Plaintiffs' motion to file a proposed Second Amended Complaint ("PSAC") should be denied as futile because the amendments do not cure the multiple legal deficiencies identified by the Court when it dismissed Plaintiffs' Consolidated Amended Complaint ("CAC"). (ECF No. 139 ("Op.").)  Nor do Plaintiffs provide any justification for their delay in proposing amendments to the complaint that could have been made long before the Court's decision.

Indeed, in their Motion for Leave to Amend, Plaintiffs do not engage with—or even quote or mention—the Court's well-reasoned 64-page Opinion dismissing the CAC.  In the Opinion, the Court rejected Plaintiffs' securities fraud claims based on "approximately sixty statements" regarding "Citigroup's risk management" (*id.* at 8), holding that Plaintiffs "fail[ed] to identify any actionable misstatements or omissions" because all of the challenged statements were either "immaterial as a matter of law" or "not false when spoken."  (*Id.* at 31-32.)  As an independent ground for dismissal, the Court held that Plaintiffs "fail[ed] to state with particularity facts giving rise to a strong inference of scienter."  (*Id.* at 61-62.)  Although the Court permitted Plaintiffs to "move for leave to amend to explain further how any amendment would cure the defects identified in the Opinion," it expressed "serious doubts that they can add any allegations that would shore up their" CAC.  (*Id.* at 63-64.)

The amendments proposed in the PSAC do not address the Court's determinations or alleviate the Court's doubts.  The Motion should be denied on at least the following two grounds:

*First*, the PSAC suffers from the same defects as did the CAC.  Of the original challenged statements, Plaintiffs have abandoned the majority, continuing to challenge only five. Those five statements were addressed and held to be inactionable as a matter of law because they were too general to be material to investors (Op. at 36), and Plaintiffs offer no basis to reconsider that ruling.  Plaintiffs also now challenge for the first time three additional statements and one

additional sentence from a previously challenged statement, but they are inactionable because they too are too general to be material and because they are not adequately alleged to be false. Nor is Plaintiffs' attempt to plead a material misrepresentation or scienter bolstered by allegations about 12 unnamed former employees ("FEs"), out of a workforce of approximately 220,000. These allegations are little more than conclusory adjectives—including as to periods when the FEs were not at the Company—and lack factual substance to support Plaintiffs' theories. If anything, the few factual nuggets in the FE allegations indicate a company that was working hard to improve risk management.

*Second*, Plaintiffs' Motion lacks any explanation for waiting to assert the FE allegations or to challenge public statements made in 2017 and 2018. Plaintiffs cannot hold back allegations to obtain an advisory opinion, especially given that they were expressly put "on notice" by the then-governing Court rules that their choice to forgo amendment in response to Defendants' motion to dismiss "may well constitute a waiver of their right to use the amendment process to cure any defects" later. (*See infra* at 20.) Plaintiffs' unexplained and undue delay is an independent reason for denying leave to amend.

## ARGUMENT

"Motions to amend are ultimately within the discretion of the district court," which "may deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Lehmann* v. *Ohr Pharm. Inc.*, 2020 WL 6729116, at *2 (S.D.N.Y. Nov. 16, 2020) (Preska, J.). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss." *Lucente* v. *IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Amendment should thus be denied if Plaintiffs still cannot meet the heightened "pleading requirements" of "Rule 9(b) and the PSLRA." (Op. at 25-26.) Separately, courts "may deny a motion to amend when the movant knew or should have known of the facts upon which the

-2-

amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *Nightingale Grp., LLC* v. *CW Cap. Mgmt.*, 2012 WL 2674539, at *11 (S.D.N.Y. July 5, 2012). Plaintiffs' Motion should be denied on grounds of both futility and delay.

## I. PLAINTIFFS' PROPOSED AMENDMENT IS FUTILE BECAUSE IT DOES NOT REMEDY THE PLEADING FAILURES IDENTIFIED IN THE COURT'S DISMISSAL DECISION.

### A. Plaintiffs Still Fail To Identify a Materially False Statement or Omission.

Plaintiffs now challenge eight statements made between February 2017 and October 2020, but barely engage with those statements in the Motion. (*See* Mot. at 16-17.) Instead, they abstract them into a blanket assurance that Citigroup "maintained a cohesive and effective system of managing its risk" and a "veneer of compliance" (*id.* at 3, 17), despite this Court's rejection of Plaintiffs' previous attempt to "construe[]" the same and similar statements "as an 'assurance of actual compliance'" (Op. at 34).

