UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE CITIGROUP SECURITIES
LITIGATION

20 Civ. 09132 (LAP)
<u>MEMORANDUM & ORDER</u>

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Plaintiffs'[1] motion for leave to amend the Consolidated Amended Class Action Complaint ("CAC"),[2] (the "Motion").[3]  Citigroup Inc. ("Citigroup" or "Citi") and three Citigroup officers (the "Officer Defendants"),[4] (together "Defendants"), oppose the motion on grounds of futility and undue delay.[5]  For the reasons set forth below, Plaintiffs' Motion is DENIED.

---

[1] Plaintiffs include Lead Plaintiff Public Sector Pension Investment Board ("PSP" or "Lead Plaintiff") and Named Plaintiff Anchorage Police & Fire Retirement System ("Anchorage"), (together "Plaintiffs").  Plaintiffs are acting on behalf of a putative class of purchasers of Citigroup's securities.

[2] (Consol. Am. Class Action Compl., dated Apr. 20, 2021 [dkt. no. 72].)

[3] (Pls. Mot. For Leave to Amend, dated May 24, 2023 [dkt. no. 146]; Pls.' Mem. of Law in Support of Mot. for Leave to Amend ("Pls. Mem."), dated May 24, 2023 [dkt. no. 147]; Decl. of Javier Bleichmar in Support of Mot. for Leave to Amend ("Bleichmar Decl."), dated May 24, 2023 [dkt. no. 148]; Decl. of Benjamin F. Burry in Further Support of Mot. for Leave to Amend ("Burry Decl."), dated Aug. 4, 2023 [dkt. no. 157]; Pls.' Reply Mem. of Law in Further Support of Mot. for Leave to Amend ("Pls. Reply"), dated Oct. 27, 2023 [dkt. no. 163]; Plaintiffs' Letter to Judge Preska ("Pls. Letter"), dated April 23, 2024 [dkt. no. 166].)

[4] Officer Defendants are Michael L. Corbat, John C. Gerspach, and Mark A. L. Mason.

[5] (Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Leave to Amend ("Defs. Opp'n"), dated July 7, 2023 [dkt. no. 152]; Decl. (cont'd)

## I.    <u>Factual Background</u>

On April 20, 2021, Plaintiffs filed a CAC alleging (1) securities fraud claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Citigroup, Officer Defendants, and seventeen Citigroup directors (the "Director Defendants"), and (2) control person claims under Section 20(a) of the Exchange Act against Officer Defendants. (CAC ¶¶ 28-53, 575-586.) Defendants filed a Federal Rule of Civil Procedure ("FRCP") 12(b)(6) motion to dismiss the CAC claiming Plaintiffs failed to plead two of the six elements required to state a claim under Section 10(b) and Rule 10b-5: (i) a material misrepresentation or omission and (ii) scienter. (See dkt. no. 116.) This Court agreed,[6] and Defendants' motion to dismiss was granted. (Op., dated Mar. 24, 2023 [dkt. no. 139] at 31.)

### a. Second Amended Complaint

Plaintiffs' proposed Second Amended Complaint ("SAC") consolidates the nearly sixty statements identified in the initial CAC to eight alleged misrepresentations. (Pls. Mem. at 1.) In addition to narrowing the allegations, the SAC drops the previously

---

(cont'd) of Sharon L. Nelles in Support of Defs.' Opp'n ("Nelles Decl."), dated July 7, 2023 [dkt. no. 153]; Defs.' Letter to Judge Preska ("Defs. Letter"), dated April 16, 2024 [dkt. no. 165].)

[6] The Court also held that "[b]ecause . . . Plaintiffs have failed to establish a primary violation of the securities laws, their section 20 claim necessarily collapses and is dismissed." (Op. at 63.)

named Director Defendants, shortens the Class Period to begin in February of 2017-rather than January of 2016-and offers new information from "12 high-level Former Employees [('FEs')]" working at Citigroup during the Class Period. (Id.) Notably, five of the eight misrepresentations, with some minor revisions, have previously been heard by this Court. (Id.) Plaintiffs argue that "[t]aken together, these allegations establish that Citi's risk management systems were deficient throughout the Class Period, that Defendants concealed these material facts, and that they knew—or at least recklessly disregarded—that the risk management systems were so deficient that their statements, descriptions, and omission of the material truth was misleading." (Pls. Mem. at 3.) To clarify which misrepresentations still stand, in addition to the new misrepresentations, a revised overview of the alleged misstatements is set forth below.