The eight challenged statements are reproduced in Exhibit 1 for the Court's convenience, and each is addressed below. Four are the same as in the prior complaint and were already held inactionable as a matter of law and not adequately alleged to be false. Nothing has changed, and Plaintiffs do not attempt to explain why the Court should reconsider its decision.[1] Plaintiffs expand a fifth statement to include an additional sentence, and for the first time challenge three new statements that all reference "Project Rainbow," which they describe as an "initiative" "to overhaul Citi's infrastructure and technology." (PSAC ¶ 1.) These newly challenged statements are also not actionable because they are immaterial as a matter of law, do not even

---

[1] Moreover, "[a] motion to amend is not a vehicle by which to seek reconsideration of a Court's holding." *Lightfoot* v. *Union Carbide Corp.*, 1997 WL 752357, at *3 n.2 (S.D.N.Y. Dec. 2, 1997).

concern risk management (the subject matter of the supposed corrective disclosures), and are not adequately alleged to be false.[2]

### 1.    Statements in Annual Reports Regarding Risk Governance Framework

As in the dismissed complaint, Plaintiffs lead with a challenge to the following statement in Citigroup's 2016, 2017, and 2018 annual reports:

> Citi's firm-wide Risk Governance Framework consists of the policies, procedures, and processes through which Citi identifies, measures, manages, monitors, reports, and controls risks across the firm . . . . The Risk Governance Framework has been developed in alignment with the expectations of the Office of the Comptroller of the Currency (OCC) Heightened Standards.  It is also aligned with the relevant components . . . of the Federal Reserve's Enhanced Prudential Standards for Bank Holding Companies and Foreign Banking Organizations.

(PSAC ¶¶ 284, 288, 296; ECF Nos. 117-7 at 64, 117-12 at 66, 117-13 at 59.)  This statement is inactionable.  *First*, this Court has already held that this same statement ("Alleged Misstatement 13") is immaterial as a matter of law because "even references to 'alignment' with specifically identified standards are not guarantees of conformity and are too general and aspirational to be actionable."  (Op. at 12-13, 36.)  None of Plaintiffs' additional FE or other allegations are relevant to the conclusion that "[n]o reasonable investor would rely" on the language of this statement.  (*Id.* at 34); *see In re JP Morgan Chase Sec. Litig.*, 2007 WL 950132, at *12 (S.D.N.Y. Mar. 29, 2007) (court's holding regarding immateriality "is not altered by plaintiffs' new allegations" because the statement "could not have been relied upon by reasonable investors as a specific representation"), *aff'd*, 553 F.3d 187 (2d Cir. 2009).[3]  *Second*, the Court's conclusion that the challenged statement

---

[2] None of the statements challenged in the PSAC was made by defendant Mark Mason, and Plaintiffs nowhere explain the basis for a claim against him.  *See Sgalambo* v. *McKenzie*, 739 F. Supp. 2d 453, 485 (S.D.N.Y. 2010) (no "primary liability" where "Complaint fails to attribute any" misstatement to individuals).

[3] Plaintiffs' Motion purports to cite some "newly-pled facts" regarding materiality (Mot. at 9-12),

is immaterial was "buttressed by the repeated and specific cautions that Citigroup provided in its Annual Reports" regarding ongoing regulatory scrutiny and the possibility of adverse regulatory action. (Op. at 38-39.) Plaintiffs' new allegations do not impact this determination.

*Third*, Plaintiffs, again, fail to plead that the statement is false. Plaintiffs rely on allegations attributed to the FEs, but do "not establish how any of the [FEs'] allegations are inconsistent with the challenged statements." *Woolgar* v. *Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 221 (S.D.N.Y. 2020). The FE allegations do not question the existence of a "Risk Governance Framework"; nor do they address whether it was "developed in alignment with" particular OCC standards or "aligned with the relevant components" of particular Federal Reserve standards as of the relevant dates. *See Steamfitters Local 449 Pension Plan* v. *AT&T Inc.*, 2022 WL 17587853, at *3 (2d Cir. Dec. 13, 2022) (affirming denial of leave to amend because FEs' "vague allegations" were not linked to "publicly stated subscriber numbers" and were "insufficient to allege falsity").[4]

Plaintiffs focus on FE-2 and FE-3 (Mot. at 16), but those allegations illustrate the problem. FE-2 actually concedes that "there were policies, procedures, and processes to try to identify, measure, manage, monitor, report and control risks." (PSAC ¶ 187.) And although FE-2

---

but these "facts"—concerning the 2008 financial crisis, the significance of regulatory compliance, and cherry-picked analyst reactions—are years old and appear in the prior complaint. (*Compare* CAC ¶¶ 60, 121, 133 *with* PSAC ¶¶ 9, 50, 88.) These allegations, at most, indicate that risk management *as a subject matter* is important and have no bearing on the Court's conclusion regarding the materiality of the particular statements which Plaintiffs challenge. (Op. at 36.)

[4] *See also In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *13 (S.D.N.Y. Apr. 2, 2020) ("[E]ven assuming that all of the [FE] statements are true, the fact that [business] was unprofitable or experiencing certain issues does not show how or why Defendants' statements were false at the time they were made."), *aff'd*, 2022 WL 2824260 (2d Cir. 2022); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580 (S.D.N.Y. 2014) (FE allegations regarding customer complaints and quality issues "do not render the statements" regarding product quality, "considered in context, false or misleading"); *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014) ("plaintiffs' use of confidential witnesses" to "muster a litany of criticisms" "does not rectify the fact that they do not adequately plead falsity").

and FE-3 purportedly believed that these policies were "ineffective" and "not in compliance with regulatory standards" (*id.* ¶¶ 187-88), such conclusory opinions are entitled to no weight.  *See Gross* v. *AT&T Inc.*, 2021 WL 9803956, at *6 n.14 (S.D.N.Y. Sept. 27, 2021) (denying leave to amend and rejecting new "allegations attributed to [FEs]" that "are rife with conclusory allegations"), *aff'd*, 2022 WL 17587853 (2d Cir. Dec. 13, 2022); *Woolgar*, 477 F. Supp. 3d at 222 (dismissing complaint because plaintiff failed to "provide particularized allegations from which it could be inferred" that FE statements were "anything more than the [FEs]' own individual, subjective opinions").[5]  These and the other FEs fail to explain what the regulatory standards were, let alone in what specific ways, and when, the Risk Governance Framework was misaligned with or developed to be misaligned with those standards.  *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *16 (S.D.N.Y. Sept. 28, 2012) (plaintiffs "fail to demonstrate that" FE allegations "highlighted a serious flaw" "rather than simply reflecting a different business judgment"), *aff'd*, 752 F.3d 173 (2d Cir. 2014).