### i. Three Previously Alleged Misstatements: Annual Reports

Plaintiffs renew their challenge to previously alleged misstatements from Citigroup's Annual Reports. (See Op. at 12-13, 16-17 (CAC ¶¶ 333, 362 ("Alleged Misstatement 11"); CAC ¶¶ 335, 364 ("Alleged Misstatement 12"); CAC ¶ 379 ("Alleged Misstatement 21")).) In the SAC, Plaintiffs combine these statements into one misrepresentation and allege it qualifies as

three separate misstatements because it appears in Citigroup's 2016, 2017 and 2018 Annual Reports:[7]

> Citi's firm-wide Risk Governance Framework consists of the policies, procedures, and processes through which Citi identifies, measures, manages, monitors, reports, and controls risks across the firm. . . . The Risk Governance Framework has been developed in alignment with the expectations of the Office of the Comptroller of the Currency (OCC) Heightened Standards. It is also aligned with the relevant components . . . of the Federal Reserve's Enhanced Prudential Standards for Bank Holding Companies and Foreign Banking Organizations.

(SAC ¶¶ 284, 288, 296 (alteration in original).)

### ii. One Previously Alleged Misstatement: Mr. Corbat's Statement

Plaintiffs also renew their challenge to Mr. Corbat's statement in a September 10, 2020 press release titled "Citi CEO Michael Corbat Announces Plans to Retire in February 2021" in which Mr. Corbat said:

> We completed our transformation from the financial crisis and emerged a simpler, safer and stronger institution. . . . [A]s the world's most global bank, safety and soundness always have to be a foundation of our institution. We have launched significant investments in our infrastructure as part of our push to make strengthening our risk and control environment a strategic priority for the firm.

(SAC ¶ 142 (alteration in original) (emphasis omitted).)[8]

---

[7] The 2017 and 2018 Annual Reports substitute "firm" for "Company," but otherwise the language is the same. (See SAC ¶¶ 284, 288, 296.)

[8] (See Op. at 20 (CAC ¶ 431 ("Alleged Misstatement 34")).)

### iii. Four Alleged Misstatements: Project Rainbow

Four of Plaintiffs' alleged misstatements involve a risk management initiative called "Project Rainbow."  Project Rainbow was created to address Citigroup's infrastructural and technological shortcomings but was abandoned in 2017.  (SAC ¶¶ 89-94.)

#### 1. Renewed but Revised Alleged Misstatement: Exchange During the Bernstein 2017 Strategic Decisions Conference

Plaintiffs renew their challenge to an exchange between Mr. Corbat and a Bernstein analyst during the Bernstein 2017 Strategic Decisions Conference,[9] but add an additional sentence in Mr. Corbat's response, underlined below:

> JOHN MCDONALD: And just wrapping up the conversation about efficiency, you've done a lot of investment spending, you've done some big projects upgrading major systems in the Investment Bank, the Global Consumer Bank, and currently investing $1 billion in Mexico. Where are you on kind of these big projects? Are you kind of at the tail end of the major big projects you set upon the last couple of years? Where are you in that cycle of spend?
>
> CORBAT: From an infrastructure perspective, we've got, really if not all, certainly most of the systems or base systems that we need . . . . [W]e've spent all the energy and effort in terms of creating these systems that have the ability to come back and communicate centrally . . . . So, as we look, again, I think from a regulatory perspective, major investments from a Rainbow and some of the big projects we talked about in the past and things that I think they're paying great dividends, those investments made.

---

[9] (See Op. at 13-14 (CAC ¶ 353 ("Alleged Misstatement 15")).)

(SAC ¶ 286 (emphasis added).)