> 2.    *Statement Regarding Investments in Mexico*

Plaintiffs once again challenge the underlined portions of the following June 1, 2017 statement by Mr. Corbat, while omitting the non-underlined portions:

> From an infrastructure perspective, we've got, really if not all, certainly most of the systems or base systems that we need.  You talked about Mexico.  Mexico really, we're operating there in systems that I would describe as approaching end of life, no sense of dire urgency today.  But again, we've spent all the energy and effort in terms of creating these systems that have the ability to come back and communicate centrally. Mexico is not there yet . . . .

---

[5] FE-2 and FE-3 also purport to speak for the entire class period, through October 12, 2020, but claim to have left Citigroup in July and September 2018, less than halfway through.  (PSAC ¶¶ 187-88); *see AT&T*, 2021 WL 9803956, at *6 n.14 (discounting FE's allegation regarding a purportedly "common practice" when FE left early in the class period).

(PSAC ¶ 286; ECF No. 117-9 at 3.)   The Court held that this same statement ("Alleged Misstatement 15") was not actionable because it was "made in response to a question about systems, in 2017, related to . . . investments in Mexico" and "was not a representation concerning infrastructure related to risk management more broadly."  (Op. at 13-14, 46.)  The statement did not have "anything to do with risk management systems."  (*Id.* at 46.)  Plaintiffs do not mention this holding, much less explain why the Court should reconsider it.  Instead, Plaintiffs emphasize conclusory FE assertions about "separate, siloed systems" (Mot. at 16), but, again, these allegations are entirely untethered from a statement about specific investments, in 2017, in Mexico.

### 3.    Statement Regarding General "Transformation"

Plaintiffs next renew their challenge to Mr. Corbat's statement in a September 10, 2020 press release that "[w]e completed our transformation from the financial crisis and emerged a simpler, safer and stronger institution."  (PSAC ¶ 297; ECF No. 117-23 at 3.)  The Court rejected Plaintiffs' challenge to this statement ("Alleged Misstatement 34" (Op. at 20)) because it suffered from two fundamental defects, neither of which Plaintiffs address in the PSAC.  *First*, the Court held that this statement, and similar ones, was immaterial because "[n]o reasonable investor would rely on such vague statements, lacking any meaningful detail . . . as an assurance of compliance." (Op. at 32-39.)  Plaintiffs do not engage with this holding at all.

*Second*, the Court held that this statement was not adequately alleged to be false. (Op. at 45.)  Plaintiffs again point to the FE allegations, but those conclusory allegations in no way refute that Citigroup was "simpler, safer and stronger" than it was during the 2008 financial crisis—an extraordinary time when Plaintiffs claim Citigroup was "nearly doomed" and required "the largest taxpayer bailout in history."  (PSAC ¶ 9.)  Plaintiffs also ignore the broader context of Mr. Corbat's statement (ECF No. 117-23 at 3), which spoke of "transformation" on a diffuse set of metrics not at issue in this litigation, including "investments in products," creating a "branch-

lite footprint," taking "leadership roles in the fight against climate change and for gender equity," and "performance through COVID-19." In striking contrast, the references in the press release to risk management and compliance are phrased in aspirational and forward-looking terms and are not even challenged by Plaintiffs. (*See, e.g.*, *id.* at 4 ("We will invest in our infrastructure, risk management and controls to ensure that we operate in a safe and sound manner . . . .").)[6]

    4.    *"New" Statements Regarding "Project Rainbow"*

Seeking a new angle, Plaintiffs challenge an additional sentence from the same June 2017 statement discussed above, and three "new" statements from May and October 2018. All four relate to "Project Rainbow," which Plaintiffs describe as "an initiative following the Financial Crisis to overhaul Citi's infrastructure and technology." (PSAC ¶ 1.) Plaintiffs do not explain why they did not previously challenge these statements, which have been public for more than half a decade. Regardless, these statements are inactionable because none is material, concerns risk management or regulatory compliance, or is otherwise adequately alleged to be false.