### 2. New Alleged Misstatement: May 30, 2018 Exchange

Plaintiffs also identify an alleged misstatement on May 30, 2018 during an exchange between Mr. Corbat and a Bernstein analyst. When asked about Citibank's successes in Asia, Mr. Corbat responded:

> If you remember some of the investments we made in Rainbow that gave us the ability to have a holistic view. So, if you go back not that far in time, and as you covered our company, it was Citi Cards, it was CitiMortgage, it was vertical or silos, as we call them, of product-driven interactions. Technology today here in the U.S. gives us the ability to have a holistic view. So, you're a Cards client, you're a Retail Bank client, you're Wealth, you're Citigold, you're Citi Blue, we have the ability to see you and think of you and present to you from a holistic view.

(SAC ¶ 290.)

### 3. New Alleged Misstatements: 2018 Q3 Earnings Call

Next, Plaintiffs allege two misstatements from Citigroup's third quarter 2018 earnings call on October 12, 2018, in which Mr. Corbat stated:

> I think the work that was done in terms of Rainbow and other technology implementations now gives us the ability to view the client holistically.

(SAC ¶ 291.) And, on the same call, Wells Fargo analyst Mike Mayo engaged in an exchange with Mr. Gerspach:

> MIKE MAYO: Or it could relate to more digital banking disclosure, how you're doing with products and customers. Or you have a lot more capability internally, given what you've done with Project Rainbow. And I thought that was a good reference like a decade or two

to consolidate all the retail system after all those
earlier acquisitions. So now that you have these
capabilities to serve customers, maybe you can provide
us with more information on any incremental success
you're having.

JOHN GERSPACH: Yeah. I mean, we've taken a first stab
of that. If you take a look at slide 24 in the appendix,
maybe in the future, we can do a little bit more of this
on a regional basis. <u>Right now, we're tracking
everything globally</u>. So we'll see how we build this
into something else.

(SAC ¶ 98.)

## II. **Applicable Law**

### a. **Leave to Amend**

FRCP 15 allows for a party to amend the complaint after a
motion to dismiss has been granted. FED. R. CIV. P. 15(a)(2).
"Motions to amend are ultimately within the discretion of the
district court," which "may deny leave to amend for good reason,
including futility, bad faith, undue delay, or undue prejudice to
the opposing party." <u>Lehmann v. Ohr Pharm. Inc.</u>, 2020 WL 6729116,
at *2 (S.D.N.Y. Nov. 16, 2020). "Futility is a determination, as
a matter of law, that proposed amendments would fail to cure prior
deficiencies or to state a claim under Rule 12(b)(6) of the Federal
Rules of Procedure." <u>Panther Partners Inc. v. Ikanos Commc'ns,
Inc.</u>, 681 F.3d 114, 119 (2d Cir. 2012).

### b. **FRCP 12(b)(6), FRCP 9(b), and the Private Securities Litigation Reform Act ("PSLRA")**

To survive a FRCP 12(b)(6) motion to dismiss, Plaintiff must
plead sufficient facts "to state a claim to relief that is

plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019). Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

When considering a motion to dismiss, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020). It is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (ellipsis omitted). "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (cleaned up). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

"A claim under Section 10(b) . . . sounds in fraud and must [also] meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and of the PSLRA." Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V., 89 F. Supp. 3d 602, 607 (S.D.N.Y. 2015) (citation omitted). Under Rule 9(b) and the PSLRA, the complaint must (i) "specify the statements that the plaintiff contends were fraudulent," (ii) "identify the speaker," (iii) "state where and when the statements were made, and" (iv) "explain why the statements were fraudulent." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007); accord 15 U.S.C. § 78u-4(b)(1)(B).

### c. Section 10(b) and Rule 10b-5

To state a claim under Section 10(b) and Rule 10b-5, Plaintiffs must plead six elements: (i) "a material misrepresentation or omission by the defendant;" (ii) "scienter;" (iii) "a connection between the misrepresentation or omission and the purchase or sale of a security;" (iv) "reliance upon the misrepresentation or omission;" (v) "economic loss;" and (vi) "loss causation." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014). The first and second elements are particularly relevant here.