Additional Sentence from June 1, 2017 Statement:  In addition to the previously challenged statement regarding investments in Mexico, Plaintiffs now challenge the immediately subsequent discussion by Mr. Corbat, underlined below:

> Mexico is not there yet, so the billion dollars that we announced over four years last fall, part of it dedicated towards this technology, the technology advancement, part of it focused towards the ATMs, the smart ATMs that we talked about, part of it really, probably less investment, more what I would describe as CapEx around branch refurbishment, et cetera, and a push towards digital from that. <u>So, as we look, again, I think from a regulatory perspective, major investments from a Rainbow and some of</u>

---

[6] Plaintiffs' juxtaposition of the statement with a purported admission in April 2021 by then-Board Chair John Dugan that "Citi had not even begun, much less completed, its transformation" (Mot. at 17) is also misleading. Mr. Corbat was referring to an earlier "transformation" on a variety of issues separate and apart from risk management systems, whereas Mr. Dugan was referring specifically to Citigroup's "transformation oversight committee," which was formed following the 2020 Consent Orders to manage implementation. (Nelles Opp. Decl. Ex. 2 at 8.)

> the big projects we talked about in the past and things that I think they're paying great dividends, those investments made.

(PSAC ¶ 286; ECF No. 117-9 at 3.)  This proposed additional statement is also inactionable.

*First*, general statements about projects paying great dividends "are so vague and ill-suited to concrete measurement" that they cannot support a securities fraud claim.  *Haw. Structural Ironworkers Pension Tr. Fund* v. *AMC Ent. Holdings*, 422 F. Supp. 3d 821, 846 (S.D.N.Y. 2019) (statements regarding "great progress" and "quick" and "smooth" corporate integration were immaterial); *see City of Sterling Heights Police & Fire Ret. Sys.* v. *Reckitt Benckiser Grp.*, 587 F. Supp. 3d 56, 92 (S.D.N.Y. 2022) ("Broad statements about value creation and seizing opportunities . . . are non-actionable . . . .").  *Second*, the underlined statement is a continuation of Mr. Corbat's response to a question about investments in Mexico in 2017, and thus is inactionable for the same reason that the Court previously recognized:  Plaintiffs do not purport to allege anything regarding Mexican investments in 2017 specifically.  Further, the earnings call transcript confirms that Mr. Corbat was discussing initiatives separate from risk management or regulatory compliance.  (ECF No. 117-9 at 3.)  The sentence itself refers to unspecified "investments" and "big projects," of which "Rainbow" was only one.  (*Id.*)  Immediately before, Mr. Corbat was discussing new ATM systems in Mexico; immediately after, he discussed investments to "increase[] customer client satisfaction."  (*Id.* at 3-4.)  There is no representation, much less assurance, regarding the status of risk management systems or regulatory compliance.

*Finally*, even if Mr. Corbat's statement had been about relevant topics, Plaintiffs fail adequately to plead that his statement of opinion ("I think") was false.  This Court has described the high standard for opinion liability (Op. at 27-29), and Plaintiffs' conclusory assertion that Project Rainbow was "scrapped" "in 2017" (Mot. at 17) falls far short of pleading that Mr. Corbat "did not hold the belief []he professed" or "omitted facts" that made the statement otherwise

materially misleading, as of June 1, 2017 (Op. at 28).

May 30, 2018 Statement:  Plaintiffs challenge for the first time the following statement by Mr. Corbat:

> If you remember, some of the investments we made in Rainbow that gave us the ability to have a holistic view.  So, if you go back not that far in time, and as you covered our company, it was Citi Cards, it was CitiMortgage, it was vertical or silos, as we call them, of product-driven interactions.  Technology today here in the U.S. gives us the ability to have a holistic view.  So, you're a cards client, you're a retail bank client, you're wealth, you're Citigold, you're Citi Blue, we have the ability to see you and think of you and present to you from a holistic view.

(PSAC ¶ 290.)  This statement, too, cannot support a claim.  *First*, statements regarding taking a holistic view are, again, "too general to cause a reasonable investor to rely on them and are, therefore, not actionable under the securities laws."  *Diehl* v. *Omega Protein Corp.*, 339 F. Supp. 3d 153, 162-63 (S.D.N.Y. 2018) ("Defendants' statements concerning Omega's comprehensive compliance program are not actionable."); *Menaldi* v. *Och-Ziff Cap. Mgmt. Grp.*, 164 F. Supp. 3d 568, 580 (S.D.N.Y. 2016) (statements about "competitive strength" in "transparency" and managing "reputational risks" not actionable).  *Second*, the statement is not even about relevant topics.  Mr. Corbat was responding to a question about customer retail strategy and explained that he wanted to move away from "product-driven interactions" and develop a more "holistic view" so that customers could manage their accounts in one place.  (Nelles Opp. Decl. Ex. 3 at 6.)  Mr. Corbat did not discuss risk management or compliance issues, much less assure investors on these topics.

*Third*, Plaintiffs fail to plead that, as of May 30, 2018, "some of the investments" Citigroup had made did not give it the "ability to have a holistic view."  (PSAC ¶ 290.)  The FEs' broad characterization that Citigroup "had scrapped Project Rainbow as a 'total disaster' in 2017 and lacked the infrastructure and ability to view customers 'holistically'" (Mot. at 17) does not

-10-

speak to the specific products Mr. Corbat referenced, and is, in any event, conclusory.  And Plaintiffs' assertion that five FEs make specific allegations concerning the failure of Project Rainbow (Mot. at 17) is inaccurate because, of these five, only FE-1 mentions "Project Rainbow," and FE-1's assertion that Project Rainbow was supposed to "fix everything" (PSAC ¶ 186(d)) is a broad-brush opinion.  *See Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 590 (S.D.N.Y. 2011) ("[A]s is obvious, confidential sources cannot be used to 'merely parrot [] . . . conclusory allegations contained in the complaint.'" (alteration in original)).