### i. Material Misrepresentations or Omissions

"To support a claim of securities fraud, the stated or omitted fact must be material." Constr. Laborers Pension Tr. for S. Cal.

v. CBS Corp., 433 F. Supp. 3d 515, 531 (S.D.N.Y. 2020). "An alleged misrepresentation is material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares of stock." Singh v. Cigna Corp., 918 F.3d 57, 63 (2d Cir. 2019) (quotation marks omitted). "In judging whether an alleged omission was material in light of the information already disclosed to investors, the [C]ourt considers whether there is a substantial likelihood that the disclosure of the omitted material would have been viewed by the reasonable investor as having significantly altered the total mix of information already made available." Chapman v. Mueller Water Prods., Inc., 466 F. Supp. 3d 382, 396–97 (S.D.N.Y. 2020) (cleaned up).

"Certain categories of statements are immaterial as a matter of law, such as 'puffery,' opinions, and forward-looking statements accompanied by adequate cautionary language." Barilli v. Sky Solar Holdings, Ltd., 389 F. Supp. 3d 232, 250 (S.D.N.Y. 2019). "Puffery encompasses statements that are too general to cause a reasonable investor to rely upon them," In re Vivendi, S.A. Sec. Litig., 838 F.3d 223, 245 (2d Cir. 2016) (cleaned up), such "as a company's statements of hope, opinion, or belief about its future performance," Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc., 412 F. Supp. 3d 353, 363 (S.D.N.Y. 2019), aff'd sub nom. Cavalier Fundamental Growth Fund v. Skechers U.S.A.,

Inc., 826 F. App'x 111 (2d Cir. 2020) (summary order). Likewise, "a sincere statement of pure opinion is not an untrue statement of material fact, regardless [of] whether an investor can ultimately prove the belief wrong." Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 186 (2015) (quotation marks omitted). In that vein, "the Court of Appeals has repeatedly held to be nonactionable expressions of corporate optimism." In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 557 (S.D.N.Y. 2004).

In addition to materiality, "[a]n alleged statement or omission must also be false or misleading." Constr. Laborers, 433 F. Supp. 3d at 531. "The test for whether a statement is materially misleading . . . is not whether the statement is misleading in and of itself, but whether the defendants' representations, taken together and in context, would have misled a reasonable investor." Vivendi, 838 F.3d at 250 (quotation marks omitted). In other words, whether a statement is "misleading," is "evaluated not only by literal truth, but by context and manner of presentation." Singh, 918 F.3d at 63 (cleaned up). Critically, a statement must be contemporaneously false: "A statement believed to be true when made, but later shown to be false, is insufficient." In re Lululemon Sec. Litig., 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014). To establish the falsity of an opinion, a plaintiff must plead that (i) "the speaker did not hold the belief she professed," (ii)

11

any "supporting fact[s] she supplied" with her opinion "were untrue," or (iii) the speaker omitted facts whose omission makes the statement misleading to a reasonable investor. Omnicare, 575 U.S. at 186; see also Tongue v. Sanofi, 816 F.3d 199, 209-10 (2d Cir. 2016) (applying Omnicare to claims brought under Section 10(b) and Rule 10b-5).

Moreover, "an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts." Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 101 (2d Cir. 2015). Section "10(b) and Rule 10b-5(b) do not," however, "create an affirmative duty to disclose any and all material information:" "Disclosure is required . . . only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011) (cleaned up). "This inquiry, unlike other duty-to-disclose scenarios, merges with the question of whether the omitted fact is material." Constr. Laborers, 433 F. Supp. 3d at 531.

### ii. Scienter

Claims under Section 10(b) and Rule 10b-5 must allege "that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (quotation marks omitted). The PSLRA mandates that a complaint "state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Under that standard, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324. That necessary inference of scienter, taking "into account plausible opposing inferences," "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." Id. at 323-24.