October 12, 2018 Statements:  Plaintiffs challenge two statements from Citigroup's third quarter 2018 earnings call:  Mr. Corbat's statement that, "I think the work that was done in terms of Rainbow and other technology implementations now gives us the ability to view the client holistically," and Mr. Gerspach's statement that, "[r]ight now, we're tracking everything globally. So we'll see how we build this into something else."  (PSAC ¶¶ 291, 293.)

*First*, language about "tracking everything" and the like is again "too general and aspirational to be actionable."  (Op. at 36; *supra* at 4, 7-8); *see also ECA* v. *JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("generalizations regarding [bank's] business practices" are "precisely the type of puffery that this and other circuits have consistently held to be inactionable"). *Second*, these statements concern irrelevant topics.  Mr. Corbat was answering a question about why Citigroup "installed a new Head of U.S. Banking" and how that person's performance would be measured; his response was about seeking to cater to "the customer holistically" to support "continued growth and continued push around deposit and deposit capture, not just within our traditional physical footprint, but as we talk about on a nationwide basis." (Nelles Opp. Decl. Ex. 4 at 13-14.)  Though he referenced "Rainbow," Mr. Corbat did so only in the context of multiple, unspecified "other technology implementations." (*Id.* at 13.)  Mr. Gerspach was then asked for

"more information on any incremental success you're having" in "getting additional disclosure as it relates to North American Consumer" "now that you have these capabilities"— to which Mr. Gerspach said, "we've taken a first stab of that. If you take a look at slide 24 in the appendix, maybe in the future, we can do a little bit more of this on a regional basis. Right now, we're tracking everything globally. So we'll see how we build this into something else." (*Id*. at 14.) Slide 24 of the referenced appendix, in turn, discusses four "Consumer Drivers": "Digital / Mobile Users," "Agent Contact Rate," "E-Statement Penetration," and "E-Payment Penetration." (Nelles Opp. Decl. Ex. 5 at 24.) None of this relates to the purported corrective disclosures in the PSAC.

*Third*, here too, even if the statements were relevant, they are not adequately alleged to be false. Mr. Corbat's statement ("I think") is an opinion, and Mr. Gerspach's statement that "we'll see how we build this into something else" is forward-looking and subject to a statutory safe harbor, including because it was accompanied by cautionary language, 15 U.S.C. § 78u-5(c); (*see* Nelles Opp. Decl. Ex. 4 at 2 (warning that the "presentation may contain forward-looking statements" and that "[a]ctual results in capital and other financial condition may differ materially from these statements due to a variety of factors, including the precautionary statements referenced . . . in our SEC filing")); *Shemian* v. *Research In Motion Ltd.*, 2013 WL 1285779, at *6, *10 (S.D.N.Y. Mar. 29, 2013) (similar language during earnings call sufficient to trigger PSLRA's safe-harbor provision). Nothing in the PSAC pleads that these general statements about a "holistic view" or "tracking" were materially false as of October 2018.

5.    *Purported Omissions in Citigroup's Annual Reports*

Finally, Plaintiffs rely on two kinds of purported omissions in Citigroup's annual reports, but both theories were previously rejected by the Court and should be again. *First*, Plaintiffs once more assert that Citigroup's *warnings* of "risk associated with regulatory oversight" in its annual reports were themselves actionable because Citigroup was required "to tell the whole

-12-

truth" when it "chose[] to speak on the issue of its management of global risk."  (Mot. at 17-18.)[7] The Court has already rejected that same duty-to-disclose theory, including because these sorts of warnings "have only rarely been found to be actionable by themselves" and because the warnings here were actually "repeated and specific."  (Op. at 38-39, 50-51.)[8]

*Second*, Plaintiffs, again, assert that the annual reports omitted information regarding known adverse trends in violation of SEC Item 303.  (Mot. at 17 (quoting 17 C.F.R. § 229.303(a)(3)(ii)).)  The Court rejected that theory because "Citigroup 'provided disclosures regarding its risks that were company-specific and related to the direct risks it uniquely faced' and was not required to do more."  (Op. at 52.)  Nothing in the Motion addresses that prior ruling.

**B.  Plaintiffs Still Fail Adequately To Allege a Strong Inference of Scienter.**

As an independent basis for dismissal, the Court held that "Plaintiffs' allegations fall short" both as to "motive and opportunity" and "strong circumstantial evidence of conscious misbehavior or recklessness."  (Op. at 54.)  The PSAC also falls short on both of these means of pleading scienter, providing an independent ground for denying leave to amend.

*1.    Plaintiffs Do Not Even Try To Plead a Motive to Defraud.*

Plaintiffs' Motion does not address motive to commit fraud, and the PSAC recycles the same vague allegations regarding Citigroup's desire to appear profitable which this Court already rejected. [9]  If anything, Plaintiffs' added assertion that "Citi's risk management

---

[7] Plaintiffs' argument that Citigroup should have revealed communications with banking regulators (*see* Mot. at 7) ignores that Citigroup was prohibited by federal law, with the threat of criminal and civil penalties, from doing so.  12 C.F.R. §§ 4.32(b), 4.36(b), (d), 4.37(b), 261.2(b)(1); Bank Holding Co. Supervision Manual, F.R.B. § 1065.0.2 (Nelles Opp. Decl. Ex. 6).