For an individual, "the scienter requirement is met where the complaint alleges facts showing either: 1) a motive and opportunity to commit the fraud; or 2) strong circumstantial evidence of conscious misbehavior or recklessness." Emps.' Ret. Sys. of Gov't of the Virgin Is. v. Blanford, 794 F.3d 297, 306 (2d Cir. 2015) (quotation marks omitted). A generalized motive, like the desire to maintain the appearance of corporate profitability or increase compensation, is insufficient. Chill v. GE, 101 F.3d 263, 268 (2d Cir. 1996). "Where motive is not apparent[,] the strength of the circumstantial allegations must be correspondingly greater." Schiro v. Cemex, S.A.B. de C.V., 396 F. Supp. 3d 283, 300 (S.D.N.Y. 2019) (quotation marks omitted). For corporations, "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite

13

scienter." <u>Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.</u>, 531 F.3d 190, 195 (2d Cir. 2008).

### d. Section 20(a)

For a Section 20(a) claim, "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 108 (2d Cir. 2007).

### III. <u>Discussion</u>

Defendants argue that Plaintiffs' Motion for leave to amend should be denied because (1) Plaintiffs still fail to identify materially false statements and a strong inference of scienter, and thus their amendments would be futile, and (2) Plaintiffs exhibited an unexplained and undue delay in seeking to amend. (<u>See generally</u> Defs. Opp'n.)  For the reasons set out below, the Court agrees with respect to Defendants' first argument.[10]

---

[10] Defendants argue that Plaintiffs' Motion should be denied for undue delay.  (Defs. Opp'n at 19-20.)  "When a motion 'is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice' the non-movant, such undue delay should weigh against granting leave to amend." <u>United States ex rel. Raffington v. Bon Secours Health System, Inc.</u>, 567 F. Supp. 3d 429, 438 (quoting <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d Cir. 1990).  While Plaintiffs fail to provide an explanation on why their additional allegations in the SAC, including those regarding publicly available statements from 2017 and 2018 regarding Project Rainbow, were not asserted earlier, "[m]ere delay . . . absent a showing of bad faith or undue

**a. Element One: "Material Misrepresentation or Omission"**

**i. Three Previously Alleged Misstatements: Annual Reports**

The statements from the Annual Reports, previously identified as Alleged Misstatements 11, 12, and 21 in the CAC, were deemed too general and vague to be a reliable assurance of compliance. (Op. at 32-39.)  See also Salim v. Mobile Telesystems PJSC, 2021 WL 796088, at *4 (E.D.N.Y. Mar. 1, 2021), aff'd, 2022 WL 966903 (2d Cir. Mar. 31, 2022) (finding defendant's annual report statements "tout[ing] the Company's corporate compliance system, including the Company's commitment to compliance with the FCPA and its zero-tolerance policy towards corruption" not actionable (quotation marks omitted)).  As this Court has clarified, it is both routine and well known that banks put forward general risk management policies to align with industry standards. (Op. at 35-36.)  Few banks, if any, would neglect to declare investments in regulatory compliance or risk management. (See id. at 34.)  There are no new facts warranting the Court's reconsideration of its finding that these statements are too vague to be material.

---

prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).  Nevertheless, given the Court's holding that the proposed SAC would be futile, the Court need not decide Defendants' undue delay claim.

### ii. One Previously Alleged Misstatement: Mr. Corbat's Statement

Mr. Corbat's statement, previously identified as Alleged Misstatement 34 in the CAC, was found to be immaterial and not adequately alleged to be false. (Op. at 32-39, 42.)

In a second attempt to show the statement's falsity, Plaintiffs point to FEs' allegations. However, the FEs' conclusory allegations do not refute that Citigroup had undergone a "transformation" and was "simpler, safer and stronger" than it was during the 2008 financial crisis——an extraordinary time when Plaintiffs claim Citigroup was "nearly doomed" and required "the largest taxpayer bailout in history." (SAC ¶ 9.) Plaintiffs also ignore the broader context of Mr. Corbat's statement, which spoke of "transformation" regarding many metrics. (Dkt. no. 117-23 at ECF 3.) In fact, the explicit mention of "risk management and controls" in the press release is phrased in aspirational and forward-looking terms and not challenged by Plaintiffs. (Id. at ECF 4 ("We will invest in our infrastructure, risk management and controls to ensure that we operate in a safe and sound manner . . .").)