[8] Other courts, too, have categorically rejected Plaintiffs' theory that a warning that is "broad enough to cover a specific risk" is "misleading simply because it fails to discuss the specific risk." *See, e.g.*, *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013).

[9] *Compare* PSAC ¶ 63 ("desire to avoid making compliance so strong that it hobbled the profit-

shortcomings were an ongoing focus of regulators' communications with Defendants" (PSAC ¶ 15) has made motive even less conceivable, because Defendants certainly would have known that any risk management deficiencies would be scrutinized and penalized.  *See Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) (rejecting similar motive theory because "[i]t is hard to see what benefits accrue from a short respite from an inevitable day of reckoning").

### 2. Plaintiffs Still Do Not Adequately Plead Any Defendant's Conscious Misconduct or Recklessness.

Because Plaintiffs do not adequately allege that Defendants had motive to commit fraud, "the circumstantial evidence of conscious misbehavior must be correspondingly greater." *Ark. Pub. Emps. Ret. Sys.* v. *Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). Allegations of conscious misbehavior "generally consist[] of deliberate, illegal behavior," and recklessness requires conduct that was "highly unreasonable" and constituted "an extreme departure from the standards of ordinary care." *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 258 (S.D.N.Y. 2020).

To plead scienter, Plaintiffs must plead facts giving rise to "a strong inference" that the Individual Defendants (whose intent also could be imputed to the corporation) "acted with the requisite scienter." *Jackson* v. *Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020).  Plaintiffs previously attempted to make this showing through four "families of fact":  (i) the magnitude of the 2020 Consent Orders; (ii) the Individual Defendants' alleged involvement with risk management; (iii) the Individual Defendants' alleged knowledge of "core operations"; and (iv) executive resignations.  (Op. at 55.)  The Court rejected all four.  (*Id*. at 55-62.)  Plaintiffs' PSAC reuses

---

making machine") *with* Op. at 55 (rejecting motive based on "appearance of corporate profitability").

these same theories, and adds three.  (Mot. at 19-20.)[10]  These new theories comprise "a gossamer patchwork of general statements from the [FEs] and inferences from reports published after the allegedly false and misleading statements were made."  *Loc. No. 38* v. *Am. Exp. Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010).  Both individually and combined, these allegations are inadequate.

(1) FE Allegations Regarding Scienter.  Plaintiffs assert that their FE allegations plead that "Citi consistently failed internal audits and assessments" and that unnamed "senior executives" "regularly received" reports regarding regulatory issues, "regularly attended" meetings at which regulatory issues were discussed, and "ignored employee concerns."  (Mot. at 19.)[11]  This is merely a repackaged version of Plaintiffs' prior theory regarding the "Individual Defendants' alleged claims of involvement with risk management."  (Op. at 55.)  As the Court recognized in rejecting that theory, "Plaintiffs must allege facts showing that (i) 'specific contradictory information was available to the defendants' (ii) 'at the same time they made their misleading statements.'"  (*Id.* at 58-59 (emphasis in original).)  Instead of supplying those facts, Plaintiffs throw out an alphabet soup of various reports and meetings (DQM, BRCC, BDQR, CAP, IMR), label them "regular" and "routine[]," and offer conclusory allegations that some unspecified iteration of these reports highlighted unspecified deficiencies that mirrored what was in the 2020 Consent Orders.  (*See, e.g.*, Mot. at 12; PSAC ¶ 187 ("Specifically, the BDQRs reported ERM problems and the fact that there were concerns about Citi's ability to handle and effectively manage

---

[10] Plaintiffs also refer to "news articles and analyst coverage reporting" (Mot. at 19) as now supporting scienter, but the CAC relied on all the same (vague) language from the same sources (*compare* PSAC ¶¶ 232-35 *with* CAC ¶¶ 223, 235, 237-38).

[11] To the extent Plaintiffs seek to impute scienter from unnamed Citigroup "senior executives," that move fails because "general allegations of warnings made to unidentified senior executives" are "not sufficiently particularized to raise a strong inference of scienter against any individual, much less one whose knowledge may be imputed."  *Jackson*, 960 F.3d at 99.

risk across the enterprise.").)  Plaintiffs' new allegations do not suffice to plead scienter because they do not allege what any particular report said, or when, or why that information at that time would have made *an Individual Defendant* aware that a particular statement was false.[12]

Courts have repeatedly rejected similar attempts at pleading scienter through vague allegations ascribed to unnamed former employees.  For example, in *In re Doral Fin. Corp. Sec. Litig.*, the court rejected a former Doral internal auditor's allegation that he "personally attended Doral Audit Committee meetings where" defendant was in attendance and reports about the sufficiency of "internal controls were discussed," because the allegation was too "vague" and contained "no time frame within which the meeting occurred" and "no information regarding how extensively or in what manner the reports were discussed."  563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008), *aff'd*, 344 F. App'x 717 (2d Cir. 2009).  Similarly, in *In re Am. Express Co. Sec. Litig.*, the court rejected allegations from "confidential sources" that "senior management" were "warned of the risks."  2008 WL 4501928, at *7 (S.D.N.Y. Sept. 26, 2008).  As here, the plaintiffs failed to show that the "confidential sources" "had any contact with the Individual Defendants or would have knowledge of what they knew or should have known during the Class Period."  *Id.* at *8.[13]