Accordingly, there are no new facts warranting the Court's reconsideration of its finding that this statement is immaterial and not adequately alleged to be false.

16

### iii. Four Alleged Misstatements: Project Rainbow

For Plaintiffs' alleged misstatements regarding Project Rainbow the Court first address Plaintiffs' falsity arguments and then will evaluate each statement's materiality.

Plaintiffs rely on the fact that Project Rainbow was abandoned in 2017 and was a "spectacular failure" to show that the statements were false and misleading. (SAC ¶ 91.) Yet, Project Rainbow's failure does not mean valuable insights regarding client intel and global tracking were not gleaned. In fact, companies often learn the most from their failures. Additionally, given the context of each statement, it appears unlikely that each statement was specifically praising Project Rainbow's success but rather instead reflecting generally on the insight gained from Citigroup's past projects. Viewed with that context, nothing in the SAC pleads that the statements were materially false as of the time they were made.

#### 1. Renewed but Revised Alleged Misstatement: Exchange During the Bernstein 2017 Strategic Decisions Conference

Plaintiffs renew their challenge to an exchange between Mr. Corbat and a Bernstein analyst during the Bernstein 2017 Strategic Decisions Conference, previously identified as Alleged Misstatement 15 in the CAC and found to be nonactionable (see Op. at 46), but add an additional sentence in Mr. Corbat's response explaining "major investments from [Project Rainbow] and some of

17

the big projects [they] talked about in the past" were, in Mr. Corbat's opinion, "paying great dividends[.]"  (SAC ¶ 286.)  The additional statement is too vague to be considered material. "Paying great dividends" is a colloquial phrase akin to "great progress" or "smooth" integrations, which this Court has found to be immaterial statements.  Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, 422 F. Supp. 3d 821, 846 (S.D.N.Y. 2019) (statements regarding "great progress" and "quick" and "smooth" corporate integration were immaterial); City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp., 587 F. Supp. 3d 56, 92 (S.D.N.Y. 2022) ("Broad statements about value creation and seizing opportunities . . . are non-actionable . . . ."). Additionally, the context of this conversation suggests this was not an assurance of risk management but rather a "puffery" opinion expressing Mr. Corbat's optimism.  (Op. at 13-14, 46.)  And, the earnings call transcript confirms that Mr. Corbat was discussing initiatives separate from risk management or regulatory compliance.  (Dkt. no. 117-9 at 3.)  The sentence itself refers to unspecified "investments" and "big projects," of which "Rainbow" was only one.  (Id.)  Immediately before, Mr. Corbat was discussing new ATM systems in Mexico; immediately after, he discussed investments to "increase[] customer client satisfaction."  (Id. at 3-4.)  There is no representation, much less assurance, regarding the status of risk management systems or regulatory compliance.

## 2. New Alleged Misstatement: May 30, 2018 Exchange

Plaintiffs also identify an alleged misstatement on May 30, 2018, during an exchange between Mr. Corbat and a Bernstein analyst where Mr. Corbat states "some of the investments we made in Rainbow that gave us the ability to have a holistic view." (SAC ¶ 289-90.) First, statements regarding taking a holistic view are, again, "too general to cause a reasonable investor to rely on them and are, therefore, not actionable under the securities laws." Diehl v. Omega Protein Corp., 339 F. Supp. 3d 153, 162-63 (S.D.N.Y. 2018) (quotation marks omitted) ("Defendants' statements concerning Omega's comprehensive compliance program are not actionable."). Additionally, the statement is not even about relevant topics. Mr. Corbat was responding to a question about customer retail strategy and explained that he wanted to move away from "product-driven interactions" and develop a more "holistic view" so that customers could manage their accounts in one place. (Nelles Decl. Ex. 3 at 6.) Mr. Corbat did not discuss risk management or compliance issues, much less assure investors on these topics.