If anything, stripped of adjective and hyperbole, the FE allegations support the

---

[12] Plaintiffs also emphasize FE allegations regarding Matters Requiring Attention ("MRAs"). (Mot. at 9.)  These allegations are again conclusory, echo the same allegations Plaintiffs previously made and the Court rejected (*see* CAC ¶ 158 (citing reporting regarding "numerous" MRAs)), and ignore the "practices of the relevant industry," *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). "[I]t is typical for a relatively large banking organization to have many outstanding MRAs at any given time"; indeed, as of mid-2018, there were "825 total outstanding supervisory findings" for the eight largest regulated financial institutions.  (ECF No. 128-1 at 6; ECF 128-2 at 6.)

[13] *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (rejecting FE allegations because none showed "any [FE] met the Individual Defendants, reported any concerns, received any instructions, or made any personal contact with them during the Class Period"); *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 537-40 (S.D.N.Y. 2009) (requiring that individual defendants were "*directly informed* of the alleged deficiencies" at specific times).

competing non-fraudulent inference that Citigroup actively engaged with risk management challenges. For instance, Plaintiffs emphasize that Citigroup used Executive Scorecards that monitored how well each executive was tackling regulatory and risk management challenges. (Mot. at 2, 12.) That responsible corporate behavior is at odds with the theory that Citigroup actively sought to neglect and suppress these issues.

(2) OCC Declaration. Plaintiffs next rely on a declaration in a False Claims Act case dismissed by Judge Denise Cote. *United States ex rel. Miller* v. *Citigroup Inc.*, 2022 WL 2237619 (S.D.N.Y. June 2, 2022). In that action, a former Citigroup employee asserted that she was entitled to a share of the fine paid as part of the 2020 OCC Consent Order because she provided the OCC with information in 2019. *Id.* at *1-2. The government opposed, and submitted a declaration from an OCC examiner. (Nelles Opp. Decl. Ex. 7.) Plaintiffs seize on one sentence from the declaration, that "[m]any of the supervisory concerns addressed by the 2020 Orders were identified by the OCC and communicated to the Bank several years prior to Relator's filing of her Complaints" in July 2019. (*Id.* at 7.) Plaintiffs do not describe the content of these concerns, or how they evolved. They also misleadingly omit the next sentence, which states that "certain supervisory concerns addressed by the 2020 Orders were identified and conveyed to the Bank close in time to *or after* the OCC's receipt of Relator's allegations." (*Id.* (emphasis added).)[14] Regardless, the language Plaintiffs cite does not meaningfully add to the Order itself, which states that certain deficiencies were "longstanding." The Court previously rejected Plaintiffs' reliance on that language, including because it did not "establish that any of the Defendants knew that

---

[14] Plaintiffs also omit language in the declaration that the 2020 OCC Consent Order "was *not* based on Citibank's noncompliance with any prior formal, public enforcement action," and that "the process of escalating [the OCC's] concerns into a public enforcement action *took some time*," given the complexity of the issues involved. (Nelles Opp. Decl. Ex. 7 at 5, 6 (emphases added).)

-17-

Citigroup's risk management systems were so deficient that any reference to or description of them was misleading" and did not show what "specific matters" were communicated. (Op. at 22-23, 43-44.) Plaintiffs provide no basis to reconsider that holding.

(3) Mr. Dugan's 2021 Statement. Finally, Plaintiffs rely on a 2021 statement by Mr. Dugan as a purported admission that the "Board did recognize the remediation shortfalls before the consent order" (Mot. at 3), but that selective quotation is misleading. Mr. Dugan went on: "and we *did spend a great deal of time overseeing a number of different remediation projects* in the last several years. While *a lot of work was done and a lot of progress was made*, we *came to realize that a more fundamental, holistic and systemic change was required*, what we now call the transformation." (Nelles Opp. Decl. Ex. 2 at 8 (emphases added).) The "admission" thus undermines Plaintiffs' theory of fraud: it confirms that the Board attempted, in good faith during the Class Period, to make progress. Moreover, the most plausible reading is that any "realization" occurred after the 2020 Consent Orders, meaning that the statement does not provide "information regarding state of mind" at the relevant time. *Ark. Pub. Emp. Ret. Sys*, 28 F.4th at 356.