## 3. New Alleged Misstatements: 2018 Q3 Earnings Call

Next, Plaintiffs allege misstatements by Mr. Corbat and Mr. Gerspach during Citigroup's third quarter 2018 earnings call on October 12, 2018. Mr. Corbat stated that he thought "the work

that was done in terms of Rainbow and other technology
implementations now gives [them] the ability to view the client
holistically." (SAC ¶ 291.) Mr. Gerspach stated, "Right now,
we're tracking everything globally." (SAC ¶ 98.) As found above,
in context neither statement discusses risk management or
compliance issues, much less assures investors on these topics.
Additionally, these statements are too general to cause a
reasonable investor to reasonably believe Project Rainbow was
"achieving effective ERM [enterprise-risk management]." (Pls.
Mem. at 8.) And, they are "the type of 'broad, aspirational, and
vague' statements that are the hallmark of corporate puffery."
Salim, 2021 WL 796088, at *11 (citing Oklahoma Law Enf't Ret. Sys.
v. Papa John's Int'l, Inc., 444 F. Supp. 3d 550, 560 (S.D.N.Y.
2020); see also ECA v. JP Morgan Chase Co., 553 F.3d 187, 206 (2d
Cir. 2009) ("generalizations regarding [bank's] business
practices" are "precisely the type of puffery that this and other
circuits have consistently held to be inactionable" (quotation
marks omitted)).

### iv. Purported Omissions

Plaintiffs also claim Defendants failed to disclose the
material known trends and uncertainties associated with their
deficient risk management in Citigroup's Forms 10-K and therefore
violated Item 303 of the SEC Regulations. (Pls. Mem. at 17.)
However, in light of the Supreme Court's decision in Macquarie

<u>Infrastructure Corp. v. Moab Partners, L.P.</u>, 601 U.S. 257 (2024), Plaintiffs "are no longer advancing a 'pure omissions' theory of liability" but make clear that they are still advancing their allegations that specific misstatements are actionable on a "'half-truth' basis for liability." (Pls. Letter at 1-2.)

Plaintiffs argue that they now plead detailed contemporaneous facts showing "underinvestment in risk management or the eventual October 2020 Orders were 'presently known' to the Defendants at the relevant time," (Pl Reply at 4), however these facts are insufficient to advance Plaintiffs' "half-truth" theory given the Court's finding that the alleged misstatements are immaterial.

Accordingly, because Plaintiffs fail to allege material misrepresentations or omissions to fulfill their Section 10(b) and Rule 10b-5 claims, their proposed SAC would be futile.

**b. Element Two: "Scienter"**

Although the Court concludes that Plaintiffs have not alleged actionable statements or omissions, the Court also addresses whether Plaintiffs have sufficiently pled scienter.

Plaintiffs previously relied on "four families of facts [they] aver circumstantially evidence scienter:" (i) the Office of the Comptroller of the Currency's ("OCC") $400 million CMP; (ii) Individual Defendants' alleged involvement with risk management; (iii) Individual Defendants' alleged knowledge of "core operations"; and (iv) executive resignations, all of which this

Court previously rejected. (Op. at 55-62.) As previously mentioned, the SAC lists new facts to bolster Plaintiffs' claims. These new facts, however, nevertheless fail to show a strong inference of scienter.

First, Plaintiffs assert that the FEs' allegations plead that "Citi consistently failed internal audits and assessments" and that "senior executives" "regularly received" reports regarding regulatory issues, "regularly attended" meetings at which regulatory issues were discussed, and "ignored employee concerns." (Pls. Mem. at 19.) This is merely a repackaged version of Plaintiffs' prior theory regarding "Individual Defendants' alleged claims of involvement with risk management." (Op. at 55.) Nevertheless, Plaintiffs' reference to internal audits, Annual Reports, and meetings regarding risk management fail to show that Individual Defendants knew specific facts that contradicted their statements at the time they were made. In re Adient plc Sec. Litig., 2020 WL 1644018, at *27 (S.D.N.Y. Apr. 2, 2020) ("Where scienter is based on a defendant's knowledge of and/or access to certain facts," Plaintiffs must show that "specific contradictory information was available to the defendants [] at the same time they made their misleading statements."); see also Teamsters, 531 F.3d at 196 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." (quoting Novak v. Kasaks,