3.      *Plaintiffs Still Do Not Adequately Plead Collective Corporate Scienter.*

Plaintiffs also cannot meet the exceedingly high standard for pleading collective corporate scienter "without being able to name the individuals who concocted and disseminated the fraud." *Nandkumar* v. *AstraZeneca PLC*, 2023 WL 3477164, at *4 (2d Cir. May 16, 2023). That is "possible" only in "exceedingly rare instances" where a statement is "so 'dramatic' that collective corporate scienter can be inferred." *Id.* (quoting *Jackson*, 960 F.3d at 99.) For instance, corporate scienter may be adequately pled where a car manufacturer "announced that it had sold one million SUVs" but "the actual number was zero." *Id.* Rather than challenging "dramatic" misstatements, Plaintiffs challenge benign, generic statements regarding Citigroup's "transformation" and "holistic review." The PSAC thus boils down to "naked assertion[s]" that

-18-

Citigroup "must have known that the challenged statements were false," which is "plainly insufficient to raise a strong inference of collective corporate scienter." *Jackson*, 960 F.3d at 99.[15]

## II. PLAINTIFFS' MOTION ALSO SHOULD BE DENIED BECAUSE OF PLAINTIFFS' UNEXPLAINED AND UNDUE DELAY IN SEEKING TO AMEND.

Conspicuously absent from Plaintiffs' Motion is any explanation of when they became aware of the allegations in the PSAC, and why Plaintiffs did not assert those allegations earlier, including when they amended the complaint more than two years ago, in April 2021.  Nor do Plaintiffs attempt to explain their decision to challenge, for the first time, statements about "Project Rainbow" that were publicly made in 2017 and 2018.

As this Court has explained, "[m]otions to amend are ultimately within the discretion of the district court, which may deny leave to amend for good reason," including "undue delay."  *Lehmann*, 2020 WL 6729116, at *2.  "[C]ourts in this district" have in their discretion denied "motion[s] to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay."  *Nightingale Grp.*, 2012 WL 2674539, at *11.[16]  Even if Plaintiffs learned of some allegations after filing the CAC, they could "have moved to amend and supplement their complaint in the manner proposed" well before now.  *Baez*, 2013 WL 5272935, at *5.  Plaintiffs thereby could have avoided asking "a busy district court" "to be imposed upon by the presentation of theories seriatim."  *State Trading Corp. of India, Ltd.* v. *Assuranceforeningen Skuld*, 921 F.2d

---

[15] Plaintiffs assert in passing that the PSAC "also bolsters" their loss-causation allegations (Mot. at 15 n.2), but nothing Plaintiffs allege to have been revealed on the purported corrective disclosure dates actually revealed that prior general statements about the existence and design of Citigroup's risk management systems were false.  (ECF No. 116 at 34-35.)  Plaintiffs also assert that the PSAC "asserts a claim under Section 20(a)" (Mot. at 15 n.2), but, because the PSAC does not plead a primary securities law violation, it also does not plead control-person liability (*see* Op. at 63).

[16] *Accord Tesla Wall Sys., LLC* v. *Related Cos., L.P.*, 2018 WL 4360777, at *6 (S.D.N.Y. Aug. 15, 2018); *Baez* v. *Delta Airlines, Inc.*, 2013 WL 5272935, at *5 (S.D.N.Y. Sept. 18, 2013).

409, 418 (2d Cir. 1990) (affirming denial of leave to amend). Plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005), *aff'd*, 481 F.3d 110 (2d Cir. 2007).

Plaintiffs' unexplained delay is especially problematic because they made a deliberate and informed choice *not* to amend. When Defendants moved to dismiss, Judge Alison Nathan presided over this action, and her individual rules stated the following:

> When a motion to dismiss is filed, the non-moving party must, within 10 days of receipt of the motion, notify the Court and its adversary in writing whether (i) it intends to file an amended pleading and when it will do so, or (ii) it will rely on the pleading being attacked. Non-moving parties are on notice that declining to amend their pleadings to timely respond to a fully briefed argument in the motion to dismiss may well constitute a waiver of their right to use the amendment process to cure any defects that have been made apparent by the briefing. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.*, 797 F.3d 160, 190 (2d Cir. 2015) (leaving "unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility.").

(Nelles Opp. Decl. Ex 8 at 4.) Accordingly, Plaintiffs filed a letter on June 24, 2021 "to inform the Court and Defendants that Plaintiffs will rely on the [CAC]" and not amend. (ECF No. 119.) Under these same circumstances, courts in this District, including Judge Nathan applying these same rules, have denied later motions for leave to amend. *See Lesesne* v. *Brimecome*, 918 F. Supp. 2d 221, 228 (S.D.N.Y. 2013) (Nathan, J.); *In re AstraZeneca Sec. Litig.*, 2022 WL 4133258 (S.D.N.Y. Sept. 12, 2022); *Nightingale Grp., LLC*, 2012 WL 2674539, at \*11; *see also Ritchie Cap. Mgmt., L.L.C.* v. *Gen. Elec. Cap. Corp.*, 821 F.3d 349, 351-52 (2d Cir. 2016) ("no error" in not "granting [plaintiff] leave to amend" for not following analogous individual rule).

## CONCLUSION

The Court should deny Plaintiffs' Motion as both futile and untimely and dismiss this action with prejudice.

Dated:    New York, New York                Respectfully submitted,
          July 7, 2023

                                            */s/ Sharon L. Nelles*
                                            Sharon L. Nelles (*nelless@sullcrom.com*)
                                            David M.J. Rein (*reind@sullcrom.com*)
                                            Leonid Traps (*trapsl@sullcrom.com*)
                                            SULLIVAN & CROMWELL LLP
                                            125 Broad Street
                                            New York, New York 10004-2498
                                            Telephone:    (212) 558-4000
                                            Facsimile:    (212) 558-3588

                                            *Attorneys for Defendants Citigroup Inc., Michael L.*
                                            *Corbat, John C. Gerspach, and Mark A. L. Mason*