216 F.3d 300, 309 (2d Cir. 2000))).  For example, Plaintiffs allege that Mr. Corbat and Mr. Gerspach received reports on a quarterly basis and that the reports included "(i) enterprise-wide risk management problems, (ii) concerns about Citi's ability to handle and effectively manage risk across the enterprise, and (iii) data quality management shortcomings."  (SAC ¶ 18.)  Without more specifics on what the reports stated, it is unclear whether the statements made by Individual Defendants were directly contradictory.  (SAC ¶¶ 206-09.)

Additionally, Plaintiffs also point to an OCC Declaration— which stated "[m]any of the supervisory concerns addressed by the 2020 Orders were identified by the OCC and communicated to the Bank several years prior to" July 3, 2019—to prove Defendants were aware of the deficiencies of Citigroup's risk management systems. (Nelles Decl. Ex. 7 ¶ 27.)  Plaintiffs misleadingly omit the next sentence, which states that "certain supervisory concerns addressed by the 2020 Orders were identified and conveyed to the Bank close in time to or after the OCC's receipt of Relator's allegations."  (Id. (emphasis added).)  And, Plaintiffs do not provide any context for the statement, or explain what the "concerns" entailed, or the exact timing of "several years prior." "[S]uch vague allegations fail to provide any specific information sufficient to suggest, let alone adequately plead, that Defendants' statements . . . were false when made, or that

Defendants' belief in them was unreasonable." <u>In re Adient plc Sec. Litig.</u>, 2020 WL 1644018, at *28 (internal quotations omitted). (<u>See also</u> Op. at 59.)

Lastly, Plaintiffs rely on a 2021 statement by Mr. Dugan as a purported admission that the "Board did recognize the remediation shortfalls before the consent order" (Pls. Mem. at 3), but that quotation is cherry-picked by Plaintiffs. Mr. Dugan went on:

> and we did spend a great deal of time overseeing a number of different remediation projects in the last several years. While a lot of work was done and a lot of progress was made, we came to realize that a more fundamental, holistic and systemic change was required, what we now call the transformation.

(Nelles Decl. Ex. 2 at 8.) The "admission" thus undermines Plaintiffs' theory of fraud because it confirms that the Board attempted, in good faith during the Class Period, to make progress. Moreover, the most plausible reading of Mr. Dugan's statements is that any realization occurred after the 2020 Consent Orders, meaning that the statement does not provide "information regarding [] state of mind" at the relevant time. <u>Ark. Pub. Emp. Ret. Sys v. Bristol-Myers Squibb Co.</u>, 28 F.4th 343, 356 (2d. Cir. 2022).

Because Plaintiffs fail to allege new facts to prove scienter to fulfill their Section 10(b) and Rule 10b-5 claims, their proposed SAC would be futile.[11]

---

[11] Plaintiffs' theory of corporate scienter relies entirely on imputing the scienter of the Individual Defendants and other employees to Citigroup. (SAC ¶¶ 254-59.) Because the CAC (cont'd)

24

## IV. <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' proposed amendments in the SAC would fail to cure prior deficiencies to withstand a FRCP 12(b)(6) motion and therefore would be futile.[12]  Accordingly, Plaintiffs' Motion for leave to amend is DENIED.  The Clerk of the Court shall close dkt. no. 146.

**SO ORDERED.**

Dated:    New York, New York
          November 13, 2025

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge

---

(cont'd) fails adequately to allege scienter on the part of the Individual Defendants and does not identify any other particular employee with adequate scienter, corporate scienter is necessarily lacking.  <u>See</u> <u>Teamsters</u>, 531 F.3d at 195.
[12] Plaintiffs also assert a claim under Section 20(a).  (Pls. Mem. at 15 n.2.)  In light of the Court's holding regarding Plaintiffs' Section 10(b) and Rule 10b-5 claims, Plaintiffs' Section 20 claim is dismissed for failure to establish a primary violation of securities laws.  (<u>See</u> Op. at 62-63.)